1   Robert B. Hawk (Bar No. 118054)
    Stacy R. Hovan (Bar No. 271485)
2   HOGAN LOVELLS US LLP
    525 University Avenue, 4th Floor
3   Palo Alto, California 94301
    Telephone:  (650) 463-4000
4   Facsimile:  (650) 463-4199
    robert.hawk@hoganlovells.com
5   stacy.hovan@hoganlovells.com

6   John E. Hall (admitted *pro hac vice*)
    Gregg D. Michael (admitted *pro hac vice*)
7   ECKERT SEAMANS CHERIN & MELLOTT, LLC
    U.S. Steel Tower
8   600 Grant Street, 44th Floor
    Pittsburgh, PA  15219
9   Telephone:  (412) 566-6000
    Facsimile:  (412) 566-6099
10  jhall@eckertseamans.com
    gmichael@eckertseamans.com
11
    Attorneys for Defendant
12  STARKIST CO.

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                       OAKLAND DIVISION

16
    PATRICK HENDRICKS, individually and on        Case No. C13-0729-YGR
17  behalf of all others similarly situated,
                                                  **NOTICE OF MOTION AND MOTION
18                   Plaintiff,                    TO DISMISS CLASS ACTION
                                                  COMPLAINT**
19          v.
                                                  Date:       June 18, 2013
20  STARKIST CO.,                                 Time:       2:00 P.M.
                                                  Courtroom: 5
21                   Defendant.
                                                  The Hon. Yvonne Gonzalez Rogers
22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

### TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

3      **PLEASE TAKE NOTICE THAT** on June 18, 2013 at 2:00 p.m., or as soon thereafter as

4  the matter may be heard by the Court, in Courtroom 5, the Honorable Yvonne Gonzalez Rogers

5  presiding, defendant StarKist Co. "(StarKist") will, and hereby does move, to dismiss the

6  complaint filed in this matter.

7      StarKist makes its motion on the following bases:

8      (1) Plaintiff's claims are preempted by federal law.

9      (2) Under the primary jurisdiction doctrine, the Court should defer to the Food and Drug

10  Administration, which has unique expertise and resources suited to resolving the issues presented

11  by Plaintiff's claims, and which is currently in the process of considering a Citizens Petition

12  addressing the same issues raised by Plaintiff's claims.

13      (3) Plaintiff does not dispute the truth of any claim made on the labels of StarKist's

14  products, nor allege that he relied on or was deceived by any label statement.  Plaintiff has

15  therefore failed to plead the elements of a claim under any of California's consumer protection

16  statutes—the Unfair Competition Law (UCL), the False Advertising Law (FAL), and the

17  Consumers Legal Remedies Act (CLRA).

18      (4) For the same reason, Plaintiff has failed to plead the elements of a claim for common-

19  law fraud or negligent misrepresentation.

20      (5) Plaintiff has failed to plead the elements of a claim for breach of express or implied

21  warranty.

22      (6) Plaintiff's claim for unjust enrichment fails because no such claim exists under

23  governing state law.

24      (7) Plaintiff has failed to plead in conformance with the heightened particularity

25  requirement imposed by Fed. R. Civ. P. 9(b).

26      (8) Plaintiff lacks standing to pursue claims based on products that he did not purchase.

27

28

1         This motion is based on this Notice of Motion and Motion, the accompanying

2    Memorandum of Points and Authorities, StarKist's Request for Judicial Notice, and any other

3    written and oral arguments that may be presented to the Court.

4

5    Dated:  April 18, 2013             HOGAN LOVELLS US LLP
                                ECKERT SEAMANS CHERIN & MELLOTT, LLC

6

7                        By:     /s/ Robert B. Hawk_____

8                               Robert B. Hawk
                           Attorneys for Defendant
                           STARKIST CO.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

**CIVIL L.R. 7-4(A)(3)**

1.      Are claims that depend entirely on violations of federal regulations promulgated under the Food, Drug, and Cosmetic Act preempted by federal law?

2.      Should the Court defer to the Food and Drug Administration under the primary jurisdiction doctrine when that agency is currently in the process of considering a Citizens Petition addressing the same issues raised by Plaintiff's claims?

3.      Should the Court dismiss claims for violations of California's consumer protection statutes—the Unfair Competition Law (UCL), the False Advertising Law (FAL), and the Consumers Legal Remedies Act (CLRA)—when Plaintiff does not dispute the truth of any claim made on the labels of StarKist's products, nor allege that he relied on or was deceived by any label statement?

4.      Should the Court dismiss claims for common-law fraud and negligent misrepresentation when Plaintiff does not dispute the truth of any claim made on the labels of StarKist's products, nor allege that he relied on or was deceived by any label statement?

5.      Should the Court dismiss claims for breach of express and implied warranty when Plaintiff fails to identify any statement that could be construed as a warranty, fails to allege privity, fails to allege that the product he bought was unmerchantable, and fails to allege StarKist knew of any out-of-the-ordinary purpose for which the product would be used?

6.      Should the Court dismiss a claim for unjust enrichment when no such claim exists under governing state law?

7.      Should the Court dismiss the Complaint in its entirety based on Plaintiff's failure to plead specific facts in conformance with the heightened particularity requirement imposed by Fed. R. Civ. P. 9(b)?

8.      Should the Court dismiss claims challenging the labels of products that Plaintiff did not purchase when those products are subject to different standards under the federal regulations than the products Plaintiff allegedly did purchase?

1

## TABLE OF CONTENTS

2

3    I.       INTRODUCTION ........................................................................................................1

4    II.      BACKGROUND ..........................................................................................................3

5            A.      Plaintiff's Allegations Are Based On Product Testing Directed By His
                      Counsel And Not On Any Purchasing Decision He Himself Made. .......................3

6

7            B.      The Complex Regulation That Provides The Sole Basis Of Plaintiff's
                      Complaint Is Currently Under Review By The FDA.............................................4

8    III.     ARGUMENT ...............................................................................................................7

9            A.      Plaintiff's Claims Are Preempted. ........................................................................7

10           B.      The Court Should Defer To The FDA Under the Primary Jurisdiction
                      Doctrine...............................................................................................................10

11

12           C.      Plaintiff Fails To Plead A Claim Under State Consumer Protection Law or
                      Misrepresentation Theories (Counts V-IX). .......................................................14

13                1.      Plaintiff Has Pled Neither Reliance Nor Deception.................................14

14                2.      Plaintiff Fails To Satisfy The Reasonable Consumer Standard. ...............16

15                3.      Plaintiff's Claim Is Impermissibly Based Solely On An Alleged
                           Technical Regulatory Violation. ...............................................................18

16

17           D.      Plaintiff's Various Warranty Claims (Counts I, II and III) Fail............................19

18           E.      Plaintiff Has No Claim For Unjust Enrichment (Count IV) .................................22

19           F.      Plaintiff Cannot Pursue Claims With Respect To Products He Did Not
                      Buy. .....................................................................................................................22

20    IV.     CONCLUSION..........................................................................................................24

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

CASES

4

*Access Telecomm. v. Sw. Bell Tel.*,
   137 F.3d 605 (8th Cir. 1998).............................................................................................. 11

5

*All West Elecs., Inc. v. M-B-W, Inc.*,
   64 Cal. App. 4th 717 (1998)............................................................................................... 20

6

7

*Am. Suzuki Motor Corp. v. Super. Ct.*,
   37 Cal. App. 4th 1291 (1995)............................................................................................. 21

8

*Annunziato v. eMachines, Inc.*,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005).............................................................................. 20

9

10

*Arroyo v. Pfizer, Inc.*,
   2013 WL 415607 (N.D. Cal. Jan. 31, 2013) ...................................................................... 17

11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 15

12

13

*Astiana v. Hain Celestial Grp., Inc.*,
   — F. Supp. 2d —, 2012 WL 5873585 (N.D. Cal. Nov. 19, 2012) ....................................... 11

14

15

*Baker v. Smith & Nephew Richards, Inc.*,
   1999 WL 811334 (Tex. Dist. Ct. June 7, 1999)................................................................. 13

16

*Berry v. Webloyalty.com., Inc.*,
   2011 WL 1375665 (S.D. Cal. Apr. 11, 2011) .................................................................... 14

17

18

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009)........................................................................................ 21, 23

19

20

*Brazil v. Dole Food Co., Inc.*,
   2013 WL 1209955 (N.D. Cal. Mar. 25, 2013) .................................................................. 22

21

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ...................................................................................................... 7, 8, 9

22

23

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
   2011 WL 159380 (N.D. Cal. Jan. 10, 2011) ..................................................................... 23

24

25

*Clark v. Time Warner Cable*,
   523 F.3d 1110 (9th Cir. 2008)............................................................................................ 11

26

27

*Clemens v. Daimler Chrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008)............................................................................................ 20

28

*Collum v. Pope & Talbot, Inc.*,
   135 Cal. App. 2d 653 (1955) ............................................................................. 20

*Cullen v. Netflix, Inc.*,
   2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ..................................................... 17

*Cutler v. Hayes*,
   818 F.2d 879 (D.C. Cir. 1987) ......................................................................... 13

*Elias v. Hewlett-Packard Co.*,
   2012 WL 4857822 (N.D. Cal. Oct. 11, 2012) .................................................. 15

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir. 1995).............................................................................. 16

*Hairston v. South Beach Beverage Co., Inc.*,
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................................. 23

*Harlan v. Roadtrek Motorhomes, Inc.*,
   2009 WL 928309 (S.D. Cal. Apr. 2, 2009)................................................. 21, 22

*Hartless v. Clorox Co.*,
   2007 WL 3245260 (S.D. Cal. Nov. 2, 2007) ................................................... 20

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ......................................................................................... 13

*Hemy v. Perdue Farms, Inc.*,
   2011 WL 6002463 (D.N.J. Nov. 30, 2011)....................................................... 17

*In re Actimmune Mktg. Litig.*,
   2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) .................................................. 14

*In re Epogen & Aranesp Off-Label Mkt'g & Sales Practices Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008)................................................... 8, 9, 10

*In re NVIDIA GPU Litig.*,
   2009 WL 4020104 (N.D. Cal. Nov. 19, 2009).................................................. 20

*Johansson v. Cent. Garden & Pet Co.*,
   804 F.Supp.2d 257 (D.N.J. 2011) .................................................................... 20

*Jones v. ConAgra Foods, Inc.*,
   2012 WL 6569393 (N.D. Cal. Dec. 17, 2012) ................................................. 22

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)......................................................................... 15

*Keith v. Buchanan*,
   173 Cal. App. 3d 13 (1985).............................................................................. 21

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. App. 4th 310 (2011)................................................................................................ 14

*Lam v. Gen. Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal. 2012) .......................................................................... 21

*Lanovaz v. Twinings N. Am., Inc.*,
    2013 WL 675929 (N.D. Cal. Feb. 25, 2013)............................................................ 22, 23

*Larsen v. Trader Joe's Co.*,
    2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................................................ 22

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003)......................................................................................... 16

*Lever Bros. Co. v. Mauer*,
    712 F. Supp. 645 (S.D. Ohio 1989) ............................................................................... 12

*Loreto v. Procter & Gamble Co.*,
    2013 WL 645952 (6th Cir. Feb. 22, 2013)....................................................... 7, 8, 9, 10

*Mason v. Coca-Cola Co.*,
    774 F.Supp.2d 699 (D.N.J. 2011) .................................................................................. 18

*McKinnis v. Kellogg USA*,
    2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)............................................................... 16

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (2003)......................................................................................... 21

*Perez v.Nidek, Co.*,
    — F. 3d —, 2013 WL 1189098 (9th Cir. Mar. 25, 2013)........................................... 8

*Pom Wonderful v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012)................................................................................... 9, 11

*Riley v. Cordis*,
    625 F. Supp. 2d 769 (D. Minn. 2009) ............................................................................. 8

*Rooney v. Cumberland Packing Corp.*,
    2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ................................................................ 17

*Ross v. Sioux Honey Ass'n Co-op*,
    2013 WL 146367 (N.D. Cal. Jan. 14, 2013) .................................................................. 17

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
    307 F.3d 775 (9th Cir. 2002).......................................................................................... 11

*Taradejna v. Gen. Mills, Inc.*,
    — F. Supp. 2d —, 2012 WL 6113146 (D. Minn. Dec. 10, 2012) .......................... 12

*Thomas v. Costco Wholesale Corp.*,
  2013 WL 1435292 (N.D. Cal. April 9, 2013) ........................................................................ 15

*United States v. Sullivan*,
  332 U.S. 689 (1948) ........................................................................................................... 13

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) ............................................................................................................ 11

*Verzani v. Costco Wholesale Corp.*,
  2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) .................................................................... 9

*Williamson v. Reinalt-Thomas Corp.*,
  2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ............................................................. 14, 16

*Zwart v. Hewlett-Packard Co.*,
  2011 WL 767750 (N.D. Cal. Feb. 25, 2011)....................................................................... 23

**STATUTES & RULES**

21 U.S.C. § 337(a) ..................................................................................................................... 7

21 U.S.C. § 341 .......................................................................................................................... 4

Cal. Com. Code § 2313 ............................................................................................................ 19

Cal. Com. Code § 2314 ............................................................................................................ 20

Cal. Com. Code § 2315 ............................................................................................................ 21

Fed. R. Civ. P. Rule 8(a) ......................................................................................................... 17

Fed. R. Civ. P. Rule 9(b) .................................................................................................... 15, 17

**OTHER AUTHORITIES**

21 C.F.R. § 161.190 ..........................................................................................................*passim*

70 Fed. Reg. 29214 (May 20, 2005) .......................................................................................... 6

1   **I.   INTRODUCTION**

2        Plaintiff Patrick Hendricks seeks to pursue nine consumer protection, warranty, and

3   common-law fraud claims against defendant StarKist Co. ("StarKist"), based on his purchase of a

4   can of tuna fish.  Although Plaintiff maintains that he was defrauded by StarKist, he does not

5   allege that any statement appearing on the can or its label was false or misleading.  Rather,

6   Plaintiff's claim is that StarKist has violated a regulation promulgated by the Food and Drug

7   Administration, under the federal Food, Drug and Cosmetics Act.  The regulation at issue

8   provides detailed instructions for removing tuna from 24 cans, pressing the tuna into "cakes," and

9   then weighing the cakes to determine whether they on average meet specified weight

10  requirements.  Plaintiff claims that his attorney directed a private laboratory to perform the

11  regulatory pressing and weighing operations on an unspecified number of cans of StarKist tuna,

12  and found variances from the regulatory requirements ranging from 1.1% to 17.3%.  Plaintiff

13  does not, however, dispute the accuracy of the label statements that are actually on the StarKist

14  tuna cans at issue, which identify the amount of tuna in the can: five ounces net weight and four

15  ounces drained weight.  Nor does he allege that he relied, in making his purchase, on any actual

16  label statement, nor allege that there was less tuna in the can he purchased than he expected.

17       In short, Plaintiff's complaint depends entirely on a purported regulatory violation, and

18  not on any alleged deception he suffered as a consumer.  This critical fact dooms the complaint in

19  multiple ways.  First, federal law plainly prohibits private enforcement of the FDCA's substantive

20  provisions and accompanying FDA regulations.  The fact that Plaintiff has not asserted his

21  regulatory violation claims directly under the FDCA, but instead has packaged them within state-

22  law causes of action, does not save those claims.  State-law claims that depend on FDCA

23  statutory provisions and regulations are permissible only if they are grounded in traditional state-

24  law duties; the dispositive question here is whether Plaintiff's claims would exist if the FDCA did

25  not exist.  Because the answer to that question is clearly "no," federal law preempts Plaintiff's

26  claims in their entirety.

27       Second, even if Plaintiff's claims were not preempted by federal law, they should be

28  dismissed under the doctrine of primary jurisdiction, which enables courts to defer to federal

1   agencies on matters calling for the agencies' unique expertise and resources.  The doctrine applies

2   with special force in cases where, as here, an agency is already considering, under its own

3   procedures, the issues raised in private tort litigation.  As we discuss below, the FDA is currently

4   considering proposals to abandon the pressed weight provisions on which Plaintiff's claim

5   depends, and to adopt in their stead requirements based on net weight and drained weight.

6   Meanwhile, the FDA has recognized the idiosyncratic nature of the pressed weight provisions and

7   has not enforced those provisions in nearly twenty years.  Private tort litigation is plainly not the

8   proper vehicle for setting federal policy with respect to those provisions.  The primary jurisdiction

9   doctrine allows the Court to send this dispute where it belongs: before the FDA.

10      Third, Plaintiff's failure to allege that he was deceived by any label statement has

11   consequences for his state-law claims in their own right.  Those claims are based on purported

12   "misrepresentations" on StarKist's label.  But Plaintiff does not challenge any representation that

13   actually appears on the label.  At the same time, the representations he does attack—for example,

14   "that StarKist is legal for sale in the United States"—do not appear on the label and are pure

15   fabrication on his part.  Without allegations of deception and reliance, there can be no consumer

16   protection or common-law fraud claims.  Nor can Plaintiff satisfy the "reasonable consumer"

17   standard that governs his consumer protection claims.  Plaintiff has not alleged and cannot allege

18   facts plausibly showing that reasonable consumers were likely to have been misled by the

19   purported technical regulatory violation on which his claims are based.

20      Plaintiff's three warranty claims also fail on their own terms.  Plaintiff alleges no violation

21   of any express warranty on the StarKist label, and his implied warranty claims fail because

22   Plaintiff was not in privity with StarKist and in any event can point to no breach.  Plaintiff's

23   claim for unjust enrichment fails because it is not cognizable under California law.

24      Finally, even if the complaint were not otherwise infirm, Plaintiff would have standing to

25   bring only a fraction of the claims he seeks to assert.  Plaintiff alleges that he bought only one

26   StarKist product: chunk tuna in water.  But he also purports to challenge three other StarKist

27   products, which he did not purchase and with respect to which he asserts three different pressed

28   weight shortfalls.  Plaintiff lacks standing to assert these claims.

-2-

II.     **BACKGROUND**

A.      **Plaintiff's Allegations Are Based On Product Testing Directed By His Counsel And Not On Any Purchasing Decision He Himself Made.**

Plaintiff's claims are all based on tests performed, at an unnamed laboratory and under the direction of his attorney, on an unspecified number of five-ounce cans of StarKist's tuna products. Complaint ("Com.") ¶¶ 2-3. According to Plaintiff, these tests were performed "precisely according to the methods specified by 21 C.F.R. § 161.190(c)." *Id.* ¶ 2. That regulation sets forth lengthy, detailed instructions for opening the top and bottom lids of a can of tuna, removing the contents from the can, and placing the contents in an industrial press of specified dimensions, for a specified length of time, at a specified pressure. The pressed tuna "cake" that emerges from the process is then weighed. 21 C.F.R. § 161.190(c). The process is performed 24 times—that is, on 24 separate cans—and the weights are averaged. *Id.* A table in the regulation sets forth required weights for tuna in various forms (whole, chunk, flaked, grated) packaged in cans of various dimensions. Detailed extrapolation instructions provide a means to derive weight requirements for tuna packed in cans whose dimensions do not appear on the table. *Id.* Plaintiff maintains that laboratory testing directed by his counsel showed, based on the methods set forth in the regulation, that four of StarKist's five-ounce tuna products—solid and chunk tuna, respectively, in oil and water, respectively—exhibited variations of between 1.1% and 17.3% from the weights specified in the regulation. Com. ¶ 2-3.

Only one paragraph in Plaintiff's complaint sets forth any facts concerning Plaintiff's own purchase. Com. ¶ 2. That single paragraph is remarkable for its omissions. Critically, the complaint does not specify either the number of cans tested or the number of cans Plaintiff purchased, and there is no allegation that the can or cans Plaintiff himself bought were ever tested. In addition, Plaintiff does not allege that he ever read the label on a can of StarKist tuna, or that he relied on any label statement concerning weight, or volume, or fill; indeed, Plaintiff does not allege that he read or relied on any label statement at all. Plaintiff does not challenge the accuracy of, or even mention, the two actual label statements addressing the amount of product in the can:

- "NET WT 5 OZ (142g)"

- "Serv[ing] Size: 2oz drained (56g - about ¼ cup); Servings about 2"

Ex. 1.[1]  These are glaring omissions.  Plaintiff does not allege that he was deceived or misled by the only StarKist label statements that specify the amount of tuna in the can he purchased.  Nor does he allege that the can or cans he purchased contained less tuna than he had believed he was buying, or that the product failed to conform to his expectations in any other way.

In addition, while Plaintiff says that he bought chunk tuna in water, he does not allege that he bought the three other products on which his claims are based: chunk and solid tuna in oil and solid tuna in water.  Nevertheless, based on the laboratory tests ordered and directed by his counsel, Plaintiff asserts that he was injured, and he seeks to represent all purchasers, nationwide, of all four of the products referred to in the complaint.  He seeks unspecified damages in excess of $5 million on behalf of his purportedly injured fellow-consumers.

**B.     The Complex Regulation That Provides The Sole Basis Of Plaintiff's Complaint Is Currently Under Review By The FDA.**

The regulation on which Plaintiff bases his claim is, as noted, highly complex.  The regulation, 21 C.F.R. § 161.190, was developed in 1957, at a time when tuna was customarily packed in three-piece cans rather than in the two-piece cans used today.  (The regulation consequently requires that both the top and bottom lid of the can be removed before the product is put through an industrial press to produce the "cake" used to determine pressed weight.)  The pressed weight requirements constitute "standards of fill," and are in turn incorporated into what is called under the FDCA a "standard of identity"—a type of regulation that sets forth required characteristics of a food.[2]  Significantly, the standard of fill does not require that any information be communicated to consumers and does not correspond to any labeling requirement.  Rather, the

---

[1] All "Ex. _" citations in the Memorandum refer to exhibits to the Request for Judicial Notice.

[2] Section 401 of FDCA authorizes the FDA to establish a reasonable definition and standard of identity, a reasonable standard of quality, and a reasonable standard of fill of container for any food.  21 U.S.C. § 341.  Currently, both the standard of identity and the standard of fill for canned tuna are set forth in a single regulation at 21 C.F.R. § 161.190, with the standard of fill provided at § 161.190(c).

1  regulation provides guidance to manufacturers and food inspectors as to what constitutes a well-

2  filled container.  StarKist is not required to, and does not, include pressed weight figures on

3  labels.  *See* Ex. 1.

4       The method for deriving and measuring a pressed weight set out in Section 161.190 is

5  unusual.  Pressed weight is not used in connection with a standard of identity for any other

6  canned food product in the United States, and is not used for canned tuna in any country except

7  the United States, including countries of the European Union, the world's leading consumer of

8  canned tuna.  Ex. 2.  Given the idiosyncratic nature of the regulation, together with the difficulties

9  food producers have experienced in applying it over the years, three industry competitors

10  (StarKist, Bumble Bee and Tri-Union Seafoods) jointly filed a Citizen Petition with the FDA on

11  October 12, 2011 ("Petition").  In the Petition, the food producers asked the agency to amend the

12  standard of fill provisions in Section 161.190 and to adopt a ***drained weight***, as opposed to a

13  pressed weight, standard.  Ex. 2.  The authors of the Petition also requested that the regulation be

14  amended to require that the principal display panel of the canned tuna label bear an accurate

15  statement of the drained weight of the product.  *Id.*  They summarized the rationale for the

16  requested changes as follows:

17       The U.S. canned tuna industry has long argued that the standard of fill for
         canned tuna should be based on drained weight rather than pressed cake
18       weight.  The United States is the only country that still uses the pressed
         cake weight methodology, which is complicated, more prone to human
19       error, and unknown to most consumers.

20       The drained weight method is simpler to perform and is easily understood
         by consumers.  The drained weight method is the internationally accepted
21       method for determining fill of container for canned tuna.  Changing to
         drained weight would make it easier for U.S. manufacturers to market their
22       canned tuna products in overseas markets.

23       Since most consumers and food preparers discard the packing medium in
         canned tuna products, requiring declaration of both net weight and drained
24       weight on the label would give consumers more complete and useful
         information about the quantity of contents.

25  *Id.* at 7.

26

27       The FDA itself, as noted in the Petition, articulated principles in 2005 strongly supporting

28  the requested amendments.  *Id.*  In a proposed rule to modernize food standards, the agency

-5-

1    recognized that many existing standards were outdated, unnecessarily complex, and a hindrance

2    to innovation.  *See* 70 Fed. Reg. 29214 (May 20, 2005), Ex. 4.  Such standards are ripe targets for

3    President Obama's Executive Order 13563, which calls on all federal agencies to review

4    regulations that are "outmoded, ineffective, insufficient, or excessively burdensome, and to

5    modify, streamline, expand, or repeal them in accordance with what has been learned."

6    Executive Order 13563, Ex. 3 at 217.  The issues noted in the proposed rule and Executive Order

7    are precisely the kinds of difficulties that have long been associated with the fill standards for

8    canned tuna.  Ex. 2 at 7.

9            By the same token, both the FDA and other federal agencies with jurisdiction over

10   seafood are aware of the archaic nature of the pressed weight method and the difficulties it

11   presents.  In response to a request from the United States National Oceanic and Atmospheric

12   Administration, the FDA acknowledged that the canned tuna standard is the "only standard that

13   relies on the pressed-cake weight," and that it was originally designed for "the old [three] piece

14   can."  Ex. 5.  In fact, nearly 20 years have passed since FDA has acted to enforce that standard.[3]

15           In response to the Petition, the FDA has established a docket, FDA-2011-P-0763-

16   0001/CP.  The Petition remains pending for review by the agency.

17           At the same time they filed the Petition, the same three industry leaders submitted to the

18   FDA an application for a Temporary Marketing Permit ("TMP").  Ex. 6.  The TMP would allow

19   the test marketing of canned tuna that varies from the standards in 21 C.F.R. § 161.190 in several

20   ways.  Like the Petition, the TMP application advocates use of a fill standard based on drained

21   weight, as well as the inclusion of both net weight and drained weight on the principal display

22   panel of canned tuna products.  *Id.* at 1.  The TMP application explains the benefits of the

23   proposed variations.  Because regulators outside the United States use drained rather than pressed

24

25   ───────────────────
     [3] After investigation, counsel for StarKist is aware of no enforcement action in that time period.
     A search of the FDA's public database of FDA Warning Letters, which contains letters issued
26   back to 1996, reveals no warning letter concerning the standard.  *See* U.S. Food & Drug
     Administration, *Inspections, Compliance, Enforcement, and Criminal Investigations: Warning
27   Letters*, http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/default.htm (last visited
     Apr. 16, 2013).

28

1   weight as the relevant measure, a move to drained weight within the United States would permit

2   consistency across markets and would thereby improve the efficiency of tuna canning operations.

3   *Id.* at 4.  A move to drained weight would also bring the fill standard into conformity with current

4   technology.  As noted, the three-piece can for which the pressed weight regulation was drafted is

5   no longer in use; for reasons of consumer safety and environmental conservation among others,

6   the industry long ago moved to a simpler two-piece can.  The TMP application, like the Petition,

7   remains pending before the FDA.

8   **III.    ARGUMENT**

9          **A.    Plaintiff's Claims Are Preempted.**

10         Plaintiff's claims fail in the first instance because federal law preempts them.  Section

11   337(a) of the FDCA gives the federal government exclusive enforcement authority over alleged

12   FDCA violations.  21 U.S.C. § 337(a).  As the Supreme Court has recognized, "[t]he FDCA

13   leaves no doubt that it is the Federal Government rather than private litigants who [is] authorized

14   to file suit for compliance" with its substantive provisions.  *Buckman Co. v. Plaintiffs' Legal*

15   *Comm.*, 531 U.S. 341, 349 n.4 (2001).

16         Plaintiff here attempts to avoid preemption by invoking state law.  Although Plaintiff's

17   claims depend in their entirety on the alleged violation of 21 C.F.R. § 161.190, Plaintiff asserts

18   nine purported state-law bases for what are in reality regulatory claims.  As courts have

19   recognized, complaints structured in this way pose a challenge: the FDCA's public enforcement

20   mechanism is "thwarted if savvy plaintiffs can label" their claim as one arising under state law

21   and capable of private enforcement, if such claim "in substance seeks to enforce the FDCA."

22   *Loreto v. Procter & Gamble Co.*, 2013 WL 645952, at *2 (6th Cir. Feb. 22, 2013).  As the Sixth

23   Circuit has explained, to decide whether state claims are preempted, "[t]he question . . . is how to

24   determine whether a claim formally asserted under state law is in substance one seeking to

25   enforce the FDCA."  *Id.*

26         In this case, Plaintiff's attempt at avoiding preemption fails.  An oft-cited district court

27   decision sets forth a practical test for determining whether a claim is preempted:

28

-7-

> [T]he conduct on which the claim is premised must be the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law even if the FDCA had never been enacted.  If the defendant's conduct is not of this type, then the plaintiff is effectively suing for a violation of the FDCA (no matter how the plaintiff labels the claim) and the plaintiff's claim is thus impliedly preempted under *Buckman*.

*Riley v. Cordis*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009); *see also Loreto*, 2013 WL 645952, at *2 (citing and quoting *Riley*).  State tort litigation is thus barred "when the state-law claim is in substance (even if not in form) a claim for violating the FDCA that is, when the state claim would not exist if the FDCA did not exist."  *Riley*, 625 F. Supp. 2d at 777 (citing *Buckman*).  Because Plaintiff here could not assert any of his nine claims "if the FDCA did not exist," each of those claims is preempted.

Other decisions are consistent with *Riley* and *Loreto*.  Notably, the Ninth Circuit very recently affirmed the dismissal, on preemption grounds, of a lawsuit brought against physicians and medical equipment manufacturers accused of failing to disclose that the lasers used to surgically correct patients' farsightedness had not received FDA approval for that use.  *Perez v. Nidek*, Co., — F.3d —, 2013 WL 1189098, at *6 (9th Cir. Mar. 25, 2013).  In *Perez*, much as here, the ***only*** information allegedly withheld concerned the products' regulatory status—a status that would not exist in the absence of the regulation.  The Ninth Circuit accordingly concluded that, as in *Buckman*, plaintiffs' fraud claims "exist[ed] solely by virtue of the FDCA requirements," and hence were foreclosed.  *Id*. at *9.

Similarly, the Central District of California has dismissed, under Section 337(a) of the FDCA, claims asserted under state consumer protection law but based on alleged violations of FDA regulations—in that case, regulations prohibiting off-label marketing by pharmaceutical companies.  *In re Epogen & Aranesp Off-Label Mkt'g & Sales Practices Litig*., 590 F. Supp. 2d 1282 (C.D. Cal. 2008).  In concluding that plaintiff's claims "largely constitute[d] an attempt to shoehorn allegations that Defendants have engaged in off-label marketing in violation of the FDCA into RICO and state consumer fraud causes of action," the *Epogen* court distinguished carefully between claims asserting violations of FDA regulations and claims based on allegations that defendants made false or misleading statements to induce sales of their products.  *Id.* at 1290.

-8-

1    The latter type of allegation might support a consumer fraud claim, but because no such

2    allegations plainly appeared in the complaint, plaintiffs' claims were all found to be infirm.  *Id.* at

3    1288-92 ("Plaintiffs must point to specific misrepresentations made by Defendants.")[4]

4           None of Plaintiff's claims here can stand in the face of Section 337(a) and the cases

5    applying it.  Plaintiff's claims depend entirely on the FDCA for their existence.  Plaintiff

6    contends that StarKist is liable for "misrepresenting that StarKist Tuna contained an adequate

7    amount of tuna for a 5-ounce can and that StarKist Tuna is legal for sale in the United States."

8    Com. ¶ 46.  Accepting for the moment Plaintiff's statement of his claim and leaving aside the fact

9    that no such representation actually appears on the challenged StarKist labels, this claim depends

10   wholly on the existence of Section 161.190.  Plaintiff's reference to "an adequate amount"

11   depends altogether on his references to the pressed weight and tuna "cake" provisions of the

12   federal regulation.

13          Plaintiff's theory is precisely the same as the theory that failed in *Loreto*.  The *Loreto*

14   plaintiffs asserted that defendant "omitted telling consumers that its products were 'illegal,' and

15   had plaintiffs known it, they wouldn't have purchased the product.  The products were illegal,

16   plaintiffs maintain, because their labeling did not comply with the FDCA's requirements."  2013

17   WL 645952, at *3.  The Sixth Circuit affirmed in short order the dismissal of this claim under

18   Section 337(a) and *Buckman*:

19          This theory of liability depends entirely upon an FDCA violation—*i.e.*, the *only*
            reason [defendant's] products were allegedly 'illegal' was because they failed to
20          comply with FDCA labeling requirements.  The theory is impliedly preempted
            under federal law.

21

22   _____

23   [4] Although *Loreto* and *Epogen & Aranesp* involved the advertising and marketing of drugs rather
     than food, the decisions also apply to claims based on purported violations of the FDA's food
24   regulations.  The Ninth Circuit has recognized the primacy of FDA regulation over private
     litigation in the context of food labeling; in *Pom Wonderful v. Coca-Cola Company*, the court
     held that private plaintiffs were barred from litigating alleged FDCA violations because private
25   lawsuits would "undermine the FDA's regulations and expert judgments" in the area of food
     labeling.  679 F.3d 1170, 1177 (9th Cir. 2012).  And while this analysis in *Pom* related to federal
26   Lanham Act claims, other courts have applied the same Supreme Court and statutory authority—
     *Buckman* and Section 337(a)—to preempt state-law consumer protection claims based on alleged
27   violations of the FDCA's food labeling provisions.  *Verzani v. Costco Wholesale Corp.*, 2010 WL
     3911499, at *3 (S.D.N.Y. Sept. 28, 2010).

28

-9-

1  *Id.* (emphasis in original).  Plaintiff's claim here fails for the same reason.[5]

2          Nor does Plaintiff salvage his claim by alleging that StarKist "misrepresent[ed] that

3  StarKist Tuna contained an adequate amount of tuna for a 5-ounce can."  Com. ¶ 46.  The

4  difficulty for Plaintiff is twofold.  *First*, Plaintiff's contention that the amount of tuna in the can

5  was "inadequate" depends entirely on Section 161.190 of the federal regulations.  Plaintiff's

6  "inadequacy" assertion would not otherwise exist: Plaintiff does not say, for example, that the can

7  contained less tuna than he expected or than he was led to believe it would contain based on the

8  label, the size of the can, or anything else.  *Second*, and even more fundamentally, the

9  "misrepresentation" on which Plaintiff's claim is based does not appear on the label.  In this way,

10  the present case is much like *Epogen & Aranesp*, in which the court recognized that a viable

11  consumer fraud claim might exist notwithstanding plaintiff's citations to alleged regulatory

12  violations—but only if plaintiff could identify particular challenged statements that were

13  allegedly false or misleading.  Plaintiffs did not do that in *Epogen & Aranesp*, and Plaintiff here

14  has not done so either.  Because Plaintiff's claims depend in their entirety on the existence of a

15  regulation that Congress has dictated may not be enforced by means of private tort litigation, the

16  Court should dismiss the complaint.

17          **B.      The Court Should Defer To The FDA Under the Primary Jurisdiction
18                  Doctrine.**

19          Because Plaintiff's claims depend on 21 C.F.R. § 161.190, they also come squarely within

20  the primary jurisdiction of the FDA.  The FDA promulgated the rule, the FDA has jurisdiction to

21  enforce the rule, and the FDA is currently considering a petition requesting that the rule be

22  amended or suspended.

23

24

---

25  [5] A second claim in *Loreto* was found to be valid—the claim that defendant violated state law by
    advertising its product, which contained Vitamin C, by means of the statement that Vitamin C can
26  "blunt the effects" of a cold.  Because plaintiffs disputed the truth of that statement, the Sixth
    Circuit concluded that plaintiffs had alleged a viable state-law claim independent of the FDA's
27  regulation.  2013 WL 465952, at *3.  But in this case, Plaintiff does not allege that any statement
    that actually appears on the StarKist label is false or misleading.

28

1   Plaintiff here asks this Court (and ultimately a jury) to insert itself into this ongoing

2   regulatory field of activity.  The Court should decline that invitation under the doctrine of primary

3   jurisdiction, which "allows courts to stay proceedings or to dismiss a complaint without prejudice

4   pending the resolution of an issue within the special competence of an administrative agency."

5   *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Courts routinely dismiss

6   claims involving issues that are appropriately left to an "administrative agency with more

7   specialized experience, expertise, and insight."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59,

8   64 (1956), *superseded by regulation on other grounds* in *Jones Truck Lines, Inc. v. Aladdin*

9   *Synergetics, Inc.*, 174 B.R. 76 (M.D. Tenn. 1994).  As the Ninth Circuit has stated, deference to

10  an agency is appropriate where there is "(1) a need to resolve an issue that (2) has been placed by

11  Congress within the jurisdiction of an administrative body having regulatory authority

12  (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory

13  authority that (4) requires expertise or uniformity in administration."  *Clark*, 523 F.3d at 1115

14  (internal quotation marks omitted); *accord Syntek Semiconductor Co. v. Microchip Tech., Inc.*,

15  307 F.3d 775, 780-81 (9th Cir. 2002).  Courts apply the doctrine of primary jurisdiction to "obtain

16  the benefit of an agency's expertise and experience" and to "promote uniformity and consistency

17  within the particular field of regulation."  *Access Telecomm. v. Sw. Bell Tel.*, 137 F.3d 605, 608

18  (8th Cir. 1998).

19      The criteria for applying primary jurisdiction are all satisfied here.  Indeed, in the area of

20  food labeling in particular, the Ninth Circuit has recently recognized both the importance of the

21  FDA's enforcement discretion and the compelling reasons for leaving it intact.  In *Pom*

22  *Wonderful v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), the court deferred to the FDA's

23  expertise in the area of food labeling, and consequently dismissed Lanham Act claims

24  challenging juice labels.  The court reasoned that allowing such claims to proceed within the

25  judicial system would both "undermine the FDA's regulations and expert judgments" and

26  "undermine the FDA's apparent determination that . . . [the current product label] is not

27  misleading."  *Id.* at 1177.  The court concluded that "under our precedent, for a court to act when

28  the FDA has not—despite regulating extensively in this area—would risk undercutting the FDA's

-11-

1   expert judgments and authority." *Id.*; *see also, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*,

2   — F. Supp. 2d —, 2012 WL 5873585, at *1 (N.D. Cal. Nov. 19, 2012) (dismissing, on the basis

3   of primary jurisdiction, consumer protection claims challenging cosmetics labeling, and citing

4   *Pom* for the proposition that, in the area of product labels under FDA jurisdiction, "Congress

5   ha[s] entrusted the task of guarding against deception to the FDA"); *Lever Bros. Co. v. Mauer*,

6   712 F. Supp. 645, 651 (S.D. Ohio 1989) (issues regarding food labeling are sufficiently complex

7   that they are "best left to the FDA for consideration prior to judicial review").

8          The case for primary jurisdiction is particularly strong here, because the FDA is already in

9   the process of considering proposed changes to the rule on which Plaintiff's claims are based.

10  *Supra* at 5-7 & Ex. 2.  Another district court has recently faced the same situation.  In *Taradejna*

11  *v. General Mills, Inc.*, plaintiffs alleged that defendant's yogurt products should not have been

12  labeled either "yogurt" or "Greek yogurt" because they contained an ingredient not permitted

13  under the standard of identity for yogurt. — F. Supp. 2d —, 2012 WL 6113146 (D. Minn. Dec.

14  10, 2012).  The court dismissed the complaint under the primary jurisdiction doctrine, holding

15  that "resolution of [the underlying issue] falls squarely within the competence and expertise of the

16  FDA, pursuant to the authority granted to the Agency by Congress." *Id.* at *5.  The court also

17  observed that the FDA had issued a Proposed Rule that would have the effect of altering the

18  standard of identity to permit the ingredient plaintiffs objected to. *Id.* at *2-3.  Although the

19  Proposed Rule had been pending for several years, the court found that it would be "imprudent

20  . . . at this juncture, to substitute [the Court's] judgment for that of the Agency's while revision of

21  the standard of identity is pending." *Id.* at *5.  The *Taradejna* court further noted that the "FDA's

22  ultimate decision on the permitted ingredients in yogurt will ensure national uniformity in

23  labeling, utilizing [the FDA's] special expertise in this regard." *Id.* at *6.

24         Precisely the same policies apply here.  Given the FDA's consideration of proposed

25  changes to the standard of identity underlying Plaintiff's claims, and given the desirability of

26  national, industry-wide uniformity on the issue, this Court should defer to the FDA.

27         The case for primary jurisdiction is particularly strong here for a second reason as well.

28  As noted, the mechanics of producing a tuna "cake" for purposes of determining pressed weight

-12-

1   are complex.  The work can be done only in an industrial or laboratory setting.  Plaintiff himself

2   acknowledges this fact when he alleges that his determination that certain StarKist tuna cans were

3   "underfilled" is based on tests performed by a laboratory at his attorney's direction and not on

4   any suspicion on his own part, as a consumer, that any can he bought contained an inadequate

5   amount of tuna.  A private tort action, with its necessary focus on consumers' expectations,

6   reliance, and conduct, is not the right vehicle for assessing StarKist's purported noncompliance

7   with the pressed weight provisions of Section 161.190.

8           The FDA provides a forum far more suitable for resolving Plaintiff's claims.  The FDA's

9   broad authority to prosecute misleading labeling, and no less importantly, to decline enforcement

10   in particular circumstances, is an instrumental part of the nationwide regulatory regime created to

11   enforce the FDCA.  Courts have recognized that it is inappropriate for a private plaintiff to "act as

12   a prosecutor when the FDA has declined to accept that role."  *Baker v. Smith & Nephew*

13   *Richards, Inc.*, 1999 WL 811334, at *18 (Tex. Dist. Ct. June 7, 1999), *aff'd on other grounds sub*

14   *nom. McMahon v. Smith & Nephew Richards, Inc.*, 2000 WL 991697 (Tex. App. Ct. July 20,

15   2000).  Indeed, the Supreme Court has noted the importance of FDA's discretion in enforcing

16   violations of the FDCA: "[T]he Administrator of the Act is given rather broad discretion—broad

17   enough undoubtedly to enable him to perform his duties fairly without wasting his efforts on what

18   may be no more than technical infractions of law. . . . The provisions of [section] 405 with regard

19   to food apparently are broad enough to permit the relaxation of some of the labeling requirements

20   which might otherwise impose a burden on retailers out of proportion to their value to the

21   consumer."  *United States v. Sullivan*, 332 U.S. 689, 694-95 (1948); *accord Heckler v. Chaney*,

22   470 U.S. 821, 835 (1985) (discussing FDA's "complete discretion" with respect to enforcement);

23   *Cutler v. Hayes*, 818 F.2d 879, 893 (D.C. Cir. 1987) ("Congress has not given FDA an inflexible

24   mandate to bring enforcement actions against all violators of the Act").

25           FDA discretion is broad under the FDCA, and both the substantive provisions of the

26   statute and the substantive regulations promulgated under it were drafted within that context, and

27   with the understanding that the requirements imposed by the law would be tempered by

28   administrators' policy decisions concerning the extent and means of enforcement.  To permit

-13-

1    Plaintiffs to take up those provisions in the context of private state-law tort claims, without the

2    buffer of administrative judgment, would distort the FDCA.  Dismissal under the primary

3    jurisdiction doctrine is appropriate here.

4          C.      **Plaintiff Fails To Plead A Claim Under State Consumer Protection Law or
5                      Misrepresentation Theories (Counts V-IX).**

6              1.      **Plaintiff Has Pled Neither Reliance Nor Deception.**

7          Under California consumer protection law, where a plaintiff alleges wrongdoing that

8    consists of representations or omissions "intended to persuade a consumer to purchase a product,"

9    plaintiff has the burden of pleading actual and reasonable reliance.  *In re Actimmune Mktg. Litig.*,

10   2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 Fed. App'x 651 (9th Cir. 2011).

11   This is true with respect to all three of the consumer protection statues Plaintiff invokes here: the

12   UCL, the FAL, and the CLRA.  *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at

13   *8, 10 (N.D. Cal. Apr. 25, 2012) (plaintiff must plead and prove that he or she lost money as a

14   result of his or her "own actual and reasonable reliance on the allegedly untrue or misleading

15   statements") (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011)); *see also, e.g.*,

16   *Berry v. Webloyalty.com., Inc.*, 2011 WL 1375665, at *6 (S.D. Cal. Apr. 11, 2011) ("actual

17   reliance is required to have standing to sue under the UCL or FAL").  With respect to the UCL in

18   particular, at least in those cases in which plaintiff's claims are based on alleged

19   misrepresentations, Plaintiff must plead reliance under all three of the alternative statutory

20   prongs—the "fraudulent" prong, the "unfair" prong, and the "unlawful" prong.  *Williamson*, 2012

21   WL 1438812, at *8, 10.

22         There can be no question that this Plaintiff's claims are based on alleged

23   misrepresentations.  Plaintiff himself makes the point clearly with respect to each of his consumer

24   protection claims.  In connection with his CLRA claim, Plaintiff accuses StarKist of

25   "misrepresenting that StarKist contained an adequate amount of tuna for a 5-ounce can and that

26   StarKist Tuna is legal for sale in the United States."  Com. ¶ 46.  In connection with his FAL

27   claim, Plaintiff contends that StarKist "knew or should have known . . . that their [*sic*]

28   representations about StarKist Tuna were untrue and misleading."  *Id.* ¶ 61.  In connection with

-14-

1   his UCL claim, Plaintiff asserts that StarKist's "misrepresentations" violated the fraudulent

2   prong. *Id.* ¶ 55.  With respect to the unlawful and unfair prongs, Plaintiff again alleges

3   "misrepresentations" in violation of the UCL. *Id.* ¶¶ 53-54.  And while he also contends that

4   "other conduct" by StarKist violated those prongs, no such "other conduct" is specified. *Id.*

5          Because Plaintiff's consumer protection claims are all grounded in alleged fraud and

6   misrepresentation, Plaintiff must carry the burden of pleading reliance; indeed, he must plead

7   both reliance and each of the other elements of his claims with the heightened particularity

8   required by Rule 9(b).[6]  Plaintiff has not come close to meeting that burden.  There are only two

9   representations on the StarKist label that pertain to the amount of product in the can:

10       • "NET WT 5 OZ (142g)"

11       • "Serv[ing] Size: 2oz drained (56g - about ¼ cup); Servings about 2"

12   Ex. 1.  Plaintiff does not contend that either of these representations was false.  He does not allege

13   that the StarKist tuna he bought, or the cans tested under his attorney's direction, contained less

14   than five ounces of the product or less than four ounces of the drained product.  Plaintiff thus does

15   not allege that he was deceived by any statement that actually appears on the can label.  And he

16   does not dispute the ***truth*** of the only label statements that refer to the amount of product in the

17   can.  Nor does he allege how he was ***misled*** by those statements.

18          Plaintiff's failure to plead reliance is fatal to his state consumer protection claims (Counts

19   IV through VII).  *Thomas v. Costco Wholesale Corp*., 2013 WL 1435292, at *4-5 (N.D. Cal.

20   April 9, 2013) (in food labeling case, dismissing consumer protection claims where plaintiff "fails

21   to sufficiently allege that [the challenged] representations were untruthful or misleading" and

22   "has not asserted that she received a product different from the one as labeled").  Plaintiff's

23   failure to plead reliance is equally fatal to his common-law claims for fraud and negligent

24   misrepresentation (Counts VIII and IX), both of which are based on purported misrepresentations

25

26   [6] The pleading standards applicable to Plaintiff's claims are well known and we do not belabor
    them here.  Plaintiff must allege facts sufficient to "state a claim for relief that is plausible on its
    face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  And because the complaint in this case is
27   grounded in a theory of fraud (*e.g*., Com. ¶ 17), Plaintiff must also plead with particularity under
    Rule 9(b).  *E.g*., *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

28

1    (Com. ¶¶ 66, 74), and with respect to both of which Plaintiff has the burden of pleading reliance.

2    *See Elias v. Hewlett-Packard Co.*, 2012 WL 4857822, at *9 (N.D. Cal. Oct. 11, 2012) ("Under

3    California law, the indispensable elements of a fraud claim include false representation,

4    knowledge of its falsity, intent to defraud, justifiable reliance, and damages") (internal quotations

5    omitted); *Williamson,* 2012 WL 1438812, at *13 ("The elements of a cause of action for negligent

6    misrepresentation are the same as those of a claim for intentional misrepresentation, with the

7    exception that the defendant need not actually know the representation is false") (internal

8    quotations omitted).

9                    **2.      Plaintiff Fails To Satisfy The Reasonable Consumer Standard.**

10         In addition to pleading reliance, a consumer protection plaintiff must satisfy the

11   "reasonable consumer" standard.  Pursuant to this standard, a plaintiff must plead facts supporting

12   the inference that a ***reasonable*** consumer is ***likely*** to be deceived by the challenged statement or

13   conduct.  *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995).  This standard has real teeth.  Under

14   it, courts look beyond a plaintiff's own alleged experiences to the beliefs and behaviors of the

15   public at large.  It is insufficient for a plaintiff to allege that some members of the public could be

16   deceived.  Deception must be more likely than not, which raises the standard to one of

17   probability.  *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *3 (C.D. Cal. Sept. 19, 2007); *see*

18   *also Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003) (challenged statement or

19   conduct must be "such that it is probable that a significant portion of the general consuming

20   public" would be misled).  And there must be a probability of deception with respect to

21   "consumers acting reasonably in the circumstances, not just any consumers."  *Freeman*, 68 F.3d

22   at 289.  Only by alleging facts sufficient to meet this requirement can a plaintiff plausibly state a

23   claim for relief under controlling pleading standards.

24         Plaintiff alleges no such facts here.  The most fundamental difficulty with Plaintiff's

25   claim, of course, is that he points to no actual StarKist statement that is false or misleading at all,

26   and hence cannot allege even that he himself was deceived.  And under the reasonable consumer

27   standard, the problem goes further; it would not be resolved even if Plaintiff had alleged,

28   (contrary to all reasonable inferences), that he was aware of the pressed weight requirements of

-16-

1  Section 161.190 when he purchased StarKist tuna, that he purchased his five-ounce can of tuna in

2  reliance on his belief that a "cake" produced through an industrial pressing process would weigh

3  2.84 ounces, and that he would not have purchased the tuna if he had known that laboratory tests

4  allegedly yielded a pressed weight of 2.35 ounces.  Even these hypothetical allegations would not

5  satisfy the reasonable consumer standard, because Plaintiff could never plausibly allege that *other*

6  consumers—reasonable consumers—would have expected the same thing.

7       In a case like this one, where a plaintiff pleads no facts showing that his or her

8  idiosyncratic beliefs or expectations are shared by reasonable consumers, courts routinely dismiss

9  consumer protection claims under federal pleading standards.  Several such decisions have

10  emerged from courts facing the current onslaught of lawsuits against food manufacturers.  *E.g.*,

11  *Ross v. Sioux Honey Ass'n Co-op*, 2013 WL 146367, at *15-18 (N.D. Cal. Jan. 14, 2013)

12  (dismissing claims where plaintiff alleged that she understood the term "honey" on a product

13  label to mean that no pollen had been removed from the food, but alleged no facts showing that

14  reasonable consumers would understand the term in the same way); *Hemy v. Perdue Farms, Inc.*,

15  2011 WL 6002463, at *15-17 (D.N.J. Nov. 30, 2011) (dismissing claims where plaintiffs alleged

16  that they understood the term "humanely raised" on the label of chicken products to include

17  humane methods of slaughter, but alleged no facts showing that reasonable consumers would

18  understand the term in the same way); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106,

19  at *4-5 (S.D. Cal. Apr. 16, 2012) (dismissing claims where plaintiff pleads no facts supporting

20  inference that the name "Sugar in the Raw" would cause reasonable consumers to believe that

21  product contains unprocessed and unrefined sugar); *see also Cullen v. Netflix, Inc.*, 2013 WL

22  140103, at *7 (N.D. Cal. Jan. 10, 2013); *Arroyo v. Pfizer, Inc.*, 2013 WL 415607, at *4 (N.D. Cal.

23  Jan. 31, 2013).  The reasoning in all of these cases applies to the claims at issue here.  This

24  Plaintiff pleads no facts showing that *reasonable consumers* would be deceived by any

25  representation StarKist made.  He therefore has failed to state a claim for relief that is plausible

26  on its face, and his complaint should be dismissed under Rule 8(a) and 9(b).

27

28

1

2

### 3.  Plaintiff's Claim Is Impermissibly Based Solely On An Alleged Technical Regulatory Violation.

3    Plaintiff's consumer protection and misrepresentation claims also fail because alleged

4 technical regulatory violations, without more, simply do not support inferences of consumer

5 deception or injury, both of which are required for such claims.  Plaintiff's claims depend entirely

6 on the purported violation of Section 161.190—that is, on the results of laboratory tests

7 performed according to complex regulatory specifications.  But Plaintiff alleges no connection

8 between those tests and the can or cans of tuna he himself purportedly bought.  Plaintiff does not

9 allege that any testing was performed on the specific product he purchased, let alone a product he

10 bought in reliance on a StarKist misrepresentation or omission. Com. ¶¶ 2-3.  This pleading

11 failure further undercuts Plaintiffs' conclusory allegations of injury, deception, and violation of

12 consumer protection statues.

13    Beyond this, courts have specifically recognized that claims based purely on alleged

14 regulatory violations, rather than on Plaintiff's own expectations or purchasing decisions, do not

15 fit within the basic tenets of state consumer protection law.  One example comes from a recent

16 food labeling case in which plaintiff relied on an FDA warning letter to support his claim that

17 defendant had purportedly failed to comply with a food labeling regulation.  Plaintiff there did not

18 allege that he had himself been aware of the regulation or deceived by the manufacturer's

19 purported failure to abide by it.  *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699 (D.N.J. 2011).

20 The court dismissed the claim on various grounds, including the following:

21

22

23

> At its core, the complaint is an attempt to capitalize on an apparent and somewhat arcane violation of FDA food labeling regulations.  But not every regulatory violation amounts to an act of consumer fraud.  It is simply not plausible that consumers would be aware of FDA regulations regarding "nutrient content" and restrictions on the enhancement of snack foods.

24 *Id*. at 705 n.4.

25    Here too, it is "simply not plausible" that Plaintiff was deceived or injured in any way by

26 the purported violation.  This case, like *Mason*, is in court because an attorney has seized on facts

27 he believes may provide evidence of regulatory noncompliance, and has tried to shoehorn those

28 facts into a statutory claim requiring deception and injury to a consumer.  But neither Plaintiff nor

-18-

his attorney has succeeded in converting the alleged violation into a colorable claim: They have pled no facts showing either reliance or deceit. Further, because Plaintiff never alleges that the can or cans of StarKist tuna he purchased were the *same cans that testing showed* were underfilled, he has failed to plead injury. On this basis too, the Court should dismiss Counts V through IX.

### D.     Plaintiff's Various Warranty Claims (Counts I, II and III) Fail.

Plaintiff seeks to pursue three warranty claims: breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. All three claims are fatally defective as a matter of law. Plaintiff fails to allege any statement by StarKist that could form the basis of any warranty, express or implied, fails to allege privity between StarKist and Plaintiff through which an implied warranty could arise, fails to allege that the can of tuna he bought was unmerchantable, and fails to allege StarKist knew of any out-of-the-ordinary purpose for which the product would be used.

**Express Warranty.** The sole basis of Plaintiff's express warranty claim is the conclusory allegation that StarKist "expressly warranted that StarKist 5 oz. Tuna Products contained an adequate amount of tuna for a 5-ounce can and that StarKist 5 oz. Tuna Products are legal for sale in the United States." Com. ¶ 19. But no such affirmation appears on any of the challenged labels. This in itself mandates dismissal.

California law sets forth three possible bases of an express warranty:

**(a)** Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

**(b)** Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

**(c)** Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Cal. Com. Code § 2313. No statement Plaintiff challenges on the label of the can of tuna he bought fits within these definitions. Plaintiff neither identifies nor challenges any "affirmation of

-19-

1   fact" or "description of goods" actually appearing on the product label; nor does he point to any

2   "sample or model" that could be the basis of an express warranty.  This is fatal.

3        **Implied Warranty: Privity.**  Plaintiff's implied warranty claims fail as well.  "Vertical

4   privity is a prerequisite in California for recovery on a theory of breach of implied warranties of

5   fitness and merchantability."  *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *6 (N.D. Cal.

6   Nov. 19, 2009) (quoting *All West Elecs., Inc. v. M-B-W, Inc.*, 64 Cal.App.4th 717, 724 (1998)).[7]

7        Plaintiff does not (because he cannot) allege that he purchased the tuna directly from

8   StarKist.  Nor does any exception to the privity requirement apply here.  While the privity

9   requirement may be lifted in certain cases in which a manufacturer makes a false or misleading

10   label statement on which a consumer relies, in this case, as noted above, Plaintiff can identify no

11   such statement, and the exception consequently does not apply.[8]  And while the privity

12   requirement may also be lifted in certain cases involving "foodstuffs" alleged to be unfit for

13   human consumption, Plaintiff does not and cannot allege anything of the sort about StarKist's

14   products.  *E.g.*, *Collum v. Pope & Talbot, Inc.*, 135 Cal. App. 2d 653, 656-57 (1955) ("In this

15   state an exception to the requirement of privity has been made in cases involving foodstuffs,

16   where it is held that an implied warranty of fitness for human consumption runs from the

17   manufacturer to the ultimate consumer regardless of privity of contract."); *Johansson v. Cent.*

18   *Garden & Pet Co.*, 804 F.Supp.2d 257, 264-65 (D.N.J. 2011) (exception to privity requirement is

19   limited to cases where plaintiffs ingested and were injured by defective food products) (applying

20   California law).

21

22

23   [7] *Accord Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ("California
     courts have painstakingly established the scope of the privity requirement under California
     Commercial Code section 2314, and a federal court sitting in diversity is not free to create new

24   exceptions to it."); *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005)
     ("Annunziato's breach of implied warranty claim fails because Annunziato did not, and cannot,

25   allege privity with eMachines.  Annunziato purchased his laptop from BestBuy.com, not
     eMachines.").

26

27   [8] Because this privity exception is based on a manufacturer's *affirmative label statement,* it is
     available only in cases of express warranty, and not in cases of implied warranty.  *Hartless v.*
     *Clorox Co.*, 2007 WL 3245260, at *2 (S.D. Cal. Nov. 2, 2007).

28

1        **Merchantability.**  Plaintiff's "merchantability" challenge fails for additional reasons.  A

2  breach of the warranty of merchantability occurs if the product lacks even the most basic degree

3  or fitness for ordinary use.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (citing

4  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).  This implied warranty "provides

5  for a minimum level of quality."  *Birdsong*, 590 F.3d at 958 (quoting *Am. Suzuki Motor Corp. v.*

6  *Super. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995)).  A can of tuna has an ordinary purpose of

7  consumption, and nothing Plaintiff alleges suggests that StarKist Tuna products are unsafe or

8  improper for that use.

9        Plaintiff also attempts to import into his merchantability claims the same two purported

10  warranties on which his express warranty claim depends—that the product is "legal for sale" and

11  that it contains an "adequate amount" of fill, which Plaintiff defines to mean the amount derived

12  from the pressing and weighing procedures set forth in Section 161.190.  But Plaintiff cites no

13  legal basis on which such "warranties" may be implied.  Indeed, the law makes plain that they

14  may not be.  *Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1106 (N.D. Cal. 2012) (court

15  dismisses express and implied warranty claims based on purported breach of a promise

16  concerning the "healthfulness" of defendant's snack products where plaintiff "fails to point to any

17  affirmative statement, whether it be in General Mills's advertising or the Fruit Snacks' packaging,

18  indicating that the Fruit Snacks are healthful").

19        **Fitness for a Particular Purpose.**  Plaintiff's third breach of warranty claim, asserting a

20  breach of implied warranty of fitness for a particular purpose, also fails.  An implied warranty of

21  fitness for a particular purpose arises only when "(1) the purchaser at the time of contracting

22  intends to use the goods for a particular purpose, (2) the manufacturer or seller at the time of

23  contracting has reason to know of this particular purpose, (3) the buyer relies on the manufacturer

24  or seller's skill or judgment to select or furnish goods suitable for the particular purpose, and

25  (4) the manufacturer or seller at the time of contracting has reason to know that the buyer is

26  relying on such skill and judgment."  *Harlan v. Roadtrek Motorhomes, Inc.*, 2009 WL 928309, at

27  *8 (S.D. Cal. Apr. 2, 2009) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985)); *accord*

28  Cal. Com. Code § 2315.

Plaintiff nowhere alleges that he purchased the tuna for any "particular purpose" that differs from the "ordinary purpose" for which tuna is used; nor does he allege that StarKist was aware of such a particular purpose. In fact, Plaintiff asserts that "Defendant marketed, distributed, and/or sold StarKist Tuna with implied warranties that it was fit for its *intended purposes* in that it contained an adequate amount of tuna for a 5-ounce can and that StarKist Tuna are legal for sale in the United States." Com. ¶ 34 (emphasis added). Where a product's intended purpose is nothing beyond the ordinary uses of the product, a claim for breach of the warranty of fitness for a particular purpose fails as a matter of law. *E.g.*, *Harlan*, 2009 WL 928309, at *9 ("A 'particular purpose' under § 1792.1 'differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business . . . .").

### E. Plaintiff Has No Claim For Unjust Enrichment (Count IV).

The better-reasoned majority of state courts and federal district courts in California do not recognize unjust enrichment as a separate cause of action. *Brazil v. Dole Food Co., Inc.*, 2013 WL 1209955, at *18 (N.D. Cal. Mar. 25, 2013) (collecting authorities and dismissing restitution/unjust enrichment claim with prejudice).[9] Here in particular, Plaintiff's claims cannot stand, because they are merely duplicative of his statutory and tort claims. "Restitution is already a remedy under the UCL, so plaintiff's restitution claim is superfluous." *Lanovaz v. Twinings N. Am., Inc.*, 2013 WL 675929, at *7 (N.D. Cal. Feb. 25, 2013) (dismissing restitution claim without leave to amend). Plaintiff's unjust enrichment claim does not properly state an independent cause of action under California law and should be dismissed.

### F. Plaintiff Cannot Pursue Claims With Respect To Products He Did Not Buy.

Plaintiff lacks standing to assert claims relating to StarKist products that he has not purchased. The Complaint includes claims relating to four products: Chunk Light Tuna in

---

[9] *But see, e.g.*, *Jones v. ConAgra Foods, Inc.*, 2012 WL 6569393, at *13 (N.D. Cal. Dec. 17, 2012) (declining to dismiss unjust enrichment claim merely because it is not a "standalone claim"); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, *6-7 (N.D. Cal. June 14, 2012) (allowing claim but clarifying that "to the extent that plaintiffs are ultimately able to prevail under a tort theory, they will be precluded from also recovering under a claim of unjust enrichment").

-22-

Water, Solid White Albacore Tuna in Water, Solid White Albacore Tuna in Vegetable Oil, and Chunk Light Tuna in Vegetable Oil.  But, Plaintiff alleges that he purchased only one of the four: Chunk Light Tuna in Water.  Com. ¶¶ 1-2.  Solid tuna products, significantly, are governed by pressed weight standards that differ from the standards applicable to the product Plaintiff bought. *See* 21 C.F.R. § 161.190(c)(1) (specifying different minimum weights for solid, chunk, flakes, and grated tuna).  Moreover, Plaintiff alleges that the four products purportedly fell short of the governing pressed weight requirements by four different amounts.  Because the claims relating to the three products Plaintiff did not purchase differ significantly from the claims based on the one product he did purchase, Plaintiff lacks standing to pursue and claim based on the three products he did not purchase.  *See Lanovaz*, 2013 WL 675929, at *2 ("[T]here can be no requisite pecuniary injury where plaintiff did not herself purchase the product at issue."); *Hairston v. South Beach Beverage Co., Inc.*, 2012 WL 1893818, at *5 n.5 (C.D. Cal. May 18, 2012) (consumer who purchased certain flavors of defendant's product did not have standing to challenge labels on differently-flavored products); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (consumer who purchased Drumstick ice cream product did not have standing to challenge label on Dibs ice cream products); *Zwart v. Hewlett-Packard Co.*, 2011 WL 767750, at *4-5 (N.D. Cal. Feb. 25, 2011) (dismissing claims based on products plaintiff never bought for failure to show injury, reliance, or causation); *see also Birdsong*, 590 F.3d at 961 (plaintiff must allege "injury in fact").  The Court should dismiss all causes of action to the extent that they purport to assert claims based on label claims of the Solid White Albacore Tuna in Water, Solid White Albacore Tuna in Vegetable Oil, and Chunk Light Tuna in Vegetable Oil products not purchased by Plaintiff.

1

**IV.     CONCLUSION**

2

        For all of the reasons set forth above, the Court should dismiss Plaintiff's claims in their

3

entirety.

4

5

Dated:  April 18, 2013

        HOGAN LOVELLS US LLP
        ECKERT SEAMANS CHERIN & MELLOTT, LLC

6

7

        By:    /s/ Robert B. Hawk
                Robert B. Hawk

8

                Attorneys for Defendant
                STARKIST CO.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28