**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> VS. <br><br> STARKIST CO., <br><br> Defendant. | NO. C 13-00729 YGR |

Oakland, California
Tuesday, July 9, 2013

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        BURSOR & FISHER, P.A.
        1990 N. California Blvd. - Suite 940
        Walnut Creek, California  94596
  BY: **L. TIMOTHY FISHER, ATTORNEY AT LAW**
        **ANNICK M. PERSINGER, ATTORNEY AT LAW**

For Defendant:
        HOGAN LOVELLS US LLP
        525 Uniersity Avenue - 4th Floor
        Palo Alto, California  94301
  BY: **ROBERT B. HAWK, ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:   Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

```
 1   APPEARANCES:  (CONTINUED)

 2   For Defendant:
                            HOGAN LOVELLS US LLP
 3                          8426 316th Place, SE
                            Issaquah, Washington  98027
 4                 BY:      ROBIN E. WECHKIN, ATTORNEY AT LAW

 5                          ECKERT, SEAMANS, CHERIN & MELLOTT LLC
                            600 Grant Street - 44th Floor
 6                          Pittsburgh, Pennsylvania  15219
                   BY:      GREGG D. MICHAEL, ATTORNEY AT LAW
 7                              (via CourtCall)

 8   Also Present:          FRANK POGUE, STARKIST CO.
                                (via CourtCall)
 9
```

| | |
|---|---|
| Tuesday - July 9, 2013 | 3:17 p.m. |

**P-R-O-C-E-E-D-I-N-G-S**

---oOo---

**THE CLERK:** Calling Civil Action 13-0729, Hendricks versus StarKist Company.

Counsel, please come forward and state your appearances.

**MR. FISHER:** Good afternoon, Your Honor. Timothy Fisher for plaintiff Patrick Hendricks. With me is my colleague Annick Persinger. If it's all right with Your Honor, I was going to address the motion to dismiss and Ms. Persinger was going to address the motion to transfer.

**THE COURT:** Okay.

**MR. HAWK:** Good afternoon, Your Honor. Robert Hawk from Hogan Lovells for defendant StarKist. And with me here in the courtroom is my colleague Robin Wechkin from Hogan Lovells. On the phone is my cocounsel from Pittsburgh back in the headquarters of StarKist, Gregg Michael; and then also a representative of the company, Mr. Frank Pogue, is also on the line.

**THE COURT:** Okay. Good afternoon, everyone.

All right. First let's do the motion to transfer, and I really don't want to spend too much time on this.

My inclination is not to transfer; and as I go through each of the various factors that are involved and weigh them, my assessment is, and I believe I have a lot of discretion in

1  this area, is not to transfer.
2      So you can be heard if you'd like.  The chances of
3  changing my mind are pretty low, and you're only going to get a
4  certain amount of time to argue so I don't know if you want to
5  spend a lot of time arguing this point.
6          **MR. HAWK:**  Well, that's pretty daunting, Your Honor,
7  but I will be brief then.
8      On the motion to transfer, you're absolutely correct, and
9  we agree with the Court that it has the discretion to transfer
10 or --
11         **THE COURT:**  And no offense, you know.  I could get rid
12 of another case, and that would be just fine with me, too,
13 given the size of my docket, but I still don't think as I do
14 the analysis that it's appropriate.
15         **MR. HAWK:**  And all that we would say there,
16 Your Honor, we don't think it's a big jurisprudential issue.
17 It is an issue of your discretion.
18     We think that in this particular case there's really no
19 controversy; that the number of witnesses, that if this case
20 goes to trial there is going to have to be a lot more travel
21 and a lot more expense and a lot more inconvenience of
22 witnesses if the case stays here than if it's there.
23         **THE COURT:**  Right, but they're party witnesses; and to
24 do it the other way, then the plaintiff has to travel.  So one
25 side or the other is going to have to travel.

1    **MR. HAWK:** Absolutely true, Your Honor; but in this
2 case, if you want to look at it just cumulatively, if you want
3 to look at a bunch of people having to travel and a bunch of
4 expense versus one person having to travel and that one person
5 is a named plaintiff, a single-named plaintiff, who is seeking
6 to represent a nationwide class.
7    And that's why in class actions, particularly nationwide
8 putative class actions, courts say you just don't weigh -- and
9 the reality is, Your Honor, as Your Honor well understands, you
10 know, this is a class action.  This individual plaintiff is not
11 really at risk of having to bear these costs.
12    Plaintiffs' attorneys make the strategic decisions where
13 to bring these lawsuits, and I guess I'll take your advice and
14 not say much more about it; but you do have the discretion to
15 do it.  It would make absolute sense in terms of, you know,
16 what is the grievous decision, what is the decision that is
17 going to absolutely minimize inconvenience and travel and cost.
18 That would be to transfer it to the Western District where the
19 judge there on average has half the caseload that Your Honor
20 has.
21    **THE COURT:** But I noted that we still seem to get
22 things to trial at about the same rate.
23    **MS. PERSINGER:** If not faster.
24    **THE COURT:** That's because we're fast relatively
25 speaking.

1      **MR. HAWK:**  You're fast, right.  But, you know, if you
2  give them a few more cases, Your Honor.
3      **THE COURT:**  I understand.  I'm trying to get rid of
4  cases, no worries.
5     Any comment?
6      **MS. PERSINGER:**  Yes.  I would just like to respond
7  that this isn't a simple calculation of the number of witnesses
8  there versus the number of witnesses here.  This is an
9  eight-factor test.  We believe that each of the factors weighs
10  against transfer.
11     I feel that Judge Gee's observation from the Central
12  District is directly on point; that given the facts of this
13  case where all of the plaintiff's contacts are in his home
14  district, the implications of StarKist's argument would be that
15  any case with a proposed nationwide class should be transferred
16  to the defendant's headquarters whenever its corporate
17  representatives are material witnesses and outnumber the
18  plaintiffs' witnesses.
19      As stated by Judge Gee, this cannot be the correct
20  result -- this cannot be the correct outcome as a blanket rule
21  and is not the correct outcome in this case.
22      **THE COURT:**  Submitted?
23      **MR. HAWK:**  Submitted, Your Honor.
24      **MS. PERSINGER:**  Submitted.
25      **THE COURT:**  I'm sure you wanted to get more

1    opportunity to argue, but let's get to the meat of the issue
2    here.  And that was not a pun that was intended.
3         All right.  Tuna.  I, frankly, am leaning towards granting
4    the motion to dismiss.  It seems to me that this entire case is
5    based upon -- well, one, I don't see any actual
6    misrepresentations that are alleged; two, some of the causes of
7    action under California common law are just not appropriate in
8    this particular case; and, three, we have some significant
9    issues with respect to preemption.
10        The FDA has made some very clear indications of what is
11   allowed in terms of a minimum standard of fill.  This lawsuit
12   fundamentally seems to me to attempt to enforce those.  That's
13   not my job.  That's the FDA's job.
14             **MR. FISHER:**  Let me address that point right off the
15   bat, Your Honor, because I think preemption is really the key
16   issue as far as what the defendant's raised in their papers.
17        And we start from the standpoint that there's a
18   presumption against preemption particularly in this area of
19   food labeling.  The U.S. Supreme Court has said that that's an
20   area historically within the state's power not the federal
21   power.  So we start out with them, you know, a couple steps
22   behind where we're ahead.
23        Then if we look at the case law, Your Honor, there have
24   been a whole number of cases that have looked at preemption in
25   the context of the FDCA, including three recent cases from this

1  district:  The *Khasin* case that was decided by Judge Davila at
2  the end of last year, the *Chavez* case that was decided by
3  Judge Walker in 2010, and then the *Chacanaca* case that was
4  decided by Judge Seeborg also in 2010 all found no preemption
5  under the FDCA.
6      Now, Your Honor has raised it particularly within the
7  context of this particular regulation of tuna and how tuna is
8  determined, but there's no conflict with what we're trying to
9  do and what the standard --
10         **THE COURT:**  What's the basis for the private right of
11 action here?  What gives you the legal authority to assert a
12 private right of action?
13         **MR. FISHER:**  They are not putting enough tuna in their
14 cans, and the way we --
15         **THE COURT:**  What is the statute?  What is the legal
16 basis for it?
17         **MR. FISHER:**  California's consumer protection laws and
18 the other statutes that we cite.  We have warranty claims that
19 we also assert.
20         **THE COURT:**  What is the warranty?
21         **MR. FISHER:**  That there is --
22         **THE COURT:**  Where is the warranty?
23         **MR. FISHER:**  That there's adequate amount of tuna on
24 there.  They say it's a 5-ounce --
25         **THE COURT:**  What does "adequate" mean?  See, that's

1  the problem I have with this, is that you're claiming adequacy.
2  The FDA goes through an incredibly complicated process by which
3  it determines what the fill is and you expect me to give it to
4  a jury to say what's adequate?
5          **MR. FISHER:**  The FDA has told us.  They've given us
6  the yardstick; right?  But --
7          **THE COURT:**  It's not a yardstick.  They've given
8  precise measures to the hundredth decimal.
9          **MR. FISHER:**  Right.  They've told us exactly what
10 should be in there; but beyond that, they've allowed state
11 consumer protection law claims to proceed.  That's what
12 preemption is, is that we're allowed -- that doesn't
13 interfere -- we are not interfering.  We are in harmony with
14 what the FDA is doing.  There is no conflict between what we're
15 trying to enforce and what the FDA is doing.
16         **THE COURT:**  Well, what if a jury says -- the FDA says
17 it's 2.84 percent -- or 2.84 ounces of pressed cake weight in a
18 5-ounce StarKist jar or can with water.  So let's say, as you
19 have here, that, you know -- well, let's take the vegetable oil
20 one.  That's closer.  It's 2.81 ounces instead of 2.84 ounces,
21 which is 1 percent less.  What's a jury supposed to do with
22 that?
23         **MR. FISHER:**  A jury needs to make its factual
24 determination about whether that's --
25         **THE COURT:**  How can it?  The FDA has already said what

1  it is --
2         **MR. FISHER:**  And then --
3         **THE COURT:**  -- and you're asking -- how can you avoid
4  the enforcement of those minimally prescribed weights?  Isn't
5  it the FDA's job to enforce those?
6         **MR. FISHER:**  And the defendants have indicated that
7  the FDA has not been enforcing this.
8         **THE COURT:**  That's not my question.  Isn't it their
9  job to enforce them?  Have you asked them to enforce them?  Has
10 there been any attempt -- is there any suggestion that this
11 Court should step into the role of the FDA because its
12 abdicated its duty?
13        **MR. FISHER:**  What has been said is that food labeling
14 is traditionally within the boundaries of the state's powers,
15 and that state consumer protection law claims can be asserted
16 on cases like this.
17        **THE COURT:**  Okay.  Very generally, yes.
18    All right, we get food cases here all the time.  This is a
19 very specific issue; and, so, I need you to be more specific
20 because giving me broad generalities aren't helpful.
21        **MR. FISHER:**  There are no cases, and I don't think
22 anybody has, either on my side or theirs, has said that the FDA
23 has said this.
24    They made a petition to the FDA two years ago to change
25 the standard, and nothing has happened.  The FDA has not acted.

1  The FDA has been hands off in this area, I believe, for 20
2  years.
3      The standard was set 50 years ago.  There has not been any
4  change in this area.  The FDA is not doing anything.  They are
5  effectively leaving it to us to do.
6          **THE COURT:**  That's not in the Complaint.
7          **MR. FISHER:**  If Your Honor would like us to assert
8  that in the Complaint, I'm happy to amend the Complaint to
9  assert that, as well as any other deficiencies the Court may
10 have with our Complaint; but there's nothing that says that
11 state law consumer protection claims cannot be asserted on
12 something like this.  There's no case that says that.
13         **MR. HAWK:**  Your Honor, just to address some of
14 Your Honor's questions and some of the comments by counsel,
15 first of all, with the presumption against preemption, you
16 know, this is not a traditional exercise of state police power
17 over labeling.  Indeed, there's no mislabeling here at all.
18 There's no allegation of -- I mean, there's an allegation, an
19 unsupported conclusory allegation, of an affirmative
20 mislabeling; but when plaintiffs are challenged on it, they can
21 point to nothing.
22         **THE COURT:**  What is the mislabeling specifically?
23         **MR. FISHER:**  It says that there's 5 ounces on the
24 label.  It says 5.0 ounces.  That means something.
25     We gave Your Honor the example --

1     **THE COURT:** Hold on. It says 5 ounces of tuna in
2  water.
3     **MR. FISHER:** It does not say that. It says
4  5.0 ounces, and that means something. The FDA has said that
5  that means there needs to be at least 2.84 ounces of tuna in
6  there.
7     **THE COURT:** Okay. Now you're going back to the FDA.
8    Go ahead. Finish up.
9     **MR. HAWK:** No. What the can says, Your Honor, is "Net
10 Weight 5 ounces"; and there's absolutely no challenge, there's
11 no allegation that the can of tuna that plaintiff bought, or
12 that anyone else bought, did not have a net weight of 5 ounces.
13   If that was the allegation here, maybe we would have a
14 case then, but that is not the allegation here and there's no
15 Rule 11 basis to make that allegation.
16   What the can also says in the nutrition facts section, it
17 says, if I can read this, "Serving size drained weight," and it
18 gives a drained weight, which is the international standard.
19   And, again, there is absolutely no challenge to that in
20 plaintiffs' Complaint. There is labeling and there are
21 representations, there are statements on the can made about how
22 much tuna is in there drained weight and made about the net
23 weight of all the contents in the can, and there is no
24 allegation that those statements are misleading or false in any
25 way.

1    So with regard to the presumption against preemption, I
2 think in this case it absolutely has no meaning.  Courts find
3 preemption.  In fact, this is a brand.  The preemption argument
4 that we made here is that it's under *Buckman*, the Supreme
5 Court's decision in *Buckman*, and as recently interpreted and
6 applied by the Ninth Circuit in *Perez v. Nidek*.  This is a
7 brand of implied preemption.
8    And the particular cases that counsel cited earlier, the
9 *Khasin* case, the *Chavez* case, the *Chacanaca* case, if my
10 recollection is correct, I think it is, those were cases about
11 express preemption, and that is not the basis of our preemption
12 argument, of StarKist's preemption argument here, Your Honor.
13    The basis of the argument is implied *Buckman*/*Nidek*
14 preemption; and the basis of that is, is the plaintiffs' claim
15 would not exist but for the FDCA or an FDCA regulation.  If
16 that is the entire basis of their claim, then it is going to be
17 impliedly preempted.
18    And both *Buckman* and *Nidek* cite Section 337(a) of the
19 FDCA, which says only the FDA has the authority to enforce the
20 FDCA and its regulations.
21    If there was some sort of traditional police power,
22 exercise of common law that was not grounded and did not depend
23 on this very esoteric, arcane, and archaic federal regulation
24 that was, you know, written in the 1950s, then plaintiffs might
25 have a claim here, but that is not what is going on.

1    Plaintiffs allege without any foundation, they allege
2 something that is clearly not true, that there is some sort of
3 mislabeling, there is some sort of untrue or misleading
4 statement on the label of these cans, and there simply is not.
5    So I think, you know, most fundamentally that is what
6 separates this case from so many of the other food cases that
7 have come through this court and the other courts in the
8 Northern District where plaintiffs want a free pass based on
9 the rejection of preemption arguments or based on the rejection
10 of primary jurisdiction arguments in those other cases; but in
11 those other cases there was at least an allegation of
12 affirmative -- some affirmative statement, some statement that
13 was misleading.
14    It did not depend on, like this case does, simply an
15 omission.  I mean, this is, if anything, an omission case,
16 Your Honor.  Plaintiffs don't want to characterize it like
17 that; but what they're really saying is that they're trying to
18 fault StarKist for not telling the public that we are -- you
19 know, we're telling you what's in the can, but we're not
20 telling you about our FDA status.  We're not telling you that
21 under this 1950s regulation for standard of fill, that, you
22 know, we're not telling you whether or not we meet that
23 standard.  And plaintiffs are -- their case is arguing that
24 StarKist has to do that, but that is a step too far.
25    This is a very different case than the other food cases

1  before Your Honor and that have been argued in these courts,
2  and this is a step too far.  This food case should be -- is
3  preempted by federal law, and Your Honor's view that it's not
4  your job to enforce this is absolutely right.
5       Plaintiffs want to say that the FDA has just turned it
6  over to them to enforce it.  That's not right at all.  There is
7  a pending -- an open docket before the FDA to reform this
8  standard of fill.  It's been pending since 2011, but that is
9  not the way that the FDA does things and, you know, they have
10 their own time schedule.  They don't have the same imperatives
11 that Your Honor does to decide things.
12      And this issue is before them.  They haven't enforced it
13 for 20 years, and there's a reason for that; because the FDA,
14 if you look at a couple of the documents that are attached to
15 our request for judicial notice, has criticized this standard
16 itself and has not enforced the standard and is now -- in fact,
17 there was a comment in I believe it was February of 2013 on
18 this pending -- this open docket to reform this standard.
19      And just because a year and a half has gone by since that
20 petition was filed is absolutely no indication that it's been
21 abandoned by the FDA or the FDA is not going to act on it.
22      There is an example, and I have the citation here,
23 Your Honor, there is -- there was -- four years ago there was
24 the milk producers filed a citizens petition to change the
25 standard of identity for milk.  The FDA let that sit there for

four years, and now just recently they've asked the public to comment on that and, so, they're moving forward on that.

I mean, I don't know what the FDA is going to do with this, but it's not dead. It's out there and it should be left for the FDA to decide.

**THE COURT:** Mr. Fisher?

**MR. FISHER:** Your Honor, if the FDA wants to do something, they can do it and then we can come back here to Your Honor and deal with that at that time; but I really want to focus on the preemption argument because I think that's where the Court's primary concerns are.

Let me read from the *Khasin* case which Judge Davila decided just at the end of last year where he said: (reading)

> "State consumer protection laws are preempted if they seek to impose requirements that contravene the requirements set forth in federal law. There is no attempt here..." and he was citing the *Wyeth* case from the U.S. Supreme Court in 2009. "There is no attempt here to contravene the requirements set forth" --

**THE COURT:** How do you distinguish *Perez*? I mean, I think Judge Davila is a great judge. He's a friend of mine. He's down the street from me, but he's not on the Ninth Circuit, and the Ninth Circuit suggests that the implied preemption concept should apply here. How do you distinguish *Perez*?

1           **MR. FISHER:**  I think *Perez* and *Buckman*, the Supreme
2    Court case the defendants rely on, are completely different
3    animals.  I think if you look at our cases and their cases, you
4    know, you're going to do the old *Sesame Street*, "Which one of
5    these is not like the other?"  Their cases aren't anything like
6    our cases.
7           In *Perez* that was a case about the use of a laser for
8    Lasik eye treatments that had not been approved by the FDA; and
9    the Court said that under *Buckman*, that that's for the FDA to
10   decide what to do when there hasn't been an approval like that.
11   That's an area that the FDA was actively involved in where the
12   FDA was doing something about -- they had a petition pending in
13   front of them for approval of that type of laser.
14          *Buckman* is the same sort of thing.  In *Buckman*, it was an
15   issue of whether or not a certain kind of bone screw had been
16   approved or not and whether there had been fraudulent
17   representations made to the FDA by the defendant that obtained
18   the approval for those bone screws; but that's nothing like
19   what we're talking about here where we're talking about one
20   requirement and otherwise our claims all relate to state
21   consumer protection laws.
22          And what we're trying to do is simply to enforce those and
23   not -- and we're completely consistent with what the standard
24   is.  We're saying, "This is the standard.  They haven't met
25   it."

1      It's really quite a simple case, and a jury would have no
2  trouble handling this.  You bring an expert in to say how the
3  test was done, and they would understand that; and either they
4  met the standard or they didn't meet the standard.
5          **THE COURT:**  But your argument, and it sounds like
6  because based upon everything you said, is fundamentally tied
7  to the FDA standards.
8          **MR. FISHER:**  Your Honor, if there was no FDA standard
9  at all, we could assert claims in this case.  Under the UCL --
10         **THE COURT:**  Go ahead.
11         **MR. FISHER:**  -- if there's not enough tuna, so let's
12 say they sold empty cans of tuna that had nothing but water in
13 them, we could bring a consumer protection law claim.
14         **THE COURT:**  I wouldn't disagree with that, but that's
15 not this case; is it?
16         **MR. FISHER:**  It's not, but we do have a case where
17 they are not putting enough tuna in there.  That's what we
18 claim.  We have a standard here which makes our case easier.
19         **THE COURT:**  Because you want me to enforce the
20 standard.
21         **MR. FISHER:**  We want to enforce the standards.  No
22 question that the standard applies here, Your Honor, but we are
23 consistent with the standard.
24         **THE COURT:**  But isn't that fundamentally what you are
25 asking me to do?  You're saying, "There's a standard.  We want

```
 1  to prove they've not met the standard and we want you to
 2  enforce that standard."
 3           MR. FISHER:  And there's absolutely nothing --
 4           THE COURT:  Yes or no, is that what you want me to do?
 5           MR. FISHER:  Yes, Your Honor, and there's nothing
 6  wrong with that; and as long as we are not doing something that
 7  is inconsistent or in conflict with the FDA, there's no
 8  preemption.
 9       And I think if you look at the cases that we've cited,
10  these three recent cases from the Northern District, as well as
11  all other cases we've cited where the courts have held no FDCA
12  preemption, that's the holding.  If you're consistent with the
13  FDCA, consumer protection laws claims can proceed.
14       And if you look at the *Buckman* and *Perez* cases, they're
15  totally different from our cases, Your Honor.
16           THE COURT:  Submitted?
17           MR. FISHER:  Submitted, Your Honor.
18           MR. HAWK:  Submitted, Your Honor.
19           THE COURT:  Okay.  Thank you.
20               (Proceedings adjourned at 3:41 p.m.)
21                          – oOo –
22
23
24
25
```

```
 1
 2                     **CERTIFICATE OF REPORTER**
 3           I certify that the foregoing is a correct transcript
 4   from the record of proceedings in the above-entitled matter.
 5
 6   DATE:   Monday, July 15, 2013
 7
 8
 9
10   _____
11          Jo Ann Bryce, CSR No. 3321, RMR, CRR
                    U.S. Court Reporter
12
```