1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)

3
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

4
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5
E-Mail: ltfisher@bursor.com

6
       swestcot@bursor.com
       apersinger@bursor.com

7

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

8
888 Seventh Avenue
New York, NY  10019

9
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163

10
E-Mail: scott@bursor.com

11
*Attorneys for Plaintiff*

12

13
UNITED STATES DISTRICT COURT

14
NORTHERN DISTRICT OF CALIFORNIA

15

16
PATRICK HENDRICKS, individually and on
behalf of all others similarly situated,

17
          Plaintiff,

18
   v.

19
STARKIST CO.,

20
          Defendant.

Case No. 13-CV-00729

**NOTICE OF SUBMISSION OF
SUPPLEMENTAL AUTHORITY IN
SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS CLASS ACTION
COMPLAINT**

Hon. Yvonne Gonzalez Rogers

21

22

23

24

25

26

27

28

Plaintiff submits the following supplemental authorities, related to issues of preemption and primary jurisdiction, that were decided after Defendant's pending motion to dismiss was fully briefed:

1. Attached as **Exhibit A** please find a true and correct copy of *Ivie v. Kraft Foods Global, Inc.*, No. 12-CV-02554, 2013 WL 3296616 (N.D. Cal. June 28, 2013) and

2. Attached as **Exhibit B** please find a true and correct copy of *Samet v. Procter & Gamble Co.*, No. 12-CV-01891-PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013).

Since these orders were entered after the pending motion was fully briefed, Plaintiff respectfully requests that the Court consider the above authorities in support of Plaintiff's opposition to Defendant's motion to dismiss.

Dated:  July 26, 2013                    Respectfully Submitted,

**BURSOR & FISHER, P.A.**


By:    */s/ Annick M. Persinger*
                     Annick M. Persinger

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 482-1515
Facsimile:   (925) 407-2700
E-Mail: ltfisher@bursor.com
               swestcot@bursor.com
               apersinger@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SUSAN IVIE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

KRAFT FOODS GLOBAL, INC., CADBURY ADAMS USA LLC, and BACK TO NATURE FOOD COMPANY,

Defendants.

Case No. C-12-02554-RMW

**ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**[Re Docket No. 56]**

Plaintiff alleges that defendants Kraft Foods Global, Inc., Cadbury Adams USA LLC, and Back to Nature Food Company (collectively "defendants") violate California's unfair completion law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL") (counts 1-3), fair advertising law, *id.* § 17500 *et seq.* ("FAL") (counts 4-5), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") (count 6). Second Amended Compl. ("SAC"), Dkt. No. 53. The laws alleged to be violated as a predicate for the "unlawful" prong of plaintiff's UCL claim include provisions of the state Sherman Food, Drug, and Cosmetic Law, California Health & Safety Code § 109875 *et seq.* ("Sherman Laws"). On February 25, 2013 the court dismissed all of plaintiff's claims

based on restitution, the Song-Beverly Consumer Warranty Act, and the Magnuson–Moss Warranty Act with prejudice, and some of plaintiff's UCL, FAL, and CLRA claims with leave to amend. Dkt. No. 49. The SAC (1) amends the previously dismissed UCL, FAL, and CLRA claims based on allegedly unlawful or deceptive labels and (2) adds a host of new claims based on defendants' unpurchased products that bear the same or similar labels as those that plaintiff purchased. Defendants move to dismiss the amended claims, the new claims based on products that plaintiff did not herself purchase, and plaintiff's claims based on certain statements plaintiff allegedly viewed on defendants' website only. Having considered the arguments of the parties, and for the reasons set forth below, this court GRANTS-IN-PART and DENIES-IN-PART defendants' motion to dismiss.

# I. BACKGROUND

## A. Statutory and Regulatory Framework

In 1938, Congress enacted the Federal Food, Drug, and Cosmetic Act ("FDCA"), codified at 21 U.S.C. § 301 *et seq.*. "The [FDCA] gives the [United States Food and Drug Administration ("FDA")] the responsibility to protect the public health by ensuring that 'foods are safe, wholesome, sanitary, and properly labeled,' 21 U.S.C. § 393(b)(2)(A), and the FDA has promulgated regulations pursuant to this authority, *see, e.g.*, 21 C.F.R. § 101.1 *et seq.*" *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009). "There is no private right of action under the FDCA." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986)). Rather, "the FDA enforces the FDCA and its regulations through administrative proceedings." *Id.*

In 1990, Congress enacted the Nutrition Labeling and Education Act ("NLEA"), codified in scattered sections of 21 U.S.C., amending the FDCA. "The NLEA aimed to 'clarify and . . . strengthen the [FDA's] authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods.'" *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1116 (N.D. Cal. 2010) (quoting H.R. Rep. No. 101-538, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3336, 3337). For example, 21 U.S.C. § 343 provides that a "food shall be deemed misbranded" if, *inter alia*, it contains a "false or misleading label,"

§ 343(a); if information required on the label is "not prominently placed" on the label in comparison with other words, § 343(f); if it "bears or contains any artificial flavoring, artificial coloring, or chemical preservative" without "bear[ing] labeling stating that fact," § 343(k); if it does not properly identify nutrition information, for example, serving size, number of servings, calories, and certain nutrients, § 343(q); or if it contains improper "nutrition levels and health related claims," § 343(r) ("nutrient content claims").

The NLEA also "amended the FDCA by adding [21 U.S.C. § 343-1(a),] an express preemption provision." *Lockwood*, 597 F. Supp. 2d at 1030. Section 343-1(a) provides in relevant part that:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce--
> . . .
> (3) any requirement for the labeling of food of the type required by section . . . 343(d) [misleading container], 343(f) [prominence of information on label], 343(h) [representations as to standards of quality and fill of container], . . . or 343(k) [artificial flavoring, artificial coloring, or chemical preservatives] of this title *that is not identical* to the requirement of such section
> . . .
> (4) any requirement for nutrition labeling of food *that is not identical* to the requirement of section 343(q) [nutrition information] of this title
> . . .
> (5) any requirement respecting any claim of the type described in section 343(r)(1) [nutrient content claims] of this title, made in the label or labeling of food *that is not identical* to the requirement of section 343(r) of this title . . . .

21 U.S.C. § 343-1(a)(3)-(5) (emphases added). The express preemption provisions "reach[] beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules." *Chacanaca*, 752 F. Supp. 2d at 1118 (citing *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 443 (2005)). The NLEA, however, does not "preempt any provision of State law" not "expressly preempted under [21 U.S.C. § 343-1(a)]." *Id.* (quoting Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364).

**B. California State Laws**

California's Sherman Laws adopt the federal labeling requirements as the food labeling requirements of the state. Cal. Health & Safety Code § 110100 ("All food labeling regulations

and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.").  In addition to this blanket provision, the Sherman Laws specifically adopt certain provisions that mirror or incorporate by reference the FDCA and NLEA food labeling and packing requirements, including the following provisions that, *inter alia*, form the basis for the "unlawful" prong of plaintiff's UCL claims:

> Any food is misbranded if its labeling is false or misleading in any particular, *id.* § 110660;

> Any food is *misbranded if its labeling does not conform with the requirements for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the federal act and the regulations adopted pursuant thereto*, *id.* § 110665 (emphasis added);

> Any food is *misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto*, *id.* § 110670 (emphasis added);

> Any food is misbranded if any word, statement, or other information required pursuant to this part to appear on the label or labeling is not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use, *id.* § 110705;

> Any food is misbranded if it purports to be, or is represented, for special dietary uses . . . and its label does not bear information concerning any vitamin or mineral content, or other dietary property as the department prescribes, by regulation, as necessary to fully inform purchasers as to the food's value for that use, *id.* § 110735; and

> Any food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact. Exemptions may be established by the department, *id.* § 110740.

See SAC ¶¶ 49, 187-208.

## C.  The Products and Labels at Issue on the Second Motion to Dismiss

The labels primarily at issue in defendants' second motion to dismiss are: (1) the "natural lemon [lemondade] flavor" claims on the Crystal Light products; and (2) the nutrient content claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix; and (3) the

1    fat-related nutrient content claims on Kraft's Mexican Style Four Cheese Blend.  The issue is

2    whether plaintiff has cured the pleading to sufficiently allege a violation of the applicable FDA

3    regulations that would render these labels unlawful and misleading to a reasonable consumer.

4          Plaintiff also raises a host of new claims with respect to "essentially identical" or "similar"

5    packaging and labels on products allegedly purchased by other class members, including:

6          (1) all Trident sugarless gum flavors ("essentially identical"), SAC ¶ 224;

7          (2) other lines of Trident gum ("similar"), *id.*;

8          (3) all Dentyne Ice and Dentyne Fire sugarless gum flavors ("essentially identical"), *id.*

9    ¶ 225;

10          (4) all varieties of defendants' Back to Nature cookies, graham crackers, and granola with

11   the "natural" or "evaporated cane juice" claims ("similar"), *id.* ¶¶ 226-27;

12          (5) all original Capri Sun flavors (all "share a uniform size and shape [and] on casual

13   inspection, the only obvious difference between them is their flavor, and all flavors bear the same

14   challenged label"), *id.* ¶ 228;

15          (6) all Capri-Sun Sunrise flavors ("essentially the same" packaging as the original Capri-

16   Sun flavors and "the same challenged label"), *id.*;

17          (7) all Capri-Sun Roarn' Waters flavors ("substantially similar" packaging and challenged

18   label), *id.*;

19          (8) all varieties of Planters Nut-trition line ("while the nutrient content claims may vary,

20   all make the prominent and explicit 'healthy' claims" without the required disclosure statement on

21   the front panel), *id*. ¶ 229;

22          (9) all Country Time lemonade products ("similar packages" and the "same label"), *id.* ¶

23   230;

24          (10) all Stovetop Stuffing varieties ("similar packaging" and the same slack fill), *id.* ¶ 231;

25          (11) all Jell-O Sugar Free flavors ("similar packaging" and the same slack fill), *id.* ¶ 232;

26          (12) all Crystal Light products bearing the "natural and other natural flavor labels" (all

27   "share a uniform size and shape [and] on casual inspection, the only obvious difference between

28   them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 233;

(13) all Kraft cheese varieties bearing the "natural cheese" label ("similar packaging"), *id.* ¶ 234;

(14) all varieties of defendants' Back to Nature Cookies ("the only obvious difference between them is their flavor, and all flavors bear the same challenged label"), *id.* ¶ 235.

Finally, there is an issue whether claims based on statements plaintiff allegedly saw only on defendants' website are pled with sufficient particularity.

## II. ANALYSIS

### A. Legal Standard

"After the pleadings are closed[,] . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When considering a motion for judgment on the pleadings, the court takes all factual allegations in the complaint as true and construes them in a light most favorable to the plaintiff. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 783 (9th Cir. 2012). To survive a motion to dismiss for failure to state a claim, the facts pled need only give rise to "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "However, this principle is innapplicable to legal conclusions; 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are not taken as true." *Delacruz v. Cytosport, Inc.*, No 11-3532, 2012 WL 2563857, at *5 (N.D. Cal. June 28, 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Judicial Notice

The court takes judicial notice of exhibits 1-6, filed by defendants in support of this motion. Dkt. No. 57. Exhibits 1-6 depict the packaging of the products plaintiff challenged in the SAC. *See Bronson v. Johnson & Johnson, Inc.*, No. 12-4104, 2013 WL 1629191, at *1 n.1 (N.D. Cal. Apr. 16, 2013) (explaining that judicial notice of the food product packaging relied upon in the complaint is appropriate and does not convert a motion to dismiss into a motion for summary judgment).

Plaintiff asks the court to take judicial notice of three public documents in other cases that demonstrate the FDA's position on the issue of whether the FDCA preempts a private action to enforce state requirements that are identical to the FDCA. Dkt. No. 60. The court need not take

1   judicial notice of these documents but, to the extent the court finds them helpful or persuasive, the

2   court will consider them as it would consider any other published authority.  *See Feezor v. Excel*

3   *Stockton, LLC.*, No. 12-0156, 2013 WL 2485623, at *3 (E.D. Cal. June 10, 2013) ("As these

4   materials are not themselves facts, they are not subject to judicial notice.").

5         **C.  Plaintiff's Amended UCL Claims Based on "Unlawful" Labels**

6         Defendants move to dismiss the amended claims on the grounds that: (1) they are still

7   expressly preempted by 21 U.S.C. § 343-1(a) because the product labels comply with FDA

8   regulations; (2) they are impliedly preempted because they are based solely on alleged violations

9   of the Federal Food, Drug, and Cosmetic Act ("FDCA") and conflict with the FDCA's

10  enforcement scheme; (3) the FDA has primary jurisdiction over the claims because the FDA can

11  better determine the technical issues of font size and placement; and (4) the labels are unlikely to

12  deceive a reasonable consumer, and therefore plaintiff has no standing.  Defendants also ask the

13  court to dismiss the new claims based on products that plaintiff did not herself purchase.  Finally,

14  defendants ask the court to dismiss plaintiff's claims based on certain statements plaintiff

15  allegedly viewed on defendants' website only.

16              **1.**       **Express preemption**

17        Defendants argue that plaintiff's amended UCL claims are preempted under 21 U.S.C.

18  § 343-1, the FDCA's express preemption provision.  According to defendants, because these food

19  labels at issue are in compliance or, at least in substantial compliance, with federal law, a

20  judgment in plaintiff's favor would impose different or additional requirements than those of the

21  FDCA and NLEA, and thus the claims are expressly preempted.  Plaintiff counters that these

22  labels actually violate existing FDA policies, and thus, plaintiff seeks to impose nothing more

23  than what the FDA already requires.

24           **(a)**     **"Natural lemon [lemonade] flavor" claims on the purchased**
25                      **Crystal Light products**

26        Plaintiff first claims that the purchased Crystal Light products contain artificial flavors

27  which "simulate, resemble, or reinforce the characterizing flavor, including sodium citrate and

28  potassium citrate."  SAC ¶ 66.  Therefore, plaintiff argues, the product is not eligible to bear the

1 | "natural flavors" label under 21 C.F.R. § 101.22(i)(2) ("[I]f the food contains any artificial flavor

2 | which simulates, resembles or reinforces the characterizing flavor . . . the name of the

3 | characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored.'").

4 | Neither party disputes the fact that the purchased Crystal Light products do, in fact, contain a

5 | natural lemon flavor within the meaning of 21 C.F.R. § 101.22(a)(3). The issue then, is whether

6 | the product contains *additional* artificial flavors that simulate, resemble, or reinforce the natural

7 | lemon flavor. The court concludes that the product does not contain any such additional artificial

8 | flavors.

9 |      In the SAC, plaintiff only points to two specific ingredients which she alleges are

10 | "artificial" flavors: potassium citrate and sodium citrate. SAC ¶ 66. While these substances may

11 | be artificial *ingredients*, nothing in the FDA regulations suggests that these ingredients are

12 | *flavors*, artificial or otherwise. Potassium citrate is listed by the FDA as being used in the

13 | pasteurization of certain cheese products (as emulsifying agents), *see* 21 C.F.R. §§ 133.169,

14 | 133.171, 133.179, and sodium citrate is described by the regulations as an artificial sweetener in

15 | jams and preserves, *see* 21 C.F.R. §§ 150.161. Neither product, however, is included in the

16 | FDA's list of artificial flavors. *See* 21 C.F.R. § 172.515(b), 182.60; *see also Viggiano v. Hansen*

17 | *Natural Corp.*, No. 12-10747, 2013 WL 2005430, at *7 (C.D. Cal. May 13, 2013) (finding that

18 | sucralose was not a flavor when FDA regulations listed it only as a sweetener and did not list it as

19 | an artificial flavor). A bare, conclusory assertion that these two ingredients "simulate[],

20 | resemble[], or reinforce[] the characterizing [lemon] flavor," without any basis for such a

21 | conclusion in the FDA regulations or otherwise, is insufficient to state a claim that these labels

22 | violate 21 C.F.R. § 101.22(i)(2). *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and

23 | conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a

24 | complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

25 | (internal quotation omitted)). Since the Crystal Light products refer specifically to the natural

26 |

27 |

28 |

1    *lemon flavor*, rather than natural ingredients generally, the fact that the product contains some

2    allegedly unnatural substances like potassium citrate and sodium citrate does not render the label

3    false or misleading under FDA guidelines.[1]  *See, e.g.*, *Viggiano*, 2013 WL 2005430 at *7

4    ("Hansen's soda can refer specifically to natural *flavors* . . . the fact that [some ingredients] are

5    allegedly unnatural does not render Hansen's 'all natural flavors' label false or misleading under

6    FDA guidelines.").  The court also concludes that the "natural lemon [lemonade] flavor" claims

7    are in compliance with FDA regulations concerning font size and placement because the word

8    "flavor" appears to be printed in at least 1/2 the font size of the phrase "natural lemon

9    [lemonade]."  *See* 21 C.F.R. § 101.22(i)(1)(iii).  Because the Crystal Light labels are therefore

10   wholly in compliance with FDA regulations, they are expressly preempted by the FDCA.

11          Allowing plaintiff's state-law claim to proceed would mean reading California's Sherman

12   Laws to impose an additional or different regulatory requirement on defendants' product, in

13   violation of the FDCA's express preemption provision.  *See Kanter v. Warner-Lambert Co.*, 99

14   Cal. App. 4th 780, 795 (2002) ("[W]hen a state-law claim, however couched, would effectively

15   require a manufacturer to include additional or different information on a federally approved

16   label, it is preempted."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121-23 (N.D.

17   Cal. 2010) (finding express preemption of UCL and other state-law claims that sought to impose

18   labeling requirements that were not identical to FDA regulations regarding the use of the terms

19   "0g Trans Fat" and "good source" of calcium and fiber).  Thus, plaintiff's claims against the

20   purchased Crystal Light products are expressly preempted.  Because the defendants were unable

21   to cure the claims, and any further attempts would be futile, this dismissal is with prejudice.

22

23

24   _____

25   [1] The court is not persuaded that the "natural lemon [lemonade]" label can be viewed in isolation
     of the word flavor immediately below, which is in compliance with the FDA regulation pertaining
26   to "natural flavor" claims.  The court rejects plaintiff's attempt to characterize these claims as "all
27   natural" claims in isolation of the flavor claims.

28

1

**(b)** **Nutrient content claims "good source" and "wholesome" on Planter's Nut-trition Wholesome Nut Mix**

2

3        Plaintiff next alleges that defendants' nut mix product is misbranded because the

4   disclosure statement concerning the nutrient content claims ("good source of 5 vitamins and

5   minerals" and "wholesome") does not comply with FDA regulations concerning typeface and

6   placement. SAC ¶ 133. While the disclosure is indeed present on the Nutrition Facts panel on

7   the *back* of the product, it does not appear adjacent to the nutrient content claims placed on the

8   *front* of the label, and is thus in technical violation of 21 C.F.R. § 101.13(4)(ii) ("[T]he disclosure

9   statement shall be immediately adjacent to the nutrient content claim and may have no

10  intervening material . . . . If the nutrient content claim appears on more than one panel of the

11  label, the disclosure statement shall be adjacent to the claim on each panel."). In addition to

12  violating the FDA's placement requirement, the Ninth Circuit has also held that "reasonable

13  consumers" would not necessarily look beyond the front of the packaging to discover the requisite

14  disclosure statement. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)

15  ("[W]e disagree . . . that reasonable consumers should be asked to look beyond misleading

16  representations on the front of the box to discover the truth."). Thus, the disclosure statement is

17  potentially misleading based both on the FDA's "objective criteria," *see Delacruz*, 2012 WL

18  2563857, at *18 ("The FDA regulations may lend objective criteria by which to determine

19  whether certain words and phrases used on the labels are misleading."), and under the reasoning

20  in *Williams*.

21        Courts have found that where plaintiffs are only seeking to impose state law requirements

22  that are *identical* to federal regulations, there is no express preemption under the FDCA. *See,*

23  *e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, No. 12-1586, 2013 WL 1320468, at *7 (N.D. Cal. Apr. 1,

24  2013); *Brazil v. Dole Food Co.*, No. 12-01831, 2013 WL 1209955, at *4 (N.D. Cal. Mar. 25,

25  2013); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-02646, 2013 WL 675929, at *3 (N.D. Cal. Feb.

26  25, 2013); *Kosta v. Del Monte Corp.*, 12-01722, 2013 WL 2147413, at *7 (N.D. Cal. May 15,

27  2013). Since California's Sherman Laws fully adopt federal food labeling law, allowing

28  plaintiff's state law UCL claims to proceed based on the "unlawfulness" of the nut mix label

1    imposes no other requirement than what FDA regulations already require.  Whether or not

2    defendants' label is also *misleading* for the purposes of the UCL is another issue discussed later in

3    this order, but for the purposes of preemption, plaintiff's claim is not expressly preempted and

4    cannot be dismissed on that basis.

5                    **(c)      Fat-related nutrient content claims on Kraft's Mexican Style
                               Four Cheese Blend**

6

7            The same analysis applies to the fat-related nutrient content claims on defendants' cheese

8    product.  Plaintiff has cured the pleadings and now sufficiently alleges that defendants' cheese

9    product is in technical violation of FDA regulations concerning the size and placement of the

10   requisite disclosure statement.  SAC ¶ 134; *see* 21 C.F.R. § 101.13(h)(4)(i).  While the label does

11   bear the requisite disclosure statement, it is not immediately adjacent to the claim at the top of the

12   label, and is arguably not in "bold or easily legible typeface or print" as required by the

13   regulation.  The fact that this label does not comply with FDA regulations precludes express

14   preemption because, as explained, allowing plaintiff's claim to proceed imposes no other

15   requirements than what the FDA and applicable state Sherman Laws already require.  Therefore,

16   plaintiff's claim regarding the fat-related nutrient content claim on the cheese product cannot be

17   dismissed on the basis of express preemption.

18           **2.       Implied Preemption**

19           Defendants also argue that plaintiff's claims are impliedly preempted because they are

20   based solely on alleged violations of the FDCA, and conflict with the FDCA's enforcement

21   scheme, citing the Ninth Circuit's recent decision in *Perez v. Nidek*, 711 F.3d 1109 (9th Cir.

22   2013).  Defendants argue that, under *Perez*, it is the FDA, not private plaintiffs, that must be

23   responsible for enforcing FDA regulations, and that plaintiff's claims therefore do not fit through

24   the "narrow gap" through which a state law claim must squeeze to avoid implied preemption.

25   Reply 9, Dkt. No. 63.

26           In *Perez*, plaintiff brought several state-law claims against a group of physicians for

27   failing to disclose that a laser medical device used on the plaintiff had not received FDA pre-

28   approval.  *Perez*, 711 F.3d at 1112.  The medical device at issue was subject to device-specific

1    requirements under the FDA's pre-market approval regime. *Id.* at 1118. The Ninth Circuit held

2    that plaintiff's state-law claims were expressly preempted because they depended on a state law

3    requirement "in addition to those federal requirements . . . that physicians and medical device

4    companies *must affirmatively tell patients* when medical devices have not been approved for a

5    certain use." *Id.* at 1118-19 (emphasis added). Because FDA regulations did not specifically

6    require this disclosure, the circuit court held that allowing plaintiff's state-law claims to proceed

7    would have meant imposing an additional regulatory requirement on the defendants, which was

8    expressly precluded by the preemption provision of the FDCA. *Id.* at 1119.

9         However, the Ninth Circuit went on to note that plaintiff's claims were also *impliedly*

10   preempted, i.e., would be precluded even absent an express preemption provision in the FDCA,

11   because allowing the state claims to proceed would have undermined the FDCA's enforcement

12   scheme. *Id.* at 1119. This is the basis for defendants' second preemption argument. But the

13   Ninth Circuit's conclusion on this issue was still based on the fact that plaintiff's state-law claims

14   would have imposed an additional disclosure requirement on the defendants that was not required

15   by federal regulations. Because the FDA was still in the midst of investigating whether or not the

16   failure to disclose actually constituted a violation of the FDCA (and the FDA has primary

17   responsibility for enforcing the FDCA), the circuit court held that allowing plaintiff's state-law

18   fraud-by-omissions claims to proceed could have potentially undermined the FDA's enforcement

19   authority if the FDA reached a different conclusion. *Id.* at 1120.

20        However, nowhere in its opinion did the Ninth Circuit argue that allowing plaintiffs to

21   bring state-law claims based on state laws that *parallel* federal requirements would constitute

22   "private enforcement" of FDA regulations that would conflict with the FDA's regulatory

23   authority.   In fact, it noted the opposite: state-law claims are not impliedly preempted "insofar as

24   the state-law duty parallels a federal-law duty." *Id.* at 1118 (internal citations omitted). While

25   the Ninth Circuit was speaking only in the context of the Medical Devices Amendments to the

26   FDCA, lower courts, including this district, have repeatedly extended this reasoning to violations

27   of FDA food labeling regulations more generally if there is a regulation directly on point. *See,*

28   *e.g.*, *Wilson*, 2013 WL 1320468, at *7; *Brazil*, 2013 WL 1209955, at *4.

ORDER RE: DEFS.' MOTION TO DISMISS
CASE NO. C-12-02554-RMW                                        - 12 -
ALG / GH

Unlike the situation in *Perez*, here, plaintiff's claims rest entirely on violations of California's Sherman Law counterparts that *parallel* federal requirements, and which do not require this court to create new requirements or interpret the scope of currently existing regulations. Here, the court need only determine whether defendants' labels actually comply with existing and well-understood FDA regulations, "a determination that would not risk undercutting the FDA's expert judgments and authority." *Astiana v. Hain Celestial Grp.*, No. 11-6342, 2012 WL 5873585, at *3 (N.D. Cal. Nov. 19, 2012) (internal citations omitted). The court must "start from a presumption against preemption." *Kosta*, 2013 WL 2147413, at *9. Where, as here, there is no conflict between state and federal law that might interfere with FDA regulatory authority, the court declines to find that plaintiff's claims are impliedly preempted. The motion to dismiss on the basis of implied preemption is therefore denied.

### 3. The primary jurisdiction doctrine does not apply to the remaining claims

Similar reasoning applies to defendants' argument that this court should dismiss on the basis of primary jurisdiction. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine "is committed to the sound discretion of the court when 'protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.'" *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002) (quoting *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). Courts consider the following non-exhaustive factors in deciding whether the doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id.* The doctrine "is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has

1    committed to a regulatory agency.'" *Time Warner*, 523 F.3d at 1114 (quoting *Brown v. MCI*

2    *WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002)).

3         As previously noted, plaintiff's case does not require this court to determine difficult

4    issues of first impression better left to the FDA's expertise, but instead only requires the

5    application of well-understood FDA regulations directly on point.  "[T]he FDA's expertise…is

6    not necessary to determine whether the labels are misleading, [and the] reasonable consumer

7    determination and other issues involved in [this] lawsuit are within the expertise of the courts to

8    resolve." *Delacruz*, 2012 WL 2563857, at *10; *see also Brazil*, 2013 WL 1209955, at *10-11

9    (holding that primary jurisdiction did not apply to claims of violation of FDA regulations and

10   guidance concerning "all natural," fresh, antioxidant, and other nutrient claims); *Astiana v. Ben &*

11   *Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *15 (N.D. Cal. May 26, 2011)

12   (holding that primary jurisdiction did not apply where the court had to determine whether

13   defendant's "All Natural" claims were misleading); *Chacanaca*, 752 F. Supp. 2d at 1124

14   ("[Plaintiffs] assert that defendant has violated FDA regulations and marketed a product that

15   could mislead a reasonable consumer.  This is a question courts are well-equipped to handle.").

16   Defendants' motion to dismiss on the basis of primary jurisdiction is denied.

17         **4.    Standing**

18         Finally, defendants argue that plaintiff's remaining claims should be dismissed because the

19   labels, even if in technical violation of FDA regulations, are unlikely to deceive a reasonable

20   consumer, and plaintiff therefore has no standing.  According to defendants, because plaintiff

21   could not have *known* about the FDA's regulations regarding the font size and placement of the

22   disclosure statements, she could not have relied on or been deceived by the alleged violations.

23         In order to bring a claim under the UCL or FAL, a plaintiff must establish: (1) "a loss or

24   deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*"; and

25   (2) "that that economic injury was the result of, i.e., *caused by,* the unfair business practice or

26   false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court,* 51 Cal. 4th

27   310, 322 (2011) (emphases in original).  In order to satisfy the causation prong of the standing

28

1  requirement, plaintiff must demonstrate "a causal connection or reliance on the alleged

2  misrepresentation." *Id.* at 326 (quotation omitted).

3      The court disagrees with defendants that a plaintiff would be required to *know* of the

4  particular FDA or state law regulations in order for violations thereof to cause an *economic*

5  injury. Plaintiff's claim is essentially that, because defendants' labels did not comply with state

6  and federal requirements regarding the font-size and placement of the disclosure statement, she

7  could not see or did not understand the disclosures, and therefore was misled by the unlawful

8  packaging and purchased the product based thereon. SAC ¶¶ 79, 212-13. Plaintiff satisfies the

9  UCL and FAL's standing requirements: the court has already determined that defendants' products

10  are technically misbranded, plaintiff alleges she was misled as a result of the misbranding and has

11  suffered economic injury because she purchased a product she otherwise would not have. As the

12  court previously held with respect to defendants' first motion to dismiss ("1st MTD Order"),

13  "[t]he alleged purchase of a product that plaintiff would not otherwise have purchased but for the

14  alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair

15  competition claims." 1st MTD Order 7, Dkt. No. 49 (citing cases).[2]

16      **D. Products Plaintiff Did Not Purchase**

17      Defendants further argue that plaintiff lacks standing to sue based on products that she did

18  not herself purchase. See 1st MTD Order 8. The court previously held in this case that there can

19  be no requisite *pecuniary* injury where plaintiff did not herself purchase the product at issue. *See*

20  *id.* ("The alleged injury in this case is that plaintiff 'based and justified the decision *to purchase*

21  [d]efendants' products in substantial part on [d]efendants' package labeling, packaging and

22

23  _____

24  [2] Although defendant's standing argument is tailored to the "unlawful" nutrient content claims on
    the nut-mix products, with respect to defendants' labels that are not technically "unlawful" but

25  nonetheless allegedly deceptive or misleading, courts generally recognize that whether a label is
    likely to deceive an ordinary consumer is "a question of fact not appropriate for a decision on

26  demurrer." *Williams*, 552 F.3d at 939; 1st MTD Order 7 (citing cases). "It is a 'rare situation'
    where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litig.*,

27  794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (quoting *Williams*, 552 F.3d at 939).

28

1   website claims" and "*would have foregone purchasing [d]efendants' products* and bought other

2   products readily available at a lower price." [S]AC ¶ [213] (emphases added).

3       In *Lanovaz v. Twinings*, this court recently extended plaintiff's standing to "products

4   . . . nearly identical to the claims for the purchased product." Order at 4, No. 12-2646, Dkt. No.

5   60. In *Lanovaz*, there was sufficient detail in the amended complaint to establish that the

6   antioxidant ingredient in 51 of the 53 tea products at issue was the same. *Id.* In addition, the

7   labels describing that same antioxidant in those 51 products were identical. *Id.* With respect to

8   all products that only bear "similar" packaging or labels (these are: Back to Nature cookies,

9   graham crackers, and granola products; the Planters Nut-rition line of products; Kraft cheese

10  products; Country Time lemonade products; Jell-O sugar free products; Stovetop stuffing

11  products; and certain sugar free gum product lines) the court finds the allegations of "similar

12  packaging" insufficient to meet the standing requirement. With respect to the non-purchased

13  products bearing packaging and labels that are allegedly the same, essentially identical, or

14  substantially similar (these are the Capri Sun and Crystal Light products), the SAC provides

15  insufficient detail regarding the non-purchased products' nutritional contents and ingredients to

16  allow the court to find standing under the reasoning in *Lanovaz*. However, with respect only to

17  the regular Trident sugar free gum line with "essentially identical" packaging, *see* SAC ¶ 224, and

18  the Dentyne Ice and Dentyne Fire sugarless gum lines with "essentially identical" packaging, *see*

19  SAC ¶ 225, the court is satisfied that plaintiff has standing to bring these claims based on the

20  impermissible "sugar free" labels. Other than these specific gum lines, however, the court

21  dismisses the remainder of plaintiff's newly added claims based on products plaintiff herself did

22  not purchase, without leave to amend.

23      **E. Claims Based on Statements Only on Defendants' Website**

24      Defendants allege that the SAC does not sufficiently state a claim based on the "excellent

25  source" and "healthy" and "wholesome" claims on their website. Defs.' Mot. 11-13. With respect

26  to the "excellent source" statement on the website allegedly directed to defendants' Capri Sun

27  products, the court finds that the SAC does not sufficiently plead an "excellent source" claim with

28  respect to any purchased product. Rather, the SAC only generally alleges that "[d]efendants

1    made an impermissible 'excellent source' claim on their website regarding Capri Sun *products*."

2    SAC ¶ 228 (emphasis added).  Plaintiff fails to plead specific reliance on this particular website

3    statement with respect to any purchased product.  Accordingly, the court dismisses the "excellent

4    source" website claims with leave to amend.  The court dismisses the "healthy" and "wholesome"

5    website claims for similar reasons.  The SAC generally alleges that these claims were present on

6    defendants' website but does not sufficiently plead reliance on these specific aspects of the

7    website when purchasing any particular product.  *See* SAC ¶ 245 ("Plaintiff saw such healthy and

8    wholesome claims which influence their [sic] decision to purchase [d]efendants' *products*."

9    (emphasis added)).

10                                    **III. ORDER**

11          For the foregoing reasons, the court GRANTS defendants' motion to dismiss with respect

12   to: (1) plaintiff's "natural lemon [lemonade] flavor" claims with prejudice, (2) the majority of the

13   products not-purchased by plaintiff (as specified above) with prejudice, and (3) the "excellent

14   source" and "healthy" and "wholesome" claims on the website with thirty days leave to amend.

15   The court DENIES defendant's motion to dismiss with respect to the nutrient content claims on

16   the purchased Planters Nut-rition product and Kraft Mexican Style Four Cheese blend.

17

18

19

20   Dated:  July 28, 2013                  *Ronald M. Whyte*
                                            _____
21                                          Ronald M. Whyte
                                            United States District Court Judge
22

23

24

25

26

27

28

**EXHIBIT B**

1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

14
15
16
17
18
19
20
21

| | |
|---|---|
| SARAH SAMET and JAY PETERS, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PROCTER & GAMBLE COMPANY, KELLOGG COMPANY and KELLOGG SALES COMPANY, | ) ) ) ) |
| Defendants. | ) ) ) |

Case No.: 5:12-CV-01891 PSG

**ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS**

**(Re: Docket Nos. 41, 43)**

22
23
24
25
26
27
28

As the latest crest in the recent wave of food mislabeling suits in this district, Plaintiffs

Sarah Samet and Jay Peters (collectively, "Plaintiffs") bring a representative class action against

Defendants Procter & Gamble Company ("Procter & Gamble") and Kellogg Company and Kellogg

Sales Company ("Kellogg") (collectively, "Defendants"). Plaintiffs assert nine causes of action

relating to the alleged misbranding of Defendants' products. On November 26, 2012, Procter &

Gamble and Kellogg each moved to dismiss Plaintiffs' complaint. After reassignment to the

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

undersigned, the parties appeared for oral argument.  Having reviewed the papers, and considered the arguments and evidence presented, the court GRANTS-IN-PART Defendants' motion.

## I.     BACKGROUND

Except where otherwise noted, the court draws the following facts, taken as true for the purposes of a motion to dismiss, from Plaintiffs' complaint.[1]

Procter & Gamble is a multinational company that manufactures and sells a variety of packaged food products, including Pringles potato chip snacks.  Kellogg also sells packaged food products.  Since the initial filing of this suit, on June 1, 2012, Kellogg acquired the Pringles brand and business from Procter & Gamble.

Plaintiffs are self-described "health-conscious" California consumers who purchased all of Defendants' allegedly misbranded food products, "including Pringles snack chips, Kellogg's MorningStar Farms Hickory BBQ Riblets (10 oz box) and Kellogg's Fruity Snacks Mixed Berry (8 oz box)."[2]  Plaintiffs allege that in purchasing the above products, they reasonably relied on various nutritional content claims on Defendants' website and packaging labels, and had they known the "truth" about these products, Plaintiffs would not have purchased them.

On August 24, 2012, Plaintiffs filed an amended class action complaint on behalf of consumers who purchased products in the following categories (the "misbranded food products"):[3]

> (1) Potato chip snacks labeled "0 Grams Trans Fat," but containing more than 13 grams of fat per 50 grams;
> (2) Products labeled with the ingredient "evaporated cane juice;"
> (3) Products labeled or advertised as "healthy" despite disqualifying under 21 C.F.R. 101.65;
> (4) Fruit and fruit-flavored snacks; and
> (5) Products sold in a slack-filled container.

---

[1] Plaintiffs filed an amended complaint on August 24, 2012.  *See* Docket No. 25.

[2] Docket No. 25 ¶ 25.

[3] *See* Docket No. 25 at 1-2.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs assert the following claims against Defendants: violations of California Unfair Competition Law ("UCL");[4] violations of Fair Advertising Law ("FAL");[5] violations of Consumer Legal Remedies Act ("CLRA");[6] restitution based on unjust enrichment/quasi-contract; violations of the Beverly-Song Act; and violations of the Magnuson-Moss Act.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[8] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] Accordingly, under Fed. R. Civ. P. 12(b)(6), which tests the legal sufficiency of the claims alleged in the complaint, "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[10]

On a motion to dismiss, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[11] The court's review is

---

[4] *See* Cal. Bus. & Prof. Code §§ 17200 *et. seq.* The UCL "borrows" violations of other laws as unlawful practices and then provides an independent action. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383, 826 P.2d 730 (1992).

[5] Cal. Bus. & Prof. Code §§ 17500 *et. seq.*

[6] Cal. Civ. Code §§ 1750 *et. seq.*

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[10] *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).

[11] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice.[12]  However, the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.[13]

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear… that the complaint could not be saved by amendment."[14]

## B.  Rule 9(b)

Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b) by pleading with particularity the circumstances surrounding the fraud or mistake.  Rule 9(b) applies to the state claims at issue here as they involve allegations that consumers were misled.[15]  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge."[16]  This includes "the who, what, when, where, and how of the misconduct charged."[17]

## III.  DISCUSSION

## A.  Requests for Judicial Notice

As a preliminary matter, both parties have requested that the court take judicial notice of documents pursuant to Fed. R. Evid. 201.  Defendants ask that the court take judicial notice of

---

[12] *See id.* at 1061.

[13] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); s*ee also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

[14] *Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

[15] *See Jones v. ConAgra Foods, Inc.*, Case No. 12-01633 CRB, 2012 WL 6569383 (N.D. Cal. Dec 17, 2012).

[16] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

[17] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

4

packaging labels for Pringles, Fruity Snacks Mixed Berry, and MorningStar Farms Hickory BBQ Riblets.[18]  Plaintiffs do not object, but also ask that the court take notice of packaging labels for the same products; screenshots of Defendants' websites; and the websites "Kelloggs.com," "pringles.com," and "morningstarfarms.com" generally.[19]  A court may take judicial notice of a document on which the complaint "necessarily relies" if: (1) "the complaint refers to the document," (2) "the document is central to the plaintiff's claim," and (3) "no party questions the authenticity of the copy attached to the 12(b)(6) motion."[20]  The packaging labels and website screenshots satisfies these requirements.[21]  However, the court will not take judicial notice of Defendants' websites generally, because Plaintiffs' have not shown which pages are specifically "central" to their claim or referred to by the complaint.

**B.      Standing**

Defendants first challenge Plaintiffs' standing to bring their claims.  To establish Article III standing, a plaintiff must plead facts showing (1) injury-in-fact, (2) causation, and (3) redressability.[22]  Injury-in-fact requires that the plaintiff suffer harm to "a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."[23]  In a class action, at least one named plaintiff must have suffered an injury-in-fact.[24]

---

[18] *See* Docket Nos. 40, 44.

[19] *See* Docket Nos. 59, 60.

[20] *Daniels-Hall v. Natl. Educ. Assn.*, 629 F.3d 992, 998 (9th Cir. 2010).

[21] Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the labels and the labels are central to the plaintiff's complaint.  *See, e.g.*, *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012).

[22] *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

[23] *Id.*

[24] *See Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2002).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The UCL, FAL, and CLRA additionally require the plaintiff to specifically allege that she suffered an *economic* injury.[25]  A plaintiff has suffered economic injury when she has either: "(1) expended money due to the defendants' acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim."[26]

Defendants argue that Plaintiffs lack standing under both Article III and the economic injury requirements of the California statutes because none of the products are alleged to have been "tainted, spoiled, adulterated, or contaminated."[27]  Defendants cite *Boysen v. Walgreen Co.* in support of this contention, where Judge Illston held that because the plaintiff "paid for fruit juice, [] received fruit juice, [and] consumed [it] without suffering harm," he could not establish economic injury by alleging the fruit juice contained unlawful amounts of lead and arsenic.[28]  Notably, however, Judge Illston based her decision on the fact that the plaintiff did "not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice."[29]  He only argued that he had purchased and consumed fruit juice, but later found out that the lead and arsenic levels in the juice were unsatisfactory to him.[30]

Consequently, it cannot be said that a plaintiff suffers sufficient injury under deceptive advertising and unfair competition statutes only when the product received is polluted, as Defendants suggest.  Unlike in *Boysen*, Plaintiffs here allege that as health-conscious consumers,

---

[25] *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323, 326 (2011).

[26] *Ivie v. Kraft*, Case No. 12-2554 RMW, 2013 WL 685372, at *4 (February 25, 2013) (quoting *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1125 (N.D. Cal. 2010)).

[27] *See* Docket No. 43 at 19.

[28] *See Boysen v. Walgreen Co.*, Case No. 11-06262 SI, 2012 WL 2953069, at *4-5 (N.D. Cal. July 19, 2012) (finding that plaintiff suffered no economic injury when he "paid for fruit juice, [] received fruit juice, [and] consumed [it] without suffering harm").

[29] *Id.* at *7.

[30] *See id.*

6

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

they relied on the misleading product labels in purchasing the products, and had they known the truth, they would not have purchased the products at the premium price paid.[31] Accepting as true these allegations for the purpose of a motion to dismiss, Plaintiffs spent money they otherwise would have saved but for defendants' acts of unfair competition. Courts in this district have overwhelmingly found that such allegations are sufficient to establish economic injury.[32] Whether Plaintiffs actually did pay a premium price as a result of false and misleading labeling remains to be determined at a later stage in this litigation. As alleged, however, the injury of paying a higher price for a falsely advertised product is enough to show Plaintiffs suffered particularized harm to a legally protectable interest in the form of an economic loss.[33]

## C.     Statutory Framework

Before considering the issue of preemption, a brief summary of the applicable statutory framework is warranted. Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled."[34] The FDA has implemented regulations to achieve this objective.[35] The FDA enforces the FDCA and

---

[31] *See* Docket No. 25 ¶¶ 8, 86.

[32] *See Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 WL 2147413, at *11-12 (N.D. Cal. May 15, 2013)*; Ivie,* 2013 WL 685372, at *4; *Lanovaz v. Twinings N. Am., Inc.*, Case No. 12-02646-RMW, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013); *Jones,* 2012 WL 6569393, at *9; *Chacanana,* 752 F.Supp.2d at 1125; *Chavez v. Blue Sky Natural Beverage Co.*, 340 Fed. App'x 359, 360-61 (9th Cir. 2009); *Khasin v. Hershey Co.,* Case No. 12-CV-01862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012).

[33] *See Khasin*, 2012 WL 5471153, at *6; *Carrea v. Dreyer's Grand Ice Cream, Inc.*, Case No. 10-01044 JSW, 2011 WL 159381, at *2-3 (N.D. Cal. Jan. 10, 2011); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (holding that the plaintiff's allegations that they paid a premium price for the mislabeled beverages was sufficient to establish economic injury); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 700 (2006) (ruling that for purposes of the FAL, UCL, and CLRA, restitution for products falsely labeled "Made in U.S.A." was the price differential between the falsely labeled products and similar products without that label).

[34] *See* 21 U.S.C. § 393.

[35] *See, e.g.*, 21 C.F.R. § 101.1 *et. seq.*

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

accompanying regulations; "[t]here is no private right of action under the FDCA."[36]  In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling.[37]  The NLEA adds an express preemption provision, which provides that "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement" for the labeling of a container for food, or for nutrition labeling, or for nutrient content claims, "that is not identical" to the requirements of that section.[38]  In other words, states may not adopt food labeling requirements governed by the NLEA that are different from, or additional to those imposed by the federal statutory scheme.[39]  The NLEA is clear, however, that preemption does not extend further than "the plain language of the statute itself."[40]

Plaintiffs are not suing under the FDCA, but under California state law.  The Sherman Food, Drug, and Cosmetic Act ("Sherman Law")[41] has adopted wholesale the food labeling requirements of the FDCA and NLEA as "the food regulations of this state."[42]  The Sherman Law

---

[36] *Ivie,* 2013 WL 685372, at *1 (internal citations omitted).

[37] *See, e.g.,* 21 U.S.C. § 343 *et. seq.*  While the NLEA and FDA stand guard over labeling of most food and nonalcoholic beverages, the United States Department of Agriculture ("USDA") regulates the labeling of meat, poultry, and certain egg products pursuant to the Federal Meat Inspection Act and the Poultry Products Inspection Act.  An important distinction between the two schemes is that while USDA labels are pre-approved, FDA labels are not.

[38] 21 U.S.C. § 343-1(a).

[39] *See In re Pepsico, Inc., Bottled Water Mktg. & Sales Practices Litig.,* 588 F.Supp.2d 527, 532 S.D. N.Y. 2008).  *See Riegel v.Medtronic, Inc.,* 552 U.S. 312, 330 (2008).

[40] *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1091 (2008) (discussing § 6(c)(1) of the NLEA, which states that the NLEA "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the FDCA").

[41] *See* Cal. Health & Safety Code §§ 109875 *et. seq.*

[42] Cal. Health & Safety Code § 110100.

8

declares any food to be "misbranded" if it is "false or misleading in any particular," if the labeling "does not conform with the requirements for nutrition labeling" set forth in certain provisions of the NLEA.[43]  The UCL prohibits "any unlawful, unfair… or fraudulent business act or practice."[44] "The FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of 'untrue or misleading' statements."[45]  The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.[46]

## D.     Preemption

Defendants argue that Plaintiffs' state law claims are preempted by the FDCA.  Under the Supremacy Clause, federal law is the "supreme law of the land," so where state law is contrary to valid federal law, federal law will control.

Federal preemption applies under three circumstances: (1) the federal law expressly preempts the state law, (2) the federal law conflicts with the state law, or (3) the federal law was intended to occupy the entire field.[47]  Express preemption applies where Congress has specifically stated in the statutory language that its enactments preempt state law.[48]  Conflict preemption occurs "where it is impossible for a private party to comply with both state and federal requirements."[49] Implied or field preemption arises when federal law "regulates conduct in a field that Congress

---

[43] Cal. Health & Safety Code §§ 110660, 110665, 110670.

[44] Cal. Bus. & Prof. Code § 17200.

[45] *Lam v. Gen. Mills, Inc.*, 859 F.Supp.2d 1097, 1103 (N.D. Cal. 2012).

[46] Cal. Civ. Code § 1770.

[47] *See English v. General Electric Co.,* 496 U.S. 72, 78-79 (1990).

[48] *Id.* at 79.

[49] *Id.*

9

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

intended the Federal Government to occupy exclusively."[50]  Such intent may be inferred from the scope of the federal regulation – where the statutory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or it covers "a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."[51]

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case."[52]  There is generally a presumption against preemption, the rationale being that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."[53]  This presumption applies with particular force where, as here, Congress has legislated in an area which the states have "traditionally occupied."[54]  States have historically had strong local interests in protecting the health and safety of their citizens, which is covered by the FDCA.[55]

As noted above, the NLEA contains an express preemption provision: "[e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish… any requirement for a food" which is not identical to the requirements of the FDCA.[56]  In *Lohr v. Medtronic*, the Supreme Court considered the nearly identical express preemption provision in the Medical Devices Amendment ("MDA") to the FDCA, 21 U.S.C. §

---

[50] *Id.*

[51] *Id.*

[52] *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

[53] *Id.*

[54] *Id.*

[55] *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996).

[56] 21 U.S.C. § 343-1(a).

10

360k(a).[57]  The Supreme Court held that Section 360k(a) did not bar the plaintiff's negligence and

strict-liability claims because they were based on the defendant's failure to use reasonable care.[58]

Further, nothing in that provision "denies [states] the right to provide a traditional damages remedy

for violations of common-law duties when those duties parallel federal requirements."[59]

The Supreme Court later considered the implied preemption effect of another provision of

the FDCA, Section 337(a), which provides that "[e]xcept as provided in subsection, all such

proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the

name of the United States."  The effect of this provision is that there is no private right of action to

enforce the FDCA.  In *Buckman Co. v. Plaintiffs' Legal Comm.*, the Supreme Court held that the

plaintiffs' claims that defendant made fraudulent representations to the FDA in securing approval

for its orthopedic bone screws were impliedly preempted by Section 337(a).[60]  Although the

plaintiff characterized his claims as state law tort claims (if defendant had not deceived the FDA,

the product would not have been approved, and plaintiffs would not have sustained the injury), his

suit was deemed to be an improper attempt to privately enforce the FDCA.[61]  The plaintiff's claim

depended on enforcing provisions of the FDCA, and so the suit conflicted with the federal

government's power to "punish and deter fraud against its agencies."[62]

---

[57] Section 360k(a) provides the following:
"Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device…"

[58] *Lohr*, 518 U.S. at 495.

[59] *Id.*

[60] *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).

[61] *See id.* at 343, 353.

[62] *See id.* at 348.

11

In *Perez v. Nidek*, the Ninth Circuit recently came to a similar conclusion.  Perez alleged that the doctors that performed his LASIK eye surgery failed to disclose that the eye surgery was not yet approved by the FDA for hyperopic use, but the MDA did not require the defendant to give such notice, so the claims were expressly preempted.[63]  Perez's claims also were impliedly preempted under Section 337(a).[64]  Although the section does not preempt all fraud or false advertising claims related to the surgeries, Perez could not bring suit solely on the basis that the defendants did not disclose lack of FDA approval.[65]

The rule that emerges from these cases is that "the plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [Section] 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)."[66]  The same hurdles apply to the FDCA's preemptive force in the food labeling context.  First, the plaintiff must be suing for conduct that violates the FDCA's food labeling requirements, else the claim is expressly preempted under Section 343-1(a), the NLEA's counterpart to Section 360k(a)'s express preemption provision.  Second, the plaintiff must not be suing to enforce provisions of the FDCA, which would be impliedly preempted under Section 337(a) of the FDCA, but rather to vindicate an independent right under state law.

### 1.    Express Preemption

Plaintiffs' claims must first overcome express preemption under Section 343-1(a), which as noted above prohibits any requirements that are different from, or additional to the federal statutes and regulations.[67]  Express preemption is especially appropriate where the practice identified by the

---

[63] *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1112 (9th Cir. 2013).

[64] *See id.* at 1119.

[65] *Id.* at 1120.

[66] *Id.* (emphasis in original).

[67] *See Riegel*, 552 U.S. at 330.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

plaintiff is explicitly governed by either the FDCA or its regulations, and the defendant is in compliance with those requirements.[68]

One of Plaintiffs' claims is that Fruity Snacks product packaging is misleading because it displays pictures of strawberries, blueberries, and raspberries next to the statement "made with real fruit," which implies that the product contains the fruits pictured.  In actuality, the only fruit ingredient in the product is apple puree concentrate.[69]   Defendants contend that this claim is expressly preempted because certain provisions of the FDCA and accompanying regulations allow manufacturers to use the name and image of fruit on a product's packaging to describe the flavor of the product, even if that product does not actually contain any of that particular fruit.[70]   Regulation 101.22(i) states that the label or advertising may contain words or vignettes (including depictions of the fruit) describing the product's flavor even "if none of the natural flavor used in the food is derived from the product whose flavor is simulated," so long as the product is labeled "artificially flavored."  Defendants' Fruity Snacks packaging, which has been judicially noticed by the court, complies with these requirements – along with the "Mixed Berry" label and depictions of various berry-shaped snacks, the label also contains the words "artificially flavored."[71]   The complaint essentially argues that even though the Fruity Snacks packaging complies with Section 101.22(i), it is misleading because it is placed in close proximity to the statement, "Made with Real Fruit."

---

[68] *Cf. Lam,* 859 F.Supp.2d at 1103 (holding that the plaintiff's "natural" and "all natural" claims were expressly preempted because defendant's labeling was expressly permitted by FDA regulations).

[69] *See* Docket No. 25 ¶¶ 102-109.

[70] *See* 21 U.S.C. § 343(j), (k); *See also* 21 C.F.R. § 101.22(i).

[71] *See* Docket No. 44, Ex. 1.  While the packaging also contains the words "naturally… flavored," which might violate other regulations, Plaintiffs' complaint is not centered around this potential violation.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    This requirement of Plaintiffs' claim goes beyond what is required by the FDCA and therefore is

2    expressly preempted.[72]

3          Defendants also argue that the slack-fill claims against Pringles snack chips and Fruity

4    Snacks are expressly preempted.  Slack-fill is governed by 21 C.F.R. 100.100(a), which prohibits

5    "nonfunctional" slack-fill which does not exist for permissible purposes such as "[p]rotection of

6    the contents of the package," "[u]navoidable product settling during shipping and handling," and

7    the like.  Plaintiffs do not expressly plead any nonfunctionality.  Although Defendants characterize

8    Plaintiffs' complaint improper attempt to impose an additional requirement, i.e., prohibition of

9    slack-fill regardless of its purpose, this is more properly construed as a less-than-perfect recitation

10   of the elements of the claim.  Nevertheless, the complaint expressly references the regulation

11   governing slack-fill, including the functional exceptions to the rule, and states that Defendants had

12   "no lawful justification" for using slack-fill.  Drawing all inferences in favor of Plaintiffs, as

13   required for purposes of a motion to dismiss, the court finds Plaintiffs have alleged that Defendants

14   violated the FDA regulation governing slack-fill and thus the claim is not preempted.[73]

15         2.    Field preemption

16         The court next considers Defendants' arguments that Plaintiffs' case should be barred

17   because it is an improper attempt to enforce the FDCA.  Relying on *Perez* and *Buckman*,[74]

---

[72] *See Lam*, 859 F.Supp.2d at 1097 (holding that claim challenging the label "strawberry natural flavored" when the product contained no strawberry ingredients was preempted because of the same provision, 21 C.F.R. § 101.22(i)).

[73] *See Ivie*, 2013 WL 685372, at *11 (holding that the slack-fill claims were not preempted because plaintiff quoted the FDA regulation and alleged that defendants lacked any legal justification for employing unlawful slack fill packaging).

[74] Defendants also rely on *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), which they briefed before the Ninth Circuit's *Perez* decision was published.  The court in *Pom Wonderful LLC* held that the FDCA and its regulations barred the "name and labeling aspects" of the plaintiff's federal Lanham Act claim.  *See id.*  However, courts in this district have rejected Defendants' argument that *Pom Wonderful LLC* applies equally to preclude state law claims.  *See, e.g., Brazil v. Dole Food Co., Inc.*, Case No. 12-CV-01831-LHK, 2013 WL 1209955, at *7 (N.D. Cal. Mar. 25, 2013); *Delacruz*, 2012 WL 2563857, *7 n. 3; *Khasin v. Hershey Co.*, 2012 WL 5471153, *5.

14

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants contend that because Plaintiffs' claims "exist solely by virtue of the FDCA requirements," they are preempted. But Defendants read these cases too broadly. Unlike those brought in *Perez* and *Buckman*, Plaintiffs' claims here do not rest on violations of the FDCA, but on the UCL, CAL, FLRA, and Sherman Law. Plaintiffs' claims vindicate the separate and independent right to be free from deceptive and misleading advertising. Although Defendants argue Plaintiffs should not be allowed to "circumvent" the FDCA's bar on private enforcement, this argument falls flat in light of the ample evidence that Congress and the FDA intended that the states would be free to adopt a statutory scheme paralleling the FDCA and offer a private suit of enforcement of those parallel state regulations.[75] Further, there is simply "no indication from the text of the NLEA or its legislative history that Congress intended a sweeping preemption of private actions predicated on requirements contained in state laws."[76] Both the legislative history and the text of the statute itself makes clear that Congress did not intent to prevent private citizens from bringing unfair competition or other state-law claims, so long as they did not impose different or additional requirements from those set forth in the FDCA.[77]

Moreover, Plaintiffs' claims are factually distinct from those brought in *Perez* and *Buckman*, which were found to be impliedly preempted "because they conflicted with the statutory scheme, which amply empowers the FDA to punish and deter fraud against the Administration."[78] In those cases, the plaintiff sought only to punish the defendant's fraud against the federal agencies, rather than any wrongdoing directed at the plaintiff. By contrast, Plaintiffs in this case

---

[75] *See Lohr*, 518 U.S. at 495 (holding that the FDCA does not deny states "the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements").

[76] *Brazil*, 2013 WL 1209955, at *7 (quoting *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)).

[77] *See id.*

[78] *Perez*, 711 F.3d at 1119.

15

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

are suing because the claims are misleading and deceptive under California law, not merely because Defendants' products violate the FDCA, or because Defendants committed fraud on the FDA. Plaintiffs' claims for damages arise from state-made common law duties that also happen to coincide with the federal statutory scheme, which ensures that these claims will not conflict with or impair the FDA's regulatory power. As a result, Plaintiffs' claims fit through the "narrow gap" contemplated by the Ninth Circuit.[79]

### E.   Primary Jurisdiction Doctrine

Defendants also argue that the court should "refer" this dispute to the FDA under the primary jurisdiction doctrine. "In practice, this means that the court either stays proceedings or dismisses the case without prejudice, so that the parties may seek an administrative ruling" with the relevant administrative agency.[80] Although there is no set rule for determining when to apply the doctrine, it is generally applied when there is "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."[81] This referral should not be applied to every that might be within the "ambit" of a federal agency, but should only be used when the issue is one of first impression, or is particularly complicated and has been committed by Congress to a particular regulatory agency.[82]

The court is not convinced that the primary jurisdiction doctrine should apply to all matters of food labeling. Allegations of deceptive labeling do not require consultation of the expertise of

---

[79] *Id.* at 1120.

[80] *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

[81] *See id.* at 1115.

[82] *See id.* at 1114.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

the FDA as "every day courts decide whether conduct is misleading."[83]  Defendants also argue that Congress has determined that the FDA shall have primary jurisdiction over all matters of food labeling, which is not only incorrect but appears to conflate primary jurisdiction with field preemption.  As discussed at length above, although Congress has given the FDA regulatory power over food labeling, it cannot be said that this amounts to exclusive jurisdiction over the entire area of food false advertising and deceptive labeling.  While nutrition labeling requires a certain level of uniformity, the FDCA does not prohibit separate state-law actions touching upon this field, so long as they do not require more than the FDCA and accompanying regulations.

Regarding the "evaporated cane juice" claim, Defendants more specifically argue that the primary jurisdiction should apply because the FDA does not currently have a final position on this issue, and is in the process of developing one.  In 2009, the FDA issued a Draft Guidance on the use of the term "evaporated cane juice" specified the document was "nonbinding," "do[es] not establish legally enforceable responsibilities," and was circulated for the purpose of soliciting comments only.[84]  While it may be true that the FDA is developing a specific regulation on this issue, there is already an FDA regulation governing the use of evaporated cane juice as an ingredient.  21 C.F.R. 168.130 requires that "[t]he common or usual name of a food" shall be used to "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients."  As alleged, Defendants' products contain "sugar," which should be cited by its "common or usual name" under the FDA regulations.  This is sufficient to proceed no matter what final guidance may be issued by the agency.

---

[83] *Jones*, 2012 WL 6569393, at *6.

[84] FDA, Draft Guidance for Industry, 2009 WL 3288507, at *1.  *See also* 74 Fed. Reg. 51610-01 (Oct. 7, 2009) (explaining that draft guidance documents do not "create or confer any rights for or on any person and does not operate to bind FDA or the public").

17

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**F.      Failure to state a claim**

The court next considers whether Plaintiffs have satisfied their burden of pleading their UCL, FAL, and CLRA claims with particularity.  To state a claim under each of these statutes, the plaintiff must show that a reasonable consumer would be deceived by the packaging and that plaintiff actually relied on the packaging and was deceived.[85]  Because factual allegations must reach beyond a merely speculative level, Plaintiffs must show that members of the public are "likely to be deceived."[86]  Defendants contend that Plaintiffs did not do so for the following claims.

**1.      Pringles – 0g Trans Fat Claim**

Plaintiffs claim that the Pringles packaging contains the claim "0g Trans Fat," in violation of 21 U.S.C. § 343(r) and 21 C.F.R. 101.13(h).  The statute provides that when a "nutrient content claim" is made, and the product contains more than the maximum levels of total fat, saturated fat, sodium, or cholesterol prescribed by the regulations,[87] then the nutrient content claim must be accompanied by the statement "See nutrition information for [the exceeding ingredient] content."  In essence, the statute requires that "whenever an express nutrient content claim is made on a food label, that label must bear further disclosures about ingredients that the FDA has found pose diet-related health risks."[88]  Plaintiffs allege that although Pringles contains more than the specified threshold of total fat set by the FDA, the Pringles label does not include the required disclosure.

Defendants urge the court to hold as a matter of law that the statement "0g Trans Fat" would not mislead a reasonable consumer.  In *Delacruz v. Cytosport*, the court ruled that a similar

---

[85] *See Xybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1152 (9th Cir. 2008).

[86] *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

[87] 21 C.F.R. 101.13(h)(1) sets the maximum levels at "13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving."

[88] *Wilson v. Frito-Lay N. Am., Inc.,* 12-1586 SC, 2013 WL 1320468, at *7 (N.D. Cal. Apr. 1, 2013).

18

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

"0g Trans Fat" claim was not actionable because the "alleged distraction" from the product's unhealthy fat and saturated fat content did not amount to a "false statement or misrepresentation."[89] But the California statutes in question prohibit not merely false statements, but also misleading ones.[90]  For example, a label could disclose all truthful information, but hide the most relevant information in infinitesimal print, and thus as a whole be misleading to the reader.  The FDA regulations in question were created to address such concerns.[91]  Furthermore, other courts have held that the statement "0g Trans Fat" could mislead a reasonable consumer.[92]  The same may be true here, but Plaintiffs have not alleged in the detail required by Rule 9(b) how Plaintiffs were actually misled.  Plaintiffs must offer more than their legal conclusion that they were "unaware" that the products were "misbranded" and contained fat content in excess of the amounts set forth in FDA regulations.[93]

      2.    <u>Pringles and Fruity Snacks – Slack-Fill Claim</u>

For the Pringles and Fruity Snacks products, Plaintiffs allege facts showing that they were deceived by the slack-fill packaging and thought they were receiving more of the product than they actually received.[94]  Defendants argue that as a matter of law a reasonable consumer would know

---

[89] *Delacruz,* 2012 WL 2563857, at *8.

[90] *Williams*, 552 F.3d at 938 ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public") (internal quotations omitted).

[91] *Chacanaca,* 752 F.Supp.2d at 1122 ("This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading").

[92] *See, e.g., Wilson,* 2013 WL 1320468, at *13 ("the Court cannot conclude as a matter of law that Plaintiffs' '0 Grams Trans Fat' claims would not be misleading or deceptive to a reasonable consumer").

[93] Docket No. 25 ¶ 80.

[94] *See id.* ¶¶ 111-116 ("Defendants routinely employed slack filled packaging to mislead consumers into believing they were receiving more than they actually were" and "Plaintiffs… were deceived by Defendants' misleading slack filled packaging.").

19

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

that there is extra air in a bag of snacks. While this may be true, the amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage.[95]

### 3. "Healthy" and "Wholesome" Claims

Plaintiffs also bring claims that Defendants used the words "healthy" and "wholesome" in connection with certain goods in violation of 21 C.F.R. 101.65(d)(2). Plaintiffs' allegations falls far short of the pleading requirements of Rule 9(b). Although Plaintiffs refer to "healthy" and "wholesome" claims in statements made on Defendants' labeling and website, they do not provide the entire statement, nor do they attach the relevant label.[96] They also fail to clarify which products are specifically at issue, where the statements were found, and how Plaintiffs were actually misled. "[A] single out-of-context phrase" does not provide Defendants with sufficient notice of Plaintiffs' claims on this issue.[97]

Further, Plaintiffs have not alleged facts supporting their claim that the website constitutes "labeling," which is defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) *accompanying* such article."[98] Only if the plaintiff establishes that the label contains a specific statement referring the consumer to a specific

---

[95] *See Williams*, 552 F.3d at 938-39 (holding the district court erred in determining as a matter of law that Gerber Fruit Juice Snacks packaging was not deceptive because "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer"); *Cf. Werbel ex rel. v. Pepsico, Inc.*, Case No. 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) (ruling that as a matter of law, no reasonable consumer would believe that Cap'n Crunch Crunch Berries derives any nutritional value from berries).

[96] *See* Docket No. 25 ¶¶ 81-90.

[97] *Hairston v. S. Beach Beverage Co., Inc.*, CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

[98] 21 U.S.C. § 321(k) (emphasis added).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

website for information about the claim in question can the website be considered to be "accompanying" the article as "labeling."[99]

### 4.    Evaporated Cane Juice

Plaintiffs' "evaporated cane juice" claims allege that this term is used as a "false and misleading name" for what is commonly known as sugar or dried cane syrup.[100]  But Plaintiffs fail to allege any facts to support this claim.  They do not specify which products and labels deceived Plaintiffs, how Plaintiffs relied on the labels, and why a reasonable consumer would be likely to be deceived.  It is not enough to allege that the products are "misbranded" under the FDCA, which only allows Plaintiffs to avoid express preemption.  Plaintiffs also must allege with particularity the facts supporting their claims under California consumer protection statutes.

### 5.    Fruity Snacks – "Fortified" with Vitamin C Claims

Plaintiffs' complaint charges that Fruity Snacks packaging deceptively uses the term "fortified" in violation of 21 C.F.R. § 101.54.  Defendants point out that in the Fruity Snacks label they submitted to the court, there is no claim that the snacks are "fortified" with Vitamin C.  As this label may be but one label of many distributed during the relevant period, the court is not persuaded that this warrants dismissal with prejudice.  However, Defendants are entitled to notice of the specific allegations against them in order to form a defense.  Under Rule 9(b), Plaintiffs should "identify[] or attach[] representative samples of [the] misleading materials" in order to

---

[99] *See Wilson,* 2013 WL 1320468, at *14 (N.D. Cal. Apr. 1, 2013) (holding that even though the product label referred the plaintiffs to the defendant's website, the label did not direct the reader to visit the website for further nutritional information, and so the website did not constitute "labeling").

[100] Docket No. 25 ¶ 91.

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

sufficiently make out a claim.[101]  Without any such samples, neither the court nor the Defendants

have information as to the "what, when, where" of Plaintiffs' claims sounding in fraud.

## G.    Safe Harbor

Defendants further argue that Plaintiffs' claims are barred by the "safe harbor doctrine,"

which provides that where the legislature has determined certain conduct to be permissible,

plaintiffs should not be allowed to use general unfair competition law to "assault" that harbor.[102]

As these arguments regarding safe harbor cover the same ground as those regarding federal express

preemption that were discussed above, the court need not discuss this issue further.

## H.    Restitution based on Unjust Enrichment/Quasi-Contract

Defendants challenge that Plaintiffs' restitution claim should be dismissed because they are

duplicative of Plaintiffs' other claims.  Restitution is typically applied as a remedy to a "quasi-

contractual claim in order to avoid unjustly conferring a benefit upon a defendant where there is no

valid contract."[103]  But as an equitable remedy, restitution requires that the plaintiff show that

remedies at law are inadequate to redress her injury.[104]  The complaint alleges no facts not already

covered by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy.

As courts have dismissed unjust enrichment claims "that are merely duplicative of statutory or tort

claims,"[105] the claims here also must be dismissed.

---

[101] *Ries v. Hornell Brewing Co., Inc.*, 5:10-CV-01139-JF/PSG, 2011 WL 1299286 (N.D. Cal. Apr. 4, 2011).

[102] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999).

[103] *Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1113 (N.D. Cal. 2009).

[104] *See Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1140 (1986).

[105] *See, e.g., In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F.Supp.2d 1070, 1077 (N.D. Cal. 2011); *Diacakis v. Comcast Corp.*, Case No. C-11-3002 SBA, 2012 WL 43649, at *6 (N.D. Cal. Jan. 9, 2012).

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   Violations of Song-Beverly Act and Magnuson-Moss Act

Plaintiffs' complaint alleges violations of the California Beverly-Song Act and the federal Magnuson-Moss Act.  It is clear that the Magnuson-Moss Act, aimed at written warranties governed by the FDCA, does not apply here because the statements at issue are not "warranties" as defined by the Act.  A warranty is defined as a "written affirmation of fact" that the product is "defect free or will meet a specified level of performance over a specified period of time."[106]  None of the statements challenged by Plaintiffs qualify as such an affirmation.

Plaintiffs' claims under the Song-Beverly Act are also inapposite.  The Act permits a cause of action for damages for a buyer of "consumer goods" who is injured by a breach of warranty.[107]  However, the statute expressly does not apply to "consumables," or "any product that is intended for consumption by individuals."[108]  The products here are clearly products intended for consumption, and Plaintiffs admit as much in their complaint.[109]

In any event, Plaintiffs have not refuted these arguments in their opposition, and so these claims are deemed abandoned.

## IV.   CONCLUSION

Plaintiffs' claims under the Magnuson-Moss Act, the Song-Beverly Act, and restitution/unjust enrichment are DISMISSED with prejudice and without leave to amend. Plaintiffs' claims against Fruity Snacks for use of the fruit vignettes and "Made with Real Fruit" are DISMISSED with prejudice and without leave to amend because it is expressly preempted. Plaintiffs' claims against Pringles for "0g Trans Fat;" the "healthy" and "wholesome" claims; "evaporated cane juice" claims; and Fruity Snacks "fortified" claims are DISMISSED without

---

[106] 15 U.S.C. § 2301(6)(A).

[107] Cal. Civ. Code § 1794.

[108] Cal. Civ. Code § 1791(a), (d).

[109] *See* Docket No. 25 ¶ 220.

23

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

prejudice and with leave to amend.  The motion to dismiss the slack-fill claims is DENIED.  Any

amended complaint shall be filed no later than July 3, 2013.

IT IS SO ORDERED.

Dated:  June 18, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 5:12-cv-01891-PSG
**ORDER GRANTING-IN-PART MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

United States District Court
For the Northern District of California