**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       swestcot@bursor.com
       apersinger@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                                  Plaintiff,<br><br>     v.<br><br>STARKIST CO.,<br><br>                                Defendant. | Case No. 13-CV-00729<br><br>**NOTICE OF SUBMISSION OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hon. Yvonne Gonzalez Rogers |

Plaintiff submits *Allen v. Conagra Foods, Inc.*, No. 13-CV-01279, JST (N.D. Cal. September 3, 2013) as supplemental authority related to the issues of preemption and primary jurisdiction.  The *Allen* case was decided after Defendant's pending motion to dismiss was fully briefed and argued.  A copy of the *Allen* decision is attached hereto as Exhibit A.  Since this order was entered after the pending motion was fully briefed and argued, Plaintiff respectfully requests that the Court consider the *Allen* decision in support of Plaintiff's opposition to Defendant's motion to dismiss.

Dated:  September 10, 2013               Respectfully Submitted,

                                         **BURSOR & FISHER, P.A.**


                                         By:  ___*/s/ Annick M. Persinger*___
                                                 Annick M. Persinger

                                         L. Timothy Fisher (State Bar No. 191626)
                                         Sarah N. Westcot (State Bar No. 264916)
                                         Annick M. Persinger (State Bar No. 272996)
                                         1990 North California Boulevard, Suite 940
                                         Walnut Creek, CA 94596
                                         Telephone:  (925) 482-1515
                                         Facsimile:   (925) 407-2700
                                         E-Mail: ltfisher@bursor.com
                                                   swestcot@bursor.com
                                                   apersinger@bursor.com

                                         **BURSOR & FISHER, P.A.**
                                         Scott A. Bursor (State Bar No. 276006)
                                         888 Seventh Avenue
                                         New York, NY  10019
                                         Telephone: (212) 989-9113
                                         Facsimile:  (212) 989-9163
                                         E-Mail: scott@bursor.com

                                         *Attorneys for Plaintiff*

# EXHIBIT A

1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    ERIN ALLEN,                              Case No.  13-cv-01279-JST

                    Plaintiff,
8
                                              **ORDER DENYING MOTION TO**
9         v.                                  **DISMISS AND, ALTERNATIVELY, TO**
                                              **TRANSFER**
10   CONAGRA FOODS, INC.,
                                              Re: Dkt. No. 17
11                  Defendant.

12

13        Is Parkay Spray more like Pam® or liquid butter?  That is the question posed by this

14   consumer fraud action.  Plaintiff Erin Allen alleges that Defendant ConAgra Foods, Inc. labels and

15   markets Parkay Spray as "fat free" and "calorie free" even though a 226 gram bottle of the butter-

16   flavored spray contains 93 grams of fat and 832 calories.  ConAgra moves to dismiss on the

17   grounds that federal regulations entitle food manufacturers to round down the fat and calorie

18   content of their products when a single serving contains less than 0.5 grams of fat and 5 calories.

19   Plaintiff alleges that ConAgra uses artificially — and unlawfully — small serving sizes intended

20   for non-stick cooking sprays such as Pam in order to round its sprayable butter down to zero.

21   **I.       FACTUAL ALLEGATIONS**

22        Plaintiff Erin Allen filed this case on March 21, 2013, asserting seven causes of action on

23   behalf of a nationwide class of consumers, and a California subclass, against Defendant ConAgra

24   Foods, Inc.  ECF No. 1 ("Compl.").  Plaintiff asserts claims for unjust enrichment and restitution,

25   fraud by concealment, breach of express warranty, intentional misrepresentation, and violation of

26   the consumer protection statutes of the fifty states and the District of Columbia, excluding Ohio.

27   On behalf of the California class, Plaintiff also asserts causes of action for violation of California's

28   Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), and the Unfair

United States District Court
Northern District of California

Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

According to the Complaint, Conagra sells and markets Parkay Spray, a liquid butter substitute, as having "zero fat" and "zero calories." Compl. ¶ 3. An eight-ounce, 226 gram bottle of Parkay Spray contains 832 calories and 93 grams of fat. Id.¶¶ 4, 28. The Complaint alleges the fat free and calorie free claims are false and misleading, and that Parkay Spray's product label lists the artificially small serving sizes of one spray, or 0.2 grams, for cooking and five sprays, or 1.0 grams, for topping. Id.¶¶ 6, 28. Those serving sizes amount to 1,130 one-spray servings per eight-ounce bottle or 226 five-spray servings. The Complaint also alleges that the Parkay Spray bottle lists as ingredients soybean oil and buttermilk without providing an asterisk and language disclosing the presence of fat in those ingredients in violation of regulations promulgated by the Federal Food and Drug Administration ("FDA"). Id.¶¶ 33–34.

The Complaint alleges that ConAgra knew or should have known that Parkay Spray labeling and marketing are misleading and engender confusion among consumers. Id. ¶ 36. As evidence of such confusion, plaintiff alleges that "[t]he internet is replete with complaints echoing that of the named plaintiff. For example, a contributor to the website 'that's fit' writes, 'This issue makes me furious — so often products that are full of fat, and even transfats, designate completely ridiculous serving sizes, then "round" the fat down to zero. Often, they won't even have on the label anywhere what the actual fat content is. So people think there's no fat when there's a ton.'" Id. According to another contributor, "'[t]his is exactly what the marketing of this product was supposed to do — make you believe . . . that we are consuming less calories than we actually are.'" Id.

Plaintiff Allen alleges that she is a reasonably diligent consumer who, looking for fat free and calorie free alternatives to butter, purchased Parkay Spray in reliance on the statements on the bottle and in ConAgra's marketing. Id. ¶¶ 40–41. According to Plaintiff, she paid a premium for Parkay Spray that she otherwise would not have paid had she known that it contained 93 grams of fat and 832 calories per bottle. Id.¶¶ 44–46. She also alleges that, because it is not fat and calorie free, Parkay Spray is worth less than what Plaintiff and members of the proposed class paid for it,

United States District Court
Northern District of California

2

1    and that she and the class were induced to and did purchase the product instead of competing

2    products based on the false statements and misrepresentations.  Id. ¶¶ 47–48.

3    **II.    REQUESTS FOR JUDICIAL NOTICE**

4            Although a court's review on a motion to dismiss is generally limited to the allegations in

5    the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), the court may

6    properly take judicial notice of material attached to the complaint and of matters in the public

7    record pursuant to Federal Rule of Evidence 201(b).  See, e.g., Castillo-Villagra v. INS, 972 F.2d

8    1017, 1026 (9th Cir. 1992).  The "incorporation by reference" doctrine applies when a "plaintiff's

9    claim depends on the contents of a document, the defendant attaches the document to its motion to

10   dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff

11   does not explicitly allege the contents of that document in the complaint."  Knievel v. ESPN, 393

12   F.3d 1068, 1076 (9th Cir. 2005).  A court may thus take judicial notice of matters of public record

13   without converting a motion to dismiss into a motion for summary judgment, but it may not take

14   judicial notice of a fact that is subject to reasonable dispute.  Lee v. City of Los Angeles, 250 F.3d

15   at 689.  A court "shall take judicial notice if requested by a party and supplied with the necessary

16   information."  Fed. R. Evid. 201(d).  See Sato v. Wachovia Mortg., FSB, No. 11-cv-00810-EJD,

17   2011 WL 2784567, at *2 (N.D. Cal. July 13, 2011).

18           With its motion to dismiss, ConAgra seeks judicial notice of a reproduction of Parkay

19   Spray's current product and nutrition labels.  ECF No. 20, Ex. A.  With the opposition, Plaintiff

20   requests judicial notice of FDA "Inspection Guidelines" concerning serving sizes for food

21   products and a copy of ConAgra's Parkay Spray web page.  ECF No. 25, Exs. B, C.  The parties

22   also submitted copies of various FDA regulations.  No party opposes judicial notice of these

23   documents, and the court finds them appropriate for judicial notice as documents incorporated by

24   reference by the complaint and otherwise documents in the public record not reasonably subject to

25   dispute because their accuracy can readily be determined from sources whose accuracy cannot

26   reasonably be questioned.  The requests for judicial notice are therefore GRANTED.

27

28

United States District Court
Northern District of California

III.    **LEGAL STANDARDS**

On a motion to dismiss, the court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011), <u>cert.</u> <u>den'd</u>, --- U.S. ----, 132 S.Ct. 2101 (2012).

In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." <u>Starr</u>, 652 F.3d at 1216 (original emphasis).

Fraud claims are subject to a heightened pleading standard.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b).  The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as

4

well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007).

## IV.    ANALYSIS

ConAgra moves to dismiss the Complaint as expressly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, which vests the FDA with food labeling authority, 21 U.S.C. § 393, and the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1, which amended the FDCA and sets forth "uniform national standards for the nutritional claims the required nutrient information displayed on food labels," 1990 U.S.C.C.A.N. 3336, 3342; Pub. L. No. 101-535, 104 Stat. 2353 (1990), amending 21 U.S.C. § 343.  In addition, ConAgra moves to dismiss pursuant to the primary jurisdiction doctrine.  Alternatively, ConAgra moves to transfer this action to the District of Nebraska, where a similar case was filed against it and then dismissed.

### A.    Federal Preemption

Federal law preempts a lawsuit based on state law claims when (1) Congress enacts a statute that explicitly preempts state law; (2) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field; or (3) state law actually conflicts with federal law.  See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992).  "[T]he purpose of Congress is the ultimate touchstone in every pre-emption case."  Wyeth v. Levine, 555 U.S. 555, 565 (2009).  In all cases, "and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'"  Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)).

The NLEA expressly preempts "any requirement for the labeling of food of the type required by" various labeling provisions that is not identical to those requirements, as well as "any requirement for nutrition labeling of food" and any requirement respecting nutrient claims that are not identical to the requirements of several FDCA provisions. 21 U.S.C. § 343-1(a)(2)–(5).  Of

5

United States District Court
Northern District of California

1    particular relevance here, the preemption clause applies to 21 U.S.C. § 343(q), titled "Nutrition

2    Information," and § 343(r), titled "Nutrition Levels and Health-Related Claims."  Section 343(q)

3    requires food manufacturers to disclose the amount of fat and calories in their products.  Section

4    343(r) establishes uniform requirements for nutrient content claims.

5           Pursuant to the FDCA and the NLEA, and in particular to FDCA sections 343(q) and (r),

6    the FDA promulgated comprehensive labeling requirements, including those at 21 C.F.R.§§ 101.9

7    (fat and calorie content on nutrition label), 101.12 (reference amounts customarily consumed per

8    eating occasion), 101.13 (nutrient content claims), 101.60 (calorie content claims), and 101.62 (fat

9    content claims).  Plaintiff concedes that those regulations impose express requirements on food

10   labeling relevant to this case; indeed, Plaintiff's causes of action are premised on ConAgra's

11   labeling and marketing of Parkay Spray in a manner that Plaintiff alleges both violates FDA

12   regulations and misleads consumers in violation of state law.

13          Plaintiff argues that the Complaint seeks to impose requirements on ConAgra's labeling

14   and marketing of Parkay Spray that are identical to, and do not deviate from, the requirements of

15   the FDCA, NLEA, and the relevant FDA regulations.  If Plaintiff is correct, the Complaint is not

16   preempted because Plaintiff's suit does not threaten to impose any additional or different

17   requirements on ConAgra than those already required by federal law.  See H.R. Rep. No. 538,

18   1990 U.S.C.C.A.N. 3336, 3337 (noting that NLEA will "prevent State and local governments

19   from adopting *inconsistent requirements* with respect to the labeling of nutrients or with respect to

20   the claims that may be made about the nutrients in foods.  However, these governmental entities

21   are explicitly permitted to enforce Federal requirements with respect to nutrition labeling.")

22   (emphasis added); Chacanaca v. Quaker Oats Co., 752 F.Supp.2d 1111, 1118 (N.D.Cal. 2010)

23   ("Where a requirement imposed by state law effectively parallels or mirrors the relevant sections

24   of the NLEA, courts have repeatedly refused to find preemption.") (citing New York State Rest.

25   Ass'n v. New York City Bd. of Health, 556 F.3d 114, 123 (2d Cir.2009); Jones v. ConAgra Foods,

26   Inc., No. 12-cv-01633-CRB, 2012 WL 6569393, at *4 (N.D. Cal. Dec. 17, 2012) (citing Final

27   Rule, 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995) ("[I]f the State requirement does the same thing

28

6

that the Federal law does . . . then it is effectively the same requirement as the Federal requirement . . . . [T]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by section 403A(a) of the act [21 U.S.C. § 343-1(a)].")).  See also Lohr, 518 U.S. at 471 (FDCA "does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act" in the medical device context).

Plaintiff's claims are based on five alleged violations of FDA regulations: (1) zero calorie nutrition labeling (§ 101.9(c)(1)), (2) zero fat nutrition labeling (§ 101.9(c)(2)), (3) zero calorie content claims (§ 101.60), and (4) "fat free" content claims (§ 101.62).  In addition, Plaintiff alleges Parkay Spray violates the requirement in 21 C.F.R. § 101.62(b)(ii) that permits "fat free" labeling provided "[t]he food contains no added ingredient that is a fat or is generally understood by consumers to contain fat unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states 'adds a trivial amount of fat,' 'adds a negligible amount of fat,' or 'adds a dietarily insignificant amount of fat.'"

At the core of the parties' dispute over the "zero fat" and "zero calorie" label and nutrition claims is the serving size specified on the Parkay Spray bottle.  Each of the alleged violations of federal regulations stems directly from the serving size table for adults established at 21 C.F.R. § 101.12(b)(2), which sets forth the "reference amounts customarily consumed per eating occasion" from which the FDA's other labeling and content claim regulations flow.  ConAgra argues that the one-spray, 0.2 gram, and five-spray, 1.0 gram serving sizes on the bottle are consistent with the serving size table because, under the heading "Fats and Oils," the reference amount for "spray types" is 0.25 grams.  If, as ConAgra argues, the "spray types" reference amount applies to Parkay Spray, then the serving sizes on the bottle are permitted by the regulations.  In turn, that serving size renders the fractional amount of fat in a single spray, and in five sprays, of Parkay Spray below 0.5 grams, which, pursuant to 21 C.F.R. § 101.9(c)(2), means that ConAgra is required to round the fat content down to zero grams of fat per serving on the

nutrition label.  ConAgra would also be permitted to claim that Parkay Spray is "fat free" on the product label pursuant to 21 C.F.R. § 101.62(b)(1)(i).  Similarly, that serving size results in less than five calories per serving, which, pursuant to § 101.9(c)(1), means that ConAgra would be permitted to round the calorie count down to zero calories per serving on its nutrition label, and, pursuant to 21 C.F.R. § 101.60(b)(1)(i), ConAgra would be permitted to claim that Parkay Spray is calorie free on its product label.  Since Plaintiff's claims stem from the serving size definition on the Parkay Spray bottle, if ConAgra's serving size is properly defined under FDA regulations, Plaintiff's challenge to the serving size would be expressly preempted by the NLEA's preemption clause.

However, Plaintiff argues that the reference amount that applies to Parkay Spray is not the 0.25 gram reference amount for "spray type" fats and oils, but the amount for products in the "butter, margarine, oil, shortening" category, which is also under the heading "Fats and Oils" in the table at section 101.12(b)(2).  That reference amount is one tablespoon, which Plaintiff calculates as fifty times the reference amount for "spray type" fats and oils.  If Plaintiff is correct, ConAgra is not permitted to round down Parkay Spray's fat and calorie content because the fat content and calorie count per serving exceeds the 0.5 grams of fat and five calorie thresholds.

The dispute, then, is over whether Parkay Spray belongs in the "spray type" fat or oil category, or the "butter, margarine, oil, shortening" category.  In answering that question, the court first looks to the text of the statute.

### 1. Plaintiff Has Adequately Alleged That Parkay Spray Is A Liquid Butter Substitute

The FDCA requires that food product labels provide "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food."  Id. § 343(q)(1)(A)(i).  Alternatively, "if the use of the food is not typically expressed in a serving size," the label must provide "the common household unit of measure that expresses the serving size of the food."  Id. § 343(q)(1)(A)(ii).  The nutrition label must also state the total number of calories, but that number may be "derived from the total fat, in each serving size or other unit of measure of the food."  Id. § 343(q)(1)(C)(ii).  The corresponding regulation states:

8

United States District Court
Northern District of California

1   "serving size declared on a product label shall be determined from the 'Reference Amounts

2   Customarily Consumed Per Eating Occasion * * * *' (reference amounts) that appear in

3   § 101.12(b) using the procedures described below." Id. § 101.9(b)(2).

4          The table at 21 C.F.R. § 101.9(b)(2) establishes the reference amount for "Butter,

5   margarine, oil, shortening" as one tablespoon.  The reference amount for "Spray type" fats and oils

6   is 0.2 grams.  The regulation explains that "FDA calculated the reference amounts for persons 4

7   years of age or older to reflect the amount of food customarily consumed per eating occasion by

8   persons in this population group.  These reference amounts are based on data set forth in

9   appropriate national food consumption surveys." Id. § 101.12(a)(1).  "The reference amount is

10  based on the major intended use of the food (e.g., milk as a beverage and not as an addition to

11  cereal)." Id. § 101.12(a)(7).  The reference amounts provided in the table are mandatory. Id.

12  § 101.12(b).  Further, "The reference amount for an imitation or substitute food or altered food,

13  such as a 'low calorie' version, shall be the same as for the food for which it is offered as a

14  substitute." Id. § 101.12(d).

15         The table also contains a column titled "Label Statement," which "are meant to provide

16  guidance to manufacturers on the presentation of serving size information on the label, but they

17  are not required." Id. § 101.12 n. 5.  "Manufacturers should use the description of a unit that is

18  most appropriate for the specific product (e.g., sandwich for sandwiches, cookie for cookies, and

19  bar for ice cream bars).  The guidance provided is for the label statement of products in ready-to-

20  serve or almost ready-to-serve form.  The guidance does not apply to the products which require

21  further preparation for consumption (e.g., dry mixes, concentrates) unless specifically stated in the

22  product category, reference amount, or label statement column that it is for these forms of the

23  product." Id.  The label statement for butter products reads: "1 tbsp (___ g); 1 tbsp (15 mL)."

24  The label statement for spray type fats and oils reads: "About ___ seconds spray (___ g)." Id.

25  § 101.12(b)(2).

26         ConAgra asserts the circular argument that Parkay Spray belongs under the product

27  category of spray type fats and oils because "Parkay Spray *is* a spray."  ECF No. 27 ("Reply")

28

9

p. 3.  Parkay Spray is not "liquid butter," ConAgra argues, because the FDCA defines butter as containing milk or cream, or both.  See 21 U.S.C. § 321a.  But the reference table category for butter includes margarine, oil, and shortening along with it, and it also provides that the reference amount for imitation and substitute products "shall be the same as for the food for which it is offered as a substitute."  21 C.F.R. § 101.12(d).  Imitation butter, which may contain neither milk nor cream, therefore belongs in the same reference amount category as butter.

Next, ConAgra argues that the reference amount for spray type fats and oils is more specific than the more general reference amount for butter, margarine, oil, and shortening, and that specific reference amounts trump general reference amounts.  Reply p. 4 (citing Barboza v. California Ass'n Professional Firefighters, 651 F.3d 1073, 1077 (9th Cir. 2011)).  That rule of regulatory interpretation, however, applies only where regulations are in conflict.  See, e.g., Barboza, 651 F.3d at 1077 (resolving circular references in ERISA that are irreconcilable absent further interpretation by relying on specific "exception" to general rule).  Nothing in the text of the regulation here reveals a conflict.  The table lists food product categories; whether Parkay Spray belongs under one or another is properly a question of regulatory interpretation not because the regulation contains conflicting provisions, but because it requires the application of facts to law, a familiar judicial exercise.  Moreover, even if the fat and oil product categories conflict with each other, nothing in the table, or in any other FDA regulations, suggests that the "spray type" category is more specific than any other.

ConAgra also argues that its definition of servings as "one spray" and "five sprays" on the Parkay Spray bottle is dispositive.  ECF No. 17 at 5 ("Any effort by Plaintiff to argue that the serving sizes are artificially small, moreover, is inconsistent with the FDA regulations.").  But since Plaintiff alleges that the serving sizes shown on the Parkay Spray bottle do not comply with the relevant regulations, see Compl. ¶ 6; 21 C.F.R. §§ 101.9(b)(2) and 101.12(b), ConAgra's claim to the contrary does not mean the claim is preempted, but only that there is a live claim between the parties.  Indeed, it is worth noting here that an eight-ounce Parkay Spray bottle claims to contain 1,130 single spray servings.  Putting aside the difficulty of imagining anyone obtaining

United States District Court
Northern District of California

over 1,000 sprays from an eight-ounce bottle of liquid, Plaintiff alleges that Parkay Spray is not typically dispensed in a single spray.  Relying on ConAgra's own serving size definitions would defeat the purpose of the regulations' insistence on objective and uniform food labeling.

ConAgra next argues that the label statement guidance for spray type fats and oils, which is expressed as servings per second of spraying, is inapplicable to Parkay Spray, both because it is non-binding and because Parkay Spray is a manual pump and not an aerosol spray.  Once again, however, ConAgra's argument begs the question.  Plaintiff plausibly alleges that the reason the FDA's label statement guidance does not apply is not because Parkay uses a pump, but Parkay is labeled and used as a topping and butter-substitute – not a cooking spray.

Based solely on the FDCA and FDA regulations, plaintiff adequately alleges that imitation butter, whether it is liquid or solid, and whether it is packaged in a spray pump, a squeeze bottle, or something else, is subject to the serving size requirements of the fat and oil product category "butter, margarine, oil, shortening."

Plaintiff marshals substantial support for its allegation that Parkay Spray should be categorized with other imitation butter products.  According to the Complaint, the product label, and Parkay Spray's website, the product is a substitute for butter that shares butter's "Fresh and Creamy Taste" without the negative health consequences.  The front of the Parkay Spray bottle is an image of corn on the cob.  The serving sizes on the bottle are for cooking and for topping.  And at the bottom of the bottle, the back label invites customers to visit the Parkay Spray website "for delicious recipes."

Similarly, the website advertises Parkay "Spreads."  There, customers can choose from the Parkay Original Spread, which "turns all your family's favorite foods into comfort foods"; Parkay Light Spread, which "has half the fat and calories of butter and regular margarines"; Parkay Original Sticks, which are manufactured like sticks of butter; Parkay Squeeze, "the convenient, family-friendly way to put the buttery taste of Parkay on favorites, like corn-on-the-cob, waffles, and pancakes"; and, finally, Parkay Spray, which is described as follows: "Get the buttery taste of Parkay on all your favorite foods with zero calories per serving!  It's the guilt-free way to top

1   vegetables, potatoes, poultry, and so much more.  Plus, Parkay Spray has 0g of trans fat per

2   serving."  ECF No. 25-3, available at http://www.parkay.com/out-spreads.jsp.

3        These examples are directly related to the FDA's admonition that "the serving size [] is an

4   amount customarily consumed and which is expressed in a common household measure that is

5   appropriate to the food."  21 C.F.R. § 343(q)(1)(A)(i).  Accordingly, FDA calculated the serving

6   sizes "based on data set forth in appropriate national food consumption surveys."  21 C.F.R. §

7   101.12(a)(1).  "The reference amount is based on the major intended use of the food (e.g., milk as

8   a beverage and not as an addition to cereal)."  Id. § 101.12(a)(7).  Plaintiff has alleges that Parkay

9   Spray is intended to be used as butter, and that customers use it that way.  If Plaintiff is correct,

10  then the correct reference amount is the reference amount for butter.

11       Though the court finds the regulations unambiguous, even if they required further

12  interpretation, FDA's reading of its own rule, which is entitled to "substantial deference," Riegel

13  v. Medtronic, Inc., 552 U.S. 312, 328 (2008) (interpreting FDCA and Medical Devices Act),

14  indicates that the "spray type" category was not meant for products like Parkay Spray.  The FDA

15  has not squarely addressed the reference amount for Parkay Spray, but it has published guidance

16  regarding the products to which each category in the reference table applies.  The FDA published

17  its "Guide to Nutrition Labeling and Education Act (NLEA) Requirements" in August 1994.[1]  The

18  preamble provides: "The following information is provided as assistance for reviewing food labels

19  for compliance with new requirements for nutrition labeling and nutrient claims."  Attachment 26

20  to the Guide[2] lists each product category found in the reference amount table followed by each

21  product to which the category applies.  Under "Fats and Oils," the products listed for the "butter,

22  margarine, oil, shortening" category are: "All types of butter and margarine (regular, diet, liquid,

23  and whipped); spreads; oils; and shortenings."  By contrast, the product listing for the "spray

24

25  _____

26  [1]  The guide is available on the FDA's website at
    http://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm074948.htm.

27  [2] Attachment 26 is available at available at

28  http://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm114704.htm.

United States District Court
Northern District of California

types" category reads: "Nonstick cooking sprays (e.g., Pam)."

ConAgra argues that the spray type category is not limited to the products listed in Attachment 26, and that Pam is only an example that does not exclude the possibility that Parkay Spray belongs in the same category. That argument misreads the table. Pam is listed as an example of "nonstick cooking sprays." Footnote one to Attachment 26 states: "Each product category includes all forms of products which belong to the category, e.g., ready-to-serve, almost ready-to-serve i.e. heat and serve, brown and serve), dry mix, concentrate, dough and butter." Liquid butter, and substitute liquid butter, as well as spreads, belong in the butter product category.

The court concludes that Plaintiff has adequately alleged that the serving size listed on Parkay Spray bottles is the wrong serving size. Because Plaintiff does not seek to impose requirements that differ from those imposed by the FDCA, NLEA, and FDA regulations, Plaintiff's claims are not preempted. See Lohr, 518 U.S. at 471 (FDCA "does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act" in the medical device context).

### 2.      Plaintiff's Claims Do Not Impermissibly Arise Under The FDCA

ConAgra also argues that Plaintiff's claims are preempted by the FDCA because plaintiffs are impermissibly suing to enforce it.

There is no private right of action under the FDCA. See 21 U.S.C. 337(a) ("[A]ll [] proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). However, "[t]he existence of the FDCA does not completely preclude injured parties from asserting claims of fraud or false advertising. Other legislation, state and federal remains in effect to protect consumers from false and deceptive prescription drug advertising." In re Epogen & Aranesp Off–Label Mkt'g & Sales Practice Litig., 590 F.Supp.2d 1282, 1290 (C.D.Cal.2008), quoted with approval in Jackson v. Balanced Health Products, Inc., C 08-05584 CW, 2009 WL 1625944 (N.D. Cal. June 10, 2009). Thus, Plaintiffs must navigate a "narrow gap" to escape preemption: they *must* sue for conduct that specifically violates the FDCA

United States District Court
Northern District of California

13

to avoid express preemption, but they cannot sue *because* the conduct violates the FDCA.  Perez v. Nidek Co., Ltd., 711 F.3d 1109, 1120 (9th Cir. 2013) (quoting In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litig., 623 F.3d 1200, 1204 (8th Cir. 2010).

Plaintiff's claims thread this gap.  The Complaint alleges that Parkay Spray's labels and marketing are false and misleading because they advertise that Parkay Spray is "fat free" and "calorie free" when it is not.  Plaintiff's allegation that Defendant's statements violate FDA regulations as written is necessary for her claims to avoid preemption, but not necessary for her to establish the underlying state law causes of action.  The FDCA therefore does not preclude Plaintiff from bringing those claims.  See, e.g., Jackson v. Balanced Health Products, Inc., No. 08-cv-05584-CW, 2009 WL 1625944, at *4 (N.D. Cal. June 10, 2009) (no preemption where "Plaintiffs' claims are based on false and misleading advertising and mislabeling under the Sherman Law.").  To hold otherwise would improperly invade "the historic primacy of state regulation of matters of health and safety."  Lohr, 518 U.S. at 485.

Because Plaintiff's state law claims do not threaten to impose requirements on ConAgra that differ from those required by FDA regulations, ConAgra's motion to dismiss on the basis of preemption is hereby DENIED.

### B.    Primary Jurisdiction

ConAgra moves to dismiss on the separate basis that Plaintiff's claims depend on federal regulations that are within FDA's primary jurisdiction.  Per ConAgra, "Plaintiff's claims ask this court (and ultimately a jury) to insert themselves into an ongoing field of regulatory activity."  ECF No. 17 ("Opp.") p. 8.

The doctrine of primary jurisdiction applies in a "limited set of circumstances."  Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  It permits courts to stay proceedings, or to dismiss a complaint without prejudice, pending the resolution of an issue within the "special competence of an administrative agency."  The doctrine is prudential; it applies when "a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant

United States District Court
Northern District of California

14

1    industry rather than by the judicial branch." Id.  A court's decision to invoke the primary

2    jurisdiction doctrine "does not indicate that it lacks jurisdiction." Id.

3            Courts generally look to four factors in evaluating the propriety of the primary jurisdiction

4    doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the

5    jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that

6    subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise

7    or uniformity in administration." Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc., 307

8    F.3d 775, 781 (9th Cir. 2002).  However, the doctrine is only appropriate if a claim "requires

9    resolution of an issue of first impression, or of a particularly complicated issue that Congress has

10   committed to a regulatory agency," and if "'protection of the integrity of a regulatory scheme

11   dictates preliminary resort to the agency which administers the scheme.'" Brown v. MCI

12   WorldCom Network Servs., 277 F.3d 1166, 1172 (9th Cir. 2002) (quoting United States v. Gen.

13   Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)).  Also crucial is "whether application will

14   enhance court decision-making and efficiency by allowing the court to take advantage of

15   administrative expertise." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1051 (9th

16   Cir. 2000).  For example, the Ninth Circuit has approved of district courts' invocation of the

17   doctrine "where it is unclear whether a federal statute applies to a new technology." Clark, 523

18   F.3d at 1115.

19           Though the question of which reference amount requirement applies to Parkay Spray

20   might narrowly be described as one of first impression, the same could be said of challenges to

21   any food product that is not already explicitly listed in the regulations.  In enacting the NLEA,

22   Congress intended for FDA to "have the first word" with respect to reference amounts and serving

23   sizes. See United States v. Culliton, 328 F.3d 1074, 1082 (9th Cir. 2003).  And FDA had the first

24   word in promulgating the relevant regulations and publishing its guide to NLEA requirements (in

25   1994), which establish the boundaries of the product categories in 21 C.F.R. § 101.12(b)(2).  The

26   issues raised by the Complaint can be answered by applying those regulations in a straightforward

27   manner.  The primary jurisdiction doctrine "does not require that all claims within an agency's

28

United States District Court
Northern District of California

15

purview be decided by the agency.  Nor is it intended to 'secure expert advice' for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit."  Brown, 277 F.3d at 1172.  Though the doctrine plays an important role in "limited circumstances," it is not meant to immunize litigants from liability based on state law claims whenever interpretation of federal regulations is required.

Moreover, a stay of these proceedings, or, as ConAgra seeks, a dismissal, would do little to enhance the uniform administration of the NLEA, or to enhance the court's decision-making or efficiency, and it would needlessly frustrate "the historic primacy of state regulation of matters of health and safety."  Lohr, 518 U.S. at 485.  See, e.g., Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 375 (N.D. Cal. 2010) (state law consumer protection claims based on misleading food labeling regarding geographic origin of the product did not "threaten the integrity of the FDA's regulatory scheme governing misbranded food and do not implicate technical and policy questions that are reserved for the FDA"); Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) (claims based on misleading use of the term "all natural" in food products were not subject to primary jurisdiction doctrine because "this is not a technical area in which the FDA has greater technical expertise than the courts — every day courts decide whether conduct is misleading").

The FDA's expertise and uniform administration of the nation's food labeling laws is not required in order to determine whether Parkay Spray is more like sprayable oil or liquid butter for purposes of serving size requirements.  That question may be answered through the "straightforward interpretation" of FDA regulations.  Brown, 277 F.3d at 1173 (reversing and remanding dismissal based on primary jurisdiction doctrine).  ConAgra's motion to dismiss on the basis of the primary jurisdiction doctrine is therefore DENIED.

### C.    Fraud Allegations

ConAgra also moves to dismiss Plaintiff's claims for violation of the UCL, violation of the CLRA, unjust enrichment, fraud by concealment, and and intentional misrepresentation, all on the grounds that Plaintiff's Complaint fails to plead fraud with particularity pursuant to Federal Rule

United States District Court
Northern District of California

1    of Civil Procedure 9(b).  Particularly, ConAgra contends that Plaintiff has failed to plead either

2    deception or reliance.  With regard to the element of deceit, ConAgra argues that "Plaintiff has not

3    set forth with particularity any explanation of how the Parkay Spray label statements were false or

4    misleading."  With regard to the element of reliance, ConAgra contends that Plaintiff "does not

5    allege how she was misled" by Parkay Spray's zero fat and zero calorie statements and nutrition

6    labeling.

7            The Complaint alleges that Plaintiff purchased Parkay Spray because she believed it was

8    free of fat and calories, based on Defendant's statements about the product; that the statements

9    were not true; and that she would not have purchased the product if she had known the statements

10   were not true.  These allegations are sufficient to satisfy Rule 9(b).  ConAgra's suggestion that

11   Plaintiff should have alleged "what serving size she claims is proper or the quantities in which she

12   used the product" ignores the allegation that, no matter the serving size, or in what quantities she

13   used Parkay Spray, Plaintiff alleges that she understood from ConAgra's labeling and marketing

14   that the product did not contain fat or calories.

15           ConAgra's argument that Plaintiff fails adequately to plead the reasonable consumer

16   standard because her belief that Parkay Spray contained no fat or calories was "idiosyncratic"

17   fares no better.  Plaintiff alleges that over forty percent of Parkay Spray's 226 grams are grams of

18   fat, even though the product claims to be fat free.  The bottle, she alleges, contains 832 calories,

19   even though it claims to contain none.  The Complaint reproduces customer complaints other than

20   Plaintiff's own as well, each of which evidences that consumers were deceived by ConAgra's

21   labeling and marketing.

22           Plaintiff has adequately pled her fraud allegations, and the question of whether she can

23   prove them is not for the court to decide at this juncture.  See, e.g., Williams v. Gerber Products

24   Co., 552 F.3d 934, 939 (9th Cir. 2008) (reversing dismissal of consumer protection, fraud, and

25   warranty claims based on misleading fruit snack labeling); Khasin v. Hershey Co., No. 12-cv-

26   01862-EJD, 2012 WL 5471153, at *8 (N.D. Cal. Nov. 9, 2012) (denying motion to dismiss fraud

27   claims based on health claims made on chocolate products; noting "the existence of questions of

28

United States District Court
Northern District of California

17

fact with regards to Plaintiff's allegations of fraud or misrepresentation does not render the pleadings inadequate").

### D.    Consumer Protection Causes of Action

Without citing to relevant authority, ConAgra seeks dismissal on the basis of the Supreme Court's decisions in Iqbal, supra, 556 U.S. at 679, and Twombly, supra, 550 U.S. at 570, of Plaintiff's seventh cause of action, which asserts on behalf of a nationwide class of Parkay Spray customers claims for violation of the consumer protection statutes of forty-eight states and the District of Columbia.  ConAgra argues that "Plaintiff's laundry list referring to consumer protection acts . . . comprises precisely the type of threadbare and formulaic allegations that are insufficient."  Opp. p. 15.  ConAgra complains that "Plaintiff has failed to even include a formulaic recitation of the elements of those claims, and she has failed to allege any facts indicating that she would have a claim based on the law of states other than California."  Id.

The Motion misapprehends Iqbal and Twombly.  Plaintiff is required to plead "enough *facts* to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570 (emphasis added).  "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Plaintiff has satisfied that standard here.  If ConAgra believed that Plaintiff failed to state a claim under one or more state consumer protection statutes, they were free to make that argument in their motion; but the fact that Plaintiff asserts claims under fifty consumer protection statutes rather than just one is not a basis, in and of itself, for dismissal.  Defendant's motion to dismiss the seventh cause of action is therefore DENIED.

### E.    Breach of Express Warranty

A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached.  See Weinstad v. Dentsply Int'l, Inc., 180 Cal. App. 4th 1213, 1227 (2010).  In California, a breach of express warranty claim is governed by Section 2313 of the Uniform Commercial Code.  Id.  Proof

United States District Court
Northern District of California

1    of reliance on specific promises is not required.  Id.

2           Courts in this district have previously found that plaintiffs stated express warranty claims

3    based on allegedly misleading food labeling.  See, e.g., Brown v. Hain Celestial Grp., Inc., 11-cv-

4    03082-LB, 2012 WL 6697670, at *16 (N.D. Cal. Dec. 22, 2012) ("All Natural & Organic"

5    cosmetic products); Vicuna v. Alexia Foods, Inc., 11-cv-6119-PJH, 2012 WL 1497507, at *2

6    (N.D. Cal. Apr. 27, 2012) ("All natural" potato products).

7           ConAgra relies on two decisions in which misleading food label warranty claims were

8    dismissed because food labels do not constitute express warranties against a product defect.  See

9    Maxwell v. Unilever U.S., Inc., 12-cv-01736-EJD, 2013 WL 1435232, at *4 (N.D. Cal. Apr. 9,

10   2013); Hairston v. S. Beach Beverage Co., Inc., 12-cv-1429-JFW, 2012 WL 1893818, at *5 (C.D.

11   Cal. May 18, 2012).  Neither decision applies here; in each case, the warranty claims arose under

12   the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., and California's Song-Beverly

13   Consumer Warranty Act, Cal. Civ. Code § 1790, et seq., which provide private rights of action for

14   breaches of express warranties, defined more narrowly than common law breach of warranty. [3]  In

15   particular, those acts require that the manufacturer warrant that the product is free from defects.

16   See 15 U.S.C. § 2301(6)(A); Cal. Civ. Code § 1791.2(a)(1).

17          Plaintiff alleges that ConAgra affirmatively described Parkay Spray as "fat free" and

18   "calorie free," and that the description was part of the basis of the bargain.  Because Plaintiff has

19   plausibly alleged that Parkay Spray is not fat free or calorie free, Plaintiff adequately states a claim

20   for common law breach of express warranty.  ConAgra's motion to dismiss on that basis is

21   therefore DENIED.

22          **F.   Unjust Enrichment**

23          ConAgra is correct that in California there is no standalone cause of action for unjust

24   enrichment. "Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract

---

[3] This Court has rececntly recognized that a plaintiff cannot state a claim under the Magnuson-Moss Warranty Act or the Song-Beverly Act on facts similar to those presented here.  See Clancy v. The Bromley Tea Co., 12-CV-03003-JST, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013).

United States District Court
Northern District of California

1   or imposition of a constructive trust." <u>Myers–Armstrong v. Actavis Totowa, LLC,</u> 382 Fed. Appx.

2   545, 548 (9th Cir.2010) (unpublished) (citing <u>McKell v. Washington Mut., Inc.</u>, 142 Cal.App.4th

3   1457, 1489, 49 Cal.Rptr.3d 227, 254(2006); <u>see also Hill v. Roll Intl. Corp,</u> 195 Cal. App. 4th

4   1295, 1307, 128 Cal.Rptr.3d 109 (2011).  Plaintiff has no such claims.  Moreover, she is already

5   seeking restitution as part of her UCL claim, Compl. ¶ 104.  ConAgra's motion regarding this

6   claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

7       **G.    Motion to Transfer**

8           Upon motion, for the convenience of the parties and witnesses, and in the interests of

9   justice, district courts may, in their discretion, transfer any civil action to any other district where

10  it might have been brought pursuant to 28 U.S.C. § 1404(a).  Ninth Circuit courts evaluate several

11  factors in considering a motion to transfer, including the plaintiff's choice of forum, the contacts

12  relating to the plaintiff's cause of action in the chosen forum, the parties' contacts with the forum,

13  the availability of compulsory process to compel attendance of unwilling non-party witnesses, the

14  differences in costs of litigation in the two forums, the ease of access to sources of proof, the

15  location where the relevant agreements were negotiated or executed, and the state most familiar

16  with governing law.  <u>See</u> <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498–99 (9th Cir. 2000).

17  The statute calls for an "individualized, case-by-case consideration of convenience and fairness."

18  <u>Stewart Org. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988).

19          ConAgra moves to transfer this action to the District of Nebraska because a different

20  plaintiff represented by one of Plaintiff's attorneys filed and then dismissed an action in Nebraska

21  prior to the filing of the instant Complaint, and because ConAgra is based in Nebraska.  The court

22  is not persuaded that the convenience of the parties or the interests of justice require transfer.

23          Fundamental to federal law is the axiom that the plaintiff is master of the complaint.  <u>See</u>

24  <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 164 (1997) (citing <u>Caterpillar Inc. v.</u>

25  <u>Williams</u>, 482 U.S. 386, 398 (1987)).  ConAgra argues that Plaintiff's choice of forum is entitled

26  to less deference here because she proposes a class action.  "Although great weight is generally

27  accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a

28

United States District Court
Northern District of California

1    class, the named plaintiff's choice of forum is given less weight." Lou v. Belzberg, 834 F.2d 730,

2    739 (9th Cir. 1987)(citations omitted).

3          Next, ConAgra argues that plaintiff's choice of forum should be discounted because "there

4    is a suggestion of forum shopping." Opp. p. 20 (quoting Jovel v. i-Helath, Inc., 2012 WL

5    5470057, at *4 (C.D. Cal. Nov. 8, 2012). On this point, the Court is less persuaded. A now-

6    dismissed action in another district, brought by a different plaintiff, has no bearing on the

7    convenience of the parties or the interests of justice. Plaintiff is a California resident suing, in

8    part, under California law. Her choice of forum is proper. Relatedly, this court is obviously more

9    familiar with California law than an out-of-state district court. That factor too weighs against

10   transfer.

11         As for the relative contacts of the parties to the forums, although Plaintiff is a resident of

12   California, that fact does not weigh particularly heavily. As a colleague court recently observed,

13         Although Plaintiff would have some role in a trial, it would not be nearly as
           significant as that of Defendant, its executives, and its scientists. Indeed, it is not
14         clear to the court what Plaintiff would testify about beyond the fact of her purchase,
           since the gravamen of the Complaint is the falsity of the claims on the package,
15         which would not be a subject of Plaintiff's testimony.

16   Jovel, 2012 WL 5470057, at *3. On the other hand, ConAgra's claim to its putative home forum

17   of Nebraska is equally weak. Parkay Spray is sold and marketed nationally. The District of

18   Nebraska has no greater and no lesser relationship to Plaintiff's claims than this one. In addition,

19   although ConAgra's headquarters are in Nebraska, it identifies no specific witnesses who are

20   located there. The parties are both represented by law firms with nationwide offices. ConAgra

21   itself has offices nationwide, as it explains in its motion and accompanying declarations. And

22   because party witnesses need not travel for deposition, and discovery will inevitably be exchanged

23   electronically, ConAgra's claims of inconvenience are not persuasive. Finally, ConAgra does not

24   identify any non-party witnesses relevant to this action that would weigh in favor of transfer.

25         Taking all the factors into account, ConAgra fails to establish that the convenience of the

26   parties and witnesses, and the interests of justice, require transfer. The court, in its discretion,

27   therefore DENIES the motion.

28

United States District Court
Northern District of California

**V.    CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS the motion as to Plaintiff's claim for unjust enrichment, and that claim is DISMISSED WITHOUT LEAVE TO AMEND.  The Court DENIES ConAgra's Motion to Dismiss as to Plaintiff's remaining claims, and DENIES Defendant's Motion to Transfer.

**IT IS SO ORDERED**.

Dated: September 2, 2013



JON S. TIGAR
United States District Judge