1
2
3
4
5

**UNITED STATES DISTRICT COURT**

6

**NORTHERN DISTRICT OF CALIFORNIA**

7

8   **PATRICK HENDRICKS,** individually and on behalf
of all others similarly situated,

9

Plaintiffs,

10

vs.

11

**STARKIST CO.,** *et al.*,

12

Defendant.

13

**Case No.: 13-cv-729 YGR**

**ORDER DENYING MOTION TO
TRANSFER VENUE (DKT. NO. 19)**

14   Plaintiff Patrick Hendricks brings this putative class action against Defendant StarKist Co.

15   ("Starkist").  Plaintiff seeks monetary damages and injunctive relief on the grounds that four of

16   StarKist's canned tuna products are under-filled and, thus, substantially underweight.  Plaintiff

17   alleges claims for breach of express and implied warranty, unjust enrichment, negligent

18   misrepresentations, and fraud, as well as violation of: California's Consumer Legal Remedies Act

19   ("CLRA"), Cal. Civil Code § 1750 *et seq.*; the California Unfair Competition Law ("UCL"), Cal.

20   Bus. & Prof. Code § 17200 *et seq.*; and California's False Advertising Law ("FAL"), Cal. Bus &

21   Prof. Code § 17500.  StarKist has filed a Motion to Transfer this action to the Western District of

22   Pennsylvania under 28 U.S.C. section 1404(a) ("Section 1404(a)"). (Dkt. No. 19.)

23   Having carefully considered the papers submitted, the parties' oral arguments, and the

24   pleadings in this action, and for the reasons set forth below, the Court hereby **DENIES** the Motion to

25   Transfer under Section 1404(a).

26   **I.    BACKGROUND**

27   StarKist is a Delaware Corporation with its principal place of business in Pittsburgh,

28   Pennsylvania.  On February 19, 2013, plaintiff filed this putative class action in his individual

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

capacity and on behalf of a nationwide class of all similarly situated purchasers of four StarKist canned tuna products.  The products at issue are 5-ounce cans of StarKist: (1) Chunk Light Tuna in Water; (2) Chunk Light Tuna in Vegetable Oil; (3) Solid White Albacore Tuna in Water; and (4) Solid White Albacore Tuna in Vegetable Oil (collectively, the "Products").  (Complaint, Dkt. No. 1,[1] ¶ 1.)  Plaintiff also seeks to represent a subclass of individuals who purchased the Products in California.

## II.   APPLICABLE STANDARD

A federal district court has discretion to transfer a case under Section 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or division to which all parties have consented."  28 U.S.C. § 1404(a).  Transfer pursuant to Section 1404(a) is discretionary and should be adjudicated according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988).  A transfer under Section 1404(a) requires the moving party to show that: (1) venue is proper in the transferor district; (2) the transferee district is one where the action might have been brought; and (3) the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice.  *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 507 (C.D. Cal. 1992) (citation omitted).  Section 1404(a) is meant to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

## III.   DISCUSSION

The burden is on StarKist to establish that all three prongs of the analysis favor transfer.  *Goodyear Tire*, 820 F. Supp at 507.  Hendricks does not dispute StarKist's showing as to the venue prongs.  Instead, the parties focus on the analysis of the various factors relevant to the third prong, *i.e.*, (a) the convenience of the parties and witnesses; and (b) whether transfer will promote the interests of justice.  The Court examines each set of factors in turn.

---

[1]  All further "¶" references are to the Complaint, unless otherwise stated.

A.     CONVENIENCE OF PARTIES AND WITNESSES

Section 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen*, 376 U.S. at 616.  In the Ninth Circuit, in determining whether the convenience of the parties and witnesses weighs in favor of transfer, courts look to various factors including: (1) the plaintiff's choice of forum; (2) convenience of the witnesses; (3) the ease of access to sources of proof; (4) the respective parties' contacts with the forum; (5) the state that is most familiar with the governing law; and (6) the differences in the costs of litigation in the two forums.  *Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).  These factors are non-exhaustive and the Court ultimately has discretion in deciding which factors to consider and whether they weigh in favor of transfer. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

1.     **Plaintiff's Choice of Forum**

Generally, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  StarKist argues that Hendricks' choice of forum is entitled to less deference because Hendricks is simply the named defendant in a putative class action.  "Although great weight is generally accorded plaintiff's choice of forum, when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight."  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citation omitted); *see also Italian Colors Rest. v. Am. Express Co.*, C 03-3719 SI, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10, 2003) (granting less deference to nationwide class representatives); *Bennett v. Bed Bath & Beyond, Inc.*, C 11-02220 CRB, 2011 WL 3022126, at *2 (N.D. Cal. July 22, 2011) (citation omitted) (granting less deference to statewide class representatives).

Here, Hendricks seeks to represent both a nationwide class and a California subclass.  The rationale for a diminished degree of deference is that "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the

claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas., Co.*, 330 U.S. 518, 524 (1947). "As deference accorded to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases." *Glaxo Grp. Ltd. v. Genentech, Inc.*, C 10-00675 JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010) (citation omitted).

Even in this class action context, Hendricks contends that his choice of forum is entitled to significant deference. First, Hendricks argues that, because no class has yet been certified, he is currently the only plaintiff and will bear a fiduciary responsibility to lead the class. Hendricks asserts that at least one court has found that the lack of a certified class entitles plaintiff's choice of forum to some deference. *Van Slyke v. Capital One Bank*, 503 F. Supp. 2d 1353, 1363 (N.D. Cal. 2007) (Alsup, J.) ("[E]ven if a nationwide class were certified the named plaintiffs would still bear a fiduciary responsibility to lead the class. . . . [P]laintiff's choice of forum is still entitled to some deference, even though diminished. This factor cuts *against* transferring this action.").

Second, Hendricks argues that his choice of forum still carries significant weight because there is no evidence of forum shopping. The fact that a plaintiff lives in the transferor district and purchased the product at issue there suggests that plaintiff is not forum shopping. *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1078 (S.D Cal. 2011). In determining the appropriate amount of deference to accord plaintiff's choice of forum, courts must consider the extent of the parties' contacts with the chosen forum, including contacts relating to the plaintiff's cause of action. *Belzberg*, 834 F.2d at 739 (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). Plaintiff's choice of forum would receive only minimal deference if the operative facts had not occurred within the forum and the forum had no interest in the parties or subject matter. *Id.* In contrast, when "there is no evidence that plaintiffs engaged in forum shopping and both plaintiffs and defendant have significant contacts with the Northern District of California, plaintiffs' choice of forum carries significant weight." *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010).

Here, StarKist concedes that Hendricks has not engaged in forum shopping and that both parties have significant contacts with this district, since Hendricks alleges that he lives in, and

United States District Court
Northern District of California

4

United States District Court
Northern District of California

purchased the Products in, this district.  (Compl. at 15.)  StarKist also concedes that it manufactures and distributes the Products in this district.  (Pogue Dec. ¶ 3.)  StarKist attempts to distinguish *Roling* by asserting that the court there deferred to the plaintiff's choice of forum because the defendant's contacts were spread equally between the transferor and potential transferee.  StarKist misreads *Roling*.  The court there, like other courts in this district, expressly deferred to the plaintiff's choice of forum in a class action context because the plaintiff had substantial contacts to the forum and the claims at issue arose from that forum, not because defendant had equal contacts.  *Roling*, 756 F. Supp. 2d at 1186; *see also Shultz v. Hyatt Vacation Mktg. Corp.*, 10-CV-04568-LHK, 2011 WL 768735, at *3 (N.D. Cal Feb. 28, 2011) (holding that plaintiff's choice of forum is "due some weight" where plaintiff alleges that her claims arose within the transferor district in which she resides, and the California subclass brings claims for violation of California law); *Holliday v. Lifestyle Lift, Inc.*, C 09-4995 RS, 2010 WL 3910143, at *6 (N.D. Cal. Oct. 5, 2010) (finding that plaintiff's choice of forum carries some weight where the alleged violations occurred in the Northern District of California and the California subclass advanced claims grounded upon California labor law); *Evancho v. Sanofi-Aventis U.S. Inc.*, C 07 00098 SI, 2007 WL 1302985, at *2 (N.D. Cal. May 3, 2007) (according plaintiff's choice of forum some weight despite the scattering of putative class members across the nation where one of the named plaintiffs lived and worked in the transferor district and several of the class claims involved California labor laws).

Because Hendricks' choice of forum deserves at least some deference, this factor weighs in favor of denying the motion to transfer.

### 2.  Convenience of the Witnesses

"The convenience of witnesses is said to be the most important factor in passing on a transfer motion."  *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981) (citation omitted).  However, not all witnesses are afforded the same level of consideration.  "The convenience of non-party witnesses is a more important factor than the convenience of party witnesses."  *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (citation omitted).  Courts give less consideration to the convenience

of party witnesses or witnesses employed by a party because these witnesses can be compelled by the parties to testify regardless of where the litigation will occur. *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009). In other words, compulsory process generally is not required to compel the attendance of party witnesses. "In establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007).

In this case, neither party identifies any non-party witnesses that would be inconvenienced by either granting or denying the motion to transfer. StarKist contends that even though this factor is primarily concerned with non-party witnesses appearing to testify at trial, party witnesses are still relevant to the analysis. StarKist reasons that the balancing of convenience to party witnesses weighs in favor of transfer because StarKist has more party witnesses than Hendricks, and StarKist employees will provide the most relevant testimony regarding the issues in this case. StarKist generally identifies its executive, research and development, sales and marketing, and scientific and quality assurance teams as groups all located in Pennsylvania that would provide witness testimony in this case. (Pogue Decl. ¶¶ 6-8.)

Even if StarKist is correct in claiming that it will provide more witnesses and those witnesses will provide the most relevant testimony in this case, StarKist still only refers to party witnesses, and not the non-party witnesses with which this factor is chiefly concerned. Essentially, StarKist argues that having to transport its own testifying employees to California will be highly inconvenient and costly to the company. However, this would not be a sufficient reason to justify a transfer to the Western District of Pennsylvania. As discussed previously, courts have held that "[t]ransfer is inappropriate where it would merely shift rather than eliminate the inconvenience." *Costco Wholesale*, 472 F. Supp. 2d at 1195.

For the foregoing reasons, this factor weighs in favor of denying the motion to transfer.

**3.      Ease of Access to Sources of Proof**

StarKist claims that virtually all relevant documents and data reside in the Western District of Pennsylvania and would be expensive to transfer to the Northern District of California.

United States District Court
Northern District of California

1   However, courts have stated that the transportation of documents generally is not regarded as a

2   burden because of technological advances in document storage and retrieval.  *Van Slyke*, 503 F.

3   Supp. 2d at 1362 (citation omitted); *see also Szegedy v. Keystone Food Products, Inc.*, No. CV 08-

4   5369 CAS(FFMX), 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("As other courts have

5   noted, ease of access to documents does not weigh heavily in the transfer analysis, given that

6   advances in technology have made it easy for documents to be transferred to different locations.").

7   Nevertheless, StarKist is adamant that the ease of access to these sources of proof in the Western

8   District of Pennsylvania weighs in favor of transfer.  *See Italian Colors*, 2003 WL 22682482, at *5

9   (favoring transfer to district where most documentary evidence would be found, despite cost-

10  reduction developments in electronic conveyance).

11      Generally, courts are wary of merely shifting, as opposed to eliminating, the burden of

12  inconvenience from one party to the other.  *Decker Coal*, 805 F.2d at 843.  Because both parties

13  claim inconvenience with regard to the transfer of documents, and it appears that transfer would

14  merely shift StarKist's litigation costs to Hendricks, this factor is neutral.

15      **4.      Contacts with the Plaintiff's Chosen Forum**

16      StarKist does not dispute that both parties have substantial contacts with the Northern

17  District of California.  Nor does StarKist dispute that those substantial contacts are related to

18  Hendricks' causes of action in this district.  StarKist markets and distributes the tuna products at

19  issue in this district, and Hendricks, who lives in this district, purchased such products here.

20  Although StarKist is headquartered in Pennsylvania and may have substantial contacts with other

21  districts, "this factor considers the parties' contacts with the forum, not whether those contacts are

22  unique or whether the parties have contacts with other forums."  *In re Ferrero Litig.*, 768 F. Supp.

23  2d at 1080.  Therefore, this factor weighs in favor of denying the motion to transfer.

24      **5.      Forum Most Familiar With the Governing Law**

25      Hendricks argues that the motion to transfer should be denied because California courts are

26  more familiar with the California laws that will govern the three claims brought on behalf of the

27  California subclass.  As other courts have found, "[a] California district court is more familiar with

28  California law than district courts in other states."  *In re Ferrero Litig.*, 768 F. Supp. 2d at 1081

7

United States District Court
Northern District of California

1   (citing *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008); *see also Van Slyke*, 503 F.

2   Supp. 2d at 1366 ("Since this order has determined that California law should govern, at least as to

3   the California claims, it would be better to have a judge familiar with California law to preside over

4   this case.").

5          StarKist argues that regardless of where the case is litigated, the claims of putative class

6   members outside of the California subclass will be decided under the consumer protection laws of

7   their 49 separate states.  Even with respect to the California subclass, StarKist argues that the

8   Western District of Pennsylvania is fully capable of deciding issues arising under California law,

9   since the "'courts in [one state] are fully capable of applying [another state's] substantive law.'"

10  *Hawkins v. Gerber Products Co.*, 12-CV-465-MMA JMA, 2013 WL 627066, at *5 (S.D. Cal. Feb.

11  20, 2013) (quoting *Metz* 674 F. Supp. 2d at 1148).

12         Without reaching the question of what state's law would apply to putative class members

13  outside of the alleged California subclass, the Court finds merit to the argument that the California

14  district courts are more familiar with the California laws governing the claims here.  This factor

15  weighs in favor of denying a transfer.

16         **6.     Differential Costs of Litigation in the Two Forums**

17         StarKist argues that, because it would have to provide most of the witnesses and relevant

18  documents, a transfer would reduce its litigation costs.  However, transfer would increase the costs

19  to plaintiff since Pennsylvania is not his home forum.  "In any balancing of conveniences, a real

20  showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the

21  inconvenience the defendant may have shown."  *Koster*, 330 U.S. at 524.  "[T]ransfer is not

22  appropriate merely to shift the inconvenience from one party to another."  *Safarian v. Maserati N.*

23  *Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008).

24         Moreover, "[a] court may also consider the relative means of the parties in deciding a

25  transfer motion."  *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (citation

26  omitted) (transfer not favored where moving party was large corporation possessing considerably

27  greater financial assets than plaintiffs).  While the relative means of the parties does not carry

28

8

1   substantial weight, it is a relevant consideration.  *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d

2   810, 820 (N.D. Cal. 2008) (citation omitted).

3         Here, the costs of litigation is a neutral factor because StarKist is a large corporation and it

4   does not show how transfer would do more than simply reduce StarKist's litigation costs while

5   increasing Hendricks' costs.

6   **B.**   **INTERESTS OF JUSTICE FACTORS**

7         "Relevant public interest considerations include degrees of court congestion, local interest

8   in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated

9   forum with jury duty."  *Brackett*, 619 F. Supp. 2d at 821 (citing *Decker Coal*, 805 F.2d at 843).

10  The Court now turns to the interest of justice factors argued by StarKist in its motion.[2]

11        **1.**   **Degrees of Court Congestion**

12        StarKist argues that this factor favors transfer because the caseload per judge is nearly twice

13  as high in the Northern District of California as in the Western District of Pennsylvania.  As of

14  September 2012, the Northern District of California had 525 cases pending per judge, while the

15  Western District of Pennsylvania had only 278 cases pending per judge.  (Def.'s Reply [Dkt. No.

16  30] at 14.) (citing http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-

17  courts-september-2012.aspx).

18        Nevertheless, a court "should not transfer a case on the basis of docket congestion after

19  determining the balance of the other factors weighs against transfer."  *Costco*, 472 F. Supp. 2d at

20  1196.  Moreover, "[t]he real issue is not whether a dismissal will reduce a court's congestion but

21  whether a trial may be speedier in another court because of its less crowded docket."  *Gates Learjet*

22  *Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).  Based on the same statistical data cited by

23  StarKist, the median time from filing to disposition and filing to trial in the Northern District of

24  California are 6.4 months and 32.7 months, respectively.  In the Western District of Pennsylvania,

25  the median time from filing to disposition and filing to trial are 6.6 months and 32.5 months,

26  respectively.

27  _____

28      [2]  Because StarKist did not address a potential conflict of laws in its motion, the Court does
not consider this factor in the analysis.

United States District Court
Northern District of California

Because there is no meaningful difference between the two districts' median resolution times, this factor is neutral.

### 2. Local Interest in Deciding Local Controversies and Jury Duty

Hendricks argues that California has a significant interest in the application of California law to protect California residents. *See Van Slyke*, 503 F. Supp. 2d at 1365 (disfavoring transfer where transferor forum's interest in ensuring efficacious remedies conflicted with transferee forum's interest in regulating its banks). The court in *Van Slyke* also stated that "[c]oncurrent with the local-interest factor is the issue of burdening citizens of an unrelated forum with jury duty. Here, California has a greater interest in adjudicating this dispute, and as three of the claims arise under California law, this forum is related to the action. This factor disfavors transfer." *Id.*

StarKist counters by asserting that Pennsylvania also has a significant interest in monitoring allegedly unlawful behavior of companies within its borders. *See Hawkins*, 2013 WL 627066, at *5 (favoring transfer where transferor forum's interest in protecting plaintiff conflicted with transferee forum's interest in preventing fraudulent practices by companies doing business within its borders).

The Court finds this factor to be neutral, since the asserted local interests are equally compelling.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that transferring this case to the Western District of Pennsylvania would not serve the convenience of the witnesses and parties, nor would the interests of justice unambiguously be amplified with a transfer. All of the relevant Section 1404(a) factors are either neutral or weigh in favor of denying the motion to transfer. Accordingly, StarKist's Motion to Transfer this action is **DENIED**.

This Order terminates Docket No. 19.

**IT IS SO ORDERED.**

Fcvg<Octej '47.'4236

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**