**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PATRICK HENDRICKS,** individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>**STARKIST CO.,** *et al.*,<br><br>　　　　Defendant. | Case No.: 13-cv-729 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; DENYING MOTION FOR LEAVE TO FILE AMICUS DECLARATION**<br>(DKT. NO. 21, 32) |

Plaintiff Patrick Hendricks brings this putative class action against Defendant StarKist Co. ("Starkist"). Plaintiff seeks monetary damages and injunctive relief on the grounds that four of StarKist's canned tuna products are underfilled and, thus, substantially underweight. Plaintiff alleges claims for breach of express and implied warranties (Counts I, II, and III), unjust enrichment (Count IV), negligent misrepresentation (Count VIII), and fraud (Count IX), as well as violations of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code section 1750 *et seq.*, Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code section 17200 *et seq.*, and False Advertising Law ("FAL"), Cal. Bus & Prof. Code section 17500 (Counts V-VII).

StarKist has filed a Motion to Dismiss on several grounds: (1) federal preemption under the federal Food, Drug, and Cosmetic Act ("FDCA"); (2) the primary jurisdiction doctrine; (3) failure to sufficiently plead claims for breach of express and implied warranties; (4) failure to plead fraud with particularity; (5) lack of standing; and (6) unjust enrichment does not constitute a claim for relief. (Dkt. No. 21).[1]

---

[1] The National Fisheries Institute filed an Administrative Motion for Leave to File Amicus Curiae Declaration in support of the instant motion. (Dkt. No. 32.) Because the Court finds the declaration irrelevant to the issues presented in the motion to dismiss, as well as outside the scope of matters the Court may consider on such a motion, the Administrative Motion For Leave To File is **DENIED**. The Court has not considered the declaration submitted in connection with the decision herein.

Having carefully considered the papers submitted,[2] the parties' oral arguments, and the pleadings in this action, and for the reasons set forth below, the Court hereby Orders that the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND**.

## BACKGROUND

StarKist is a Delaware Corporation with its principal place of business in Pittsburgh, Pennsylvania. On February 19, 2013, Plaintiff filed this putative class action in his individual capacity and on behalf of a nationwide class of all similarly situated purchasers of four StarKist canned tuna products. The four products at issue are 5-ounce cans of StarKist: (1) Chunk Light Tuna in Water; (2) Chunk Light Tuna in Vegetable Oil; (3) Solid White Albacore Tuna in Water; and (4) Solid White Albacore Tuna in Vegetable Oil (collectively, the "Products"). (Complaint [Dkt. No. 1] ¶ 1.)[3] Plaintiff also seeks to represent a subclass of individuals who purchased the Products in California.

The Complaint alleges that Plaintiff purchased two of the Products, and the cans were underfilled and substantially underweight. (¶ 2.) Plaintiff confirmed that the cans of tuna were underfilled by retaining a laboratory to conduct independent testing using the methodology prescribed in 21 C.F.R. section 161.190(c). (¶¶ 2, 3.) Plaintiff alleges that testing revealed StarKist's 5-ounce cans were "cheating" purchasers by providing anywhere from 1.1% to 17.3% less tuna, on average, depending upon the variety of canned tuna, than purchasers were paying for, using to the weighing methodology and standard of fill set forth in the referenced federal regulations. (*Id.*)

---

[2] StarKist requested that the Court take judicial notice of six exhibits. (Defendant StarKist Co.'s Request for Judicial Notice in Support of its Motion to Dismiss the Complaint, Dkt. No. 22.) Generally, the Court may take judicial notice of relevant documents as to which no party disputes the authenticity. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court may not consider matters outside the complaint, except in limited circumstances); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (same). The request for judicial notice is **GRANTED** as to Exhibits 1-6. The Court takes notice of the documents but not the truth of any matters asserted therein.

[3] All further "¶" references are to the Complaint, unless otherwise stated.

Section 341 of the Food Drug and Cosmetics Act ("FDCA") permits the Food and Drug Administration ("FDA") to promulgate regulations "fixing and establishing for any food… reasonable standards of fill of container," "[w]henever in the judgment of the Secretary such action will promote honesty and fair dealing in the interest of consumers." 21 U.S.C. § 341. The FDA, under its authority in 21 U.S.C. section 341, enacted 21 C.F.R. section 161.190, which sets forth the requirements governing the standard of fill of a container of canned tuna. Currently, both the standard of identity[4] and the standard of fill for canned tuna are set forth in that regulation, with the standard of fill provided at sub-section (c). Filling a container in a manner that is misleading is considered "misbranding" pursuant to 21 U.S.C. section 343.

Based on these allegations, the Complaint sets forth claims for breach of express warranty, and breach of the implied warranties of merchantability and fitness for a particular purpose. The express warranty claim alleges that StarKist, as the manufacturer, market and distributor of its products, expressly warranted that the Products contained an "adequate" amount of tuna for a 5-ounce can, but in reality they did not do so, and thus are not "legal for sale" in the United States. (¶¶ 19, 20.) The implied warranty claims each alleged that StarKist impliedly warranted that the cans contained an adequate amount of tuna, but the tuna cans were defective and unfit for their intended purpose, such that Plaintiff and the putative class members did not receive the goods as warranted. (¶¶ 24-30, 34-35.) As to all these claims, Plaintiff alleges that he and other putative class members were injured because they would not have purchased the Products on the same terms if the true facts were known, and that they paid a premium price based on StarKist's "promises" that the Product cans contained an adequate amount for their size. (¶¶ 21, 31, 37.) Plaintiff further alleges, in his "Unjust Enrichment" count, that StarKist's retention of revenues under these circumstances is unjust and inequitable, and that they should be required to pay restitution to Plaintiff and the class. (¶¶ 40-42.)

---

[4] The FDA has established "standards of identity" for a limited number of foods and beverages. A standard of identity is a regulation setting forth the ingredients contained in a particular food or beverage, such that "thereafter a commodity cannot be introduced into interstate commerce which 'purports to be or is represented as' the food which has been thus defined unless it is composed of the required ingredients." *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 598 (1951).

3

Similarly, Plaintiff's CLRA, FAL, and UCL claims allege that StarKist misrepresented that its Products contained an adequate amount of tuna for a 5-ounce can consistent with the FDA standard, and that they would not have purchased the Products had they known the true facts concerning the quantity of the Product and StarKist's failure to comply with the FDA standard. (¶¶ 46-47, 52-56, 59-63.) The CLRA, California Civil Code section 1770(a)(5), prohibits persons "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." The FAL, Business & Professions code 17500, makes it unlawful for any person to make, in any advertising device or any other manner or means, a statement that is untrue or misleading. Plaintiff alleges that StarKist's misrepresentations violated the "unlawful," "unfair," and "fraudulent" prongs of the UCL.

Finally, Plaintiff alleges state law claims for negligent misrepresentation and fraud because StarKist misrepresented or omitted material facts about its Products, specifically that their Product cans contained an adequate amount of tuna for that size can, and are "legal for sale." (¶¶ 67-68, 74.)

At the hearing on the motion to dismiss, Plaintiff's counsel confirmed that he is relying on the FDA regulations as the basis for claiming that the amount of tuna is inadequate and not "legal for sale in the United States." (*See* Tr. at 18:21-19:8.) The Complaint cites no other legal predicate for claiming that StarKist's 5-ounce cans of tuna are unlawful, deceptive, or misleading. The Complaint does not allege that the labeling of the packages was inaccurate.

## APPLICABLE STANDARD

StarKist moves under Fed. R. Civ. P. 12(b)(6) and challenges the legal sufficiency of the claims alleged. "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under

4

the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief… [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully… [w]hen a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 556 U.S. at 678–79.

**DISCUSSION**

**I.    PREEMPTION**

**A.    Legal Framework**

StarKist contends that Plaintiff's claims should be dismissed because the FDCA preempts them. However, StarKist concedes that state law claims which depend on FDCA statutory provisions are permissible if they are grounded in traditional state-law duties. (Mtn. at 1:22-24.)

Preemption is fundamentally a question of Congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law

5

occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.,* 593 F.3d 936, 941 (9th Cir. 2010) (internal quotation marks and citations omitted).

In analyzing the preemption question, the Court must begin with the presumption that unless a "clear and manifest purpose of Congress" exists, federal acts should not supersede the states' historic police powers. *Wyeth*, 555 U.S. at 565; *see also Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484–85 (1996). "Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic,* 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (quoting *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund,* 520 U.S. 806, 814 (1997)).[5] In particular, a strong presumption against federal preemption exists in the area of proper marketing and regulation of food, since the states have traditionally exercised such power. *See Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders," citing cases).

Express preemption results from a Congressional expression of intent to displace state law. *Chae,* 593 F.3d at 942. Where Congress enacts an express preemption provision, a court must interpret the provision and "identify the domain expressly pre-empted by that language" based upon the text of the provision, the statutory framework, and any Congressional statement of its purposes in enacting the provision. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 484 (1996) (internal quotation marks omitted).

In the absence of expressly preemptive language, Congressional intent to preempt can be implied under two scenarios: field preemption and conflict preemption. Field preemption occurs "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Valentine*, 804 F. Supp. 2d at 1028

---

[5] Moreover, a defendant asserting preemption bears the burden of proving that it applies. *Bruesewitz v. Wyeth LLC,* 131 S.Ct. 1068, 1087 n.2 (2011) ("Federal preemption is an affirmative defense upon which the defendants bear the burden of proof") (citations omitted); *see also Trazo v. Nestle USA, Inc.*, 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013).

6

(quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). Field preemption should not be found in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that, without question, Congress has so ordained. *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) (such preemption arises in only extraordinary circumstances); *see Bank of Am. v. City & Cnty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) ("'mere volume and complexity' of federal regulations demonstrate an implicit congressional intent to displace all state law") (internal citations omitted).

Conflict preemption arises when "compliance with both federal and state regulations is a physical impossibility." *Bank of America,* 309 F.3d at 558 (citing *Florida Lime & Avocado Growers, supra,* 373 U.S. 132, 142-43). Conflict preemption may also exist where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (citing *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)). Showing conflict preemption, *i.e.* preemption by impossibility, is a "demanding defense." *Wyeth*, 555 U.S. at 573.

**B.     Preemption Under the FDCA**

Under the FDCA, no state may establish a requirement for food that is not identical to an FDA-established standard of identity. 21 U.S.C. § 343-1(a)(1). Thus, state law or state law claims seeking to establish standards that differ from the FDCA's standards are expressly preempted. *See Lam v. Gen. Mills, Inc.*, 859 F. Supp. 2d 1097, 1102 (N.D. Cal. 2012) (statements that product was "fruit flavored" and "naturally flavored" expressly permitted by FDA regulations, preempting state law claims that the labels were deceptive); *Chacanaca v. Quaker Oats Co,* 752 F.Supp.2d 1111, 1118-21, 1122-23 (N.D. Cal. 2010) (finding express preemption where plaintiff's claims attacked package labeling that was permissible under FDA regulations, and therefore sought to establish a different standard); *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, 12-cv-1891 PSG (N.D. Cal. June 18, 2013) at *6 (dismissing claim that labeling was misleading where it complied with FDA regulations and plaintiff's claim sought to impose requirements beyond the regulations); *see also Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1118 (9th Cir. 2013) (state law claims precluded where they sought to impose a disclosure requirement "different from, or in addition to" the requirements of the MDA provisions of the FDCA).

However, a state-law claim relying on a standard consistent with the FDCA standard may not be preempted, as articulated in a line of Supreme Court authority:

In *Medtronic, Inc. v. Lohr,* 518 U.S. 470 (1996), the United States Supreme Court considered whether a specific provision of the FDCA preempted state law claims based upon a violation of FDA regulations enacted thereunder and found no preemption. The Medical Devices Amendments ("MDA") to the FDCA, 21 U.S.C. § 360k(a), contain an express preemption provision.[6] The Supreme Court in *Medtronic* held that, despite its more general preemptive effect, the MDA did not expressly preempt state law claims for negligence and strict liability based on failure to use reasonable care under state standards "equal to, or substantially identical to, requirements imposed" under federal law. *Id.* at 496-97 (quoting 21 C.F. R. § 808.1(d)(2)). The Court further noted that "[n]othing in § 360k denies [states] the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements." *Id.* at 494.

The Supreme Court's decision in *Buckman* followed, clarifying the scope of the state law claims that were excepted from the reach of preemption in *Medtronic*. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343 (2001). In *Buckman*, plaintiffs' claims were based upon fraudulent representations *to the FDA*, which plaintiffs alleged led to certain medical devices being improperly approved for sale by the FDA, and to plaintiffs' eventual injury. While the claims there were framed as state tort damages claims, the Supreme Court found that the claims conflicted with, and therefore were impliedly preempted by, the MDA provisions. *Id.* at 348. The federal statutory scheme empowered the FDA, and the FDA only, to enforce its regulations and to investigate fraudulent representations made to the agency in the course of its device approval process. Thus a state law claim alleging fraud-on-the-FDA created an inevitable conflict with the FDA's responsibilities to police fraud in its own proceedings. *Id.* at 350. The Court contrasted

---

[6] Section 360k(a) preempts not only state laws that are "different from, or in addition to" federal law, but also state laws "which relat[e] to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device" as stated in federal law. 21 U.S.C. § 360k(a).

8

this kind of preempted claim with one that asserted traditional state law principles based on a duty of care theory, which would not be preempted. *Id.* at 352.

The Supreme Court's subsequent decision in *Wyeth v. Levine,* 555 U.S. 555 (2009), emphasized the narrowness of the holding in *Buckman*. In *Wyeth*, the Court held that state law product defect claims based upon inadequate drug warning labels were not preempted simply because the FDA regulated, and had approved, the drug warning label for the product in question. *Id.* at 581. There, no tension existed, since package warnings could have been amended and strengthened under state law, as permitted under the FDCA. Moreover, the Court distinguished the MDA's express preemption clause, which had no analogue in the drug labeling context, despite Congress's "awareness of the prevalence of state tort litigation" in the drug warning label area. *Id.* at 574. The Supreme Court confirmed that: "Congress enacted the FDCA to bolster consumer protection against harmful products [and] did not provide a federal remedy for consumers harmed by unsafe or ineffective drugs in the 1938 statute or in any subsequent amendment." *Wyeth*, 555 U.S. at 573-74. Thus, allowing state law claims to proceed, Congress declined the opportunity to adopt a more sweeping express preemption clause, as it did in the section 360k(a) of the Medical Device Amendments. *Id.* at 574-75.

Based upon this Supreme Court precedent, the Ninth Circuit has held that the FDCA "does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel v. Medtronic, Inc.,* 704 F.3d 1224, 1228 (9th Cir.2013) (en banc). However, a state law claim must fit through a "'narrow gap' … to escape preemption by the FDCA: '[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [regulations precluding requirements that differ from the FDCA's]), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez*, 711 F.3d at 1120 (emphasis in original) (finding claim for fraud on account of failure to disclose lack of FDA product approval to be impliedly preempted). In other words, state law claims are not impliedly preempted "insofar as the state-law duty parallels a federal-law duty." *Id.* at 1118 (internal citations omitted). Courts in this district have repeatedly extended this reasoning to claims based upon violations of FDA food

9

labeling and packaging regulations when there is a clear regulation or standard directly on point. *See, e.g., Wilson,* 2013 WL 1320468, at *7; *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 956-59 (N.D. Cal. 2013); *Ivie v. Kraft Foods Global, Inc.*, C-12-02554-RMW, 2013 WL 685372 at *8 (N.D. Cal. Feb. 25, 2013).

### C. Application to Plaintiff's Claims

Plaintiff's claims are not expressly preempted since they do not seek to impose requirements different from or additional to FDA regulations in the area of canned tuna standards of fill. Indeed, Plaintiff's claims specifically reference existing FDA regulations as their basis for alleging that the amount of tuna in StarKist's 5-ounce cans is "inadequate." Plaintiff's claims focus on the inadequacy of the amount of tuna in StarKist's 5-ounce cans as measured from the standard of fill stated in 21 U.S.C. section 161.190(c)(2)(i)-(xii). Plaintiff alleges that StarKist: (1) "cheated" purchasers by providing less tuna than they are paying for (¶ 2); (2) warranted that the cans contained an "adequate" amount of tuna and were legal for sale and, in breaching these warranties, committed statutory and common law fraud (¶ 13); and (3) misrepresented that the cans contained an "adequate" amount of tuna (¶ 46). Plaintiff alleges that he and members of the putative class would not have purchased StarKist tuna on the same terms if the true facts were known concerning its quantity and failure to comply with FDA regulations, and that they paid a premium price for StarKist tuna due to promises that it contained an adequate amount of tuna for a 5-ounce can. (¶ 47.) Thus, the claims here do not seek to establish or rest upon a fill standard that differs from the standard established under the FDCA and there is no express preemption. *Cf. Samet*, *supra*, 2013 WL 3124647 at *6 (slack fill packaging claims not preempted where plaintiff alleged that products did not comply with FDCA requirements); *Ivie, supra*, 2013 WL 685372 at 1045 (no express preemption of slack filled packaging claims where plaintiff "does not ask the court to require anything different than the FDA requirements").

StarKist argues that implied preemption bars Plaintiff's claims because the claims are an attempt to enforce FDA regulations directly, and therefore prohibited by Section 337 of the FDCA. Section 337 only allows the United States to bring proceedings to enforce the FDCA. 21 U.S.C. § 337. StarKist contends that Plaintiff's claims here would not exist but for the FDCA

requirements applicable to pressed weight in 21 C.F.R. section 161.190. Thus StarKist argues that Plaintiff is seeking to enforce FDA requirements as a private citizen, which he cannot do.

While section 337(a) precludes direct actions to enforce FDA regulations, it does not preclude actions under state law consistent with and arising out of such regulations. The FDA's public enforcement requirements "[do] not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008); *see also Wyeth,* 555 U.S. at 574 (allowing state consumer product liability action to proceed despite FDCA's lack of a federal private right of action); *In re Farm Raised Salmon Cases,* 42 Cal.4th 1077, 1090 (2008) ("While Congress clearly stated its intent to allow states to establish their own identical [food labeling] laws [paralleling FDA labeling regulations], it said absolutely nothing about proscribing the range of available remedies states might choose to provide for the violation of those laws, such as private actions.")

As the Ninth Circuit recently held in an analogous FDA enforcement context, in order to avoid preemption under the FDCA, a claim must fit through a "'narrow gap: [t]he plaintiff must be suing for conduct that *violates* the FDCA [or else be expressly preempted for seeking to enforce a different or additional substantive requirement]… but the plaintiff must not be suing *because* the conduct violates the FDCA'" or else be impliedly preempted by the private enforcement ban. *Perez*, 711 F.3d at 1120 (emphasis in original, quoting *In re Medtronic, Inc.,* 623 F.3d 1200, 1204 (8th Cir.2010)). The *Perez* court acknowledged that some state-law fraud and false advertising claims related to compliance with FDA requirements would not be preempted, since the rights sued upon would arise under state law. *Id.* at 1119-20.

Here, Plaintiff's state law claims are all based upon conduct that violates a clear regulation under the FDCA regarding standards of fill for tuna. However, the claims are not based solely upon the fact that the regulation is violated. Rather, Plaintiff's claims allege that the 5-ounce cans led him to believe that an "adequate" amount of tuna would be inside, and that if he had known the can was under-filled, he would not have purchased the product. He alleges that he was

harmed by the misleading conduct of under-filling the can. These allegations thread the gap as described in *Perez*.

Other courts of this district have rejected implied preemption arguments raised in food labeling and packaging cases similar to the case at bar. For example, in *Samet*, the district court determined that the claims alleged violations not of the FDCA but of California state law, including the California Sherman Law, UCL, FAL, and CLRA, and therefore were not preempted. *Samet*, *supra,* 2013 WL 3124647 at *6. As the court found in *Samet*,

> Although Defendants argue Plaintiffs should not be allowed to "circumvent" the FDCA's bar on private enforcement, this argument falls flat in light of the ample [legislative history] evidence that Congress and the FDA intended that the states would be free to adopt a statutory scheme paralleling the FDCA and offer a private suit of enforcement of those parallel state regulations…. Plaintiffs' claims for damages arise from state-made common law duties that also happen to coincide with the federal statutory scheme, which ensures that these claims will not conflict with or impair the FDA's regulatory power….

*Id.* at *6, 7 (internal citations and quotations omitted); *see also Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 373 (N.D. Cal. 2010) ("In view of the Supreme Court's determination in *Wyeth* that Congress did not intend FDA oversight to be exclusive means of ensuring drug safety and effectiveness, and in the absence of authority to the contrary in the food labeling regulatory scheme, defendants have not persuaded the court that plaintiff's state law claims obstruct federal regulation of food labeling…"); *Khasin v. Hershey Co.*, 5:12-CV-01862 EJD, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) (finding no preemption where "Plaintiff's multiple claims are predicated upon state laws, such as the Sherman Food, Drug and Cosmetic Law, which prescribes labeling requirements that are similar, if not identical to, the requirements under FDCA and NLEA"); *see also Chacanaca*, 752 F. Supp. 2d at 1119 (plaintiff's claims of misleading food labeling are not preempted and can go forward "if they can show that the [label] statements would also be "misbranded" under the terms of the Act").

StarKist also argues that the Ninth Circuit's holding in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012) *cert. granted,* 134 S. Ct. 895 (U.S. 2014) supports a finding of preemption, essentially seeking to extend to state claims the Court's holding that federal Lanham

Act claims based upon FDCA violations are preempted. The reasoning of *Pom Wonderful* does not support such an extension. The Ninth Circuit limited its decision to the Lanham Act and expressly declined to address whether Pom Wonderful's state law claims would be preempted by the FDCA. *Id.* at 1178. Thus, *Pom Wonderful* does not support preemption of the claims at issue here. Recent decisions in this district are in accord. *See Brazil*, 935 F.Supp.2d at 957-58 (*Pom Wonderful* was based on potential conflict with federal Lanham Act and specifically left open the question of preemption of state law claims); *Khasin*, 2012 WL 5471153, at *5 ("contrary to Defendant's contention, the *Pom Wonderful* court only held that the FDCA bars causes of actions brought under the federal Lanham Act where doing so would implicate the rules and regulations set forth under the FDCA.'); *Delacruz v. Cytosport, Inc.*, C 11-3532 CW, 2012 WL 2563857 at *7, n.3 (N.D. Cal. June 28, 2012) (*"*The Ninth Circuit's preemption ruling [in *Pom Wonderful*] was limited to a finding that the FDCA preempted Pom's claims under the Lanham Act."); *Ivie,* 2013 WL 685372 at *8; *Lanovaz v. Twinings N. Am., Inc.*, C-12-02646-RMW, 2013 WL 675929 at *3 (N.D. Cal. Feb. 25, 2013).[7]

Finally, StarKist argues that it and other tuna manufacturers have petitioned the FDA to change the standard of fill. That argument is simply not relevant to the matters at issue here. The complaint here alleges that StarKist's Products do not comply with the *existing* standard and that, as a result, state law duties have been breached, and consumer protection statutes have been violated. Whether the FDA might eventually change those standards is of no consequence to a decision whether the claims here are preempted or otherwise properly stated.

The Court therefore concludes that StarKist has not established that Plaintiff's claims should be dismissed based upon preemption.

---

[7] StarKist also argued that the appropriate standard for determining whether a claim is preempted is found in the Sixth Circuit's decision in *Loreto v. Procter & Gamble Co.*, 10-4274, 2013 WL 645952 (6th Cir. Feb. 22, 2013). StarKist cited this case in its brief before it was determined "Not for Publication" under Sixth Circuit Rule 28, *see* 515 Fed Appx. 576. Regardless, the Court finds the holding in *Loreto*—that claims based on illegality were preempted but claims based on liability due to false or misleading statements rested on traditional state tort law were not preeempted—is consistent with the Ninth Circuit's decision in *Stengel*, 704 F.3d at 1228, and the many decisions cited above finding that state claims based upon FDA food labeling and packaging regulations are not preempted.

## II. PRIMARY JURISDICTION

Given that the applicable FDA standard here is clear, detailed, and long-standing, the Court sees no reason to stay or dismiss the complaint pending any resolution of the issue before the FDA. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency… and is to be used only if a claim involves an issue of first impression or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v. Time Warner Cable*, 523 F. 3d 1110, 1114 (9th Cir. 2008). The doctrine is to be employed when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *General Dynamics Corp.,* 828 F.2d 1356, 1362 (9th Cir.1987) (quoting *United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 353 (1963)); *accord Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Here, the FDA has already carried out its regulatory scheme and has established a clear regulation covering the standard of fill for tuna cans. *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir. 2002) ("The [primary jurisdiction] doctrine does not require that all claims within an agency's purview be decided by the agency. Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit.")

StarKist argues that it, along with other canned tuna manufacturers, has filed a citizen's petition with the FDA, requesting it to amend or suspend the regulation. These same producers sought a Temporary Marketing Permit to test market use of a drained weight fill standard, rather than the pressed cake standard in the current regulation. So far as the Court is aware, nothing has changed in the interim regarding the standard set forth in 21 C.F.R. section 161.190. Unless and until there is some indication beyond mere speculation that the FDA may change the regulation, the Court sees no need to defer under the primary jurisdiction doctrine.

## III. ALLEGED MISREPRESENTATIONS TO SUPPORT UCL, FAL AND CLRA CLAIMS (COUNTS V-VII)

StarKist next argues that Plaintiff has failed to allege reliance or deception, both of which are necessary to state a claim under the UCL, FAL, and CLRA. These statutory consumer

14

protection claims allege StarKist misrepresented that its Product cans contained an adequate amount of tuna for a 5-ounce can, consistent with the FDA standard. Plaintiff alleges that he would not have purchased StarKist Chunk Light Tuna in Water had he known the true facts concerning the quantity of tuna in the can and StarKist's failure to comply with the FDA standard.

StarKist contends that the FDA standard of fill does not require any information be communicated to consumers or that the products be labeled in any particular way. Instead, the standard of fill is only meant to provide guidance to manufacturers and food inspectors as to what constitutes a "well-filled container." StarKist does not include pressed weight measurements on the can, and is not required to do so. The information that is listed on the can labels states: "NET WT 5 OZ (142g)" and "Serv[ing] Size: 2oz drained (56g - about ¼ cup); Servings about 2." (Defs RJN, Exh. 1.) Plaintiff does not dispute the truth of the label statements or allege how he was misled by those statements.

StarKist's arguments miss the point of the allegations here. Plaintiff has alleged that Starkist's 5-ounce cans of tuna contain less tuna than would be expected, *i.e.,* not an "adequate amount." The appearance of the can itself, not its label, is what Plaintiff alleges to be misleading. The uniform standard for how much tuna should be in a can based upon its size in order for it to *not* be misleading is established by the federal standard of fill. Standards of fill are established by the FDA under Congressional authority for the purpose of preventing deceptive food packaging practices. 21 U.S.C. § 343(d) ("A food shall be deemed to be misbranded…[i]f its container is so made, formed, or filled as to be misleading"); *cf.* "Misleading Containers; Nonfunctional Slack-Fill," 58 FR 64123-01 (FDA regulation implementing 21 U.S.C. § 343(d) "sets out the circumstances in which the slack-fill within a package is nonfunctional and, therefore, misleading"). If canned tuna "falls below the applicable standard of fill of container prescribed" in the regulation, "the label shall bear the general statement of substandard fill provided in § 130.14(b)." 21 C.F.R. § 161.190(c)(4).[8]

---

[8] Section 130.14(b), in turn, requires the "Below Standard in Fill" label statement to be a specified type size, boldness, and contrast so it may be "easily seen when the name of the food or any pictorial representation thereof is viewed, wherever such name or representation appears so conspicuously as to be easily seen under customary conditions of purchase." 21 C.F.R. § 130.14.

15

Plaintiff's claims all allege that StarKist failed to comply with standards designed to prevent the level of fill in a tuna can from being misleading, and injury as a result. While StarKist argues that it is "simply not plausible" that Plaintiff was deceived, the Court cannot agree that these claims lack plausibility on their face. The motion to dismiss is **DENIED** as to Counts V-VII.

### IV.   EXPRESS AND IMPLIED WARRANTY CLAIMS

Plaintiff alleges three warranty-based claims: breach of express warranty, breach of the implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. StarKist again argues that there are no allegations that it made any statement that could form the basis of any warranty, express or implied.

"To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Baltazar v. Apple, Inc.*, CV-10-3231-JF, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011) (citing *Williams v. Beechnut Nutrition Corp.,* 185 Cal.App.3d 135, 142, 229 Cal.Rptr. 605 (1986). It is not necessary that a seller use formal words, such as "warrant" or "guarantee." Cal. Com. Code § 2313(2). As stated above, Plaintiff has alleged a basis for a "warranty" arising from the standards of fill applicable to canned tuna.

StarKist also argues that the Complaint fails to allege that Plaintiff and StarKist were in privity, as is required for a claim based upon an implied warranty. However, as Plaintiff counters, California law does not require privity for implied warranty claims involving sealed food products. *See Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272, 284 (1939) ("[T]he warranty as to the fitness of foodstuffs intended for human consumption was not intended to be solely for the benefit of the immediate 'buyer,' but was intended to be for the benefit of the ultimate consumer, – the existence of privity of contract not being essential in an action brought by such consumer on the warranty theory."); *Collum v. Pope & Talbot, Inc.*, 135 Cal. App. 2d 653, 656-57 (1955) (same).

StarKist's arguments against the viability of Plaintiff's claims based upon merchantability likewise gain no traction. The implied warranty of merchantability actually requires goods to be "adequately contained, packaged, and labeled as the agreement may require; and… [to]conform to the promises or affirmations of fact made on the container or label." Cal. Com. Code § 2314(2)(a).

The Complaint sufficiently sets forth a claim that the Products here were not adequately packaged, consistent with an implied promise that they were adequately filled with tuna. Thus a plausible claim for breach of the implied warranty of merchantability claim is stated.

As to the additional claim for breach of the implied warranty of fitness for a particular purpose, StarKist argues that Plaintiff has not alleged a "particular purpose" different from the ordinary purpose in the complaint. A warranty of fitness for a particular purpose is implied "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Cal. Com. Code § 2315. Plaintiff's opposition does not address this claim, apparently conceding the merits of the motion.

Consequently, the motion to dismiss is **GRANTED** as to Count III for breach of implied warranty of fitness, and **DENIED** as to Counts I and II.

## V. UNJUST ENRICHMENT CLAIM

StarKist argues that Plaintiff's count for unjust enrichment does not state a cognizable claim. Under California law, a claim for unjust enrichment is considered to be a restitution claim. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (collecting California appellate cases).[9] In ruling on motions to dismiss such claims, some courts have found dismissal appropriate on the principles that there is no standalone claim for "unjust enrichment" (*Low*); others have dismissed a claim for unjust enrichment when restitution was a remedy sought under another pleaded claim (*Brazil, supra*, 935 F. Supp. 2d at 967); and still others have concluded that the claim can proceed

---

[9] This Court agrees with others that have found the split in the authorities on the existence of a "cause of action" for "unjust enrichment" under California law is essentially founded on semantics, drawing a distinction – between unjust enrichment, restitution, and quasi-contract – without a difference. Regardless of whether the claim is labeled one for unjust enrichment, restitution, or some other equitable theory such as quasi-contract or constructive trust, the legal basis for relief is recognized in California law. *See also* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011) ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."); *id.* at Reporter's Note (e) ("The confused view that 'restitution' is merely a remedy appears to result from a historical accident in the American law school curriculum.")

17

as one for restitution based on a quasi-contract theory (*Vicuna v. Alexia Foods, Inc.,* 11–cv-6119 PJH, 2012 WL 1497507, at *3 (N.D. Cal. April 27, 2012)).

Here, Plaintiff's claim alleges that Plaintiff and the class conferred benefits on StarKist by purchasing the Products and that StarKist's retention of the revenue from such sales would be unjust and inequitable. Plaintiffs' claim seeks of a benefit unjustly conferred on StarKist. The Court agrees with StarKist that the claim and relief sought is duplicative of Plaintiff's statutory claim under the CLRA and UCL. As such, it is subject to dismissal. *See Brazil,* 935 F. Supp. 2d at 967 (claim for restitution dismissed since any claim for restitution that plaintiff could assert was already a remedy for UCL claim and therefore "superfluous"). Therefore, the motion to dismiss is **GRANTED.**

## VI.   FRAUD CLAIM

StarKist further moves to dismiss on the grounds that the fraud claim, and all of the fraud-based claims, fail to plead the elements of fraud insufficiently, as required by Rule 9 of the Federal Rules of Civil Procedure. The Court disagrees.

Plaintiff has alleged that:

- StarKist misrepresented that its products contained an adequate amount of tuna for a 5-ounce can and were legal for sale in the United States. (¶ 19.)
- StarKist falsely represents that its products contained an adequate amount of tuna for a 5-ounce can and that its products were legal for sale in the United States. (¶ 19.)
- Plaintiff purchased a 5-ounce can of StarKist Tuna within the relevant class period. (¶ 2.)
- Plaintiff relied on StarKist's false representations in purchasing the product. (¶¶ 21, 26, 31, 35, 37, 47, 56, 63, 71, 75.)
- Defendant's conduct was false and misleading because "StarKist Tuna is underfilled and thus substantially underweight, does not contain an adequate amount of tuna for a 5-ounce can, and is illegal for sale in the United States." (¶ 20.)
- Plaintiff was induced to pay substantially more for StarKist Tuna based on these false representations. (¶¶ 21, 31, 37, 47, 56, 63, 71, 75.)

These allegations are sufficient to meet the fraud pleading standard. The motion to dismiss for insufficient pleading of fraudulent conduct is **DENIED**.

### VII. STANDING

StarKist moves to dismiss all claims here to the extent they involve products that he did not purchase. The Complaint includes claims relating to four products: Chunk Light Tuna in Water, Solid White Albacore Tuna in Water, Solid White Albacore Tuna in Vegetable Oil, and Chunk Light Tuna in Vegetable Oil. Plaintiff alleges that he purchased only one of the four: Chunk Light Tuna in Water. (¶¶ 1-2.) The allegations are all made against "the Products" generally and without differentiation.

Courts permit plaintiffs to brings claims on products they did not purchase where "common misrepresentations are the crux of Plaintiff[s'] case." *Brown v. Hain Celestial Grp.*, 2012 WL 6697670, at *8 (N.D. Cal. Dec. 22, 2012). The "critical inquiry… seems to be whether there is sufficient similarity between the products purchased and not purchased." *Astiana v. Dreyer's Grand Ice Cream, Inc.*, C-11-2910 EMC, 2012 WL 2990766 at *11 (N.D. Cal. July 20, 2012) *motion to certify appeal denied,* C-11-2910 EMC, 2012 WL 4892391 (N.D. Cal. Oct. 12, 2012) (different flavors of ice cream carried under different brand names sufficiently similar where same wrongful conduct applied). If a sufficient similarity between the products exists, any concerns regarding material differences in the products can be addressed at the class certification stage. *Id.*; *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012) (allowing plaintiff to represent a class of persons who purchased different but similar products reasoning that "questions of whether common issues predominate and whether plaintiff can adequately represent absent class members, [are] issues that are better resolved at the class certification stage.").

Defendant argues that solid tuna products are governed by pressed weight standards that differ from the standards applicable to the product Plaintiff bought. *See* 21 C.F.R. § 161.190(c)(1) (specifying different minimum weights for solid, chunk, flakes, and grated tuna). Further the allegations of the Complaint show that the four products fell short of the pressed weight requirements by four different amounts. Thus Defendant argues that the claims relating to the three

products Plaintiff did not purchase differ significantly from the claims against the one he did purchase, and that he lacks standing for claims based on those other three products.

The Court disagrees that the claims differ significantly here. There is sufficient similarity between the product purchased and other products accused here. The Complaint alleges the same misrepresentation as to all four varieties of canned tuna. Moreover, the cases cited by StarKist are distinguishable, since those cases involved different representations made as to the various products at issue. *Cf. Hairston v. S. Beach Beverage Co.*, 2012 WL 1893818, at *1 (C.D. Cal. May 18, 2012) (dismissing complaint where plaintiff made allegations regarding *different* representations of fruit and vitamin names on different product labels); *Carrera v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *1 (N.D. Cal. Jan. 10, 2011) (dismissing complaint where plaintiff alleged Drumstick ice cream product made different claims than Dibs product); *Zwart v. Hewlett-Packard Co.*, 2011 WL 767750, at *3 (N.D. Cal. Feb. 25, 2011) (dismissing complaint where plaintiff did not even "allege that HP ever represented that the components available for CTO notebooks also would be available for the entire model series").

Therefore, the motion to dismiss for lack of standing as to claims based on products not purchased by Plaintiff is **DENIED**.

## CONCLUSION

For the reasons stated above, StarKist's Motion to Dismiss is **GRANTED IN PART** as to Plaintiff's claim for unjust enrichment, and is otherwise **DENIED**.

Defendants shall file and serve their answer to the complaint no later than **April 18, 2014**.

This Order terminates Docket Nos. 21 and 32.

**IT IS SO ORDERED.**

Fcvg<Octej '47.'4236

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**