**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
         ndeckant@bursor.com

*Attorneys for Plaintiff*
*And the Interested Parties*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>STARKIST CO.,<br><br>                         Defendant. | Case No. 13-CV-00729-YGR<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date: April 21, 2015<br>Time: 2:00 p.m.<br>Courtroom 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 21, 2015 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 1, 4th Floor, in the courtroom of the Honorable Yvonne Gonzalez Rogers, Plaintiff will and hereby does move the Court to certify the Class and California Subclass described herein, appoint Plaintiff as a class representative, and appoint Bursor & Fisher, P.A. as class counsel. Secondly, assuming that their contemporaneously-filed Motion For Leave To Intervene is granted, Interested Parties Laury Smith, Ben Hall, Brian Andacky, and Joseph Vallillo join in these requests and further request that the Court certify each of their respective subclasses and appoint them as class representatives.

This motion is made on the grounds that certification is proper given that Plaintiff and the Interested Parties have met each requirement of Rule 23(a) and Rule 23(b)(3).

This motion is based on the attached Memorandum Of Points And Authorities, the accompanying Deckant Declaration, Weir Declaration, Weisbrot Declaration, and Hendricks Declaration, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

**CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

Whether the Court should certify the Class and subclasses described herein, appoint Plaintiff and the Interested Parties as class representatives, and appoint Bursor & Fisher, P.A. as class counsel.

Dated:  January 20, 2015

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By: *   /s/ Neal J. Deckant   *
           Neal J. Deckant

Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
       ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       jluster@bursor.com

*Attorneys for Plaintiff*
*And the Interested Parties*

**TABLE OF CONTENTS**

PAGE(S)

I.     INTRODUCTION ................................................................................................ 1

II.    THE LEGAL STANDARD FOR CLASS CERTIFICATION ............................ 8

III.   THE REQUIREMENTS OF RULE 23(A) ARE READILY MET ..................... 9

     A.    The Class Satisfies The Numerosity Requirement ................................... 9

     B.    Commonality Is Satisfied ....................................................................... 10

     C.    Plaintiff's Claims Are Typical ............................................................... 11

     D.    Plaintiff Will Adequately Represent The Class And Subclass ............... 12

           1.    Plaintiff Is An Adequate Class Representative ............................ 12

           2.    Plaintiff's Counsel Are Qualified ............................................... 13

     E.    The Class Is Ascertainable .................................................................... 14

IV.   THE PROPOSED CLASS SATISFIES RULE 23(B)(3) ................................. 20

     A.    Common Questions Of Law Or Fact Predominate ................................. 20

           1.    The Elements Of The Warranty Claims Can Be Established
                 Nationwide Through Common Proofs ........................................ 20

           2.    The Elements Of Fraud And Negligent Misrepresentation Can
                 Be Established Nationwide Through Common Proofs .................. 22

           3.    The Elements Of The Consumer Protection Claims Can Be
                 Established Statewide Through Common Proofs ......................... 23

     B.    Class Litigation Is Superior To Other Methods Of Adjudication ........... 24

V.    CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Agne v. Papa John's International, Inc.*,
286 F.R.D. 559 (W.D. Wash. 2012) ................................................................... 18

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................... 17

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
133 S. Ct. 1184 (2013) ................................................................................... 9, 20

*Arnott v. U.S. Citizenship & Immigration Servs.*,
290 F.R.D. 579 (C.D. Cal. 2012) ........................................................................ 9

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ........................................................... 14, 19, 20

*Ballard v. Equifax Check Servs., Inc.*,
186 F.R.D. 589 (E.D. Cal. Feb. 22, 1999) ......................................................... 24

*Beck-Ellman v. Kaz USA, Inc.*,
283 F.R.D. 558 (S.D. Cal. 2012) .................................................................. 11, 12

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975). ................................................................. 12, 13, 17

*Brown v. Hain Celestial Grp., Inc.*,
2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ................................................... 17

*Carnegie v. Household Int'l, Inc.*,
376 F.3d 656 (7th Cir. 2004) ............................................................................. 25

*Chavez v. Blue Sky Natural Beverage Co.*,
268 F.R.D. 365 (N.D. Cal. 2010) ........................................................... 12, 14, 15

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ........................................................................... 21

*Collum v. Pope & Talbot, Inc.*,
135 Cal. App. 2d 653 (1955) ............................................................................. 21

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ........................................................................... 17

*Dean v. Dick's Sporting Goods, Inc.*,
2013 WL 3878946 (C.D. Cal. 2013) .................................................................. 20

*Delarosa v. Boiron, Inc.*,
275 F.R.D. 582 (C.D. Cal. 2011) ........................................................... 10, 11, 14

*Donovan v. Philip Morris USA, Inc.*,
2012 WL 957633 (D. Mass. Mar. 21, 2012) ...................................................... 24

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................ 17, 19, 23, 24

*Forcellati v. Hyland's, Inc.*,
    2014 WL 141026 (C.D. Cal. Apr. 9, 2014) .................................................. 14, 15, 19

*Galvan v. KDI Distribution Inc.*,
    2011 WL 5116585 (C.D. Cal. 2011).............................................................. 17, 19

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................................ 22

*Guido v. L'Oreal, USA, Inc.*,
    2013 WL 3353857 (C.D. Cal. July 1, 2013) ....................................................... 14

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................... 11, 12, 17, 25

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 9, 11

*In re Emulex Corp.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ..................................................................... 14

*In re Ferrero Litig.*,
    278 F.R.D. 552 (S.D. Cal. 2011) ...................................................................... 11

*In re Toys R Us*,
    295 F.R.D. 438 (C.D. Cal. 2014) ..................................................................... 19

*Jermyn v. Best Buy Stores, L.P.*,
    2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ......................................................... 19

*Johns v. Bayer Corp.*,
    280 F.R.D. 551 (S.D. Cal. 2012) .............................................................. 11, 12, 14

*Johnson v. General Mills, Inc.*,
    276 F.R.D. 519 (C.D. Cal. 2011)................................................................ 11, 14

*Jordan v. Paul Financial, LLC*,
    285 F.R.D. 435 (N.D. Cal. 2012) ..................................................................... 25

*Klein v. Duchess Sandwich Co.*,
    14 Cal. 2d 272 (1939) ................................................................................ 21

*Lilly v. Jamba Juice Co.*,
    2014 WL 4652283 (N.D. Cal. Sept. 18, 2014) ...................................................... 17

*McCrary v. Elations Co., LLC*,
    2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................................ 14, 15, 16, 19

*Medrazo v. Honda of N. Hollywood*,
    166 Cal. App. 4th 89 (2008) .......................................................................... 11

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)................................................................. 20, 22

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................... 24

*Rahman v. Mott's LLP*,
   2014 WL 6815779 (N.D. Cal. Dec. 3, 2014).......................................... 17

*Ries v. Arizona Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012)..................................................... 14, 17

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
   2008 WL 4906433 (C.D. Cal. 2008)....................................................... 14

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2009) ............................................................... 10

*Sanders v. City of Fresno*,
   2006 WL 1883394 (E.D. Cal. July 7, 2006) ........................................... 22

*Smith v. Wm. Wrigley Jr. Co.*,
   2010 2010 WL 2401149 (S.D. Fla. June 15, 2010) ......................... 1, 24, 25

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................. 12

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*,
   2014 WL 4627271 (C.D. Cal. Sept. 8, 2014) .......................................... 15

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ................................................................. 25

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).......................................................................... 10

*Weinstat v. Dentsply Int'l*,
   180 Cal. App. 4th 1213 (2010) .............................................................. 20

*Yamada v. Nobel Biocare Holding AG*,
   275 F.R.D. 573 (C.D. Cal. 2011) ........................................................... 21

*Zeisel v. Diamond Foods, Inc.*,
   2011 WL 2221113 (N.D. Cal. 2011) ........................................... 11, 18, 19

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ................................................................. 9

**STATUTES**

N.Y. Gen. Bus. Law § 349....................................................................... 24

U.C.C. § 2-313 ....................................................................................... 20

U.C.C. § 2-314(2)(a) .............................................................................. 21

**RULES**

Fed. R. Civ. P. 23(a)(1) ................................................................................................. 9

Fed. R. Civ. P. 23(a)(2) ........................................................................................... 10, 11

Fed. R. Civ. P. 23(a)(3) ............................................................................................... 11

Fed. R. Civ. P. 23(a)(4) ............................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ............................................................................... 9, 20, 24, 25

Fed. R. Civ. P. 23(g) ................................................................................................... 13

Fed. R. Civ. P. 23(g)(1)(A) ......................................................................................... 13

**TREATISES**

Manual For Complex Litigation, Fourth § 21.311 (Federal Judicial Center 2004) ........................... 14

**REGULATIONS**

21 C.F.R. § 161.190(c) .................................................................................................. 3

Plaintiff Patrick Hendricks ("Plaintiff") seeks certification of a nationwide class defined as: "All persons in the United States who purchased StarKist Tuna[1] packed before June 20, 2014" (the "Class").  Plaintiff also seeks certification of a subclass defined as all members of the Class who purchased StarKist Tuna in California (the "California Subclass").  As shown below, Plaintiff has met each requirement of Rule 23(a) and Rule 23(b)(3).

Secondly, assuming that their contemporaneously-filed Motion For Leave To Intervene is granted, Interested Parties Laury Smith, Ben Hall, Brian Andacky, and Joseph Vallillo hereby join Plaintiff Hendricks in his motion to certify the nationwide Class.  Additionally, each of the Interested Parties seeks certification of a subclass defined as all members of the Class who purchased StarKist Tuna in their respective states:  (i) Laury Smith joins in Plaintiff Hendricks' request to certify the California Subclass, (ii) Ben Hall seeks certification of a Massachusetts subclass, (iii) Brian Andacky seeks certification of a New York subclass, and (iv) Joseph Vallillo seeks certification of a Florida subclass.  Like Plaintiff Hendricks, each of the Interested Parties meets the requirements of Rule 23(a) and Rule 23(b)(3).

## I.      INTRODUCTION

Plaintiff alleges StarKist cheated customers by shorting 5 oz. cans of tuna, under-filling them in violation of federal law. ██████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████

--------------------------------------------

[1] As used here and in Plaintiff's Class Action Complaint, the term "StarKist Tuna" is defined to mean StarKist Chunk Light Tuna in Water in a 5 oz. can, StarKist Solid White Albacore Tuna in Water in a 5 oz. can, StarKist Chunk Light Tuna in Vegetable Oil in a 5 oz. can, and StarKist Solid White Albacore Tuna in Vegetable Oil in a 5 oz. can.  *See* Class Action Complaint ¶ 1 [Dkt. No. 1].

[2] *See* Deckant Decl. Ex. D. ███████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████



3 Dongwon Industries is one of the world's largest tuna catching companies, controlling 75% of the canned tuna market in Korea with a fleet of 36 boats.  *See* https://www.starkist.com/about-starkist/about-dongwon.  Dongwon acquired the StarKist company in 2008.  *See* "Del Monte Sells StarKist Unit to S.  Korean Company," NY Times (June 24, 2008), *available at* http://www.nytimes.com/2008/06/24/business/worldbusiness/24starkist.html?dlbk&_r=0.

tuna, calculated across 24 cans using the methodology specified in 21 C.F.R. § 161.190(c).











On August 2, 2012, the District Attorneys of Riverside, Marin, and San Diego Counties sued StarKist for misrepresenting the quantity of its canned tuna.  The case was settled that same day, when StarKist stipulated to an injunction requiring it to test every lot for compliance with the federal standard of fill, to record the results of those tests, and to make the results available to the District

1   Attorney's Offices within 15 days of a written request.  *See* August 2, 2012 Final Judgment Pursuant

2   To Stipulation ¶ 3, Deckant Decl. Ex. J.



**II.     THE LEGAL STANDARD FOR CLASS CERTIFICATION**

A party seeking class certification must satisfy the four prerequisites of Rule 23(a):

"(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named

1  plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the

2  interests of the class." *Arnott v. U.S. Citizenship & Immigration Servs.*, 290 F.R.D. 579, 583 (C.D.

3  Cal. 2012) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal

4  quotation marks omitted).  In addition to meeting the requirements set forth in Rule 23(a), the

5  proposed class must also qualify under Rule 23(b)(1), (2), or (3).  *Zinser v. Accufix Research Inst.,*

6  *Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Here, Plaintiff asks the Court to certify a class under Rule

7  23(b)(3), which permits class actions for damages where "the court finds that the questions of law or

8  fact common to class members predominate over any questions affecting only individual members,

9  and that a class action is superior to other available methods for fairly and efficiently adjudicating

10  the controversy."  Fed. R. Civ. P. 23(b)(3).

11       The party seeking class certification bears the burden of proof in demonstrating that it has

12  satisfied all four Rule 23(a) prerequisites and that their class lawsuit falls within one of the three

13  types of actions permitted under Rule 23(b).  *Zinser*, 253 F.3d at 1186.  The district court must

14  conduct a rigorous analysis to determine whether plaintiffs met their burden to pursue their claims as

15  a class action.  *Id.* at 161.  Nevertheless, Rule 23 "grants courts no license to engage in free-ranging

16  merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Retirement Plans and Trust*

17  *Funds*, 133 S. Ct. 1184, 1194-95 (2013).

18  **III.      THE REQUIREMENTS OF RULE 23(A) ARE READILY MET**

19       **A.      The Class Satisfies The Numerosity Requirement**

20       Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

21  impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, numerosity cannot reasonably be disputed.



1 ███████████████████████████████████████████

2 **B.    Commonality Is Satisfied**

3 "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the

4 same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also* Fed. R. Civ.

5 P. 23(a)(2). The "claims must depend on a common contention" that is "capable of classwide

6 resolution – which means that determination of its truth or falsity will resolve an issue that is central

7 to the validity of each one of the claims in one stroke." *Id*. All questions of fact and law need not be

8 common to satisfy the rule. *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009). "What

9 matters to class certification is … the capacity of a classwide proceeding to generate common

10 *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551

11 (emphasis in original).

12 The commonality element is easily satisfied in this case, because Plaintiff's and class

13 members' claims each arise from the same facts. That is, Plaintiff alleges that StarKist Tuna does

14 not "contain[] an adequate amount of tuna for a 5-ounce can" because the cans are "underfilled and

15 thus substantially underweight." Compl. ¶¶ 2, 19; *see also Delarosa v. Boiron, Inc.*, 275 F.R.D. 582,

16 589 (C.D. Cal. 2011) ("Plaintiff alleges that Defendant misrepresented Coldcalm's efficacy on the

17 product's packaging. … Because a determination of the truth or falsity of Defendant's

18 representation of Coldcalm's efficacy will resolve an issue central to the validity of each one of the

19 claims in one stroke, … Plaintiff has carried her burden of showing commonality.").

20 The determination of the following common questions of fact will resolve issues central to

21 the validity of Plaintiff's and class members' claims in a single stroke:  (1) whether StarKist Tuna is

22 underfilled and thus substantially underweight, (2) whether Defendant warranted that StarKist Tuna

23 contained an adequate amount of tuna for a 5-ounce can, (3) whether Defendant warranted that

24 StarKist Tuna is legal for sale in the United States, (4) whether Defendant breached these warranties,

25 and (5) whether Defendant committed statutory and common law fraud by doing so. *See* Compl.

26 ¶ 13 (listing common questions of law and fact). Each of these claims is susceptible to common

27 ███████████████████████████████████████████

28 ███████████████████████████████████████████

1    proof, and predominate over individual issues, thereby satisfying Fed. R. Civ. P. 23(a)(2).[6]

2        **C.**    **Plaintiff's Claims Are Typical**

3        Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims

4    or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members

5    have the same or similar injury, whether the action is based on conduct which is not unique to the

6    named plaintiffs, and whether other class members have been injured by the same course of

7    conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The typicality

8    requirement is "permissive" and requires only that the representative's claims are "reasonably co-

9    extensive with those of the absent class members; they need not be substantially identical." *Hanlon*

10   *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

11       In this case, Plaintiff's claims are clearly typical because Defendant has deceived and injured

12   Plaintiff and class members in the same manner. *See, e.g.*, *Beck-Ellman v. Kaz USA, Inc.*, 283

13   F.R.D. 558, 565-66 (S.D. Cal. 2012) (certifying class of purchasers of mislabeled heating pads,

14   where "the heating pads subject to this litigation are sufficiently similar for the purposes of this

15   litigation, specifically with regards to their functionality, packaging, and advertisement"); *see also*

16   *Medrazo v. Honda of N. Hollywood*, 166 Cal. App. 4th 89, 99 (2008) (applying same rationale and

17   certifying class by Honda purchaser to represent interests of Suzuki and Yamaha purchasers because

18   purchasers of the different products had suffered the same wrong). Here, Plaintiff's and class

19   members' claims each arise from the same course of conduct – Plaintiff and class members each

20   reviewed the same product packaging, each purchased StarKist Tuna in reliance on the

21   representation that the products contained an adequate amount of tuna for a 5-ounce can, and each

22   "suffered a loss as a result of that purchase." *See* Compl. ¶ 14; *see also Delarosa*, 275 F.R.D. at 586

23   (certifying class of consumer purchasers of Coldcalm, an ineffective homeopathic medicine for the

24   common cold, and finding that "Plaintiff's claim … [is] typical of the class" where the plaintiff and

25   class members reviewed and relied upon the same allegedly misleading label); *see also* Deckant

26   ───────────────────
      [6] Recently, other district courts have certified similar labeling misrepresentation claims. *See, e.*g.,
27   *Johns v. Bayer Corp.*, 280 F.R.D. 551, 560 (S.D. Cal. 2012) (certifying labeling claims); *In re*
      *Ferrero Litig.*, 278 F.R.D. 552, 556 (S.D. Cal. 2011) (same); *Johnson v. General Mills, Inc.*, 276
28   F.R.D. 519, 521 (C.D. Cal. 2011) (same); *Zeisel v. Diamond Foods, Inc.*, 2011 WL 2221113, at *1
      (N.D. Cal. June 7, 2011) (same).

1   Decl. Ex. A (label exemplars of StarKist Tuna).  Accordingly, Plaintiff's claims are identical to

2   those of class members and arise from the same material facts.  Thus, Plaintiff and class members

3   share the same interests in determining whether StarKist Tuna was deceptively labeled.  *See, e.g.*,

4   *Beck-Ellman*, 283 F.R.D. at 565; *Johns*, 280 F.R.D. at 557.

5           Additionally, as courts in this circuit have overwhelmingly recognized, a plaintiff who

6   purchases products within the same product line with similar labeling claims or omissions is

7   "sufficiently similar" to, and can represent, all other class members within that product line.  *See*

8   *Beck-Ellman*, 283 F.R.D. at 566 (certifying claims on behalf of all models in "heating pad" product

9   line where all "heating pads contain similar omission[s]"); *see also Chavez v. Blue Sky Natural*

10  *Beverage Co.*, 268 F.R.D. 365, 378 (N.D. Cal. 2010) (certifying claims and stating "[a]lthough

11  plaintiff did not purchase each type of beverage carrying the misleading label, his claims are

12  'reasonably coextensive with those of absent members'") (citation omitted).  Here, as in *Beck-*

13  *Ellman* and *Chavez*, each of Plaintiff's claims cover the same product line of 5 oz. StarKist Tuna,

14  and his claims concern the same facts.  *See supra*.  Thus, Plaintiff's claims arise from the same

15  course of events, share the same legal theory, and are "reasonably coextensive" with the claims of

16  the class.  Typicality is satisfied.

17          **D.      Plaintiff Will Adequately Represent The Class And Subclass**

18          Rule 23(a) also requires the representative parties to "fairly and adequately protect the

19  interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit set a two-prong test for this

20  requirement:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other

21  class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on

22  behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150

23  F.3d at 1020).

24                  **1.      Plaintiff Is An Adequate Class Representative**

25          The "due process touchstone of adequacy and fairness of representation must be judged in

26  light of … the alternatives to class representation available."  *Blackie v. Barrack*, 524 F.2d 891, 910

27  (9th Cir. 1975).  Rule 23 "requires adequate representation.  The alternative may be none at all."  *Id.*

28  at n.26.  Here, Plaintiff Hendricks has already demonstrated his adequacy and commitment to

1  vigorously prosecuting this action by performing his duties as a named plaintiff.  *See generally*

2  Hendricks Decl. ¶¶ 9-11 (detailing the fulfillment of Plaintiff Hendricks' duties as a named

3  plaintiff).  In that regard, Plaintiff Hendricks searched for and produced documents relevant to this

4  action, responded to and verified his responses to Defendant's interrogatories, reviewed documents

5  to be filed on his behalf, sat for a lengthy deposition, regularly corresponds with his counsel, and

6  remains updated on the status of this case.  *Id.*  Additionally, Plaintiff Hendricks testified at his

7  deposition that he understands he has a duty "to represent the people in this country and in this state

8  who have been cheated by StarKist in receiving their fair amount or adequate amount of tuna."  *Id.*

9  ¶ 9.  To date, Plaintiff Hendricks estimates that he has dedicated "[a] good 30 to 40 hours" to this

10  case.  *Id.* ¶ 9.  Furthermore, Plaintiff Hendricks has the same interests as the class members who

11  have purchased StarKist Tuna, and he has sworn to fairly and adequately represent the interests of

12  the class.  *See id.* ¶ 11 ("I do not have any conflict with other class members.  I will do my best to

13  protect the interests of other class members and will fairly and adequately represent the class to the

14  best of my ability.").  Plainly, Plaintiff Hendricks is an adequate class representative.[7, 8]

15  **2.      Plaintiff's Counsel Are Qualified**

16        Rule 23(g) requires that a district court appoint class counsel for any class that is certified.

17  *See* Fed. R. Civ. P. 23(g)(1)(A).  In appointing class counsel, Rule 23(g) lists four factors for

18  consideration:  (1) the work counsel has done in identifying or investigating potential claims in the

19  action; (2) counsel's experience in handling class actions or other complex litigation and the type of

20  claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that

21  counsel will commit to representing the class.  Fed. R. Civ. P. 23(g).  In evaluating the adequacy of

22

---

23  [7] Given the expense and complexity of this litigation, the alternative to representation by Plaintiff is no representation at all.  *See Blackie*, 524 F.2d at n.26.

24  [8] The Interested Parties are also adequate class representatives.  As discussed in their

25  contemporaneously-filed Motion For Leave To Intervene, the Interested Parties bring virtually identical allegations to those of Plaintiff Hendricks.  That is, each bought StarKist Tuna within the class period, each reviewed the same product packaging, each purchased the products in reliance on

26  the representation that the products contained an adequate amount of tuna for a 5-ounce can, and each suffered a loss as a result of that purchase.  They also bring the same causes of action as

27  Plaintiff Hendricks – breach of express warranty, breach of the implied warranty of merchantability, negligent misrepresentation, fraud, and violation of their respective states' consumer protection

28  statutes.

---

1  counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and

2  resources. The court may also look at the attorneys' demonstrated performance in the suit itself." *In*

3  *re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).

4       Plaintiff's counsel, Bursor & Fisher, P.A., are class action lawyers who have experience

5  litigating consumer claims, including claims against food manufacturers. *See* Bursor & Fisher, P.A.

6  Firm Resume, Deckant Decl. Ex. W. The firm has been appointed class counsel in dozens of cases

7  in both federal and state courts, and has won multi-million verdicts or recoveries in 5 of 5 class

8  action jury trials since 2008. *Id.* They have also been vigorously prosecuting this action through

9  discovery and litigation of Defendant's motions to dismiss and motion for reconsideration, have

10  retained experts, conducted substantial research regarding the legal issues, and thoroughly

11  investigated the factual issues in this action. They have no conflicts of interest and will prosecute

12  this action vigorously on behalf of Plaintiff and the class. These facts demonstrate that Bursor &

13  Fisher, P.A. is qualified to serve as class counsel.

14       **E.    The Class Is Ascertainable**

15       Although not specifically mentioned in Rule 23(a), ascertainability is a threshold prerequisite

16  to class certification. *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *4 (C.D. Cal. Apr. 9, 2014).

17  Under Rule 23, individual notice must be provided to class members "who can be identified through

18  reasonable effort." Rule 23(c) also implicitly assumes that there will be class members who cannot

19  be identified. *See generally* Manual For Complex Litigation, Fourth § 21.311, at 292 (Federal

20  Judicial Center 2004) ("[I]f no records were kept of sales of an allegedly defective product from

21  retailers to consumers, publication notice may be necessary.").

22       Courts in this circuit routinely certify classes consisting of purchasers of low-cost consumer

23  products where it is impossible to identify and notice *every* member of the class.[9] *See* Deckant Decl.

---

[9] *See, e.g.*, *Forcellati*, 2014 WL 1410264, at *12 (homeopathic products); *McCrary v. Elations Co.,
LLC*, 2014 WL 1779243, at *9 (C.D. Cal. Jan. 13, 2014). (joint supplements); *Astiana v. Kashi Co.*,
291 F.R.D. 493, 500 (S.D. Cal. 2013) (snack products); *Guido v. L'Oreal, USA, Inc.*, 2013 WL
3353857, at *18-19 (C.D. Cal. July 1, 2013) (hair products); *Johns*, 280 F.R.D. at 560
(multivitamins); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) (tea
products); *Delarosa*, 275 F.R.D. at 595 (homeopathic products); *Johnson*, 276 F.R.D. at 524 (yogurt
products); *Chavez*, 268 F.R.D. at 376 (beverages); *Rivera v. Bio Engineered Supplements &
Nutrition, Inc.*, 2008 WL 4906433, at *17 (C.D. Cal. 2008) (nutritional supplements).

1    Ex. X (collecting certified class actions where purchasers were unlikely to have retained receipts).

2    Indeed, the Ninth Circuit only requires that the *class definition* describe objective criteria that allow

3    a class member to identify himself or herself as having a right to recover or opt out based on the

4    description, without the use of subjective factors like state of mind.  *See McCrary*, 2014 WL

5    1779243, at *7-9.

6         Here, the Class and Subclasses are defined objectively so class members can be identified

7    exclusively through the use of objective criteria.  *See Steven Ades & Hart Woolery v. Omni Hotels*

8    *Mgmt. Corp.*, 2014 WL 4627271, at *7 (C.D. Cal. Sept. 8, 2014) ("Plaintiffs' class definition sets

9    forth objective characteristics sufficient to enable prospective class members to identify

10   themselves."); *Forcellati*, 2014 WL 1410264, at *5 ("The requirement of an ascertainable class is

11   met as long as the class can be defined through objective criteria.").  Plaintiff's proposed class

12   definition clearly specifies the five-ounce cans of StarKist Tuna that are the subject of the suit.  It

13   also clearly specifies the relevant time period:  tuna cans packed before June 20, 2014.[10]  There are

14   no subjective factors at play.  Thus, the class is defined in such a way that it is administratively

15   possible to identify class members by reference to these criteria, and these criteria alone.  *See, e.g.*,

16   *McCrary*, 2014 WL 1779243, at *7-8 (rejecting argument that putative class members must be likely

17   to have proof of purchase to satisfy ascertainably, or any other additional requirement); *Chavez*, 268

18   F.R.D. at 377.

19        There is also little risk of inaccurate or fraudulent claim submissions.  First, every can

20   includes an 18-digit code, which is objectively verifiable and specifies what tuna was sold and when

21   it was packaged. [11]  *See* Weisbrot Decl. ¶ 14.  Second, each can also contains an expiration date,

22   which can be used to verify the date it was packed.  *See id.* ¶ 18 ("[T]he expiration date printed on

---

23   [10] The California subclass includes the additional identifier that the person reside in California, as

24   would any other state-specific subclass the Court certifies.  The location of the purchase is an
     objective fact.

25   [11]



26

27

28

1   each can is *exactly* three years after the date the can was packed, which can be used by Angeion to

2   verify whether a given can was packed during the class period.").  Lastly, the

3   contemporaneously-filed Declaration of Steven Weisbrot enumerates further anti-fraud mechanisms

4   that can be employed by claims administration firms.  *See id.* ¶¶ 13-19 (explaining anti-fraud

5   measures like tracking IP addresses, verifying the prices that consumers paid, and screening unusual

6   or aberrant claims).  Nonetheless, courts in this circuit have held that the possibility of false claims

7   does not render a class action unmanageable or nullify the objective criteria that can be used to

8   identify class members in this case.  *See, e.g.*, *McCrary*, 2014 WL 1779243, at *8.

9          Similarly, there is little risk of confusion for consumers who have not retained their original

10  tuna cans. ████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████

12  ██████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ██████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████

20  ████████████████████████████████████ *see also* Weisbrot Decl. at ¶ 15 (stating

21  that verifying the price reportedly paid on a submitted claim form can be used by a claims

22  administrator as a fraud-prevention device).[12]

23          In response, StarKist cannot argue that it is necessary for class members to retain a receipt or

24  other proof of purchase.  To the contrary, courts have consistently found that requiring consumers to

25  have a proof of purchase as a prerequisite to class certification "would render class actions against

26  _____

27  [12] As another device to prevent erroneous claims, the claim form could be drafted to require
    individuals to specify where they purchased the product.  Then, if a claims administrator knows

28  StarKist only sells *seven*-ounce cans at Costco, it could exclude claims of purchasers who state they
    bought the product at Costco.  *See* Weisbrot Decl. at ¶ 14.

producers almost impossible to bring."  *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y.

2014); *see also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (noting

that if proof of class membership was required for certification, "there would be no such thing as a

consumer class action").  Absent a class action, most, if not all, of the class members in this case will

not recover at all.  *See, e.g.*, *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *9 (N.D. Cal.

Nov. 18, 2014) (certifying a class where "the only way to determine class membership is with self-

identification through affidavits"); *Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244

F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some – perhaps most – will

be unable to proceed as individuals because of the disparity between their litigation costs and what

they hope to recover."); *Hanlon*, 150 F.3d at 1023 ("In this instance, the alternative methods of

resolution are individual claims for a small amount of consequential damages … litigation costs

would dwarf potential recovery.  In this sense, the proposed class action is paradigmatic.  …  [A]

class action is the clearly preferred procedure in this case.").  Further, the requirements of Rule 23

"must be interpreted to best effectuate the primary purposes of the class action device, *i.e.*, to give

small investors a reasonable opportunity to vindicate their claims in a manner which will not place

an undue burden upon them."  *Blackie*, 524 F.2d at fn. 26; *see also Amchem Prods. Inc. v. Windsor*,

521 U.S. 591, 617 (1997) ("[A]t the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive" for individuals to bring claims); *Lilly v.

Jamba Juice Co.*, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014) ("Few people retain receipts

for low-priced goods, since there is little possibility they will need to later verify that they made the

purchase.  Yet it is precisely in circumstances like these, where the injury to any individual

consumer is small, but the cumulative injury to consumers as a group is substantial, that the class

action mechanism provides one of its most important social benefits.") (footnote omitted).

　　　　Nor is it a requirement to identify every class member.  *See Rahman v. Mott's LLP*, 2014 WL

6815779, at *4 (N.D. Cal. Dec. 3, 2014) ("A class is ascertainable if the class is defined with

objective criteria and if it is administratively feasible to determine whether a particular individual is

a member of the class.") (internal citations and quotations omitted); *Galvan v. KDI Distribution Inc.*,

2011 WL 5116585, at *5-6 (C.D. Cal. 2011) ("Notice can be distributed through the same channels

Krossland utilizes to advertise its products:  posting class notices at retail stores where Krossland cards are sold, notifying past purchasers to identify themselves in order to participate."); *Zeisel*, 2011 WL 2221113, at *6 ("Diamond argues that it is not administratively feasible to determine if a person is a member of the proposed class because it sells its Shelled Walnut products to retailers and it does not track consumer purchases.  …  The Court is not persuaded.  …  [The class definition] includes objective characteristics that would permit a consumer to identify themselves as a member. … Accordingly, … Zeisel has shown the class is ascertainable …."); *Agne v. Papa John's International, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) ("Defendants are not challenging the precision or definiteness of the class definition.  Instead, they argue it is not possible to identify the individuals who fit that definition because there are 'no records.'  …  The class definition provides sufficiently precise and objective criteria to determine class membership.  …  [A]scertainability is therefore satisfied.").

In regards to notifying class members, Plaintiff proposes a robust notice program consisting of (1) Internet notice, (2) publication notice, and (3) direct notice where possible.  <u>First</u>, notice can be distributed through the same online channels StarKist uses to advertise its products, including its social media accounts and websites.  *See* Weisbrot Decl. ¶ 7.  Specifically, StarKist maintains a website with a specific page dedicated to its canned tuna products.  Deckant Decl. Ex. Z; *see also* Weisbrot Decl. ¶ 6.  StarKist also maintains an active social media and online presence, through accounts on Facebook, Twitter, Instagram, Pinterest, and YouTube.  *Id.*  Thus, consumers who visit the StarKist website can access these social media accounts and either interact with StarKist's various accounts through "sharing" functions or by subscribing to StarKist's various social media services.  *Id.*  This method of advertising has proven popular and effective for StarKist, given that it has collected over 458,000 "Likes" on Facebook.  Deckant Decl. Ex. AA (StarKist Facebook page); *see also* Weisbrot Decl. ¶¶ 6-10.  Starkist's website also collects individually identifiable information, through programs to distribute coupons to interested consumers.  Deckant Decl. Ex. BB (StarKist's website); Weisbrot Decl. ¶¶ 6-10.  As a result, StarKist likely possesses a list of e-mail addresses of consumers who are likely to have purchased StarKist products, and other personally identifiable information.  *See* Weisbrot Decl. ¶ 6.  Accordingly, an effective notice plan could utilize

StarKist's considerable presence on the Internet, and could include both direct and publication notice.  *See* Weisbrot Decl. ¶ 6; *see also*, *e.g.*, *In re Toys R Us*, 295 F.R.D. 438, 448-49 (C.D. Cal. 2014); *Forcellati v. Hyland's*, Order Re. Form and Dissemination of Notice to Class, (Dkt. No. 144) (C.D. Cal. Aug. 4, 2014) (requiring defendants to "add a link to the case-specific website to their consumer-facing websites"); *Astiana v. Kashi Co.*, S.D. Cal. Case No. 3:11-cv-01967, Order Approving Proposed Plan and Form of Class Notice (Dkt. No. 175) (S.D. Cal. Sept. 26, 2013) (same); *Jermyn v. Best Buy Stores, L.P.*, 2010 WL 5187746 at *3-9 (S.D.N.Y. Dec. 6, 2010) (approving notice distribution plan including publication on defendant's website).

$\qquad$ Second, Plaintiff could provide notice to class members via national publications specifically targeted toward demographics who are likely to have purchased StarKist Tuna.  *See* Weisbrot Decl. ¶¶ 5-9.  Additionally, a notice plan could also include displaying a poster at retail locations where StarKist Tuna is sold.[13]  *See, e.g.*, *Galvan*, 2011 WL 5116585, at *5-6; *Zeisel*, 2011 WL 2221113 at *6; *McCrary*, 2014 WL 1779243, at *8.

$\qquad$ Finally, many of StarKist's major retailers have "customer loyalty" programs including: Safeway, Ralph's Supermarkets, Lucky Supermarkets, Kroger, SaveMart, Piggly Wiggly, Wegmans, Vons, and other stores like CVS Caremark, Duane Reade Inc., and Walgreen's.  Deckant Decl. Ex. CC (rewards programs); Weisbrot Decl. ¶ 9.  In prior actions, Plaintiff's counsel has considerable experience obtaining contact information from retailers to identify class members and then provide them with direct notice.  *Id.*  For example, in *Forcellati v. Hyland's*, Plaintiff's counsel provided direct notice to over 500,000 individuals by subpoenaing retailers who sold certain homeopathic cold and flu products at issue.  *See* Deckant Decl. ¶ 2.  In *Ebin v. Kangadis Food, Inc.*, Plaintiff's counsel provided individual notice to nearly 200,000 olive oil purchasers after serving subpoenas on the retailers where the product was sold.  *Id.* ¶ 3.  In *In re Scotts EZ Seed Litigation*, Plaintiff's counsel was able to identify more than 55,000 purchasers of a lawn care product by subpoenaing major retailers where the product was sold.  *Id.* ¶ 4.  Although this process will not produce a complete class list, it will ascertain a substantial number of class members "who can be identified with

---

[13] Notice could be provided through retailers in two ways: "(1) notice placards could be posted at the retail locations and/or (2) notice could be printed on the back of receipts when customers purchase similar over-the-counter cold and flu products."  Weisbrot Decl. ¶ 8.

1    reasonable effort," thereby satisfying the requirements of Rule 23(c)(2)(B).  *See also Dean v. Dick's*

2    *Sporting Goods, Inc.*, 2013 WL 3878946, at *1-2 (C.D. Cal. 2013) ("Plaintiff's address … and e-

3    mail address are stored in the ScoreCard [rewards-customer] database.").

4    **IV.    THE PROPOSED CLASS SATISFIES RULE 23(B)(3)**

5         Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class

6    members predominate over any questions affecting only individual members," and "a class action is

7    superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R.

8    Civ. P. 23(b)(3).  Both are met here.

9         **A.    Common Questions Of Law Or Fact Predominate**

10        "Class-wide issues predominate if resolution of some of the legal or factual questions that

11   qualify each class member's case as a genuine controversy can be achieved through generalized

12   proof, and if these particular issues are more substantial than the issues subject only to individualized

13   proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).  Notably, Rule 23(b)(3)

14   calls only for "a showing that questions common to the class predominate, not that those questions

15   will be answered, on the merits, in favor of the class."  *Amgen Inc.*, 133 S. Ct. 1184 at 1191.  Here,

16   the legal and factual issues do not require individualized determinations, but can be resolved through

17   common proof applicable to all of Plaintiff's claims.

18        **1.    The Elements Of The Warranty Claims Can Be Established Nationwide
             Through Common Proofs**

19        Plaintiff's claim for breach of express warranty pursuant to U.C.C. § 2-313 requires proof of

20   an "affirmation of fact or promise" or "description of goods," which was "part of the basis of the

21   bargain," and a subsequent breach.  *See Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1227

22   (2010) (noting a "presumption that the seller's affirmations go to the basis of the bargain" and

23   reversing order decertifying breach of express warranty class).  Here, this claim can be proved from

24   the common evidence described above.  Plaintiff and each class member reviewed the same product

25   packaging, each purchased StarKist Tuna in reliance on the representation that the products

26   contained an adequate amount of tuna for a 5-ounce can, and each "suffered a loss as a result of that

27   purchase."  Compl. ¶ 14; *see also supra*; *Astiana*, 291 F.R.D. at 505 ("Common issues …

28   predominate on Plaintiffs' claims for … breach of express warranty as to the products labeled

---

1    'Nothing Artificial.'  …  Specifically, this case concerns whether Defendant's products contained

2    artificial ingredients and whether Defendant made material representations to the contrary.");

3    *Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576, 581 (C.D. Cal. 2011) (certifying claims

4    for breach of express warranty).

5          Additionally, Plaintiff's claim for breach of implied warranty requires a showing that the

6    products do not "pass without objection in the trade under the contract description."  U.C.C.

7    § 2-314(2)(a).  It also requires: "(b) in the case of fungible goods, are of fair average quality within

8    the description; . . . (e) are adequately contained, packaged, and labeled as the agreement may

9    require; and (f) conform to the promises or affirmations of fact made on the container or label if

10   any."  *Id.*  As above, these claims can be proved from common evidence.  *Yamada*, 275 F.R.D. at

11   576, 581 (certifying claims for breach of express warranty and implied warranty).

12         Given that the U.C.C. has been adopted in 49 states (to the exclusion of Louisiana), the

13   statutory text at issue is identical in every state.  The only relevant difference between the states is

14   whether privity is required, but this factor does not bar certification of a nationwide class for breach

15   of either express or implied warranty.  For Plaintiff's implied warranty claim, there is

16   well-established rule that privity is not required for claims involving sealed food products.  *See Klein*

17   *v. Duchess Sandwich Co.*, 14 Cal. 2d 272, 284 (1939) ("[T]he warranty as to the fitness of foodstuffs

18   intended for human consumption was not intended to be solely for the benefit of the immediate

19   'buyer,' but was intended to be for the benefit of the ultimate consumer, – the existence of privity of

20   contract not being essential in an action brought by such consumer on the warranty theory."); *see*

21   *also Collum v. Pope & Talbot, Inc.*, 135 Cal. App. 2d 653, 656-57 (1955) (same).  In its March 25,

22   2014 Order Granting In Part And Denying In Part Motion To Dismiss, this Court agreed with this

23   analysis.  Dkt. No. 57 at 16 ("California law does not require privity for implied warranty claims

24   involving sealed food products.").

25         For express warranty, there is an even stronger exception to the privity rule, where the

26   warranty at issue appears on a product's label or advertising.  *See, e.g.*, *Clemens v. DaimlerChrysler*

27   *Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (noting that "[t]here are several exceptions to the privity

28   requirement" for express warranties, the first of which "arises when the plaintiff relies on written

labels or advertisements of a manufacturer."); *see also Sanders v. City of Fresno*, 2006 WL 1883394 at *19 (E.D. Cal. July 7, 2006) ("There are exceptions to the privity requirement, such as: … reliance on the manufacturer's written representations in labels or advertising materials…"). Thus, certification of a nationwide class for breach of express and implied warranty is appropriate.

### 2.  The Elements Of Fraud And Negligent Misrepresentation Can Be Established Nationwide Through Common Proofs

Predominance is also met for the nationwide Class for Plaintiff's fraud and negligent misrepresentation claims. The predominance requirement is met for claims sounding in fraud where they are based on uniform representations made to all members of the Class:

> Fraud actions must … be separated into two categories:  fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.

*Moore*, 306 F.3d at 1253. Here, because Defendant uniformly misrepresented that StarKist Tuna contained an adequate amount of tuna for a 5-ounce can, this action is an "appropriate subject[] for class certification because the standardized misrepresentations may be established by generalized proof." *Id.*; *see also* Deckant Decl. Ex. A (label exemplars). Indeed, it is impossible that class members did not rely on Defendant's misrepresentation, as it concerned the name of, and nature of the very product which they purchased. *See, e.g.*, Hendricks Dep. at 27:14-28:3, Deckant Decl. Ex. C ("Q.  And what did that tell you, the can saying five ounces?  A.  That there's an adequate amount of tuna in the can."). Additionally, the same evidence will determine Defendant's liability with respect to all class members. Thus, certification of a nationwide Class is appropriate for Plaintiff's fraud and negligent misrepresentation claims.

To be sure, courts often refuse to certify nationwide classes on fraud claims, due to differing requirements in state law. *Cf. Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101-02 (C.D. Cal. 2012) (refusing to certify a 50-state claim for negligent misrepresentation, finding that the various states had material differences in the *prima facie* case for such claims). These differences were recently surveyed by the *Gianino* court:

> First, there is a split among the states as to whether a defendant must

knowingly make a material misrepresentation or whether reckless disregard of the truth of the representation is sufficient for an international misrepresentation claim. … Second, there are significant differences among the states regarding the standard of proof. … Third, at least five states do not require a plaintiff to show that the defendant had intent to induce reliance on a material misrepresentation for a common law fraud claim. … Fourth, statutes of limitations for intentional and negligent misrepresentation laws vary significantly from one to six years among the states. … Fifth, states apply different methods of calculating damages for misrepresentation claims.

*Id.* at 1101-02.  Here, the facts at issue satisfy *each* of these variations. █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ Second, these allegations are sufficiently

powerful to satisfy even the most rigorous standard of proof. ████████████████

████████████████████████████████████████████████████████

██████████ Fourth, the differences in each state's statute of limitations can be handled with

screening by a sophisticated claims administrator.  *See* Weisbrot Decl. ¶ 17 (explaining that claims

administrators can screen by geographic region). ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *See Ebin*,

297 F.R.D. at 570 (certifying 50-state fraud and negligent misrepresentation claims, which involved

the process of surveying the differences in the various states' fraud laws but nonetheless finding that

"Plaintiffs reply and the Court agrees that New York law governs the common law claims and that

even if the Court must apply the law of numerous states, common issues still predominate").

      **3.**      **The Elements Of The Consumer Protection Claims Can Be Established Statewide Through Common Proofs**

Plaintiff asserts causes of action under California's Unfair Competition Law ("UCL"), False

Advertising Law ("FAL"), and the Consumers Legal Remedies Act ("CLRA") on behalf of

1   himself and the California Subclass.  Compl. ¶¶ 43-63.  Each of Plaintiff's statutory causes of

2   action lends itself to proof by common inquiry and therefore satisfies the predominance requirement

3   set forth by Fed. R. Civ. P. 23(b)(3). ███████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████   Moreover, the harm to Plaintiff resulting from the purchase of

7   StarKist Tuna is no different than the harm to any of those he seeks to represent.  Accordingly,

8   Plaintiff's consumer protection claims can be established through common proof.[14]

9   **B.    Class Litigation Is Superior To Other Methods Of Adjudication**

10          A class action is superior to other methods for the efficient adjudication of this action.  *See*

11  Fed. R. Civ. P. 23(b)(3).  Indeed, "[c]lass action certifications to enforce compliance with consumer

12  protection laws are desirable and should be encouraged."  *Ballard v. Equifax Check Servs., Inc.*, 186

13  F.R.D. 589, 600 (E.D. Cal. 1999).  Each of the factors pertinent to a finding of superiority set forth

14  in Rule 23(b)(3)[15] confirm that a class action is the superior method in this case.

15          First and foremost, the individual damages claims of each class member are not substantial

16  enough to warrant individual filings, making class certification necessary for class members to

17  obtain relief.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[M]ost of the plaintiffs

18  would have no realistic day in court if a class action were not available.  Indeed, as the Ninth Circuit

19  has explained:

20          [The superiority] [d]etermination necessarily involves a

---

21  [14] Similarly, statewide certification is appropriate for the Interested Parties' claims for violation of
    their respective states' consumer protection statutes.  Indeed, statewide classes are regularly certified

22  under these statutes, and these claims can be proven using the same common evidence as discussed
    above.  *See, e.g., Ebin*, 297 F.R.D. at 568-70 (certifying a New York subclass for violation of N.Y.

23  Gen. Bus. Law § 349 in a consumer class action concerning mislabeled food products); *Smith v. Wm.
    Wrigley Jr. Co.*, 2010 WL 2401149, at *3-6 (S.D. Fla. June 15, 2010) (certifying statewide claims

24  for violation of the Florida Unfair and Deceptive Trade Practices Act in a consumer class action
    concerning misrepresentations on packages of chewing gum); *Donovan v. Philip Morris USA, Inc.*,

25  2012 WL 957633, at *1-3 (D. Mass. Mar. 21, 2012) (denying motion to decertify claims for
    violation of the Massachusetts Consumer Protection Act in a consumer class action).

26  [15] Rule 23(b)(3) sets out the following nonexclusive factors:  "(A) the interest of members of the
    class in individually controlling the prosecution … of separate actions; (B) the extent and nature of

27  any litigation concerning the controversy already commenced by … members of the class; (C) the
    desirability … of concentrating the litigation of the claims in the particular forum; (D) the

28  difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).

---

1

2

3

4

> comparative evaluation of the alternative mechanisms of dispute resolution.  In this instance, the alternative methods of resolution are individual claims for a small amount of consequential damages … litigation costs would dwarf potential recovery.  In this sense, the proposed class action is paradigmatic.  A fair examination of alternatives can only result in the apodictic conclusion that class action is the clearly preferred procedure in this case.

5    *Hanlon*, 150 F.3d at 1023.

6         Further, in a case with hundreds of thousands or millions of class members, each class

7    member's interest in aggregating his or her claims into a single class action lawsuit substantially

8    outweighs the interest of any class member in individual control of the litigation.  *See* Fed. R. Civ. P.

9    23(b)(3)(A); *see also*, *e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)

10   ("The more claimants there are, the more likely a class action is to yield substantial economies in

11   litigation.").  The filing of thousands of lawsuits would also result in inconsistent adjudications and

12   would establish incompatible standards of conduct for Defendant.

13        Plaintiff's counsel is not aware of any other pending litigation brought on behalf of the

14   proposed class in this case.  *See* Fed. R. Civ. P. 23(b)(3)(B).  Since, in the absence of a class action,

15   hundreds of thousands or millions of consumers would have no reasonable means of enforcing their

16   rights, a class action would have to be entirely unmanageable before it can be pronounced an inferior

17   alternative.  *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435, 467 (N.D. Cal. 2012) (noting failure to

18   certify due to unmanageability is disfavored).  Thus, as is the case here, a class action is superior

19   where, "classwide litigation of common issues will reduce litigation costs and promote greater

20   efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

21   **V.       CONCLUSION**

22        Plaintiff requests that the Court certify the Class and California Subclass, appoint him as a

23   class representative, and appoint Bursor & Fisher, P.A. as class counsel.  Interested Parties Laury

24   Smith, Ben Hall, Brian Andacky, and Joseph Vallillo also join in these requests and further request

25   that the Court certify each of their respective subclasses and appoint them as class representatives.

26

27

28

---

MOTION FOR CLASS CERTIFICATION                                                          25
CASE NO. 13-CV-00729-YGR

1  Dated:  January 20, 2015

2

Respectfully submitted,

**BURSOR & FISHER, P.A.**

3

4

By:  _/s/ *Neal J. Deckant*_____
            Neal J. Deckant

5

6

7

8

Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
            ndeckant@bursor.com

9

10

11

12

13

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            jluster@bursor.com

14

15

*Attorneys for Plaintiff*
*And the Interested Parties*

16

17

18

19

20

21

22

23

24

25

26

27

28