1

**BURSOR & FISHER, P.A.**

2

L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)

3

1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596

4

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5

E-Mail: ltfisher@bursor.com
        jluster@bursor.com

6

**BURSOR & FISHER, P.A.**

7

Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)

8

888 Seventh Avenue
New York, NY  10019

9

Telephone: (212) 989-9113
Facsimile:  (212) 989-9163

10

E-Mail: scott@bursor.com
        ndeckant@bursor.com

11

*Attorneys for Plaintiff*
*And the Interested Parties*

12

13

UNITED STATES DISTRICT COURT

14

NORTHERN DISTRICT OF CALIFORNIA

15

16

PATRICK HENDRICKS, individually and on behalf of all others similarly situated,

Case No. 13-CV-00729-YGR

17

Plaintiff,

**DECLARATION OF STEVEN WEISBROT IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

18

19

v.

20

STARKIST CO.,

Date:  April 21, 2015
Time:  2:00 p.m.
Courtroom 1, 4th Floor

21

Defendant.

Hon. Yvonne Gonzalez Rogers

22

23

24

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

25

26

27

28

DECLARATION OF STEVEN WEISBROT
CASE NO. 13-CV-00729-YGR

I, Steven Weisbrot, declare as follows:

1.    I submit this declaration for the purpose of providing the Court with information regarding the claims administration process in consumer class actions such as this one.  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts set forth herein.

2.    I am an Executive Vice President at the class action claims administration firm Angeion Group, LLC ("Angeion").  Prior to joining Angeion's executive team, I was employed as Director of Class Action Services at a different nationally-recognized class action settlement administrator.  Previously, I was employed in private law practice, and I am currently an attorney in good standing in the State of New Jersey and the Commonwealth of Pennsylvania.  In my roles at both claims administration companies I have taught multiple Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlement and Claims Administration, Ascertainability and Damages in Food and Cosmetics Class Actions, as well as Class Action Claims Administration generally.  Additionally, I have written many articles on Class Action Settlement Administration and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, and professional law firm blogs.

3.    By way of background, Angeion Group is a class action notice and claims administration company formed by an experienced team of executives with more than 60 years of experience implementing claims administration and notice solutions for class action settlements and judgments.  With executives that have had extensive tenures at four other nationally recognized claims administration companies, Angeion employs a team of innovative leaders in class action settlement administration.  Headquartered in a state-of-the-art 14,000 square foot processing and hosting facility in Center City, Philadelphia, Angeion also provides  mass tort administration services, electronic discovery, and court reporting services in the United States and Canada.  Collectively, the management team at Angeion has overseen 2,000 class action settlements, processed over 250 million claims, and distributed over $10 billion to class members.

---

4.      My staff and I have been asked by Plaintiff's Counsel to study notification issues to determine whether a notice program could be developed that would effectively reach Class members and notify them of their rights and options upon the Court's certification of the Class in the underlying litigation.  Likewise, we have been asked to determine whether a valid claims process could be identified which would reduce the potential for fraudulent claims.

5.      We have thoroughly reviewed the proposed class definition,[1] the pleadings, and relevant documents after having signed the required non-disclosure agreement.  I am now confident that the parties, working with a class action claims administration firm, will be able to develop and implement an effective notice program in this action as well as a highly effective claims process.

6.      Specifically, notice can be provided to class members through a comprehensive multi-channel campaign consisting of published and Internet notice.  This could include a Facebook campaign and Internet banner ads targeting likely purchasers of StarKist Tuna.  In addition, a review of documents related to this case reveals that StarKist has a robust online presence.  For example, StarKist maintains its own website where notice can be posted.  Moreover, visitors of StarKist's website are provided with an option to receive e-mails containing coupons for StarKist's products, and individual notice can be provided to those individuals via e-mail.  StarKist also maintains an active presence on Facebook, Twitter, and Instagram, which can additionally be used to notify the class.

7.      Notice could be also provided through the retailers that sell the class products.  This could be accomplished in two ways:  (1) notice placards could be posted at the retail locations, and/or (2) notice could be printed on the back of receipts at certain retail locations when customers purchase similar tuna fish products.

8.      Additionally, Plaintiff's Counsel could propose a notice plan that includes serving subpoenas on retailers where StarKist Tuna is sold to consumers.  These subpoenas would seek

---

[1] I understand that the class definition is "All persons in the United States who purchased StarKist Tuna packed before June 20, 2014."  I further understand the term "StarKist Tuna" is defined to mean StarKist Chunk Light Tuna in Water in a 5 oz. can, StarKist Solid White Albacore Tuna in Water in a 5 oz. can, StarKist Chunk Light Tuna in Vegetable Oil in a 5 oz. can, and StarKist Solid White Albacore Tuna in Vegetable Oil in a 5 oz. can.

consumers' e-mail addresses from the retailers' loyalty card programs – for known purchasers of StarKist Tuna – to effectuate individual notice to class members.  In fact, this precise mechanism for identifying class members was recently utilized by Judge Rakoff in *Ebin v. Kangadis Food, Inc.*, No. 13-CV-2311 (S.D.N.Y. Feb. 24, 2014) [Dkt. No. 96] to provide individual notice to nearly 200,000 olive oil purchasers identified from records subpoenaed from retailers' loyalty card programs.

9.      In determining how to effectively reach class members, Angeion uses sophisticated means to ensure that the class notice program is targeted to reach the intended consumers.  First, Angeion is able to determine a target audience for a paid media campaign by studying information such as the class definition, class member demographics, and mobility patterns.  After studying this information, we can opine on the optimal combination of media to reach the targeted audience.  Thereafter, we use industry formulas to determine the *reach* and *frequency* of the notice program.  Such notice program can be memorialized in a detailed document specifying the exact techniques and strategies employed as well as the approximate *reach* and *frequency* of the program, for the Court's consideration.  Based upon similar class actions, I believe the cost of the notice plan in this case will not overwhelm the potential class recovery in the underlying litigation.

10.      Likewise, should the need arise I am confident that we will be able to implement a claims process in this action that could accurately and effectively verify claims made by class members and distribute the proceeds of any judgment the class may obtain.  This could be accomplished by utilizing a number of methods for establishing class membership and determining whether a claimant is entitled to file a claim and in what amount.

11.      I am also confident that the parties, along with a claims administration firm, can employ claims processes, services, and technologies to accurately and effectively verify claims made by class members.  Effective verification can be accomplished by utilizing a number of methods of proving class membership and in determining whether a claimant is entitled to file a claim and in what amount.

12.     It is well-accepted that class action administrators have a wealth of expertise about how to ensure fair participation without fraud and have been refining such expertise for a half century.  *See* Francis E. McGovern, *Distribution of Funds in Class Actions-Claims Administration,* 35 J. Corp. L. 123 (2009) (providing case studies demonstrating how experienced claims administrators increase fair participation in class action settlements and at the same time "reduce[]" the "level of potential fraud").

13.     In this matter, Angeion contemplates that there are at least three methods by which class members could submit, and a claims administrator could verify, valid claims.

14.     The first and most straight-forward method would be to require class members to provide a claim form and receipt showing that they purchased the underlying product within the class period.  A second method to verify membership in the class and reduce the potential for fraud would be for class members to verify their purchase of the product, and thus their membership in the class, by providing the unique 18-digit code that is stamped on the bottom of each can of StarKist Tuna.  Angeion contemplates this would be an effective method of reducing fraud, as the claim form would not specify how many digits the code contained.  Therefore, any claim that had more or less than the actual 18-digit code that we know is printed on each can would be flagged and scrutinized for possible rejection.  *See* Deckant Decl. Ex. A (label exemplars); ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Lastly, class members could provide sworn affidavits indicating, *inter alia*, that they bought the product within the class period, identifying the state of purchase, the retailer, and the amount paid for the product.  Such affidavits would include a prominent and significant warning reminding claimants that it is a crime to make a false statement under oath, and stating that each claim made will be subjected to a thorough and detailed fraud analysis during the claims administration process.

15.     I ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

█████████████████████████████████   Thus, any claim form that indicates that the potential claimant purchased the product from a retailer that does not sell the specific product in the location where it was claimed to have been purchased would also be flagged for further review and potentially rejected.  Likewise, if the price allegedly paid fell outside of the normal range, the claim would be flagged and scrutinized for possible rejection.  Working with the parties we could determine an appropriate range of deviation from the norm that would trigger review or rejection.  Such affidavits and screening methods are routinely used in similar class actions and class action settlements.

16.     Generally, class action plans of allocation or post-judgment claims processes often contemplate that one valid method for proving membership in the class is by class member affidavits like the one described above, in which class members attest that they purchased the particular product.  Despite the potential for fraud, these plans of allocation are routinely approved by courts because of their trust in the ability of class action claims administration companies, like Angeion, to employ accurate methods for detecting and rejecting fraudulent claims that are made under this settlement paradigm.  (See for example:  *In re: Bayer Corp. Combination Aspirin Products Marketing & Sales Practices Litigation*, Case No. 1:09-md-02023-BMC, U.S. District Court, Eastern District of New York, *Stacey B. Fishbein, et al. v. All Market, Inc. d/b/a Vita Coco*, Case No. 11-CIV-5580 (JPO), U.S. District Court, Southern District of New York, *Delarosa v. Boiron Inc.*, Case No. 10-cv-1569-BRO-CW, U.S. District Court, Central District of California, *Johnson v. General Mills, Inc., et al.*, Case No. 8:10-cv-00061, U.S. District Court, Central District of California, *Anaya v. Quick Trim LLC, et al.*, Case No. CIV VS 1201177, Superior Court of the State of California, County of San Bernardino, *In re: Southwest Airlines Voucher Litigation*, Case No. 11-cv-8176, U.S. District Court, Northern District of Illinois, Eastern Division, *In re: Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*, Case No. 4:08-md-01907-ERW, U.S. District Court, Eastern District of Missouri).

17.     Fraud-prevention screening factors such as the verification of prices paid, geographic retail locations, expiration dates, and/or codes print on the product or some

combinations thereof are effective methods routinely employed by claims administrators to weed out the vast majority of fraudulent claims.

18.    By way of example, screening methods based on expiration dates, codes printed on the product, product packaging descriptions (including color, contents, size, or material), as well as purchase time-frame can be used successfully to detect fraud. ████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████ ██████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████ ██████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████

19.    Additional fraud prevention measures include sophisticated and state-of-the-art data matching and loading technologies that identify patterns of duplication and fraudulent behavior based on the conditions of a particular case.  These techniques include but are not limited to:

a.    tracking submitting IP address;

b.    utilization of human entry authentication, such as "CAPTCHA;" and

c.    analyzing all submissions based on filing time, filing time frequency, filing location, claimant address, purchase location and source, known frequent and fraudulent filers, known

<hr>

[2] ████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████

fraudulent addresses, together with proprietary fraud analysis algorithms to detect, isolate, and remediate fraudulent activity.

20.     If paper claim submission is required, paper claims are printed and distributed individually and with a unique claim identifier on each claim form.

21.     All paper claims are imaged and machine read.  All duplicates to any pre issued claim identifier are flagged for fraud review.

22.     Given the relatively small size of an individual consumer product claim in this case, our experience has demonstrated that for a fraud to be useful or profitable it has to be effected at scale, that is, thousands to tens of thousands of fraudulent claims.  At that scale, this approach to fraud inherently becomes more detectable and addressable.

23.     As an additional layer of fraud protection, Angeion Group and other claims administrators also offer a prepaid or stored value card payment mechanism that can require photo identification that is more immune to counterfeit, and can be limited to a merchant category or an individual merchant.  These mechanisms further inhibit the ability of a perpetrator of fraud to actually complete the fraud.

24.     A claims administrator can send rejection letters to any claimants that submit claim forms indicating that they are ineligible to receive funds.  The letters can but need not detail the reason the claimant is ineligible and can advise them of their right to obtain review of the claim denial.

I declare under penalty of perjury under the laws of the United States, the State of California, and the Commonwealth of Pennsylvania that the foregoing is true and correct. Executed on January 19, 2015 at Philadelphia, Pennsylvania.

_____
Steven Weisbrot