1  Robert B. Hawk (Bar No. 118054)
   Sarah M. Jalali (Bar No. 244971)
2  Stacy R. Hovan (Bar No. 271485)
   HOGAN LOVELLS US LLP
3  4085 Campbell Avenue, Suite 100
   Menlo Park, CA 94025
4  Telephone: (650) 463-4000
   Facsimile: (650) 463-4199
5  robert.hawk@hoganlovells.com
   sarah.jalali@hoganlovells.com
6  stacy.hovan@hoganlovells.com

7  John E. Hall (admitted *pro hac vice*)
   Gregg D. Michael (admitted *pro hac vice)*
8  Amy J. Roy (admitted *pro hac vice*)
   ECKERT SEAMANS CHERIN & MELLOTT, LLC
9  U.S. Steel Tower
   600 Grant Street, 44th Floor
10 Pittsburgh, PA 15219
   Telephone: (412) 566-6000
11 Facsimile: (412) 566-6099
   jhall@eckertseamans.com
12 gmichael@eckertseamans.com
   aroy@eckertseamans.com

Attorneys for Defendant
14 STARKIST CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | Case No. 13-CV-00729-YGR<br><br>**DEFENDANT STARKIST CO.'S OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**<br><br>The Hon. Yvonne Gonzalez Rogers<br><br>Date:       April 21, 2015<br>Time:       2:00 p.m.<br>Courtroom: 1, 4th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF RELEVANT FACTS ........................................................................ 2

III. ARGUMENT ..................................................................................................................... 5

    A. Legal Standards ..................................................................................................... 5

    B. Putative Interveners' Motion Is Not Timely. ......................................................... 6

        1. The length of and reason for the delay ...................................................... 6

        2. The stage of the proceedings ..................................................................... 8

        3. The prejudice to existing parties .............................................................. 10

    C. Putative Interveners Do Not Justify Their Intervention. ...................................... 11

IV. CONCLUSION ................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page**

**CASES:**

*Ashker v. Gov. of the State of Calif.*,
    2014 WL 2465191 (N.D. Cal. June 2, 2014) .................................................................. 7

*Black & Veatch Corp. v. Modesto Irr. Dist.*,
    2011 WL 4842319 (E.D. Cal. Oct. 12, 2011) ................................................................. 6

*Hill v. Western Electric Co.*,
    672 F.2d 381 (4th Cir. 1982) ......................................................................................... 11

*Ho v. Ernst & Young LLP*,
    2012 WL 95342 (N.D. Cal. Jan. 11, 2012) ................................................................... 12

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ("*LULAC*") ............................................................*passim*

*Moore v. Verizon Commc'ns*,
    2013 WL 450365 (N.D. Cal. Feb. 5, 2013) .................................................................... 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Elec. Arts, Inc.*,
    2011 WL 6329224 (N.D. Cal. Dec. 14, 2011) ............................................................... 6

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) ..................................................................................... 6, 12

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ........................................................................................... 5

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ............................................................................. 7, 9, 10

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir.1989) ........................................................................................... 6

**RULES:**

Fed. R. Civ P. 12(b)(6) ............................................................................................................ 8

Fed. R. Civ P. 23 ......................................................................................................... 1, 11, 12

Fed. R. Civ P. 24(b) ....................................................................................................... 5, 6, 11

Fed. R. Civ P. 26 ...................................................................................................................... 3

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether putative class representative's counsel should be permitted to add four would-be plaintiff interveners ("Putative Interveners") and their multiple new claims under Massachusetts, New York, and Florida law, just as the existing Plaintiff and Defendant are engaged in scheduled class certification briefing, when counsel has long known of the claims of these potential plaintiffs and failed to assert their claims earlier in the litigation.

2. Whether Putative Interveners have shown that their Motion for Leave to Intervene is timely.

3. Whether the sought-after intervention would unduly and unfairly prejudice Defendant StarKist Co. ("StarKist") by introducing four new plaintiffs and claims under the laws of three new states, including claims for astronomical statutory damages, when StarKist has prepared to oppose and is in the process of briefing class certification (and deposing two Plaintiff experts who submitted declarations in support of the Motion for Certification) with respect to the existing Plaintiff.

4. Whether intervention is unjustified because Putative Interveners do not explain what their intervention could add to the representation of the existing Plaintiff and putative class representative, who is represented by the same counsel.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

With the Motion for Leave to Intervene, would-be class counsel seeks to insert into the case for the first time four new plaintiffs ("Putative Interveners"), substantive laws from three new states, and astronomical damages claims in the tens of billions of dollars, just as Plaintiff moves for class certification. Particularly notable about this Motion is that it is, indisputably, a calculated strategic maneuver by counsel, intended to impose critical changes—two years into the litigation—in the substance of the legal claims, the number and identity of the plaintiffs, and the Court-ordered schedule for the case. Putative Interveners are, after all, represented by existing counsel for Patrick Hendricks, the sole plaintiff in this lawsuit. But rather than advise Defendant StarKist Co. ("StarKist") at any time during the first two years after filing this case that Plaintiff's counsel wanted to add additional claims and plaintiffs to the lawsuit (*e.g.*, through a proposed amendment of the existing complaint), Plaintiff's counsel long concealed their intentions. Instead, they employed a motion to intervene, generally used by strangers to litigation, and launched that motion on the very day that the Court set as a deadline for filing for class certification.

To be sure, Putative Interveners now assert that they, too, meet the requirements of Rule 23 for class representation. But that assertion is meaningless. StarKist has had no chance to challenge as a matter of law the viability of their proposed claims or to conduct appropriate discovery into their suitability for class representation. Moreover, the Putative Interveners' Motion offers no justification for disrupting the litigation at this point and thereby adding substantial expense and burden on StarKist (and burden on the Court), when would-be class counsel has had this maneuver hatching for years—as demonstrated by the fact that at least one of the Putative Interveners has been waiting in the wings since before the action was filed. Worse still, prior to launching this Motion, Plaintiff's counsel failed to advise StarKist or the Court that the case would be substantially changed and expanded.

Nor do Putative Interveners bother to explain to the Court why their addition to the lawsuit is necessary or advantageous to protect or promote anyone's interests (theirs or the

- 1 -

1  putative class) aside from benefitting the apparent strategic interests of Plaintiff's counsel.  If
2  permitted, Putative Interveners' claims would change the case drastically at the most fundamental
3  level, injecting varying substantive statutory laws from three states (Massachusetts, New York,
4  and Florida) and adding four new supposedly representative plaintiffs.  Under these
5  circumstances, the Motion for Leave to Intervene is not timely, is unfairly and highly prejudicial,
6  and should be denied.

## II.   STATEMENT OF RELEVANT FACTS

California resident Patrick Hendricks filed his putative Class Action Complaint against StarKist in February 2013.  The Complaint followed a January 2013 demand letter sent by counsel at Bursor & Fisher to StarKist on Mr. Hendrick's behalf.  Hawk Decl. Ex. A.[1]  Bursor & Fisher sent five other demand letters on behalf of other clients to StarKist in January 2013.  *Id.* ¶ 1.  Those letters included one on behalf of Florida resident Joseph Vallillo, who is now seeking to intervene in the case—two years later.  *Id.* Ex. B.  Mr. Hendricks, however, was the only plaintiff asserting claims in the Complaint.  Plaintiff Hendricks asserted six common law claims (fraud, negligent misrepresentation, unjust enrichment, express and implied warranty) and three California statutory claims (UCL, FAL, and CLRA).

On April 18, 2013, StarKist moved to dismiss the Complaint in its entirety on multiple grounds, including the primary jurisdiction doctrine, federal law preemption, and asserted failure of Plaintiff to allege facts to show consumer deception.  In the alternative, StarKist moved to transfer the action to the Western District of Pennsylvania, in Pittsburgh, where StarKist is headquartered.  In its opposition to the motion to transfer, filed June 4, 2013, Mr. Hendricks, as the sole plaintiff, emphasized his residence in California, his purchase of StarKist tuna here, and that the choice of his home, California, as forum was entitled to "strong deference."  Dkt. No. 29 at 3-6.  Specifically, Plaintiff stated in his brief:  "Plaintiff Hendricks, *the only representative plaintiff*, resides in this District and has not engaged in forum shopping.  Consequently, his choice of forum carries significant weight."  *Id.* at 6 (emphasis added).  Plaintiff also argued that "[s]ince

---

[1] References to the "Hawk Decl." are to the Declaration of Robert B. Hawk In Support of Defendant StarKist Co.'s Opposition to Motion for Leave to Intervene, filed concurrently.

- 2 -

1  this court is more familiar with the law governing all of the claims brought on behalf of the
2  California Subclass, this factor weighs against transfer." *Id*.

3  On March 25, 2014, the Court denied StarKist's Motion to Transfer, concluding that
4  Plaintiff Hendricks' choice of forum deserved "at least some deference," Dkt. 56 at 5, and that
5  there was "merit to the argument that the California district courts are more familiar with the
6  California laws governing the claims here," *id.* at 8.  The Court, on the same date, granted in part
7  and denied in part StarKist's motion to dismiss, granting StarKist's motion with respect to the
8  counts for breach of implied warranty of fitness and unjust enrichment, but otherwise denying the
9  motion.

10  Plaintiff Hendricks made no request to amend his Complaint following the Court's orders,
11  and StarKist answered the Complaint on April 18, 2014.  The parties then filed a Joint Case
12  Management Statement on May 12, 2014 (Dkt. 65).  In that Statement, Plaintiff's counsel did not
13  anticipate any amendments to the pleadings.  *Id*.  In neither the Joint Case Management Statement
14  nor the Rule 26 meet and confer discussions preceding the parties' filing of that statement did
15  Plaintiff's counsel ever indicate any possibility that they would be asking to amend the complaint
16  to add additional plaintiffs or claims, or seek to intervene with additional claims and plaintiffs.
17  *Id.*; Hawk Decl. ¶ 5.  This is so despite the fact that the Standing Order for all judges of this
18  District regarding Joint Case Management Statements requires the parties to include information
19  concerning "Amendment of Pleadings:  The extent to which parties, claims, or defenses are
20  expected to be added or dismissed and a proposed deadline for amending the pleadings."
21  Standing Order for All Judges of the N. Dist. of Calif.:  Contents of Joint Case Management
22  Statement.

23  The Court issued a Case Management Order on May 14, 2014 (Dkt. 66), which specified
24  that parties could be joined, or pleadings amended, only on the Court's order.  The Case
25  Management Order also set forth a fact discovery cut-off of April 1, 2015; and a briefing schedule
26  for a motion for class certification, requiring the motion to be filed January 20, the opposition on
27  March 3, and the reply on March 31, 2015.  The Court also required that the parties, pursuant to

28

1   their stipulation to do so, appear before Magistrate Judge Corley for a settlement conference,
2   which occurred on September 30, 2014.  At no time during any of these proceedings in this case
3   did Plaintiff's counsel ever mention that they intended to seek to add claims and plaintiffs and
4   inject laws of three other states into this action.

5          Shortly after the Case Management Order issued, on May 29, 2014, Plaintiff's counsel
6   sent an additional demand letter on behalf of California resident Laury Smith.  Hawk Decl. Ex. C.
7   After receiving the letter, StarKist's counsel asked Plaintiff's counsel what his plans were as to
8   Ms. Smith or other potential plaintiffs.  *Id.* ¶ 8.  Plaintiff's counsel declined to substantively
9   answer the question.  *Id.*  Rather, he indicated that Plaintiff's counsel had not decided what if
10  anything would be done with respect to Ms. Smith or any of the other additional individuals
11  whose names his firm had mentioned in the various demand letters.  *Id.*  Then, more than six
12  months later, on the Court-ordered deadline for filing a class certification motion in the case,
13  Plaintiff's counsel sought to file a complaint in intervention on behalf of Ms. Smith and three
14  other "clients" of Plaintiff's counsel.

15         On August 27, 2014, StarKist filed a Motion for Leave to File Motion for Reconsideration
16  of the Court's denial of StarKist's Motion to Dismiss, based on the Food and Drug
17  Administration's 2014 issuance of a Temporary Marketing Permit eliminating for at least fifteen
18  months the requirement to comply with the pressed weight standard.  The Court granted that
19  motion for leave, and the parties briefed the Motion for Reconsideration during the month of
20  September. On October 13, 2014, the Court denied the Motion for Reconsideration.

21         Since the case was initiated, StarKist has prepared its defense to Plaintiff Hendricks'
22  claims and the motion for class certification ordered to be filed by January 20; StarKist has done
23  so with accelerating intensity over the last six-month period, following the Court's rulings on the
24  pleadings and StarKist's inquiry concerning Plaintiff's possible intentions to add claims or
25  plaintiffs to the action.  StarKist collected documents from and deposed Plaintiff Hendricks.  And
26  StarKist engaged and worked with multiple experts to potentially testify in response to Plaintiff
27  Hendricks' anticipated experts on class certification.  Of course, because Plaintiff did not seek to
28

add claims or plaintiffs to this action and disclosed no future intention to do so, StarKist did not pursue discovery with regard to any of the Putative Interveners or the claims they now seek to bring.

StarKist and its counsel were unaware of any intent by Plaintiff's counsel to add plaintiffs until Putative Interveners filed this Motion and a proposed Complaint in Intervention on January 20, 2015. Hawk Decl. ¶ 9. The proposed complaint would assert not only common law and California statutory claims on behalf of the Proposed Interveners, but would also insert claims under Massachusetts and New York consumer protection statutes providing for statutory damages, and a claim under Florida's Unfair Trade Practices Act. The Motion and proposed complaint came the same day Plaintiff Hendricks moved for class certification and appointment as class representative (Dkt. 94). Although not parties to this action, Putative Interveners purported to join (and bring) that motion as "interested parties" seeking certification of Massachusetts, New York, and Florida subclasses (*i.e.*, in the states where three of the Putative Interveners reside) and asserting that they would all be adequate class representatives. *Id.* at 13 n.8. StarKist's opposition to that motion is due March 3, 2015.

## III.    ARGUMENT

### A.    Legal Standards

It is Putative Interveners' burden to demonstrate that they meet the requirements to intervene. *Moore v. Verizon Commc'ns*, 2013 WL 450365, at *16 (N.D. Cal. Feb. 5, 2013) (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). In the Ninth Circuit, "[a] district court may grant permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B) where the applicant shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties. Rule 24(b)(3) also *requires* that the court consider whether the intervention will unduly delay or

1  prejudice the adjudication of the original parties' rights." *Perry v. Proposition 8 Official*

2  *Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (emphasis in original) (internal citations and

3  quotations omitted).

### B. Putative Interveners' Motion Is Not Timely.

Permissive intervention requires a "timely motion" as a threshold matter. Fed. R. Civ. P. 24(b)(1) ("On timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact."). Putative Interveners' Motion does not satisfy that threshold requirement.[2] In assessing the timeliness of an intervention effort, courts consider "the stage of the proceedings, the prejudice to existing parties, and the length of and reason for the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) ("*LULAC*"). Where permission to intervene is sought, as opposed to intervention claimed as of right, courts "analyze the timeliness element more strictly …." *Id.*

### 1. The length of and reason for the delay

We begin with *LULAC*'s third prong—the length and reason for the delay—because this factor in itself should be determinative of, and fatal to, Putative Interveners' Motion. Yet, despite the clear legal standard of *LULAC* and their burden to justify permissive intervention, Putative Interveners nowhere even address in their Motion the reason for their significant delay in seeking intervention. Putative Interveners are represented by the same counsel who has continuously represented Plaintiff Hendricks since before this case was even filed. Plaintiff's counsel, moreover, has represented Putative Intervener Vallillo for just as long. Counsel sent StarKist a demand letter on Mr. Vallillo's behalf in January 2013 before filing this suit, but did not include Mr. Vallillo as a plaintiff in this action and never otherwise followed up on that letter (until two

---

[2] StarKist does not dispute for purposes of this Motion that there are independent grounds for federal jurisdiction and that Putative Interveners' proposed claims have a question of fact in common. However, as noted by two of the cases Putative Interveners cite, Motion at 5, "'[t]he existence of a common question of law or fact does not automatically entitle an applicant to intervene. Rather, Rule 24(b) necessarily vests 'discretion in the district court to determine the fairest and most efficient method of handling a case ....'" *Black & Veatch Corp. v. Modesto Irr. Dist.*, 2011 WL 4842319, at *13 (E.D. Cal. Oct. 12, 2011) (quoting *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir.1989)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Elec. Arts, Inc.*, 2011 WL 6329224, at *2 (N.D. Cal. Dec. 14, 2011) (quoting *Venegas*, 867 F.2d at 530).

- 6 -

years later). Similarly, counsel sent a demand letter on behalf of Laury Smith in May 2014, but kept her, too, apparently waiting in the wings. Meanwhile, counsel for Plaintiff Hendricks never alerted the Court or StarKist of any intention to add plaintiffs or claims to the case, despite being directly called upon to do so by the Standing Order and StarKist's counsel.

Delays of many months—like the two year delay of Mr. Vallillo—are significant to the timeliness analysis. In *LULAC*, for instance, the Ninth Circuit stated that "[b]ecause [would-be intervener] filed its motion a full twenty-seven months after the original actions … were commenced, it fights an uphill battle in its effort to intervene." 131 F.3d at 1302. The Ninth Circuit has described a fifteen-month delay between the filing of a complaint and efforts to intervene as "lengthy." *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999). *See also Ashker v. Gov. of the State of Calif.*, 2014 WL 2465191, at *8 (N.D. Cal. June 2, 2014) (court denied permissive intervention sought one year after putative class action complaint filed). Plaintiff's counsel has plainly known of the possibility that they would seek to add claims and "representative plaintiffs," regardless of the specific identity of those additional plaintiffs, for more than two years. That delay is, at a minimum, lengthy.

The length of the delay is all the more important in this case, of course, because it is totally unexplained. Indeed, *unexplained* delays of the length at issue here, without more, render motions to intervene untimely. The *LULAC* court found fatal would-be intervener's "failure adequately to explain—either in its original motion to the district court, in its opening or reply briefs to this court, or at oral argument—the reason for its delay." 131 F.3d at 1308. Following *LULAC*, the Ninth Circuit had little trouble concluding that a motion to intervene brought "fifteen months after commencement of the original litigation, without any satisfactory explanation for the[] dilatory motion" was properly judged untimely. *Smith*, 194 F.3d at 1052-53.

In this case, StarKist and the Court are left only to speculate about the reasons that Plaintiff's counsel proceeded for two years with a single, California resident plaintiff and his California law-based claims. One obvious inference is that Plaintiff's counsel desired a California venue—and well understood from the beginning the advantages of proceeding with a

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

1   sole California plaintiff in maintaining that venue against challenge.  But regardless whether
2   Plaintiff's counsel actually decided for this reason not to bring other claims by other potential
3   plaintiffs in January 2013, Plaintiff's counsel certainly took full advantage of their decision to
4   proceed only with Mr. Hendricks in successfully arguing against transfer of the case elsewhere.
5   *See supra* at 2-3.  Because of the length of the delay and its wholly unexplained nature, and in
6   light of the patent unfairness of permitting Plaintiff's counsel to achieve procedural advantages
7   based on their delay in adding plaintiffs and claims, Putative Interveners' Motion is untimely.
8   Without more, it should be denied.

### 2. The stage of the proceedings

10  The remaining prongs of the *LULAC* timeliness inquiry further support the conclusion that
11  intervention should not be permitted.  This case has advanced significantly from the time Plaintiff
12  Hendricks brought it more than two years ago.  As discussed, the Court considered and denied
13  StarKist's motion to transfer the action to the Western District of Pennsylvania, where StarKist is
14  headquartered. Dkt. 56.  The parties briefed, and the Court considered and ruled on, StarKist's
15  motion to dismiss Plaintiff's complaint and all its California law-based claims.  Dkt. 57.  And the
16  parties briefed and the Court ruled on StarKist's Motion for Reconsideration.  StarKist has
17  answered the complaint and, consistent with the schedule set out in the Case Management Order,
18  substantial discovery has already been completed.  In fact, as Putative Interveners note, document
19  discovery has been largely complete for months, Motion at 2, and StarKist has deposed Plaintiff
20  Hendricks.  The parties have engaged in mediation before Judge Corley.  Most significantly, the
21  parties are in the process of briefing the issue of class certification.  Permitting the requested
22  intervention now would result in significant prejudice to StarKist, described below.

23  If Putative Interveners were to join the case, much of what has already been done or is in
24  process would have to be done over, or at least revisited.  StarKist would obviously be entitled to
25  move to challenge by Rule 12(b)(6) motion the allegations and the new, non-California law
26  claims—including the two separate New York statutory claims as well as separate Florida and
27  Massachusetts statutory claims—that Putative Interveners would bring.  Moreover, a motion to

- 8 -

transfer would look different with three out of five named plaintiffs closer to StarKist's headquarters than to Plaintiff Hendricks' preferred venue.  (This is not to say that StarKist would seek again to transfer the case—but the point is still worth noting.)  Depending on which if any claims and Putative Interveners survived motions practice, further discovery would ensue.  Though Putative Interveners' Motion does not identify any additional discovery they would conduct, they do not disclaim the right to take further discovery from StarKist.  In all events, StarKist would be entitled to serve requests for production on Putative Interveners and depose them as well, so that StarKist can make appropriate use of discovery evidence in challenging certification of any additional remaining claims or subclasses and in challenging Putative Interveners as class representatives.

In its *LULAC* decision, the Ninth Circuit affirmed a district court's determination that intervention was untimely where the court had ruled on a motion to dismiss, preliminarily certified a class, and ruled on motions for summary judgment, and where the parties had engaged in nine months of discovery.  131 F.3d at 1303.  The Ninth Circuit reasoned that "the district court and the original parties had covered a lot of legal ground together" and "the fact that the district court has substantively—and substantially—engaged the issues in this case weighs heavily against allowing intervention."  *Id.*  Similarly, in *Smith v. Marsh*, 194 F.3d at 1050-51, intervention was properly deemed untimely where the complaint had already been answered and the court had ruled on motions concerning a jury trial, class certification, and summary judgment and had established a discovery schedule.

In this case, the Court has substantively and substantially engaged on many of the same issues referenced in *LULAC* and *Smith*.  And the Court is about to take up the critical issue of class certification, which StarKist has spent substantial resources preparing for and is briefing with respect to Plaintiff Hendricks and his asserted classes and claims—and not with respect to Putative Interveners and their proposed claims and subclasses.  In addition, timeliness is to be assessed more strictly here than in *LULAC* and *Smith*.  (Both of those cases considered and found untimely delayed efforts to intervene as of right; where permissive intervention is sought, as it is

- 9 -

here, timeliness is assessed more strictly, *LULAC*, 131 F.3d at 1308.) In this case, and by comparison with *LULAC* and *Smith*, the parties and the Court have significantly advanced the existing litigation, and that "weighs heavily against intervention" now. *Id.* at 1303.

### 3. The prejudice to existing parties

Putative Interveners purport to address the prejudice prong of *LULAC* by asserting that that their Motion is timely because "if granted, their participation in the action would have no impact" on the existing schedule. Motion at 4. Putative Interveners posit that in the six weeks from the filing of the Motion to Intervene until StarKist is to file its opposition to the class certification motion on March 3, StarKist has enough time to conduct discovery of Putative Interveners and move to dismiss their claims (and, by implication, obtain a ruling from the Court on a motion to dismiss). Motion at 5.

Putative Interveners' arguments in this regard are nonsense. First, Putative Interveners assume, without discussion, that filing a motion to intervene somehow entitles proposed interveners to become parties to a case—with no opportunity for the defendant to oppose the intervention and no opportunity for the court to rule on the motion. Putative Interveners further assume that if permitted, their claims would survive pleadings motions, that discovery could and should immediately commence against the proposed claims and plaintiffs, and that Putative Interveners somehow have the right to join in a motion for class certification without having their claims or themselves permitted to join the action. No legal justification exists for any of these assumptions, and they are all wholly unfair to StarKist.

Putative Interveners are not parties and cannot be without the Court's leave, which requires the Court to rule on this Motion, which will not even be briefed until February 10. Indeed, the Motion is noticed for hearing on April 21—*after* the close of fact and expert discovery, and *after* StarKist's opposition to Plaintiff's motion for class certification is due. Putative Interveners point to no authority that would require or even permit StarKist to commence discovery or motion practice with respect to third parties seeking intervention as if they were Court-approved parties to the case.

The prejudice to StarKist here of granting the Motion is patent and substantial. It would wholly disrupt the schedule of this case, now pending for two years, and require analysis of the pleadings by four additional plaintiffs asserting four additional claims under the laws of three different states. It would require StarKist to take discovery concerning the additional claims and plaintiffs and could result in substantial additional time and expense in class certification proceedings. And there is no reason for the delay that would produce this prejudice.[3]

### C.  Putative Interveners Do Not Justify Their Intervention.

Putative Interveners' Motion leaves a critical question unaddressed: in what way would it benefit the adjudication of this litigation, including the interests of members of the putative class, to grant this Motion? Is it Putative Interveners' position that Plaintiff Hendricks, who is now asking the Court to appoint him class representative, cannot adequately represent their interests and those of other class members? On the contrary, Putative Interveners assert that their claims are "nearly identical" to Plaintiff's and that "[b]oth complaints share the same products, the same lab testing, the same purchase details, and largely the same causes of action." Motion at 6-7.[4] Putative Interveners recount that they and Plaintiff Hendricks "each bought StarKist Tuna within the class period, each reviewed the same product packaging, each purchased the products in reliance on the representation that the products contained an adequate amount of tuna for a 5-ounce can, and each 'suffered a loss as a result of that purchase.'" Motion at 1. And Putative Interveners purport to join Plaintiff Hendricks' class certification motion, arguing that he "meets the requirements of Rule 23(a)," *id.*—which of course requires that, as a class representative, he "will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a).

Ninth Circuit authority teaches that "the most important factor to determine whether a

---

[3] This undue delay and prejudice demonstrates that the Motion is untimely and cannot be granted. But even if the delay and prejudice did not render the Motion untimely, it must be separately considered as the Court exercises its discretion whether or not to permit intervention. Fed. R. Civ. P. 24(b)(3).

[4] For that reason, this case is nothing like *Hill v. Western Electric Co.*, 672 F.2d 381 (4th Cir. 1982), which Putative Interveners cite. Motion at 4-5. In *Hill*, new plaintiffs sought to intervene in an employment discrimination class action after an appeal and intervening Supreme Court decision made the prior class representatives inadequate to represent the claims of class members who were never hired. The court held that the district court should have bifurcated the litigation, allowing the claims of employees who had suffered discrimination in job assignments to be finalized, while the claims of those who were not hired due to discrimination proceeded. Plaintiffs and Putative Interveners point to no such differentiation here.

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW

1  proposed intervener is adequately represented by a present party to the action is how the
2  intervener's interest compares with the interests of existing parties. Where the party and the
3  proposed intervener share the same ultimate objective, a presumption of adequacy of
4  representation applies ...." *Perry*, 587 F.3d at 951 (internal quotations omitted). Putative
5  Interveners and their counsel, however, support Plaintiff Hendricks' effort to be appointed class
6  representative, and they assert that Plaintiff Hendricks and Putative Interveners share the same
7  objective, and that Plaintiff Hendricks could and will protect their interests. Putative Interveners
8  identify nothing that any of them would add to the representation of the putative class—even
9  assuming that there is a class with common claims that can be represented consistent with Rule
10 23, which StarKist disputes.[5]

11  Given all appearances in this case, including the absence of any explanation otherwise, it
12 appears that Plaintiff and Putative Interveners' counsel delayed Putative Interveners' entry into
13 the case in an effort to obtain a strategic procedural advantage, or because counsel only now feels
14 it strategic to protect against a finding that Plaintiff Hendricks cannot adequately represent the
15 class. Neither reason is sufficient. As Judge Whyte admonished aspiring plaintiff class counsel
16 in a similar case, where counsel sought unsuccessfully to add a plaintiff at the class certification
17 stage:

18  > Plaintiffs were aware of the court's deadline for filing a motion for class certification and had proposed to file a single motion for all three cases. Plaintiffs
19  > should have realized that this was likely their one opportunity to seek class certification and acted to ensure that all of their positions were put forward. At
20  > the hearing, plaintiffs' counsel argued that it is not good case management to include all potential plaintiffs, but this is a question of tradeoffs, and plaintiffs
21  > must live by their strategic decisions.

22 *Ho v. Ernst & Young LLP*, 2012 WL 95342, at *3 (N.D. Cal. Jan. 11, 2012).

23  The same holds true here. Plaintiff and Putative Interveners' counsel has known for many
24 months (two years) of potential additional plaintiffs and their claims, and long known of the
25 Court's schedule for class certification. Counsel could long ago have sought leave to add

---

[5] By noting here the positions of Plaintiff, Putative Interveners, and Plaintiff's counsel, StarKist does not mean to imply that it agrees that Plaintiff has met his burden to demonstrate the appropriateness of class certification for any claims asserted or for Mr. Hendricks as class representative. StarKist reserves all rights to oppose certification of the action on any or all legal bases.

1 plaintiffs, amend the Complaint, or intervene. They chose not to do so and should not be
2 permitted to revisit their strategic decisions at this stage—to the prejudice of StarKist and the
3 disruption of this Court's schedule.

## IV. CONCLUSION

For the foregoing reasons, Defendant StarKist Co. respectfully requests that the Court deny the Motion for Leave to Intervene in its entirety.

Dated: February 3, 2015              HOGAN LOVELLS US LLP
                                     ECKERT SEAMANS CHERIN & MELLOTT, LLC

                                     By:    */s/ Robert B. Hawk*

                                     Attorneys for Defendant
                                     STARKIST CO.