Robert B. Hawk (Bar No. 118054)
Stacy R. Hovan (Bar No. 271485)
HOGAN LOVELLS US LLP
4085 Campbell Avenue, Suite 100
Menlo Park, CA  94025
Telephone:  (650) 463-4000
Facsimile:   (650) 463-4199
robert.hawk@hoganlovells.com
chris.mitchell@hoganlovells.com
stacy.hovan@hoganlovells.com

Michael J. Shepard (State Bar No. 91281)
HOGAN LOVELLS US LLP
3 Embarcadero Center, Suite 15
San Francisco, CA  94111
Telephone:  (415) 374-2310
Facsimile:   (415) 374- 2499
michael.shepard@hoganlovells.com

John E. Hall (admitted pro hac vice)
Gregg D. Michael (admitted pro hac vice)
Amy J. Roy (admitted pro hac vice)
Louis A. DePaul (admitted pro hac vice)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
Telephone:  (412) 566-6000
Facsimile:   (412) 566-6099
jhall@eckertseamans.com
gmichael@eckertseamans.com
aroy@eckertseamans.com
ldepaul@eckertseamans.com

Attorneys for Defendant
STARKIST CO.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>STARKIST CO.,<br><br>   Defendant. | Case No. 3:13-cv-0729-HSG<br><br>**DEFENDANT STARKIST CO.'S OBJECTIONS TO PLAINTIFF'S REPLY EVIDENCE [L.R. 7-3(d)(1)]**<br><br>Date:        April 16, 2015<br>Time:       2:00 p.m.<br>Courtroom: 15, 18th Floor |

Pursuant to Local Rule 7-3(d)(1), Defendant StarKist Co. ("StarKist") objects as follows.[1]

## 1. Objection to Excerpts of Bruce Strombom, Ph.D. Deposition Testimony: Federal Rule of Evidence 106 (Rule of Completeness).

Plaintiff relies on and attaches excerpts of deposition testimony of StarKist expert Bruce Strombom, presenting an incomplete, misleading and unfair account of Strombom's conclusions and testimony. Federal Rule of Evidence 106 requires the introduction of other parts of Strombom's testimony (and other material) that "in fairness ought to be considered at the same time." *See* Fed. R. Evid. 106 and Advisory Committee Notes (rule to prevent "misleading impression created by taking matters out of context").

**First**, Plaintiff attaches and cites a 2-page excerpt (pp. 20-21) of the Strombom deposition as support for his assertion that "after-the-fact analyses by experts for both sides, Dr. Strombom and Mr. Weir, show probable failure rates [of the press weight regulation, 21 C.F.R. § 161.190] very close to 100% throughout the entire period." Dkt. #156 ("Reply") at 6. That same excited claim appears in the Introduction of his brief, where he states that "[a]ccording to Dr. Strombom . . . if StarKist had tested for compliance with the U.S. Food and Drug Administration's ("FDA") press weight requirement, there was a 99.7% probability of failure." *Id*. at 1. These excerpts give a misleading impression of Strombom's conclusions and testimony in the following ways:

- The cited testimony (Dkt. #156-1 ("Deckant Decl."), Ex. A at 20-21), contrary to Plaintiff's assertion (Reply at 6), relates to ***only one*** *of the four* StarKist products at issue (solid white in water) for ***one year*** 2009. In testimony omitted by Plaintiff, Strombom confirms that portions of the same data for the same product show *compliance* with target press weights for *more than half of the months* across that 5-year class period. Hawk Decl., Ex. A. ("Strombom Depo.") at 14.

- Just before the excerpted portion, Strombom explained that the 99.7% figure that Plaintiff fastens onto has no application (even for the one solid product to which it relates) over the last three years—2012-2014, the latter of "two subperiods"—of the class period. *Id.* at 19-20; *accord id.* at 54 (regarding solid white albacore in oil).[2]

---

[1] The Declarations of Aaron Maxfield ("Maxfield Decl.") and Robert B. Hawk ("Hawk Decl.") filed herewith provide factual support for this Objection. L.R. 7-3(d) allows a 5-page Objection to Reply Evidence. If leave is required to submit the declarations, StarKist respectfully requests it.
[2] While Plaintiff advises the Court that Strombom's 99.7% figure "is the average of every press StarKist performed on this product during the 5-year class period," he also omits Strombom's

1  • For the chunk products (comprising the great majority of cans at issue sold and the only
2  product Plaintiff Hendricks claims to have purchased) "there was variation in press weights. . . .
3  *the majority fell above the targets*" over the class period. *Id.* at 57 (emphasis added).[3]

4  **Second**, Plaintiff attaches and quotes 3 pages of Strombom's testimony in support of his
5  assertion that StarKist did "zero tests" for press weight compliance under 21 C.F.R. § 161.190(c),
6  because Strombom did not see a 24-can test in the StarKist data. Reply at 1-2, 6. But Plaintiff
7  omits Strombom's testimony explaining that he had "no" concern about not seeing a 24-can test
8  because he saw five years of tests from *larger* samples. As a statistical matter, he viewed the
9  larger samples as *better* data, adding that *many 24-can tests* could be observed from the data set
10 (consisting of hundreds of thousands of cans tested). Strombom Depo. at 83. And when asked
11 about the possibility of doing a test to determine StarKist's compliance with the FDA standard, he
12 answered it is not possible to say that *any* test is informative on that question, and that the problem
13 is not with StarKist (its data or press equipment) but is with the standard itself, which does not tell
14 you "from what population the sample of cans is to be drawn." *Id.* at 31.

15 **2.    Objection to Exhibit D of Deckant Declaration: Federal Rule of Evidence 602.**

16    First offered to the Court in Plaintiff's Reply, Exhibit D to the Deckant Declaration
17 contains a 3-page document (StarKist0010327-329) that rapidly becomes a linchpin of Plaintiff's
18 argument. *See, e.g.*, Reply at 2-3; Weir Decl. at ¶¶ 50, 52-54, 59, and 62.[4] The only foundation

---

conclusion that on average, starting in mid-2011, StarKist met the press weight target, Dkt. #111-18 ("Strombom Decl.") at ¶ 39, and that the 99.7% can be reconciled with the majority of cans meeting the standard during most of the class period, because the 99.7% figure is skewed radically by the happenstance that there were more tests in the first two years of the class period, when compliance rates were lower, than in the last *three* years, when rates were higher. *Id.* at Exs. 4-5.

[3] Plaintiff's Reply makes various assertions about fish fill based on testimony from Kelly Roberts about a document purportedly containing a formula created by Maxfield. Reply at 3-4. This Objection does not allow a full response to those assertions, but under Rule 106, the Court should be aware of omitted testimony by Roberts to the effect that she never used the formula, Dkt. #142-1, Ex. D ("Roberts Depo.") at 133, and does not really know the circumstances surrounding the document. *Id.* at 136. Plaintiff therefore chose her testimony instead of that of Maxfield or Strombom, who studied the impact of fish fill and found the opposite of what Plaintiff contends. *E.g.*, Strombom Decl. ¶ 25, Dkt. #142-1, Ex. I ("Maxfield Depo.") at 218:8-24; 147:10-148:4.

[4] Among other things, Plaintiff uses the document in his insistence that "StarKist's Director of QA, Aaron Maxfield, determined the quantifiable error [from a testing procedure] was 'at least 10%,'" Reply at 3:1-2; in Weir's reliance on it to assert that "correcting for just this one source of error, at least 98.03% of StarKist's individual press weight tests for Chunk Light In Water ('CJW'), and at least 98.63% of StarKist's individual press weight tests for Chunk Light In Oil ('CJO'), fall below the federal standard of fill," Weir Reply Decl. ¶ 53; and in numerous other places in Plaintiff's Reply and Weir's Declaration. *E.g.*, Reply at 3; Weir Decl. at ¶¶ 50, 52-54, 59, and 62.

1  offered for this document is testimony based on the "personal knowledge" of Deckant that it was
2  "authored by Aaron Maxfield" and that it is "regarding quantifiable errors in StarKist's press
3  weight test." Deckant Decl. ¶ 14. But this supposed foundation is both insufficient under Federal
4  Rules of Evidence 602 and 801(d)(2)(A), as well as factually inaccurate.

5      Deckant is one of Plaintiff's lawyers. He does not cite to any source for this "personal
6  knowledge." No witness has testified about origins or substance of the 3-page document. The
7  document does not say on its face that it was authored by Maxfield, nor does it even have any
8  legend or heading suggesting it is a StarKist document. Local Rule 7-5 ("factual contentions . . .
9  must be supported by an affidavit or declaration and by appropriate references to the record")
10 requires a far more specific basis for factual averments than what Deckant provided.

11     The carefully chosen phrase that Maxfield "authored" the document suggests the
12 possibility that, although he did not so acknowledge, Deckant based his representation on metadata
13 produced by StarKist, one field of which shows Maxfield to be "last author," and "eblickem" as
14 "author." But inputting or saving a document on a computer can result in the saver being
15 identified as an "author" or "last author." To be an author for purposes of foundation under Rule
16 801(d)(2)(A), the question is who *composed (or adopted) the words in the document*. Metadata
17 provides no answer—rendering Deckant's Declaration, even if based on metadata, incompetent.
18 In fact, neither Maxfield nor "eblickem"—who is not even a StarKist employee—composed the
19 document, and the person who composed it was not an agent or employee of StarKist either.
20 Maxfield Decl. ¶ 7. That Maxfield received it and saved it onto StarKist's system is no basis for
21 the use to which Plaintiff puts it.

22     Similarly, Deckant has no "personal knowledge"—and does not know what he is talking
23 about—when he says that the document concerns "quantifiable errors in *StarKist's* press weight
24 test."[5] The document nowhere so states; and contrary to Plaintiff's use of the document, it is not

---

[5] That Bates 10327-329 is not a StarKist document (as Deckant asserts) is confirmed by comparing the document to assertions in Plaintiff's Reply. Referring to tuna that may escape during pressing, Plaintiff's Reply cites a StarKist email to establish that StarKist disapproved of "adding the material back off the press into the cup." Deckant Decl. Ex. C. But Bates 10327-329 takes a different view of what was allowed: it notes that "it is unclear and there is considerable variation as to which surfaces are to be scraped and which are not," and that "the regulation does not specify the correct procedure." Deckant Decl. Ex. D at 10328. In addition, if Deckant had personal

1  based on any analysis of StarKist procedures and/or press machines, nor does it (or could it)
2  quantify errors in any such procedures. Maxfield Decl. ¶¶ 8-10. Rather, it describes difficulties in
3  applying 21 C.F.R. § 161.190, and potential variations between different ways of performing the
4  test—variations that might increase *or decrease* press weights. *See id.* Deckant's purported
5  foundation to the contrary appears to be a product of his own erroneous testimony that Maxfield
6  composed the words in the document. No matter why it was wrong, it is legally incompetent and
7  incorrect, and the document and what follows from it should be stricken.

**3.  Objection to Weir Reply Declaration: Evidence Submitted Initially in Reply But Based on Previously Available Information**

Virtually the entire Reply Weir Declaration purports to analyze (or characterize) evidence and data that was available to Plaintiff well before he filed his motion for class certification—testimony that could have been included in Weir's initial declaration but was not. Most notably, the centerpiece of Weir's Reply, "Analysis of the StarKist Results" at ¶¶ 39-59, comprises his testimony about StarKist press weight test data produced to Plaintiff more than 60 days before the class certification motion. Though Weir testified that he asked Plaintiff's counsel, before filing his initial declaration, for all "available" press weight data, he did not get it. Counsel failed to provide the portion of NOAA data that was favorable to StarKist, and counsel also failed to provide the bulk of 5 years of data produced by StarKist, providing only a 1-year data *selection* with lower press weights than in the other four years of class period data produced by StarKist. Dkt. #111-3 ("Opp. Br.") at 9-10 and Strombom Decl. at ¶ 58b.

Plaintiff's only response to StarKist's argument that he had given Weir only the favorable data comes in Deckant's Declaration. Deckant offers the excuse that Plaintiff's counsel "were unaware of these data," and complains about the formatting of StarKist's production. Deckant Decl. ¶¶ 3-10. But this excuse is eviscerated by facts that Deckant carefully avoids mentioning. Most significantly, Deckant never explains whether Plaintiff was also "unaware" when he took 9 pages of County District Attorney NOAA data that StarKist produced as a single document,

---

knowledge, he would also have known that the 10% variation described in the document is based not merely on scraping tuna off the backsplash—the subject of the internal StarKist email on which Plaintiff relies for the 10% figure—but on scraping tuna from *all* possible surfaces (about which there is no evidence that StarKist did).

plucked out the 2 favorable pages, and produced only those two to Weir. *See* Dkt. #113, Ex. A at 0003656-664. *With no asserted "formatting issues" to blame, and only 9 pages to choose from, Plaintiff still omitted test data favorable to StarKist from what he gave to Weir.* All Plaintiff offers about this telling omission is a casual acknowledgement by Weir that he has now been given "additional NOAA test results from Plaintiff." Dkt. #156-2 ("Weir Reply Decl.") ¶ 3, n.2.[6]

These facts tell the Court all it needs to know about how Weir ended up with a crabbed set of data, and additional facts also belie the implication in Deckant's Declaration that he believed the 12 months of *StarKist* data Plaintiff identified and provided to Weir—comprised the entirety of results StarKist had (and had produced). This data covered only a random period from July 2010 to June 2011, and Maxfield testified at length in December 2014 that StarKist had press weight test data over a much longer time period. *E.g.*, Maxfield Depo. at 63:8-64:9; 67:8-22; 152:23-156:2 & Exs. 1, 15. Deckant does not explain why Plaintiff never inquired of StarKist about missing data, or if there were data production format issues, why Plaintiff *never complained* about that—in stark contrast with Plaintiff's lack of compunction about raising even baseless discovery-related complaints.

Because Plaintiff's excuses for omitting data favorable to StarKist do not withstand scrutiny, Reply testimony from Weir concerning StarKist press weight data should be stricken as a matter of basic fairness. New analyses in a declaration should be excluded if they are based on previously available information. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 501 (N.D. Cal. 2008) (striking new regressions contained in class certification reply, because underlying data was available to counsel, but not provided to expert, prior to opening briefing); *see also Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 976 (N.D. Cal. 2006).

Dated: April 10, 2015

HOGAN LOVELLS US LLP
ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: */s/ Robert B. Hawk*
Robert B. Hawk
Attorneys for Defendant STARKIST CO.

---

[6] Additional Weir Reply paragraphs—"NOAA Tests" ¶¶ 3-6; "Problems With The StarKist Tests" ¶¶ 7-21; "Fish Fill and Press Weights" ¶¶ 31-38; and Plaintiff Hendricks' Damages ¶¶ 61-62—all rely largely or entirely on evidence that was produced to Plaintiff before Weir filed his first declaration. As such, they should be stricken. The Hendricks Declaration (Dkt. #156-3) should be stricken on the same basis, as Hendricks could have provided that same testimony—despite its contradictions of his deposition testimony—with Plaintiff's motion.