**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
        ndeckant@bursor.com

*Attorneys for Plaintiff
And the Interested Parties*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>STARKIST CO.,<br><br>                    Defendant. | Case No. 13-CV-00729-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PLAN OF ALLOCATION**<br><br>Date: May 28, 2015<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 28, 2015 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 15, 18th Floor, in the courtroom of the Honorable Haywood S. Gilliam, Jr., Plaintiff will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for the Court to grant preliminary approval of the proposed Plan of Allocation.

This motion is made on the grounds that preliminary approval of the proposed Plan of Allocation is proper, given that each requirement of Rule 23(e) has been met.

This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Scott A. Bursor, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

## CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should preliminarily approve the proposed Plan of Allocation pursuant to Fed. R. Civ. P. 23(e).

Dated: May 14, 2015              Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:   */s/ Scott A. Bursor*
           Scott A. Bursor

Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
           ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           jluster@bursor.com

*Attorneys for Plaintiff*
*And the Interested Parties*

I.   **THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

"Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs.,* 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007) (internal quotation marks, citations, and modifications omitted). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (quoting *Vinh Nguyen v. Radient Pharm. Corp.,* 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)). This standard necessarily vests substantial discretion in the judgment of the district court.

Here, the Settlement Fund[1] is comprised of $12 million, including $8 million in cash and $4 million in vouchers for StarKist-branded products. Stipulation of Settlement ("Settlement Agreement") ¶ 2.1, Bursor Decl. Ex. 1. The Settlement Agreement is silent on the per claim payout for class members. *Id.* Plaintiff's proposed Plan of Allocation of the proceeds of the Settlement Fund provides for class member claims to be paid at $25 in cash or $50 in product vouchers, at the election of each claimant, subject to pro rata dilution if the total amount of claims exceeds the available funds. Plan of Allocation ¶¶ 7-8, Bursor Decl. Ex. 2. This is an excellent result for class members compared to their likely recovery should they prevail at trial. Plaintiff's damages expert, Colin B. Weir, calculated Mr. Hendricks's recoverable damages on an individual basis at $10.57 under a price premium theory, or $63.63 on a full refund theory. 4/7/15 Weir Decl. ¶ 62. Similarly, Interested Party Brian Andacky, who has moved to intervene in this action, could expect to recover $50 in statutory damages on his claim under New York GBL § 349. *See* 1/20/15 Weir Decl. ¶ 31 ("New York GBL § 349 provides for statutory damages of $50 per violation."). A recovery of $25 in cash, or $50 in product vouchers, is very close to the maximum recovery Mr. Hendricks, Mr. Andacky, or any class member, could expect at trial.

Distribution of the Settlement Fund to class members in this case will present a significant

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement and Plan of Allocation, filed concurrently herewith. *See* Bursor Decl. Exs. 1 and 2.

1   challenge.  Though the Settlement Class here includes tens of millions of purchasers of StarKist
2   tuna, a claim rate of more than 5% will be difficult to achieve.  *See, e.g.*, *Forcellati v. Hyland's Inc.*,
3   2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The reality is the number of class members who
4   actually file claims is relatively low.  The prevailing rule of thumb with respect to consumer class
5   actions is a claims rate of 3-5 percent.") (internal quotation marks omitted).  Class Counsel thus
6   designed the Plan of Allocation to ensure that as much of the Settlement Fund as possible will be
7   distributed to Class members in the most simple and expedient manner.  *See, e.g.*, William B.
8   Rubenstein, Newberg on Class Actions § 12:35 (5th ed. 2014) ("[A] court's goal in distributing class
9   action damages is to get as much of the money to the class members in as simple a manner as
10  possible."); *see also id.* § 12:15 ("The goal of any distribution method is to get as much of the
11  available damages remedy to class members as possible and in as simple and expedient a manner as
12  possible.").
13          First, based on our experience and review of dozens of class action settlements involving
14  relatively low dollar value products, we have observed that claim rates are often too low to fully
15  exhaust the settlement funds made available to class members.  Bursor Decl. ¶ 2.  Thus, in the
16  judgment of Class Counsel, it is critical that the individual claim amount be high enough to convince
17  class members that it is worth their time and effort to file a claim.  *Id.*  So we set the claim amounts
18  at $25 in cash or $50 in vouchers because those amounts are within the range of recoverable
19  damages for most Class members based on Mr. Weir's analysis, and they are sufficiently high to
20  incentivize Class members to take the time to actually submit a claim.  *Id.*  At these levels, Class
21  Counsel project that it will take 80,000 Voucher Claims to exhaust the Voucher Settlement Fund and
22  120,000 Cash Claims to exhaust the Cash Settlement Fund.  *Id.*
23          Second, based on our experience, we have observed that claim rates are higher where the
24  claim procedures are simpler and lower where the claim procedures are more complex.  *Id.* ¶ 3.
25  With this in mind we opted for the simplest payout formula – a flat amount.  *Id.*  At one point during
26  negotiations StarKist advocated a sliding scale based on the number of cans purchased by each Class
27  member.  *Id.*  We rejected that primarily because it is unnecessarily complex given the amounts
28  involved, and it would suppress the number of claims filed, making it impossible to distribute the

Settlement Fund to Class members. *Id.* We also rejected it because we deemed it unreasonable to ask Class members to recall and report on a claim form the number of cans they had purchased over a 5½-year period. *Id.* Indeed, StarKist submitted an expert report by Dr. Dominique Hanssens stating that Class members, for the most part, could not remember how many cans they purchased. *See* Hanssens Decl. ¶ 51 (Dkt. No. 115) ("Of the 345 survey respondents who purchased StarKist 5-ounce cans of tuna in the previous six years, just over half recalled how many cans they purchased in 2014. For each year from 2009 to 2013, less than a third of respondents recalled how many cans they purchased."). Requesting this information on a claim form would serve no purpose other than to deter a substantial portion of the Class from filing claims.

<u>Third</u>, recognizing that people ordinarily do not save grocery store receipts for 5½ years, Class Counsel insisted on a claims procedure that did not require proof of purchase other than by affidavit under penalty of perjury. *See* Settlement Agreement ¶ 2.5, Bursor Decl. Ex. 1; *see also* Bursor Decl. ¶ 4.

<u>Fourth</u>, in evaluating notice and claims administration proposals from Settlement Administrators, we insisted on robust notice programs, relying heavily on internet and social media advertising, with links to a dedicated settlement website to accommodate online claim-filing. *Id.* ¶ 5. In Class Counsel's experience, an online claims process is essential, and when it is available, roughly 99% of claims are filed online rather than in paper form. *Id.* KCC was selected as the Settlement Administrator because, in the judgment of Class Counsel, KCC provided an effective strategy to facilitate online claims filing, prompted by internet and social media advertising, that was most likely to accomplish our goals, at a reasonable price. *Id.*

Class Counsel is hopeful that these measures will result in sufficient claims to fully exhaust the Settlement Fund, *i.e.*, at least 80,000 Voucher Claims and 120,000 Cash Claims. If either fund is oversubscribed, the Plan of Allocation provides for a *pro rata* reduction in the claim amounts, as calculated by the Settlement Administrator. Plan of Allocation ¶ 7, Bursor Decl. Ex. 2. If either fund is undersubscribed, Class Counsel may seek the Court's approval to increase the claim amounts *pro rata*. *Id.*

Despite these efforts, there undoubtedly will be some residue left in the Settlement Fund after

the distribution is complete – even if the Settlement Fund is fully subscribed, for example, some fraction of the checks that are mailed to claimants will go uncashed for 180 days and will thus expire.  The Plan of Allocation addresses this in ¶ 10, by requiring, within 225 days after the payment of Authorized Claimants (180 days to wait for uncashed checks to expire, plus 45 days), Class Counsel shall make an application to the Court seeking to allocate the Residual Funds in a manner consistent with Cal. Code Civ. Pro. § 384(a) ("It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either to further the purposes of the underlying causes of action, or to promote justice for all Californians."); *id.* § 384(b) ("The court shall ensure that the distribution of any unpaid residual derived from multistate or national cases brought under California law shall provide substantial or commensurate benefit to California consumers."); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.  …  After the claims period has expired and the amount of the unclaimed fund is known, the district court will be in a better position to determine what remedy will best effectuate the goals of [the underlying statute] and the interests of the silent class members."); and *State v. Levi Strauss & Co.,* 41 Cal.3d 460, 224 Cal.Rptr. 605, 612, 715 P.2d 564, 571 (1986) (laying out four considerations for courts to employ in determining how to distribute residual funds:  "(1) the amount of compensation provided to class members, including nonclaiming (or 'silent') members; (2) the proportion of class members sharing in the recovery; (3) the extent to which benefits will 'spill over' to nonclass members and the degree to which the spillover benefits will effectuate the purposes of the underlying substantive law; and (4) the costs of administration").  Provided, however, that no portion of the Residual Funds shall revert to the Defendant.  *See Six (6) Mexican Workers*, 904 F.2d at 1307 ("[W]e find that reversion of the funds to the defendants is not an available option.").

This Proposed Plan of Allocation easily passes the rational basis test articulated in *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (quoting *Vinh Nguyen v. Radient Pharm. Corp.,* 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)) ("[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by

experienced and competent counsel." ).

## II. STARKIST HAS NO STANDING TO TAKE ANY POSITION CONCERNING THE PROPOSED PLAN OF ALLOCATION

During settlement negotiations, StarKist advocated several proposals for claim amounts and claims administration that, in the judgment of Class Counsel, would suppress claims, would frustrate the ability of the Settlement Administrator to distribute the Settlement Fund to class members, and would result in a large residue of funds being left unclaimed. The parties did not reach agreement on these matters. Thus, the Settlement Agreement provides:

> Class Counsel shall provide the Court, at the time the Motion for Preliminary Approval is filed, a proposal specifying the amount of cash and/or number of vouchers that each Settlement Class Member may claim. StarKist may also file a brief setting forth its position concerning the amount of cash and/or number of vouchers that each Settlement Class Member should be permitted to claim. The foregoing language is without prejudice to Class Counsel arguing that StarKist lacks standing to express its position concerning the Court-Ordered Allocation Plan, and without prejudice to StarKist arguing to the contrary.

Settlement Agreement ¶ 2.4, Bursor Decl. Ex. 1.

Class Counsel and the Class Representative are fiduciaries to the Class. So too is the Court. As fiduciaries to the Class, we, along with the Court, are responsible for ensuring that the proposed Plan of Allocation is fair, reasonable and adequate in order to serve the interests of absent Class members. StarKist is not a fiduciary to the Class. StarKist's interests are, for the most part, adverse to the Class's interests. StarKist has no claim to any portion of the Settlement Fund, and has no interest in how it is distributed. *Six (6) Mexican Workers*, 904 F.2d at 1307 ("Where the only question is how to distribute the damages, the interests affected are not the defendants' but rather those of the silent class members"); *Allapattah Svcs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003) ("[A] defendant has no interest in how the class members apportion and distribute a damage fund among themselves"); *Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *5-6 (C.D. Cal. Apr. 9, 2014) ("Defendants have no due process interest in how damages are distributed. … Defendants['] … aggregate liability … will remain the same no matter how many claims are submitted. … Defendants' liability will be determined in the aggregate and they will have no claim to any leftover

damages …."). Insofar as the distribution of the Settlement Fund is concerned, StarKist is at best an uninterested bystander or, at worst, a meddling adversary. StarKist has no standing to advocate for or against the proposed Plan of Allocation, and its views on the matter, should it choose to express them, should not be heard or considered.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preliminarily approve the proposed Plan of Allocation in its entirety.

Dated:  May 14, 2015                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  /s/ *Scott A. Bursor*
       Scott A. Bursor

Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
       ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
       jluster@bursor.com

*Attorneys for Plaintiff
And the Interested Parties*