**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
           ndeckant@bursor.com

*Attorneys for Plaintiff*
*And the Interested Parties*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>STARKIST CO.,<br><br>                              Defendant. | Case No. 13-CV-00729-HSG<br><br>**DECLARATION OF SCOTT A. BURSOR IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR PRELIMINARY APPROVAL OF PLAN OF ALLOCATION**<br><br>Date: May 28, 2015<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

# DECLARATION OF SCOTT A. BURSOR

I, Scott A. Bursor, declare as follows:

1.     I am an attorney at law licensed to practice in the States of California, Florida, and New York.  I am a member of the bar of this Court, and I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Patrick Hendricks and Interested Parties Laury Smith, Ben Hall, Brian Andacky, Joseph Vallillo, Joseph Ebin, Kelly Maucieri, Monica Rodriguez, and Jayme Kaczmarek.  I make this declaration in support of Plaintiff's Motion For Preliminary Approval Of Class Action Settlement And Motion For Preliminary Approval Of Plan Of Allocation.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2.     Based on my experience and review of dozens of class action settlements involving relatively low dollar value products, I have observed that claim rates are often too low to fully exhaust the settlement funds made available to class members.  Thus, in the judgment of Class Counsel, it is critical that the individual claim amount be high enough to convince class members that it is worth their time and effort to file a claim.  So we set the claim amounts at $25 in cash or $50 in vouchers because those amounts are within the range of recoverable damages for most Class members based on the analysis of our damages expert, Colin Weir, and they are sufficiently high to incentivize Class members to take the time to actually submit a claim.  At these levels, Class Counsel project that it will take 80,000 Voucher Claims to exhaust the Voucher Settlement Fund and 120,000 Cash Claims to exhaust the Cash Settlement Fund, and asked KCC, the Settlement Administrator, to design the notice and claims process to accomplish this objective.

3.     Based on my experience, I have observed that claim rates are higher where the claim procedures are simpler and lower where the claim procedures are more complex.  With this in mind Class Counsel opted for the simplest payout formula – a flat amount.  At one point during negotiations StarKist advocated a sliding scale based on the number of cans purchased by each Class member.  We rejected that primarily because it is unnecessarily complex given the amounts involved, and it would suppress the number of claims filed, making it impossible to distribute the

Settlement Fund to Class members.  We also rejected it because we deemed it unreasonable to ask Class members to recall and report on a claim form the number of cans they had purchased over a 5½-year period.

4.       Recognizing that people ordinarily do not save grocery store receipts for 5½ years, Class Counsel insisted on a claims procedure that did not require proof of purchase other than by affidavit under penalty of perjury.

5.       In evaluating notice and claims administration proposals from Settlement Administrators, Class Counsel insisted on robust notice programs, relying heavily on internet and social media advertising, with links to a dedicated settlement website to accommodate online claim-filing.  In Class Counsel's experience, an online claims process is essential, and when it is available, roughly 99% of claims are filed online rather than in paper form.  KCC was selected as the Settlement Administrator because, in the judgment of Class Counsel, KCC provided an effective strategy to facilitate online claims filing, prompted by internet and social media advertising, that was most likely to accomplish our goals, at a reasonable price.

6.       Attached hereto as **Exhibit 1** is a true and correct copy of the Stipulation Of Settlement and exhibits thereto ("Settlement Agreement").

7.       Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiff's proposed Plan of Allocation of Settlement Proceeds.

8.       Attached hereto as **Exhibit 3** is a true and correct copy of the firm resume of Bursor & Fisher, P.A.

9.       Attached hereto as **Exhibit 4** is an email from Glenn Mast regarding issues with the press weight machine in Samoa, previously marked as deposition Exhibit 26, dated August 6, 2012.

10.       Attached hereto as **Exhibit 5** is a true and correct copy of the proposed long form notice, including images of covered products.

11.       Attached hereto as **Exhibit 6** is a true and correct copy of the proposed publication form notice, including images of covered products.

12.     Attached hereto as **Exhibit 7** is a true and correct copy of the proposed postcard form notice, including images of covered products.

I declare under penalty of perjury under the laws of the United States, the State of California, and the State of New York that the foregoing is true and correct.  Executed on May 14, 2015 at New York, New York.

<p style="text-align:center;">*/s/ Scott A. Bursor*<br>Scott A. Bursor</p>

**EXHIBIT 1**

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

PATRICK HENDRICKS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STARKIST CO.,

Defendant.

Case No. 3:13-cv-0729-HSG

**STIPULATION OF SETTLEMENT**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    This Stipulation of Settlement (the "Settlement Agreement") is made by and among Patrick

2  Hendricks, (the "Class Representative"), on behalf of himself and the Settlement Class (defined

3  below), Laury Smith, Ben Hall, Brian Andcacky, Joseph Vallillo, Joseph Ebin, Kelly Maucieri,

4  Monica Rodriguez, and Jayme Kaczmarek (the "Interested Parties"), on the one hand, and StarKist

5  Co. ("StarKist" or the "Company"), on the other hand, subject to and conditioned upon Court

6  approval of the terms and conditions hereof.

7                                    **RECITALS**

8    A.    On February 19, 2013, Plaintiff Patrick Hendricks commenced an action entitled

9  *Hendricks v. StarKist Co.* (United States District Court, Northern District of California, Case

10  No. 3:13-cv-0729-HSG) (the "Action"), as a proposed class action, asserting claims under

11  California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California

12  Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), California

13  Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), and for Breach

14  of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty

15  of Fitness for a Particular Purpose, Negligent Misrepresentation, Fraud, and Unjust Enrichment.

16    B.    On March 25, 2013, the Court dismissed Plaintiff's claim for unjust enrichment.

17    C.    StarKist answered the complaint on April 18, 2014, denying liability.

18    D.    On or before January 20, 2015, class members Laury Smith, Ben Hall, Brian

19  Andcacky, Joseph Vallillo, Joseph Ebin, Kelly Maucieri, Monica Rodriguez, and Jayme

20  Kaczmarek moved to intervene in the Action and/or sent StarKist a preliminary notice and demand

21  for corrective action concerning the alleged underfilling of the StarKist Products (defined below).

22    E.    StarKist is the Defendant in the Action and is party to this Settlement Agreement.

23    F.    The Class Representative alleges in the Action, *inter alia*, that the Company

24  deceived customers by underfilling the StarKist Products in violation of 21 C.F.R. § 161.190(c)

25  (the "press weight regulation").

26    G.    StarKist denies the material allegations made in the Action, and denies any and all

27  liability with respect to all facts and claims alleged therein, and further denies that any of the

28

1

1   Settlement Class Members or anyone has suffered any harm or damage or is entitled to any

2   monetary or relief whatsoever in connection with the Action.

3         H.      Class Counsel (defined below) conducted an examination and investigation of the

4   facts and law relating to the matters in this Action, including, but not limited to, engaging in

5   discovery, review and analysis of StarKist's documents and data, and testing of the StarKist

6   Products (defined below).  Class Counsel also evaluated the merits of the Parties' contentions and

7   evaluated this Settlement, as it affects all parties, including Settlement Class Members.  The Class

8   Representative and Class Counsel, after taking into account the foregoing, along with the risks and

9   costs of further litigation, represent that they are satisfied that the terms and conditions of this

10   Settlement are fair, reasonable, and adequate, and that this Settlement is in the best interest of the

11   Settlement Class Members (defined below).

12         I.      StarKist, while continuing to deny all allegations of wrongdoing and disclaiming all

13   liability with respect to all claims, considers it desirable to resolve the Action on the terms stated

14   herein in order to avoid further expense, inconvenience and burden and, therefore, has determined

15   that this Settlement on the terms set forth herein is in StarKist's best interests.

16         J.      This Settlement Agreement reflects a compromise between the parties and shall in

17   no event be construed as or be deemed an admission or concession by any party of the truth of any

18   allegation or the validity of any purported claim or defense asserted in any of the pleadings in the

19   Action, or of any fault on the part of StarKist, and all such allegations expressly are denied.

20         K.      Substantial settlement negotiations have taken place between the Parties, including

21   two mediation sessions conducted with the assistance of the Honorable Jacqueline M. Corley in

22   San Francisco, California, and multiple subsequent communications between the Parties.  As a

23   result, this Settlement Agreement has been reached, subject to the Court approval process set forth

24   herein.

25         In consideration of the covenants and agreements set forth herein, and of the releases and

26   dismissals of claims as described below, and other good and valuable consideration, the receipt

27   and sufficiency of which hereby is acknowledged by each of the Parties, the Class Representative,

28   on behalf of himself and the Settlement Class Members, the Interested Parties, and StarKist agree

to the Settlement described herein, subject to Court approval, under the following terms and conditions:

## I. DEFINITIONS

1.1     "Cash Claim" has the meaning set forth at paragraph 2.4(a) below

1.2     "Cash Settlement Fund" has the meaning set forth at paragraph 1.23(a) below.

1.3     "Claim Form" means the document to be submitted by Settlement Class Members seeking cash or food vouchers pursuant to this Settlement Agreement.  The Claim Form will be available online at the Settlement Website (defined at paragraph 1.25 below) and the contents of the Claim Form will be approved by the Court in connection with the Court-Ordered Allocation Plan (defined below).

1.4     "Claimant" means a Settlement Class Member who submits a claim for cash payment or food vouchers as described in Section II of this Settlement Agreement.

1.5     "Class Counsel" means the law firm of Bursor & Fisher, P.A.

1.6     "Class Notice" means the Court-approved "Notice of Class Action Settlement."

1.7     "Class Representative" means Patrick Hendricks.

1.8     "Court" means the United States District Court, Northern District of California.

1.9     "Court-Ordered Allocation Plan" has the meaning set forth at paragraph 2.4 below.

1.10    "Defendant's Counsel" means the law firms of Hogan Lovells US LLP and Eckert Seamans Cherin & Mellott, LLC.

1.11    "District Court Final Approval Date" means the day on which the Court's Settlement Approval Order and Final Judgment (defined at paragraph 1.26 below) is entered.

1.12    "Fee and Expense Award" means the amount awarded to Class Counsel by the Court for attorneys' fees, costs, and expenses.

1.13    "Final Settlement Approval Date" means the date which is thirty (35) days after service of notice of entry of the Settlement Approval Order and Final Judgment on the parties and all objectors to the Settlement Agreement, if any, without any appeal being taken, or if an appeal or request for review has been taken, the date on which the Settlement Approval Order and Final Judgment has been affirmed by the court of last resort to which an appeal or request for review has

been taken and such affirmance is no longer subject to further appeal or review, or the date of denial of review after exhaustion of all appellate remedies.

1.14    "Incentive Award" means any award sought by application to and approved by the Court that is payable to the Representative Plaintiff and/or the Interested Parties from the Cash Settlement Fund.

1.15    "Interested Parties" means Laury Smith, Ben Hall, Brian Andcacky, Joseph Vallillo, Joseph Ebin, Kelly Maucieri, Monica Rodriguez, and Jayme Kaczmarek.

1.16    "Media Plan" means the Settlement Administrator's plan to disseminate Class Notice to Settlement Class Members.

1.17    "Notice and Other Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator (defined below) in the publication of Class Notice, establishment of the Settlement Website (defined below) and the processing, handling, reviewing, and paying of claims made by Claimants, which have been estimated by the Settlement Administrator to be no more than $675,000.

1.18    "Parties" means Patrick Hendricks and StarKist Co.

1.19    "Preliminary Approval" means that the Court has entered an order preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing and content of notice to Settlement Class Members.

1.20    "Preliminary Approval Date" means the date on which the Court enters an Order granting Preliminary Approval.

1.21    "Released Persons" means StarKist; all of StarKist's past and present respective parents, subsidiaries, divisions, affiliates, persons and entities directly or indirectly under its or their control in the past or in the present; StarKist's respective assignors, predecessors, successors, and assigns; and all past or present partners, shareholders, managers, members, directors, officers, employees, agents, attorneys, insurers, accountants, and representatives of any and all of the foregoing.

1.22    "Settlement Administrator" means KCC Class Action Services, LLC (or KCC) and its successors and assigns.

1.23    "Settlement Class Members" or "Settlement Class" means:

All residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil). Excluded from this definition are the Released Persons. Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section V of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement.

1.24    "Settlement Class Period" means the period of time from February 19, 2009 through October 31, 2014.

1.25    "Settlement Fund" means the total cash and food voucher commitment of StarKist for purposes of this settlement, as described in Section II of this Settlement Agreement, with a total value of $12 million, comprised of two distinct parts – the "Cash Settlement Fund" and the "Voucher Settlement Fund," as defined below:

a.      The "Cash Settlement Fund" consists of eight million dollars ($8,000,000.00), paid by StarKist for purposes of effectuating the settlement of this Action, the payment and disposition of which is subject to the provisions of this Settlement Agreement, including paragraphs 2.4, 2.7, 2.8, 2.9, 3.1, and 3.2, below.

b.      The "Voucher Settlement Fund" means four million dollars ($4,000,000.00) in food voucher value, the creation and disposition of which is subject to the provisions of this Settlement Agreement, including paragraphs 2.4, 2.7, and 2.9, below.

1.26    "Settlement Approval Order and Final Judgment" means an order and judgment issued and entered by the Court, substantially in the form as that attached hereto and made a part hereof as Exhibit A, approving this Settlement Agreement as binding upon the Parties and the Settlement Class Members and dismissing the Action with prejudice, and setting the amount for an award of attorneys' fees not to exceed one-third of the total $12 million value of the Settlement Fund, plus any award of costs and expenses, to Class Counsel by the Court. The Settlement Approval Order and Final Judgment shall constitute a judgment within the meaning and for purposes of Rule 54 of the Federal Rules of Civil Procedure. The Parties jointly shall request the

Court to enter the proposed Settlement Approval Order and Final Judgment substantially in the form attached hereto and made a part hereof as Exhibit A.

1.27 "Settlement Website" means a website operated and maintained by the Settlement Administrator solely for purposes of making available to the Settlement Class Members the documents, information, and online claims submission process referenced in paragraphs 2.4 through 2.6, below.

1.28 "Short Form Notice" means the Court-approved form of notice for publication to Settlement Class Members, pursuant to the Media Plan.

1.29 "StarKist-Branded Product" shall mean any food product carrying the *StarKist* brand.

1.30 "StarKist Products" means the StarKist-branded 5 oz. canned tuna products at issue in the Action: Chunk Light in Water, Chunk Light in Oil, Solid White in Water, Solid White in Oil, purchased during the Settlement Class Period.

1.31 "Voucher Claim" has the meaning set forth at paragraph 2.4(c) below.

1.32 "Voucher Settlement Fund" has the meaning set forth at paragraph 1.23(b), above

1.33 As used herein, the plural of any defined term includes the singular thereof and the singular of any defined term includes the plural thereof, as the case may be.

## II. SETTLEMENT CONSIDERATION

2.1 <u>Benefit to Settlement Class Members from the Settlement Fund</u>. The Settlement Fund will be used to provide benefits to or on behalf of the Settlement Class as follows:

a. StarKist will pay $8,000,000 in cash as part of the Cash Settlement Fund for payment of the following: (i) valid claims for cash benefits submitted by Settlement Class Members pursuant to paragraph 2.4 below; (ii) the Notice and Other Administrative Costs actually incurred by the Settlement Administrator, which will not exceed $675,000, as described in paragraph 4.5 below; (iii) voucher and check distribution costs; (iv) the Fee and Expense Award, as described in paragraph 3.1 below, and (v) any Incentive Awards to the Class Representative

and/or Interested Parties, not to exceed $5,000 per individual as may be ordered by the Court and as described in paragraph 3.2 below.

    b.  StarKist will provide $4,000,000 in food voucher value to the Voucher Settlement Fund to satisfy the claims of those Settlement Class Members who claim vouchers for StarKist-Branded Products pursuant to paragraph 2.4(b), below.

  2.2  <u>Total Financial Commitment</u>.  StarKist's total financial commitment and obligation under this Settlement Agreement, including but not limited to paragraphs 2.1(a) and 2.1(b), shall not exceed $12,000,000, including $8,000,000.00 in cash and $4,000,000.00 in vouchers for StarKist-Branded Products.

  2.3  <u>Schedule of Payments into Cash Settlement Fund</u>.  StarKist shall make payments into the Cash Settlement Fund in accordance with the following schedule:

    a.  *Notice and Other Administrative Costs.*  Amounts equal to the cost of publishing the Class Notice and other administrative costs, to be paid within thirty (30) days of when such amounts are invoiced to StarKist and become due and owing.

    b.  *Fee and Expense Award.*  An amount equal to the Fee and Expense Award, to be paid as described at paragraph 3.1, below.

    c.  *Incentive Awards.*  An amount equal to Representative Plaintiff's Incentive Award as ordered by the Court, to be paid as described at paragraph 3.2, below.

    d.  *Payment of Valid Cash Claims.*  An amount equal to $8,000,000.00, less the sum of (i) the total Notice and Other Administrative Costs paid by Starkist, (ii) the Fee and Expense Award paid by StarKist, and (iii) any Incentive Award(s) paid by StarKist, which amount is to be paid within ten (10) days of the Final Settlement Approval Date.

  2.4  <u>Claims Process</u>.  Each Settlement Class Member shall be entitled to submit a claim for, at the Settlement Class Member's election, either cash payment and/or voucher(s), consistent with this paragraph and as determined by the Court.  In connection with that Court determination (the "Court-Ordered Allocation Plan"), Class Counsel shall provide the Court, at the time the

Motion for Preliminary Approval is filed, a proposal specifying the amount of cash and/or number of vouchers that each Settlement Class Member may claim. StarKist may also file a brief setting forth its position concerning the amount of cash and/or number of vouchers that each Settlement Class Member should be permitted to claim. The foregoing language is without prejudice to Class Counsel arguing that StarKist lacks standing to express its position concerning the Court-Ordered Allocation Plan, and without prejudice to StarKist arguing to the contrary.

a. *Cash Payment.* Each Settlement Class Member may file a claim that will, if valid, entitle him or her to cash payment(s) based on StarKist Products purchased during the Settlement Class Period. A Settlement Class Member's claim for cash payment pursuant to this paragraph 2.4(a) shall be considered a "Cash Claim." The amount of cash payable to each Settlement Class Member making a valid Cash Claim shall be determined by the Court. If, pursuant to the Court-Ordered Allocation Plan, the amount of cash available for the Cash Settlement Fund is insufficient to pay all valid Settlement Class Member Cash Claims, individual payment amounts for Cash Claims shall be reduced on a pro-rata basis as described in paragraph 2.7 below.

b. *Cash Payment from Fund.* Cash Claims will be paid, after the Claim Period Close Date (as defined in paragraph 2.6) and after the Final Settlement Approval Date, from the Cash Settlement Fund.

c. *Voucher Payment.* A Settlement Class Member may elect to claim food voucher(s) in lieu of claiming cash. A Settlement Class Member's claim for food voucher(s) pursuant to this paragraph 2.4(c) shall be considered a "Voucher Claim." Voucher Claims shall be limited as set forth in paragraph (d) below. StarKist shall determine rules for voucher use, and voucher redemption by retailers will be administered in accordance with procedures prescribed by StarKist. The vouchers (a) shall have no expiration date, (b) shall be freely transferrable, subject to reasonable measures to prevent fraud, duplicating or counterfeiting of vouchers, (including but

not limited to requirements concerning printing and authentication, and use of serial numbers, UPC coding, specialized ink and/or paper, watermarks, and/or holograms, and/or physical delivery—all subject to specification by StarKist), (c), shall, subject to retailer policies, be redeemable at any retailer that sells the StarKist Products, and (d) shall be redeemable in exchange for, or for discounts against, various StarKist-Branded Products , including at least the four varieties of product encompassed by the class definition.  Voucher Claims will be fulfilled after the Claim Period Close Date (as defined in paragraph 2.6) and will be paid from the Voucher Settlement Fund.  Subject to adjustment of the value of vouchers pursuant to Paragraph 2.7 below, the face value of each voucher shall be deducted from the Voucher Settlement Fund for each valid Voucher Claim submitted.  The amount of voucher value to which each Settlement Class Member making a valid Voucher Claim is entitled shall be determined by the Court as part of the Court-Ordered Allocation Plan, and the face value of each voucher shall be an amount between $1.00 and $2.00 as determined by StarKist.  If, pursuant to the Court-Ordered Allocation Plan, the amount of voucher value in the Voucher Settlement Fund is insufficient to satisfy all valid Settlement Class Member Voucher Claims, individual Voucher Claims shall be reduced on a pro-rata basis as described in paragraph 2.7 below.

       d.    *Voucher Payment from Fund.*  Voucher Claims will be paid, after the Claim Period Close Date (as defined in paragraph 2.6) and after the Final Settlement Approval Date, from the Voucher Settlement Fund.

       2.5    <u>Proof of Claim</u>.  A maximum of one claim, submitted on a single Claim Form, may be submitted by each Settlement Class Member and his or her household.  A Claimant must include information in the Claim Form – completed online or in hard copy mailed to the Settlement Administrator – confirming under penalty of perjury the following: (i) the specific

StarKist Product(s) purchased, and (ii) that the purchase or purchases were made within the Settlement Class Period.

2.6     Review of Claims.  The Settlement Administrator shall be responsible for reviewing all claims to determine their validity.  The Settlement Administrator shall reject any claim that does not comply in any material respect with the instructions on the Claim Form or the terms of paragraphs 2.4 and 2.5, above, or is submitted after the close of the claim period set by the Court ("Claim Period Close Date").

2.7     Pro-Rata Reduction of Benefits.  If the dollar value of valid Settlement Class member claims, determined in accordance with paragraphs 2.4 and 2.5 above, exceeds the respective amounts available in either the Cash Settlement Fund or the Voucher Settlement Fund available to satisfy those claims, awards to Settlement Class Members from the Cash Settlement Fund and/or the Voucher Settlement Fund, as the case may be, shall be reduced as follows:

a.     *Cash Benefit.*  If, as of the Final Settlement Approval Date, the cash amount available for the Cash Settlement Fund to satisfy valid Cash Claims is less than the total cash value of valid Cash Claims, cash payments will be reduced on a pro-rata basis, such that the total available cash will satisfy all Cash Claims.

b.     *Food Voucher Benefits.*  If, as of the Final Settlement Approval Date, the $4,000,000 in food voucher value available in the Voucher Settlement Fund is insufficient to satisfy the number of valid Voucher Claims received, individual Voucher Claims will be reduced on a pro-rata basis, such that the total available voucher value will satisfy all Voucher Claims.

2.8     Cash Benefit – Uncleared Checks.  Those Settlement Class Members whose cash benefit checks are not cleared within one hundred eighty (180) days after issuance shall be ineligible to receive a cash settlement benefit and StarKist shall have no further obligation to make any payment pursuant to this Settlement Agreement or otherwise to such Settlement Class

Members.  All unpaid funds from uncleared checks shall remain in the Cash Settlement Fund pending further order of the Court.  Class Counsel shall make an application to the Court to seek approval for a proposed disposition of the unpaid funds from uncleared checks.

2.9     Distribution of Unclaimed Settlement Class Benefits After Payment of Valid Claims.  StarKist shall have no obligation under this Settlement Agreement to make cash payments to the Cash Settlement Fund after payment of all valid Cash Claims (subject to the limitation described in Paragraph 2.7(a)), Notice and Other Administrative Costs, Incentive Awards, and the Fee and Expense Award, and in no event shall have to pay more than $8 million cash to satisfy the terms of this Settlement.  Any cash remaining in the Cash Settlement Fund after payments of valid Cash Claims shall remain in the Cash Settlement Fund pending further order of the Court.  Class Counsel shall make an application to the Court to seek approval for proposed disposition of any such remaining cash.  Any voucher value remaining in the Voucher Settlement Fund after such payment of valid Voucher Claims shall remain in the Voucher Settlement Fund pending further order of the Court.  Class Counsel shall make an application to the Court to seek approval for a proposed disposition of any remaining vouchers (i.e., the number of vouchers corresponding to the value remaining in the Voucher Settlement Fund).

2.10    Notice to Attorneys General.  Not later than ten (10) days after the Motion for Preliminary Approval of the Settlement is filed in court (i.e. by May 26, 2015), the Settlement Administrator shall in consultation with StarKist counsel provide notice of the proposed class action settlement to the appropriate state officials (i.e. each state attorney general) pursuant to 28 U.S.C. § 1715, and the costs of such notice shall be paid from the Cash Settlement Fund.

### III.  CLASS COUNSEL ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE INCENTIVE AWARDS

3.1     Attorneys' Fees, Costs and Expenses.  Class Counsel will petition the Court for an award of attorneys' fees in an amount not to exceed one third of the total $12 million value of the

1   Settlement Fund, plus reimbursement of Class Counsel's costs and expenses.  Such Class

2   Counsel's fees, costs and expenses, if approved by the Court, shall be payable within 30 days

3   following the District Court's final order approving the settlement and fee award, subject to Class

4   Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking")

5   attached hereto as Exhibit B, and providing all payment routing information and tax I.D. numbers

6   for Class Counsel.  The Fee and Expense Award shall be the total obligation of StarKist to pay for

7   attorneys' fees, costs and/or expenses of any kind (including, but not limited to, travel, filing fees,

8   court reporter and videographer expenses, expert fees and costs, and document review and

9   production costs related to this Action or any claims asserted in the Action).  Notwithstanding the

10  foregoing, if the final Settlement Approval Order and Final Judgment or any part of it is vacated,

11  overturned, reversed, or rendered void or unenforceable as a result of an appeal, or the Settlement

12  Agreement is voided, rescinded, or otherwise terminated for any other reason, then Class Counsel

13  shall, within thirty (30) days, repay to StarKist the full amount of the attorneys' fees and costs paid

14  by StarKist to Class Counsel.  In such event, the following persons shall be jointly and severally

15  liable for the return of such payments: (a) Bursor & Fisher P.A., and (b) Scott Bursor.  To

16  effectuate this provision, Bursor & Fisher, P.A., Scott A. Bursor, and L. Timothy Fisher shall,

17  within ten (10) calendar days of the Preliminary Approval Order, execute and deliver to StarKist

18  for filing with the Court the Undertaking in the form attached as Exhibit B.

19       3.2     Incentive Awards.  Class Counsel will petition the Court for approval of Incentive

20  Awards payable to the Class Representative and the Interested Parties in amounts not to exceed

21  $5,000.00 apiece.  StarKist shall pay such award by wire transfer or check to Class Counsel within

22  thirty-five (35) calendar days after the Final Settlement Approval Date, subject to the prior

23  delivery to StarKist of tax I.D. number(s) for each individual receiving such award.

24          **IV.  NOTICE TO CLASS AND ADMINISTRATION OF SETTLEMENT**

25       4.1     Class Notice.  The Class Notice shall conform to all applicable requirements of the

26  Federal Rules of Civil Procedure, the United States Constitution (including the Due Process

27  Clauses), and any other applicable law, and shall otherwise be in the manner and form approved

28  by the Court.

4.2     <u>General Notice Terms</u>.  The Class Notice shall:

a.      inform Settlement Class Members that, if they do not exclude themselves from the Class, they may be eligible to receive the relief under the proposed settlement;

b.      contain a short, plain statement of the background of the Action, the Class certification and the proposed settlement;

c.      describe the proposed settlement relief outlined in this Stipulation;

d.      state that any relief to Settlement Class Members is contingent on the Court's final approval of the proposed settlement.

4.3     <u>Notice of Exclusion and Objection Rights</u>.  The Class Notice shall inform Settlement Class Members of their rights to exclude themselves from the Class or object to the proposed settlement, as described in paragraph 5.3 below.

4.4     <u>Time and Manner of Notice</u>.  Class Notice shall be provided as set forth in the Media Plan; media delivery of Class Notice shall be completed within forty-five (45) days after the Preliminary Approval Date.

4.5.    <u>Responsibilities of Settlement Administrator</u>.  The Parties will retain one or more Settlement Administrators (including subcontractors) to help implement the terms of the proposed Settlement Agreement.  The Settlement Administrator(s) shall be responsible for administrative tasks, including, without limitation, (a) notifying the appropriate state officials about the settlement, (b) arranging, as set forth in the Media Plan, for distribution of Class Notice (in the form approved by the Court)  and Claim Forms (in a form ordered by the Court) to Settlement Class Members, (c) answering inquiries from Settlement Class Members and/or forwarding such written inquiries to Class Counsel or their designee, (d) receiving and maintaining on behalf of the Court and the Parties any Settlement Class Member correspondence regarding requests for exclusion to the settlement, (e) establishing the Settlement Website that posts notices, Claim Forms and other related documents, (f) receiving and processing claims and distributing payments (of cash and vouchers) to Settlement Class Members, and (g) otherwise assisting with implementation and administration of the Settlement Agreement terms.  The actual costs and

1  expenses of the Settlement Administrator, which the Settlement Administrator has agreed shall be

2  no more than $675,000, will be paid from the Cash Settlement Fund.

3      4.6.    Performance Standards of Settlement Administrator.  The contract with the

4  Settlement Administrator shall obligate the Settlement Administrator to abide by the following

5  performance standards:

6          a.    The Settlement Administrator shall accurately and neutrally describe, and

7  shall train and instruct its employees and agents to accurately and objectively describe, the

8  provisions of this Stipulation in communications with Settlement Class Members;

9          b.    The Settlement Administrator shall provide prompt, accurate and objective

10  responses to inquiries from Class Counsel or their designee, Defendant and/or Defendant's

11  Counsel, and shall periodically report on claims, objectors, etc.

12          c.    The Settlement Administrator shall seek clarification, instruction or

13  authorization for performance of its duties and expenditure or disposition of cash from both Class

14  Counsel and their designee and from Defendant and/or Defendant's Counsel or their designee.

15              **V.  CLASS SETTLEMENT PROCEDURES**

16      5.1    Settlement Approval.  As soon as practical after the signing of this Settlement

17  Agreement, the Class Representative shall move for a Conditional Class Certification and

18  Preliminary Approval Order, conditionally certifying the Settlement Class, preliminarily

19  approving the terms and conditions of this Settlement Agreement as fair, reasonable, and adequate,

20  and in the best interests of the Settlement Class Members, approving notice to the Settlement Class

21  Members as described in Section IV above, and setting a hearing to consider final approval of the

22  Settlement and any objections thereto.  Starkist may join in such motion in whole or in part, and

23  may submit its own proposed Preliminary Approval Order and/or forms of Class Notice.

24      5.2    Settlement Approval Order and Final Judgment.  At or before the final approval

25  hearing, the Class Representative shall move for entry of a Settlement Approval Order and Final

26  Judgment substantially in the form as that attached hereto and made a part hereof as Exhibit A,

27  granting final approval of this Settlement and holding this Settlement Agreement to be fair,

28  reasonable, and adequate, and in the best interests of the Settlement Class Members, and binding

1  (as of the Final Settlement Approval Date) on all Settlement Class Members who have not

2  excluded themselves as provided below, and ordering that the Settlement relief be provided as set

3  forth in this Settlement Agreement, ordering the releases as set forth in Section VI below to be

4  effective on the Final Settlement Approval Date, and entering judgment in the Action.

5         5.3    <u>Exclusions, Objections, and Requests to Intervene</u>.  The Class Notice shall advise

6  all Settlement Class Members of their right: (a) to be excluded from the Settlement, (b) to object to

7  the Settlement and (c) to request the opportunity to intervene in this Action.  If, within such time

8  as is ordered by the Court and contained in the Class Notice, any Settlement Class Member wishes

9  to be excluded from the Settlement, he or she must do so by timely mailing a valid opt-out notice,

10 as described in the Class Notice.  Any Settlement Class Member who timely elects to opt out of

11 the Settlement shall not be permitted to object to the Settlement or to intervene in the Action.

12 Persons falling within the definition of the Settlement Class who validly and timely request

13 exclusion from the Settlement effected by this Settlement Agreement, pursuant to the procedures

14 set forth in this paragraph, shall not be Settlement Class Members, shall not be bound by this

15 Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of

16 this Settlement Agreement.

17        a.    At least seven (7) calendar days prior to the final approval hearing, Class

18 Counsel shall prepare or cause the Settlement Administrator to prepare a list of the persons who

19 have excluded themselves in a valid and timely manner from the Settlement Class (the "Opt-

20 Outs"), and Class Counsel shall file that list with the Court.  If, within such time as is ordered by

21 the Court and contained in the Class Notice, any Settlement Class Member wishes to object to the

22 Settlement and/or to be heard, he or she must, on or before the deadlines established by the Court,

23 submit to the Settlement Administrator a written notice of objection and/or request to be heard.

24 Such communication shall state the name and address of the Settlement Class Member, shall

25 include information sufficient to demonstrate membership in the Settlement Class, and state the

26 grounds for each objection asserted.

27        b.    If, within such time as is ordered by the Court and contained in the Class

28 Notice, any Settlement Class Member wishes to intervene in this Action, such Settlement Class

STIPULATION OF SETTLEMENT
CASE NO. 3:13-CV-0729-HSG

1   Member shall file with the Court and serve upon Defendant's Counsel and Class Counsel, his or

2   her Motion to Intervene and all accompanying arguments and documents in support thereof.  The

3   proposed order granting Preliminary Approval will provide that any Settlement Class Member

4   wishing to object, appear, or intervene who fails to follow the procedures set forth above may, in

5   the discretion of the Court, be precluded from doing so.

6          5.4     Stay of the Action.  The Parties shall request that the Court, in connection with

7   Preliminary Approval, issue an immediate stay of the Action.

8          5.5     Effect If Settlement Not Approved.  This Settlement Agreement was entered into

9   only for purposes of settlement, subject to and without waiver of the Parties' respective rights.  If

10  the Court fails to enter the order granting Preliminary Approval or fails to grant final approval, or

11  if the Final Settlement Approval Date does not occur, Class Counsel and Defendant's Counsel

12  shall endeavor, consistent with the Settlement Agreement, to cure any defect identified by the

13  Court; provided, however, that StarKist shall not be obligated to accept such cure if it increases the

14  cost or burden of the Settlement Agreement to StarKist or any of the other Released Persons or

15  reduces or otherwise affects the scope of the releases provided by this Settlement Agreement.  In

16  the event that the Settlement Agreement is terminated for any reason, final approval does not occur

17  for any reason, or the Final Settlement Approval Date does not occur, then no term or condition of

18  the Settlement Agreement, or any draft thereof, or any discussion, negotiation, documentation, or

19  other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such

20  matter be admissible in evidence for any purpose in the Action, or in any other proceeding, the

21  Parties shall be restored to their respective positions immediately preceding execution of this

22  Settlement Agreement.  If the final Settlement Approval Order and Final Judgment or any part of

23  it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement

24  Agreement is voided, rescinded, or otherwise terminated for any other reason, then within thirty

25  (30) days, Class Counsel shall return to StarKist all attorneys' fees, costs, and other payments

26  received by Class Counsel under the Settlement Agreement, as set forth in paragraph 3.1 above.

27  The Parties agree that all drafts, discussions, negotiations, documentation, or other information

28  prepared in relation to the Settlement Agreement and the Parties' settlement discussions shall be

1  treated as strictly confidential and may not be disclosed to any person other than the Parties'

2  counsel, and only for purposes of the Action.  StarKist's rights with respect to class certification

3  expressly are reserved and preserved.

4       5.6    <u>Termination.</u>  The Settlement Agreement shall have no effect unless and until this

5  Settlement Agreement is fully executed by all Parties.

6  <div align="center">**VI.  RELEASES**</div>

7       6.1    <u>Release by Settlement Class Members</u>.  Effective as of the Final Settlement

8  Approval Date, each and all of the Settlement Class Members (except any such person who has

9  filed a proper and timely request for exclusion) shall release and forever discharge, and shall be

10  forever barred from asserting, instituting, or maintaining against any or all of the Released

11  Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or

12  liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the

13  factual allegations made in the Action, including without limitation the alleged under-filling of the

14  StarKist Products and/or the purchase of any of the StarKist Products at any time on or after

15  February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims").  With respect to the

16  Claims released pursuant to this paragraph, each Settlement Class Member shall be deemed to

17  have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and

18  benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous

19  provisions of the laws of the United States of America or any state or territory thereof, or of the

20  common law or civil law).  Section 1542 provides that:

21         **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR**

22         **SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF**

23         **KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE**

24         **DEBTOR.**

25  Each and every term of this paragraph shall inure to the benefit of each and all of the Released

26  Persons, and each and all of their respective successors and personal representatives, which

27  persons and entities are intended to be beneficiaries of this paragraph.

28

1    6.2    Effectuation of Settlement.  None of the above releases include releases of claims

2    or otherwise affects rights to enforce the terms of the Settlement Agreement.

3    6.3    No Admission of Liability.  This Settlement Agreement reflects, among other

4    things, the compromise and settlement of disputed claims among the parties, and neither this

5    Settlement Agreement nor the releases given herein, nor any consideration therefor, nor any

6    actions taken to carry out this Settlement Agreement, are intended to be, nor may they be deemed

7    or construed to be, an admission or concession of liability, or the validity of any claim, defense, or

8    of any point of fact or law on the part of any party.  StarKist denies the material allegations of the

9    complaint filed in this Action.  Neither this Settlement Agreement, nor the fact of settlement, nor

10   the settlement proceedings, nor the settlement negotiations, nor any related document, shall be

11   used as an admission of any fault or omission by any or all of the Released Persons, or be offered

12   or received in evidence as an admission, concession, presumption or inference of any wrongdoing

13   or liability by any or all of the Released Persons in any proceeding, other than such proceedings as

14   may be necessary to consummate, interpret or enforce this Settlement Agreement.

15   **VII.  CERTIFICATION OF SETTLEMENT CLASS**

16   7.1    The Parties agree, for settlement purposes only, that this Action shall be certified

17   and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3), with a class

18   consisting of all Settlement Class Members, and with Patrick Hendricks as Class Representative

19   and with Class Counsel as counsel for the Settlement Class Members.

20   7.2    Any certification of a conditional, preliminary or final settlement class pursuant to

21   the terms of this Settlement shall not constitute, and shall not be construed as, an admission on the

22   part of StarKist that this Action, or any other proposed or certified class action, is appropriate for

23   trial class treatment pursuant to Federal Rule of Civil Procedure or any similar state or federal

24   class action statute or rule.  This Settlement Agreement shall be without prejudice to the rights of

25   StarKist to: (a) move to dismiss or stay this Action on any applicable basis; (b) oppose

26   certification in this Action should this Settlement Agreement not be approved or implemented for

27   any reason; or (c) oppose certification in any other proposed or certified class action.  Neither the

28

1  fact of this settlement nor this Settlement Agreement shall be used in connection with efforts in

2  any proceeding to seek certification of any claims asserted against StarKist.

3  **VIII.  MISCELLANEOUS PROVISIONS**

4  8.1  Change of Time Periods.  The time periods and/or dates described in this

5  Settlement Agreement with respect to the giving of notices and hearings are subject to approval

6  and change by the Court or by the written agreement of Class Counsel and Defendant's Counsel,

7  without notice to Settlement Class Members.  The Parties reserve the right, by agreement and

8  subject to the Court's approval, to grant any reasonable extension of time that might be needed to

9  carry out any of the provisions of this Settlement Agreement.

10  8.2  Time for Compliance.  If the date for performance of any act required by or under

11  this Settlement Agreement falls on a Saturday, Sunday, or court holiday, that act may be

12  performed on the next business day with the same effect as if it had been performed on the day or

13  within the period of time specified by or under this Settlement Agreement.

14  8.3  Governing Law.  This Settlement Agreement is intended to and shall be governed

15  by the laws of the State of California without giving effect to principles of conflicts of laws.

16  8.4  Entire Agreement.  The terms and conditions set forth in this Settlement Agreement

17  constitute the complete and exclusive statement of the agreement between the parties relating to

18  the subject matter of this Settlement Agreement, superseding all previous negotiations and

19  understandings, and may not be contradicted by evidence of any prior or contemporaneous

20  agreement.  The Parties further intend that this Settlement Agreement constitutes the complete and

21  exclusive statement of its terms as between the parties, and that no extrinsic evidence whatsoever

22  may be introduced in any agency or judicial proceeding, if any, involving this Settlement

23  Agreement.  Any modification of the Settlement Agreement must be in writing signed by Class

24  Counsel and StarKist.

25  8.5  Advice of Counsel.  The determination of the terms and the drafting of this

26  Settlement Agreement have been by mutual agreement after negotiation, with consideration by and

27  participation of all parties and their counsel.  The presumption found in California Civil Code

28  section 1654 (and equivalent, comparable, or analogous provisions of the laws of the United States

1   of America or any state or territory thereof, or of the common law or civil law) that uncertainties

2   in a contract are interpreted against the party causing an uncertainty to exist is waived by all

3   parties.

4          8.6     Binding Agreement.  This Settlement Agreement shall be binding upon and inure to

5   the benefit of the respective heirs, successors, and assigns of the Parties, the Settlement Class

6   Members and the other Released Persons.

7          8.7     No Waiver.  The waiver by any party of any provision or breach of this Settlement

8   Agreement shall not be deemed a waiver of any other provision or breach of this Settlement

9   Agreement.

10         8.8     Execution in Counterparts.  This Settlement Agreement shall become effective

11  upon its execution by all of the undersigned.  The parties may execute this Settlement Agreement

12  in counterparts, and execution of counterparts shall have the same force and effect as if all parties

13  had signed the same instrument.  The parties further agree that signatures provided by portable

14  document format (PDF) or other electronic transmission shall have the same force and effect as

15  original signatures.

16         8.9     Publicity.  Except for the notice provisions set forth in the Order of Preliminary

17  Approval and except as required by StarKist in accordance with applicable law, rule, or regulation

18  (e.g. securities laws, rules, or regulations), each of the Class Representative, the Interested Parties,

19  Class Counsel, StarKist, and Defendant's Counsel agrees that there will be no campaigning

20  (including on the Internet) regarding the Settlement.  There will be no press release regarding the

21  Settlement, and neither side will initiate contacts with the media nor issue any public statement,

22  comment, or promotional material that references the existence or terms of the Settlement or

23  litigation against StarKist, provided, however, that Class Counsel is permitted, in connection with

24  its law firm websites, biographies, brochures, and firm marketing materials, future declarations

25  regarding counsel's experience, and/or in speaker biographies, to state that it served as counsel in

26  this Action.  Any party can respond to inquiries initiated by the media, and in doing so may

27  decline to comment, but otherwise shall only refer to the Class Notice and/or defer to the court file

28  in this Action, but shall not provide any further comment.

1    8.10    Enforcement of this Settlement Agreement. The Court shall retain jurisdiction, and

2    shall have exclusive jurisdiction, to enforce, interpret, and implement this Settlement Agreement,

3    including any alleged violation of paragraph 8.9 above, and the terms of any order entered

4    pursuant to this Settlement Agreement.

5    8.11    Notices. All notices to the Parties or counsel required by this Settlement

6    Agreement shall be made in writing and communicated by email and mail to the following

7    addresses:

8        If to the Class Representative, the Interested Parties, Settlement Class Members, or Class

9    Counsel:

10       Scott A. Bursor
         Bursor & Fisher, P.A.
11       888 Seventh Avenue
         New York, NY 10019
12       Telephone: (212) 989-9113
         scott@bursor.com
13
         If to StarKist or Defendant's Counsel:
14
         Robert B. Hawk
15       Hogan Lovells US LLP
         4085 Campbell Avenue, Suite 100
16       Menlo Park, California 94025
         Telephone: (650) 463-4000
17       robert.hawk@hoganlovells.com

18
         IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally
19
     bound hereby, have caused this Settlement Agreement to be executed on the dates shown below
20
     and agree that it shall take effect on the date it is executed by all of the undersigned.
21
                              APPROVED AND AGREED:
22

23
     DATED: May _13_, 2015
24
                              Plaintiff Patrick Hendricks
25

26   DATED: May ___, 2015
27                            Andrew Choe
                              President & CEO
28                            StarKist Co.

                                   21                    STIPULATION OF SETTLEMENT

1      8.10    Enforcement of this Settlement Agreement. The Court shall retain jurisdiction, and

2   shall have exclusive jurisdiction, to enforce, interpret, and implement this Settlement Agreement,

3   including any alleged violation of paragraph 8.9 above, and the terms of any order entered

4   pursuant to this Settlement Agreement.

5      8.11    Notices. All notices to the Parties or counsel required by this Settlement

6   Agreement shall be made in writing and communicated by email and mail to the following

7   addresses:

8      If to the Class Representative, the Interested Parties, Settlement Class Members, or Class

9   Counsel:

10         Scott A. Bursor
           Bursor & Fisher, P.A.
11         888 Seventh Avenue
           New York, NY 10019
12         Telephone: (212) 989-9113
           scott@bursor.com
13
           If to StarKist or Defendant's Counsel:
14
           Robert B. Hawk
15         Hogan Lovells US LLP
           4085 Campbell Avenue, Suite 100
16         Menlo Park, California 94025
           Telephone: (650) 463-4000
17         robert.hawk@hoganlovells.com

18
        IN WITNESS HEREOF the undersigned, being duly authorized and intending to be legally
19
    bound hereby, have caused this Settlement Agreement to be executed on the dates shown below
20
    and agree that it shall take effect on the date it is executed by all of the undersigned.
21
                                    **APPROVED AND AGREED:**
22

23
    DATED: May ___, 2015
24                                  _____
                                    Plaintiff Patrick Hendricks
25

26
    DATED: May 13, 2015
27                                  Andrew Choe   Jung Ki Ro
                                    President & CEO   CFO
28                                  StarKist Co.

DATED: May _13_, 2015

_Laury Smith_
Laury Smith

DATED: May ___, 2015

_____
Ben Hall

DATED: May ___, 2015

_____
Brian Andacky

DATED: May ___, 2015

_____
Joseph Vallillo

DATED: May ___, 2015

_____
Joseph Ebin

DATED: May ___, 2015

_____
Kelly Maucieri

DATED: May ___, 2015

_____
Monica Rodriguez

DATED: May ___, 2015

_____
Jayme Kaczmarek

**APPROVED AS TO FORM:**

DATED: May ___, 2015

_____
Scott A. Bursor
Bursor & Fisher, P.A.
_Attorneys for Class Representative, the Interested Parties
and the Putative Settlement Class_

DATED: May ___, 2015

_____
Robert B. Hawk
HOGAN LOVELLS US LLP
_Attorneys for Defendant StarKist Co._

DATED: May ___, 2015

_____
Laury Smith

DATED: May _13_, 2015

*Benja Hall*
_____
Ben Hall

DATED: May ___, 2015

_____
Brian Andacky

DATED: May ___, 2015

_____
Joseph Vallillo

DATED: May ___, 2015

_____
Joseph Ebin

DATED: May ___, 2015

_____
Kelly Maucieri

DATED: May ___, 2015

_____
Monica Rodriguez

DATED: May ___, 2015

_____
Jayme Kaczmarek

**APPROVED AS TO FORM:**

DATED: May ___, 2015

_____
Scott A. Bursor
Bursor & Fisher, P.A.
*Attorneys for Class Representative, the Interested Parties
and the Putative Settlement Class*

DATED: May ___, 2015

_____
Robert B. Hawk
HOGAN LOVELLS US LLP
*Attorneys for Defendant StarKist Co.*

STIPULATION OF SETTLEMENT
CASE NO. 3:13-CV-0729-HSG

DATED: May ___, 2015

_____
Laury Smith

DATED: May ___, 2015

_____
Ben Hall

DATED: May 13, 2015

_____
Brian Andacky

DATED: May ___, 2015

_____
Joseph Vallillo

DATED: May ___, 2015

_____
Joseph Ebin

DATED: May ___, 2015

_____
Kelly Maucieri

DATED: May ___, 2015

_____
Monica Rodriguez

DATED: May ___, 2015

_____
Jayme Kaczmarek

**APPROVED AS TO FORM:**

DATED: May ___, 2015

_____
Scott A. Bursor
Bursor & Fisher, P.A.
*Attorneys for Class Representative, the Interested Parties*
*and the Putative Settlement Class*

DATED: May ___, 2015

_____
Robert B. Hawk
HOGAN LOVELLS US LLP
*Attorneys for Defendant StarKist Co.*

22                          STIPULATION OF SETTLEMENT
                            CASE NO. 3:13-CV-0729-HSG

1

2    DATED: May ___, 2015          _____

3                                  Laury Smith

4    DATED: May ___, 2015          _____

5                                  Ben Hall

6
     DATED: May ___, 2015          _____
7
                                   Brian Andacky
8
9    DATED: May 13, 2015           _____

10                                 Joseph Vallillo

11   DATED: May ___, 2015          _____

12                                 Joseph Ebin

13
     DATED: May ___, 2015          _____
14
                                   Kelly Maucieri
15
16   DATED: May ___, 2015          _____

17                                 Monica Rodriguez

18   DATED: May ___, 2015          _____

19                                 Jayme Kaczmarek

20                                 **APPROVED AS TO FORM:**

21
     DATED: May ___, 2015          _____
22
                                   Scott A. Bursor
23                                 Bursor & Fisher, P.A.
                                   *Attorneys for Class Representative, the Interested Parties*
24                                 *and the Putative Settlement Class*

25

26   DATED: May ___, 2015          _____

27                                 Robert B. Hawk
                                   HOGAN LOVELLS US LLP
28                                 *Attorneys for Defendant StarKist Co.*

1

2
DATED: May ___, 2015

3
_____
Laury Smith

4
DATED: May ___, 2015

5
_____
Ben Hall

6

7
DATED: May ___, 2015

8
_____
Brian Andacky

9
DATED: May ___, 2015

10
_____
Joseph Vallillo

11
DATED: May _14_, 2015

12
_____
Joseph Ebin

13

14
DATED: May ___, 2015

15
_____
Kelly Maucieri

16
DATED: May ___, 2015

17
_____
Monica Rodriguez

18
DATED: May ___, 2015

19
_____
Jayme Kaczmarek

20
**APPROVED AS TO FORM:**

21

22
DATED: May ___, 2015

23
_____
Scott A. Bursor
Bursor & Fisher, P.A.

24
*Attorneys for Class Representative, the Interested Parties
and the Putative Settlement Class*

25

26
DATED: May ___, 2015

27
_____
Robert B. Hawk
HOGAN LOVELLS US LLP

28
*Attorneys for Defendant StarKist Co.*

1

2   DATED: May ___, 2015                    _____

3                                           Laury Smith

4
     DATED: May ___, 2015                    _____
5                                           Ben Hall

6
     DATED: May ___, 2015                    _____
7                                           Brian Andacky

8

9   DATED: May ___, 2015                    _____

10                                          Joseph Vallillo

11  DATED: May ___, 2015                    _____

12                                          Joseph Ebin

13
     DATED: May ___, 2015                    _____
14                                          Kelly Maucieri

15

16  DATED: May ___, 2015                    _____

17                                          Monica Rodriguez

18
     DATED: May ___, 2015                    _____
19                                          Jayme Kaczmarek

20                                          **APPROVED AS TO FORM:**

21
     DATED: May ___, 2015                    _____
22                                          Scott A. Bursor
                                            Bursor & Fisher, P.A.
23                                          *Attorneys for Class Representative, the Interested Parties*
24                                          *and the Putative Settlement Class*

25

26  DATED: May ___, 2015                    _____

27                                          Robert B. Hawk
                                            HOGAN LOVELLS US LLP
28                                          *Attorneys for Defendant StarKist Co.*

DATED: May ___, 2015    _____
                        Laury Smith

DATED: May ___, 2015    _____
                        Ben Hall

DATED: May ___, 2015    _____
                        Brian Andacky

DATED: May ___, 2015    _____
                        Joseph Vallillo

DATED: May ___, 2015    _____
                        Joseph Ebin

DATED: May ___, 2015    _____
                        Kelly Maucieri

DATED: May 13, 2015     _____
                        Monica Rodriguez

DATED: May ___, 2015    _____
                        Jayme Kaczmarek

APPROVED AS TO FORM:

DATED: May ___, 2015    _____
                        Scott A. Bursor
                        Bursor & Fisher, P.A.
                        *Attorneys for Class Representative, the Interested Parties
                        and the Putative Settlement Class*

DATED: May ___, 2015    _____
                        Robert B. Hawk
                        HOGAN LOVELLS US LLP
                        *Attorneys for Defendant StarKist Co.*

1

2 DATED: May ___, 2015

3 _____
Laury Smith

4
DATED: May ___, 2015

5 _____
Ben Hall

6

7 DATED: May ___, 2015

8 _____
Brian Andacky

9 DATED: May ___, 2015

10 _____
Joseph Vallillo

11 DATED: May ___, 2015

12 _____
Joseph Ebin

13

14 DATED: May ___, 2015

15 _____
Kelly Maucieri

16 DATED: May ___, 2015

17 _____
Monica Rodriguez

18 DATED: May ___, 2015

19 _____
Jayme Kaczmarek

20 **APPROVED AS TO FORM:**

21

22 DATED: May ___, 2015

23 _____
Scott A. Bursor
Bursor & Fisher, P.A.
*Attorneys for Class Representative, the Interested Parties*
24 *and the Putative Settlement Class*

25

26 DATED: May ___, 2015

27 _____
Robert B. Hawk
HOGAN LOVELLS US LLP
28 *Attorneys for Defendant StarKist Co.*

DATED: May ___, 2015

_____
Laury Smith

DATED: May ___, 2015

_____
Ben Hall

DATED: May ___, 2015

_____
Brian Andacky

DATED: May ___, 2015

_____
Joseph Vallillo

DATED: May ___, 2015

_____
Joseph Ebin

DATED: May ___, 2015

_____
Kelly Maucieri

DATED: May ___, 2015

_____
Monica Rodriguez

DATED: May ___, 2015

_____
Jayme Kaczmarek

**APPROVED AS TO FORM:**

DATED: May 13, 2015

_____
Scott A. Bursor
Bursor & Fisher, P.A.
*Attorneys for Class Representative, the Interested Parties
and the Putative Settlement Class*

DATED: May ___, 2015

_____
Robert B. Hawk
HOGAN LOVELLS US LLP
*Attorneys for Defendant StarKist Co.*

DATED: May ___, 2015

_____
Laury Smith

DATED: May ___, 2015

_____
Ben Hall

DATED: May ___, 2015

_____
Brian Andacky

DATED: May ___, 2015

_____
Joseph Vallillo

DATED: May ___, 2015

_____
Joseph Ebin

DATED: May ___, 2015

_____
Kelly Maucieri

DATED: May ___, 2015

_____
Monica Rodriguez

DATED: May ___, 2015

_____
Jayme Kaczmarek

**APPROVED AS TO FORM:**

DATED: May ___, 2015

_____
Scott A. Bursor
Bursor & Fisher, P.A.
*Attorneys for Class Representative, the Interested Parties
and the Putative Settlement Class*

DATED: May 13, 2015

_____
Robert B. Hawk
HOGAN LOVELLS US LLP
*Attorneys for Defendant StarKist Co.*

1

**Exhibit A**

2

3

UNITED STATES DISTRICT COURT

4

NORTHERN DISTRICT OF CALIFORNIA

5

SAN FRANCISCO DIVISION

6
7
8
9
10
11

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | Case No. 3:13-cv-0729-HSG<br><br>**[PROPOSED] SETTLEMENT APPROVAL ORDER AND FINAL JUDGMENT** |

12
13
14

On _____, 2015, this Court granted preliminary approval of the proposed class action settlement between the parties ("Settlement Agreement").

15
16
17
18
19
20
21
22
23
24

The Court also provisionally certified a nationwide Settlement Class for settlement purposes, approved the procedure for giving notice and forms of Notice, and set a final approval hearing to take place on _____, 2015.  The Settlement Class is defined as: "All residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil)."  Excluded from this definition are the Released Persons.  Settlement Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth in Section V of the Settlement Agreement, shall no longer thereafter be Settlement Class Members and shall not be bound by the Settlement Agreement and shall not be eligible to make a claim for any benefit under the terms of this Settlement Agreement.

25
26
27
28

On _____, 2015, the Court held a duly noticed final approval hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the complaint on the merits and with prejudice in favor of the Defendant and against all persons or entities who are Settlement

1   Class members herein who have not requested exclusion from the Settlement Class; and (3)

2   whether and in what amount to award counsel for the Settlement Class as attorneys' fees and

3   expenses and whether and in what amount to make incentive awards.

4          The Court, having considered all matters submitted to it at the hearing and otherwise, and it

5   appearing that the Class Notice substantially in the form approved by the Court was given in the

6   manner that the Court ordered to persons who purchased the StarKist Products at issue, as ordered

7   by the Court, and having considered and determined that the proposed settlement of the claims of

8   the Settlement Class Members against the Defendant, as well as the release of the Defendant and

9   the Released Persons, and the awards of attorneys' fees and expenses requested and incentive

10  awards ordered, are fair, reasonable and adequate, hereby ORDERS THAT:

11         1.     The Settlement Agreement, including the definitions contained therein, is

12  incorporated by reference into this Settlement Approval Order and Final Judgment.

13         2.     The Court finds that the prerequisites for a settlement class under Federal Rules of

14  Civil Procedure ("Fed. R. Civ. P.") 23(a) and (b)(3) have been satisfied in that: (a) the number of

15  Settlement Class Members is so numerous that joinder of all members thereof is impracticable;

16  (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the

17  Representative Plaintiff are typical of the claims of the Settlement Class he seeks to represent;

18  (d) the Representative Plaintiff has and will fairly and adequately represent the interests of the

19  Settlement Class; (e) the questions of law and fact common to the Settlement Class Members

20  predominate over any questions affecting any individual Settlement Class Member; and (f) a class

21  action is superior to the other available methods for the fair and efficient adjudication of the

22  controversy.

23         3.     Pursuant to Fed. R. Civ. P. 23, this Court hereby finally certifies this action, for

24  purposes of settlement, as a nationwide class action on behalf of: All residents of the United States

25  of America who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist

26  Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water,

27  and 5 oz. Solid White in Oil).  Excluded from this definition are the Released Persons.  Settlement

28  Class Members who exclude themselves from the Settlement, pursuant to the procedures set forth

1   in Section V of the Settlement Agreement, shall no longer thereafter be Settlement Class Members

2   and shall not be bound by this Settlement Agreement and shall not be eligible to make a claim for

3   any benefit under the terms of this Settlement Agreement.

4          4.      The Court appoints Bursor & Fisher, P.A. as counsel for the Settlement Class.  The

5   Court designates named plaintiff Patrick Hendricks as the Class Representative.

6          5.      Notice of the pendency of this action as a class action and of the proposed

7   settlement was given to Settlement Class Members in a manner reasonably calculated to provide

8   the best notice practicable under the circumstances.  The form and method of notifying the

9   Settlement Class of the pendency of the Action as a class action and of the terms and conditions of

10  the proposed Settlement met the requirements of Fed. R. Civ. P. 23, due process, and any other

11  applicable law, and constituted due and sufficient notice to all persons and entities entitled thereto.

12         6.      The Settlement Agreement is approved as fair, reasonable and adequate, and the

13  Settlement Class Members and the Parties are directed to consummate the Settlement Agreement

14  in accordance with its terms and conditions.

15         7.      Pursuant to Fed. R. Civ. P. 23(h), the Court hereby awards Class Counsel attorneys'

16  fees and expenses in the amount of $_____.  The Court also orders payment of an

17  incentive award(s) in the amount(s) of _____ to _____.  These amounts are to

18  be paid in the time and manner described in the Settlement Agreement.

19         8.      The Action is hereby dismissed with prejudice and without costs as against the

20  Defendant and the Released Persons.

21         9.      Representative Plaintiff and all Settlement Class Members (except any such person

22  who has filed a proper and timely request for exclusion) are hereby permanently barred and

23  enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any

24  and all of the Claims against any of the Released Persons.

25         10.     Effective as of the Final Settlement Approval Date, each and all of the Settlement

26  Class Members (except any such person who has filed a proper and timely request for exclusion)

27  shall release and forever discharge, and shall be forever barred from asserting, instituting, or

28  maintaining against any or all of the Released Persons, any and all claims, demands, actions,

1    causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or

2    otherwise, relating in any way to the claims asserted or the factual allegations made in the Action,

3    including without limitation the alleged under-filling of the StarKist Products and/or the purchase

4    of any of the StarKist Products at any time on or after February 19, 2009 and prior to November 1,

5    2014 (collectively, the "Claims").  In addition, upon the Final Settlement Approval Date, the

6    Claims are hereby compromised, settled, released, discharged and dismissed as against the

7    Released Parties on the merits by virtue of the proceedings herein and this Settlement Approval

8    Order and Final Judgment.

9          11.     Neither the Settlement Agreement, nor any of its terms and provisions, nor any of

10   the negotiations or proceedings connected with it, nor any of the documents or statements referred

11   to therein shall be:

12          (a)     offered by any person or received against the Defendant as evidence or

13   construed as or deemed to be evidence of any presumption, concession, or admission by the

14   Defendant of the truth of the facts alleged by the Representative Plaintiff or any Settlement Class

15   Member or the validity of any claim that has been or could have been asserted in the Action or in

16   any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that

17   has been or could have been asserted in the Action or in any litigation, or of any liability,

18   negligence, fault or wrongdoing of the Defendant;

19          (b)     offered by any person or received against the Defendant as evidence of a

20   presumption, concession or admission of any fault, misrepresentation or omission with respect to

21   any statement or written document approved or made by the Defendant or any other wrongdoing

22   by the Defendant;

23          (c)     offered by any person or received against the Defendant or as evidence of a

24   presumption, concession, or admission with respect to any liability, negligence, fault, or

25   wrongdoing, or in any way referred to for any other reason against any of the settling parties, in

26   any civil, criminal, or administrative action or proceeding; provided, however, that nothing

27   contained in this paragraph shall prevent the Settlement Agreement from being used, offered, or

28   received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement

1   or the Settlement Approval Order and Final Judgment , or in which the reasonableness, fairness, or

2   good faith of the parties in participating in the Settlement (or any agreement or order relating

3   thereto) is an issue, or to enforce or effectuate provisions of the Settlement, the Settlement

4   Approval Order and Final Judgment, the releases as to the Released Persons.

5           12.     Without affecting the finality of Settlement Approval Order and Final Judgment in

6   any way, this Court hereby retains continuing jurisdiction over: (a) the disposition of the

7   settlement benefits; (b) the settling parties for purposes of construing, enforcing and administering

8   the Stipulation Agreement; and (c) enforcement of the Stipulation and Order Regarding

9   Undertaking Re: Attorneys' Fees and Costs.

10          13.     Without further order of the Court, the settling parties may agree to reasonably

11  necessary extensions of time to carry out any of the provisions of the Settlement Agreement.

12          14.     In the event that the Final Settlement Approval Date does not occur, this Settlement

13  Approval Order and Final Judgment shall automatically be rendered null and void and shall be

14  vacated and, in such event, all orders entered in connection herewith, except the Stipulation and

15  Order Regarding Undertaking Re: Attorneys' Fees and Costs, shall be null and void.

16          DONE this ___ day of _____, 2015.

17

18

19                                              _____
                                                Hon. Haywood S. Gilliam, Jr.
20

21

22

23

24

25

26

27

28

**Exhibit B**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | Case No. 3:13-cv-0729-HSG<br><br>**STIPULATION AND ORDER REGARDING UNDERTAKING RE: ATTORNEYS' FEES AND COSTS** |

Plaintiff Patrick Hendricks and Defendant StarKist Co. ("the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Class Counsel and their law firm Bursor & Fisher P.A. desire to give an undertaking (the "Undertaking") for repayment of their award of attorney fees and costs, approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, each of the undersigned Class Counsel, on behalf of themselves as individuals and as agents for their law firm, hereby submit themselves and their respective law firms to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, Bursor & Fisher, P.A. and its shareholders, members, and/or partners submit to the jurisdiction of the United States District Court for the Northern District of California for the enforcement of and any and all

1  disputes relating to or arising out of the reimbursement obligation set forth herein and the

2  Settlement Agreement.

3        The obligations of Class Counsel and Bursor & Fisher, P.A. are joint and several.

4        In the event that the final Settlement Approval Order and Final Judgment or any part of it

5  is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement

6  Agreement is voided, rescinded, or otherwise terminated for any other reason, Class Counsel shall,

7  within thirty (30) days repay to StarKist the full amount of the attorneys' fees and costs paid by

8  StarKist to Class Counsel, including any accrued interest.

9        In the event the attorney fees and costs awarded by the Court or any part of them are

10  vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within

11  thirty (30) days repay to StarKist the attorneys' fees and costs paid by StarKist to Class Counsel

12  and/or Representative Plaintiff in the amount vacated or modified, including any accrued interest.

13        This Undertaking and all obligations set forth herein shall expire upon finality of all direct

14  appeals of the final Settlement Approval Order and Final Judgment.

15        In the event Class Counsel fails to repay to StarKist any of attorneys' fees and costs that

16  are owed to it pursuant to this Undertaking, the Court shall, upon application of StarKist, and

17  notice to Class Counsel, summarily issue orders, including but not limited to judgments and

18  attachment orders against each of Class Counsel, and may make appropriate findings for sanctions

19  for contempt of court.

20        The undersigned stipulate, warrant, and represent that they have both actual and apparent

21  authority to enter into this stipulation, agreement, and undertaking on behalf of Bursor & Fisher,

22  P.A.

23        This Undertaking may be executed in one or more counterparts, each of which shall be

24  deemed an original but all of which together shall constitute one and the same instrument.

25  Signatures by facsimile shall be as effective as original signatures.

26        The undersigned declare under penalty of perjury under the laws of the United States that

27  they have read and understand the foregoing and that it is true and correct.

28        IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

1    DATED: May 14, 2015              BURSOR & FISHER, P.A.

2

3                                     _____
                                      By: Scott A. Bursor, individually and
4                                     on behalf of Bursor & Fisher, P.A.
                                      Attorneys for Plaintiff Patrick Hendricks
5

6    DATED: May ___, 2015             BURSOR & FISHER, P.A.

7

8                                     _____
                                      By: L. Timothy Fisher,
9                                     on behalf of Bursor & Fisher, P.A.
                                      Attorneys for Plaintiff Patrick Hendricks
10
     DATED: May ___, 2015             HOGAN LOVELLS US LLP
11

12                                    _____
13                                    By: Robert B. Hawk
                                      Attorneys for Defendant StarKist Co.
14

15                            **[PROPOSED] ORDER**

16        The Court has considered the above Stipulation and finds that it is in the interests of all

17   Parties and in service of judicial economy and efficiency.  Therefore,

18        IT IS SO ORDERED this ___ day of _____, 2015.

19

20

21                                         _____
22                                         HON. HAYWOOD S. GILLIAM

23

24

25

26

27

28

                                      3                          UNDERTAKING
                                                                 CASE NO. 3:13-CV-0729-HSG

DATED: May ___, 2015                BURSOR & FISHER, P.A.


                                    _____
                                    By: Scott A. Bursor, individually and
                                    on behalf of Bursor & Fisher, P.A.
                                    Attorneys for Plaintiff Patrick Hendricks

DATED: May 14, 2015                 BURSOR & FISHER, P.A.


                                    _____
                                    By: L. Timothy Fisher,
                                    on behalf of Bursor & Fisher, P.A.
                                    Attorneys for Plaintiff Patrick Hendricks

DATED: May ___, 2015                HOGAN LOVELLS US LLP


                                    _____
                                    By: Robert B. Hawk
                                    Attorneys for Defendant StarKist Co.


## [PROPOSED] ORDER

The Court has considered the above Stipulation and finds that it is in the interests of all

Parties and in service of judicial economy and efficiency.  Therefore,

IT IS SO ORDERED this ___ day of _____, 2015.



                                    _____
                                    HON. HAYWOOD S. GILLIAM

1   DATED: May ___, 2015          BURSOR & FISHER, P.A.

2

3                                 _____
                                  By: Scott A. Bursor, individually and
4                                 on behalf of Bursor & Fisher, P.A.
                                  Attorneys for Plaintiff Patrick Hendricks
5

6   DATED: May ___, 2015          BURSOR & FISHER, P.A.

7

8                                 _____
                                  By: L. Timothy Fisher,
9                                 on behalf of Bursor & Fisher, P.A.
                                  Attorneys for Plaintiff Patrick Hendricks
10

    DATED: May 13, 2015           HOGAN LOVELLS US LLP
11

12                                _____
                                  By: Robert B. Hawk
13                                Attorneys for Defendant StarKist Co.

14

15                                    **[PROPOSED] ORDER**

16          The Court has considered the above Stipulation and finds that it is in the interests of all

17   Parties and in service of judicial economy and efficiency.  Therefore,

18          IT IS SO ORDERED this ___ day of _____, 2015.

19

20

21                                _____
                                      HON. HAYWOOD S. GILLIAM
22

23

24

25

26

27

28

**EXHIBIT 2**

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
          ndeckant@bursor.com

*Attorneys for Plaintiff*
*And the Interested Parties*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>       v.<br><br>STARKIST CO.,<br><br>                              Defendant. | Case No. 13-CV-00729-HSG<br><br>**PROPOSED PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**<br><br>Date: May 28, 2015<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

This Plan of Allocation shall apply to the Settlement Fund established by ¶ 2.1 of the Stipulation of Settlement (hereafter, the "Settlement Agreement").  All terms capitalized herein have the meanings defined in the Settlement Agreement.

1.      **Costs Of Notice And Administration.**  The costs of notice and administration shall be paid from the Cash Settlement Fund as specified in ¶ 2.3(a) of the Settlement Agreement.

2.      **Attorney's Fees, Costs And Expenses.**  Attorney's fees, costs and expenses, as approved by the Court, shall be paid from the Cash Settlement Fund as specified in ¶¶ 2.3(b), 3.1 of the Settlement Agreement.

3.      **Incentive Awards.**  Incentive awards for the Class Representative and Interested Parties, as approved by the Court, shall be paid from the Cash Settlement Fund as specified in ¶¶ 2.3(c), 3.2 of the Settlement Agreement.

4.      **Distributions To Settlement Class Members.**  The balance of the Cash Settlement Fund remaining after the payments set forth in ¶¶ 1-3, above, and the Voucher Settlement Fund, shall be distributed within 30 days after the Final Settlement Approval Date, to Settlement Class Members in the amounts set forth below.

5.      **Claim Amounts.**  Each Settlement Class Member may submit a single Proof of Claim either for $25 cash (a "Cash Claim") or $50 in product vouchers (a "Voucher Claim"), at his or her election.

6.      **Definitions of "Claimant" and "Authorized Claimant."**  "Claimant" shall be a Settlement Class Member who has submitted a Proof of Claim to the Settlement Administrator.  An "Authorized Claimant" shall be a Claimant who has submitted a Proof of Claim that the Settlement Administrator, in its sole discretion, determines to be timely, complete and valid.

7.      **Allocation Of The Cash Settlement Fund.**  Cash Claims shall be paid in the amount of $25 apiece, provided however, that (a) if the aggregate amount of Cash Claims exceeds the amount of the funds remaining in the Cash Settlement Fund after the payments set forth in ¶¶ 1-3, above, the amount of each Cash Claim shall be reduced *pro rata*, by dividing the amount of the funds remaining in the Cash Settlement Fund by the number of Authorized Claimants, as calculated by the Settlement Administrator, and (b) if the aggregate amount of the funds remaining in the Cash

1   Settlement Fund after the payments set forth in ¶¶ 1-3, above, exceeds the aggregate amount of Cash

2   Claims, Class Counsel may seek the Court's approval to increase the amount of each Cash Claim

3   *pro rata*, by dividing the amount of the funds remaining in the Cash Settlement Fund by the number

4   of Authorized Claimants, as calculated by the Settlement Administrator.

5         8.      **Allocation Of The Voucher Settlement Fund.**  Voucher Claims shall be paid in the

6   amount of $50 apiece, provided however, that (a) if the aggregate amount of Voucher Claims

7   exceeds the amount of the Voucher Settlement Fund, the amount of the Voucher Claim shall be

8   reduced *pro rata*, by dividing the amount of the funds remaining in the Voucher Settlement Fund by

9   the number of Authorized Claimants, as calculated by the Settlement Administrator, and (b) if the

10  aggregate amount of the funds remaining in the Voucher Settlement Fund exceeds the aggregate

11  amount of Voucher Claims, Class Counsel may seek the Court's approval to increase the amount of

12  each Voucher Claim *pro rata*, by dividing the amount of the funds remaining in the Voucher

13  Settlement Fund by the number of Authorized Claimants, as calculated by the Settlement

14  Administrator.

15        9.      **Definition Of Residual Funds.**  "Residual Funds" shall be (a) any funds remaining

16  in the Cash Settlement Fund 180 days after the payment of Cash Claims to Authorized Claimants,

17  whether as a result of uncashed checks or an insufficient number Cash Claims to exhaust the Cash

18  Settlement Fund, and (b) any funds remaining in the Voucher Settlement Fund as a result of

19  insufficient Voucher Claims to exhaust the Voucher Settlement Fund.

20        10.     **Allocation Of Residual Funds.**  Within 225 days after the payment of Authorized

21  Claimants (180 days to wait for uncashed checks to expire, plus 45 days), Class Counsel shall make

22  an application to the Court seeking to allocate the Residual Funds in a manner consistent with Cal.

23  Code Civ. Pro. § 384(a) ("It is the intent of the Legislature in enacting this section to ensure that the

24  unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed

25  either to further the purposes of the underlying causes of action, or to promote justice for all

26  Californians."); *id.* § 384(b) ("The court shall ensure that the distribution of any unpaid residual

27  derived from multistate or national cases brought under California law shall provide substantial or

28  commensurate benefit to California consumers."); *Six Mexican Workers v. Arizona Citrus Growers*,

1   904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping

2   equitable decrees for distributing unclaimed class action funds. …  After the claims period has

3   expired and the amount of the unclaimed fund is known, the district court will be in a better position

4   to determine what remedy will best effectuate the goals of [the underlying statute] and the interests

5   of the silent class members."); and *State v. Levi Strauss & Co.,* 41 Cal. 3d 460, 224 Cal. Rptr. 605,

6   612, 715 P.2d 564, 571 (1986) (laying out four considerations for courts to employ in determining

7   how to distribute residual funds:  "(1) the amount of compensation provided to class members,

8   including nonclaiming (or 'silent') members; (2) the proportion of class members sharing in the

9   recovery; (3) the extent to which benefits will 'spill over' to nonclass members and the degree to

10  which the spillover benefits will effectuate the purposes of the underlying substantive law; and (4)

11  the costs of administration").  Provided, however, that no portion of the Residual Funds shall revert

12  to the Defendant.  *See Six Mexican Workers*, 904 F.2d at 1307 ("[W]e find that reversion of the

13  funds to the defendants is not an available option.").

14  Dated:  May 14, 2015                    Respectfully submitted,

15                                          **BURSOR & FISHER, P.A.**

16
                                           By:  /s/ *Scott A. Bursor*
17                                                Scott A. Bursor

18                                          Scott A. Bursor (State Bar No. 276006)
                                            Neal J. Deckant (admitted *pro hac vice*)
19                                          888 Seventh Avenue
                                            New York, NY  10019
20                                          Telephone: (212) 989-9113
                                            Facsimile:  (212) 989-9163
21                                          E-Mail: scott@bursor.com
                                                    ndeckant@bursor.com
22
                                           **BURSOR & FISHER, P.A.**
23                                          L. Timothy Fisher (State Bar No. 191626)
                                            Julia A. Luster (State Bar No. 295031)
24                                          1990 North California Boulevard, Suite 940
                                            Walnut Creek, CA 94596
25                                          Telephone:  (925) 300-4455
                                            Facsimile:  (925) 407-2700
26                                          E-Mail: ltfisher@bursor.com
                                                    jluster@bursor.com
27
                                           *Attorneys for Plaintiff*
28                                          *And the Interested Parties*

**EXHIBIT 3**

# BURSOR & FISHER

P.A.

www.bursor.com

888 SEVENTH AVENUE                                    1990 NORTH CALIFORNIA BLVD.
NEW YORK, NY 10019                                    WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in New York and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country, primarily in the fields of telecommunications, pharmaceuticals, and dietary supplements.

The lawyers at our firm have an active civil trial practice, having won multi-million dollar verdicts or recoveries in five of five civil jury trials since 2008.  Our most recent trial victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Verizon Wireless, AT&T Wireless, Cingular Wireless, Sprint, T-Mobile, General Electric, Haier America, and Michaels Stores as well as purchasers of Avacor™, Xenadrine™, and Sensa™ products.  In 2014, our lawyers certified two nationwide consumer classes of consumers pursuant to contested class certification motions (*see Ebin* and *Forcellati*, *infra*).  Since December 2010, Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

 i. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

 ii. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

 iii. *In re Haier Freezer Consumer Litigation* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

 iv. *Loreto v. Coast Cutlery Co.* (D.N.J. Sep. 8, 2011) to represent a certified nationwide class of purchasers of knives or tools made by Coast Cutlery,

 v. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

BURSOR&FISHER
P.A.

vi.  *Avram v. Samsung Electronics America, Inc., et al.* (D.N.J. Jan. 3, 2012), to represent a proposed nationwide class of purchasers of mislabeled refrigerators from Samsung Electronics America, Inc. and Lowe's Companies, Inc.,

vii.  *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012), to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

viii.  *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012), to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

ix.  *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012), to represent a certified nationwide class of purchasers of Sensa weight loss products,

x.  *Dei Rossi v. Whirlpool Corp. et al.* (E.D. Cal. Apr. 19, 2012), to represent a proposed nationwide class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

xi.  *In re Scotts EZ Seed Litig.* (S.D.N.Y. Sept. 19, 2012), to represent a proposed nationwide class of purchasers of Scotts Turf Builder EZ Seed,

xii.  *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers of Sinus Buster products,

xiii.  *Scott v. JPMorgan Chase & Co., et al.* (S.D.N.Y. May 30, 2013) to represent a proposed nationwide class of Chase customers who were allegedly unilaterally enrolled into Chase's Overdraft Protection service and charged unauthorized fees,

xiv.  *Podobedov v. Living Essentials, LLC*, (C.D. Cal. Nov. 8, 2013) to represent a proposed nationwide class of purchasers of 5-hour Energy products,

xv.  *Ebin v. Kangadis Food Inc.*, (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

xvi.  *Forcellati v. Hyland's, Inc.*, (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies, and

xvii.  *Melgar v. Zicam LLC, et al.* (E.D. Cal. Oct. 29, 2014) to represent a proposed nationwide class of purchasers of homeopathic cold remedy.

BURSOR&FISHER
P.A.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in five of five civil jury trials since 2008.  Mr. Bursor's most recent victory came in August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which he served as lead trial counsel and won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's perfect record of five wins in five class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate with Cravath, Swaine & Moore (1996-2000) and Chadbourne & Parke LLP (2001), where he represented large telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Third Circuit, United States Court of Appeals for the Fourth Circuit, United States Court of Appeals for the Sixth Circuit, United States Court of Appeals for the Ninth Circuit, United States Court of Appeals for the Eleventh Circuit, United States District Courts for the Southern and Eastern Districts of New York, United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States District Courts for the Southern and Middle Districts of Florida.

### Representative Cases

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members, and ensured that the class would recover in excess of $275 million.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, provides for a $20 million cash payment to provide

refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and includes an injunction that will reduce late fee charges by $18.6 million over 28 months.

## L. TIMOTHY FISHER

Mr. Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals. Prior to founding Bursor & Fisher, P.A. in 2011, Mr. Fisher was an associate with Bramson, Plutzik, Mahler & Birkhaeuser, LLP in Walnut Creek, California for 13 years. During his career, he has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried four class action jury trials, all of which produced successful results. In the initial phase of *Thomas v. Global Vision Products*, the jury awarded the plaintiff class more than $36 million plus punitive damages, while the Court awarded a $40 million recovery on separate legal claims. In a subsequent phase of the trial against individual defendants, Mr. Fisher and Mr. Bursor obtained a jury award of $50,024,611 – the largest class action award in California in 2009 and the second-largest jury award of any kind.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern and Eastern Districts of California. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. Recently, Mr. Fisher contributed jury instructions, a verdict form, and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In 2014, Mr. Fisher was appointed to a four-year term as a member of the Standing Committee on Professional Conduct for the United States District Court for the Northern District of California.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first year moot court competition. In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### *Representative Cases*

- *Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class

BURSOR&FISHER
P.A.

in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

- *In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

- *In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Cases, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

- *Guyette v. Viacom, Inc.* (Alameda County Superior Court) - Mr. Fisher was co-counsel for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.  A settlement was negotiated shortly before trial under which defendants paid the class $13 million in cash.

- *In re Haier Freezer Consumer Litigation* (Northern District of California) - Mr. Fisher filed the case in June 2011 and alleged that Haier had misrepresented the energy consumption of its HNCM070E freezer on the ENERGYGUIDE labels attached to the freezers.  After two years of litigation, District Judge Edward J. Davila approved a nationwide settlement valued at $4 million, which provides for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

### ***Selected Published Decisions***

- *In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010)

- *In re Cellphone Termination Fee Cases*, 180 Cal.App.4th 1110 (2009)

- *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007)

## JOSEPH I. MARCHESE

Mr. Marchese is a Partner with Bursor & Fisher, P.A.  Mr. Marchese focuses his practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Mr. Marchese was an associate with DLA Piper and Shearman & Sterling where he litigated complex

commercial matters on behalf of investment banks, pharmaceutical companies, insurance carriers, food manufacturers, and tobacco companies.

Mr. Marchese is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York, as well as the United States Court of Appeals for the Second Circuit.

Mr. Marchese graduated from Boston University School of Law in 2002 where he was a Member of The Public Interest Law Journal.  In 1998, Mr. Marchese graduated with honors from Bucknell University where he earned a B.S.B.A.

### *Representative Cases*

• *Rossi v. The Procter & Gamble Co.* (District of New Jersey) – Mr. Marchese filed the first nationwide consumer class action lawsuit alleging Crest Sensitivity Treatment & Protection toothpaste ("CSTP") was not effective as advertised, and was essentially identical to an existing brand called Crest Pro-Health toothpaste, with only three differentiating features: (1) claims of rapid relief for tooth sensitivity on the product packaging; (2) a different coloring additive; and (3) a 75% price premium over Crest Pro-Health.  The plaintiff defeated defendant's motion to dismiss before negotiating a settlement with P&G.  District Judge Jose L. Linares granted final approval of the nationwide class settlement which provides class members with a monetary refund of at least $4.00 per tube of CSTP.

• *In Re Michaels Stores Pin Pad Litigation* (Northern District of Illinois) – Mr. Marchese filed the first nationwide consumer class action against Michaels Stores concerning a data breach that resulted in the unauthorized release of customers' financial data.  He actively litigated claims that Michaels failed to secure customer personal financial data appropriately, and failed to provide adequate notice to its customers whose information and funds were stolen as a result of the breach at 86 Michaels stores across the country.  After two years of litigation, District Judge Thomas M. Durkin approved a nationwide settlement that requires Michaels to create a monetary fund from which class members could receive full reimbursement for monetary losses arising from the data breach.  Also, every settlement class member was entitled to credit monitoring services for early detection of identity theft and credit fraud.  As part of the settlement Michaels also verified that it had implemented strict new security measures to protect its customers from similar data breaches in the future.

• *Cox et al. v. Clarus Marketing Group, LLC et al.* (Southern District of California) – Mr. Marchese actively litigated claims for a nationwide class of online shoppers who made purchases on Provide-Commerce websites and who were deceptively enrolled in an online service, Freeshipping.com, for which they were charged unauthorized membership fees.  The plaintiffs alleged that they were secretly enrolled in a "Freeshipping" rewards program using the aggressive Internet marketing practice known as "data pass," where Provide-Commerce engaged in the unauthorized sharing and charging of customers' billing information with a third-party vendor.  After more than two years of litigation, District Judge Marilyn L. Huff approved a nationwide settlement valued at over $2.65 million, which included monetary reimbursement to settlement class members for their unauthorized membership charges.

**BURSOR&FISHER**
P.A.

## *Selected Published Decisions*

- *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011) (denying motion to dismiss in data breach consumer class action)

- *In re Scotts EZ Seed Litig.*, No. 12 CV 4727, 2013 U.S. Dist. LEXIS 73808 (S.D.N.Y May 22, 2013), 2013 WL 2303727, UCC Rep. Serv. 2d 935 (S.D.N.Y. May 22, 2013) (denying motion to dismiss in false advertising consumer class action against grass seed manufacturer)

- *Rossi v. The Procter & Gamble Co.*, No. 11-cv-7238, 2013 WL 5523098 (D.N.J. Oct. 3, 2013) (denying motion to dismiss in false advertising consumer class action against maker of Crest toothpaste)

- *Ebin v. Kangadis Food Inc.*, --- F.R.D.---, 2014 WL 737960 (S.D.N.Y. Feb. 25, 2014) (certifying nationwide class of purchasers of purported "100% Pure Olive Oil" in false advertising consumer class action against edible oil distributor)

## NEAL J. DECKANT

Neal J. Deckant is an Associate with Bursor & Fisher, P.A. Mr. Deckant focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Mr. Deckant counseled low-income homeowners facing foreclosure in East Boston.

Mr. Deckant is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York and the Eastern District of New York.

Mr. Deckant received his Juris Doctor from Boston University School of Law in 2011, graduating *cum laude* with two Dean's Awards. During law school, Mr. Deckant served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms. In 2007, Mr. Deckant graduated with Honors from Brown University with a B.A. in East Asian Studies and Philosophy.

## YITZCHAK KOPEL

Yitzchak Kopel is an Associate with Bursor & Fisher, P.A. Mr. Kopel focuses his practice on complex business litigation and consumer class actions.

Mr. Kopel is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey.

Mr. Kopel received his Juris Doctor from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Mr. Kopel served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Mr. Kopel graduated *cum laude* from Queens College with a B.A. in Accounting.

## ANNICK M. PERSINGER

Annick M. Persinger is an Associate with Bursor & Fisher, P.A. Ms. Persinger focuses her practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Ms. Persinger worked as a legal research attorney for Judge John E. Munter in Complex Litigation at the San Francisco Superior Court.

Ms. Persinger is admitted to the State Bar of California and the bars of the United States District Courts for the Northern District of California, Central District of California, Southern District of California, and Eastern District of California.

Ms. Persinger received her Juris Doctor from University of California, Hastings College of the Law in 2010, graduating *magna cum laude*. During law school, Ms. Persinger served as a member of Hastings Women's Law Journal, and authored two published articles. In 2008, Ms. Persinger received an award for Best Oral Argument in the first year moot court competition. In 2007, Ms. Persinger graduated *cum laude* from University of California, San Diego with a B.A. in Sociology, and minors in Law & Society and Psychology.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is an Associate with Bursor & Fisher, P.A. Mr. Klorczyk focuses his practice on complex business litigation and consumer class actions.

Mr. Klorczyk is admitted to the State Bars of New York and New Jersey and is a member of the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, and District of New Jersey.

Mr. Klorczyk received his Juris Doctor from Brooklyn Law School in 2013, graduating *magna cum laude* with two CALI Awards for the highest grade in his classes on criminal law and conflict of laws. During law school, Mr. Klorczyk served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut. In 2010, Mr. Klorczyk graduated from the University of Connecticut with a B.S. in Finance.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is an Associate with Bursor & Fisher, P.A. Mr. Krivoshey focuses his practice on complex business litigation and consumer class actions.

Mr. Krivoshey is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern and Eastern Districts of California.

Mr. Krivoshey received his Juris Doctor from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar. During law school, Mr. Krivoshey worked as

a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C.  Mr. Krivoshey also interned at the United States Department of Justice and the American Civil Liberties Union.  In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

## JULIA A. LUSTER

Julia A. Luster is an Associate with Bursor & Fisher, P.A.

Ms. Luster is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California.  She is also admitted to the United States Court of Appeals for the Ninth Circuit.

In 2013, Ms. Luster received her Juris Doctor from UC Davis School of Law.  While attending UC Davis, Ms. Luster externed with the Honorable Judge Arthur L. Alarcón of the United States Court of Appeals for the Ninth Circuit.  She was a Senior Articles Editor for the UC Davis Law Review and a top 10 oral advocate in appellate advocacy.  She also participated in the Moot Court interschool competition team.  Ms. Luster worked at both the UC Davis Prison Law Clinic and UC Davis Civil Rights Clinic.  While at the Civil Rights Clinic, she co-authored a Ninth Circuit brief for an appeal she subsequently argued and won.  Prior to law school, Ms. Luster received her B.A. in English from UCLA and her M.A. in English and Comparative Literature from Columbia University.

**EXHIBIT 4**

| From: | Mast, Glenn [/O=STARKIST/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=GMAST] |
|---|---|
| Sent: | Monday, August 06, 2012 4:44:30 PM |
| To: | Ali, Laura; Pavlik, Kayla |
| CC: | Pearson, Harvey A; Roberts, Kelly; Munoz, Ingrid |
| Subject: | FW: Press Machine - West Coast machine |
| Attachments: | RE: Compliance meeting, follow-up notes.msg; image001.png |

fyi

**From:** Pearson, Harvey A
**Sent:** Monday, August 06, 2012 12:42 PM
**To:** Mast, Glenn
**Cc:** Costa, Ana_Maria
**Subject:** RE: Press Machine - West Coast machine

Attached is the updated version I issued last week with Aaron's revised sampling plan for the Samoa plant.

The plant QA manager issues the press results reports.

New QA Manager in Guayaquil is Ingrid Munoz.


Harvey A. Pearson
Sr. Quality Assurance Manager
StarKist Co.
12450 Philadelphia St.
Mira Loma, CA  91752
Cell: 412-552-9534
E-mail: harvey.pearson@starkist.com



**From:** Mast, Glenn
**Sent:** Monday, August 06, 2012 8:59 AM
**To:** Costa, Ana_Maria; Pearson, Harvey A
**Subject:** FW: Press Machine - West Coast machine

FYI
Please confirm how best to address this matter.



DEPOSITION
EXHIBIT
96

**From:** Ali, Laura
**Sent:** Monday, August 06, 2012 9:08 AM
**To:** Mast, Glenn
**Cc:** Salib, Nabil; Roberts, Kelly
**Subject:** RE: Press Machine - West Coast machine

Confidential Subject to Amended Stipulated Protective Order

See attached – looks like it only goes to Plant Management and the way that I read it is that it is not mandatory.

---

**From:** Mast, Glenn
**Sent:** Monday, August 06, 2012 8:19 AM
**To:** Ali, Laura
**Cc:** Salib, Nabil; Roberts, Kelly
**Subject:** RE: Press Machine - West Coast machine

Laura,
Good point, hope so. Who is the right person responsible/accountable to make sure it is correct?

How does this type of spec fit in with the annual audits and BRC reviews? I'm trying to understand how something like this can be overlooked when all you hear about is annual audits and BRC qualification.
Perhaps something like this and the equipment not working has nothing to do with audits and BRC qualifications.

Glenn

---

**From:** Ali, Laura
**Sent:** Monday, August 06, 2012 8:15 AM
**To:** Mast, Glenn
**Cc:** Salib, Nabil; Roberts, Kelly
**Subject:** Re: Press Machine - West Coast machine

Better yet.. Lets check the policy and see what it says and make sure we are following it

*Connected by DROID on Verizon Wireless*

-----Original message-----
**From:** "Mast, Glenn" <Glenn.Mast@StarKist.com>
**To:** "Ali, Laura" <Laura.Ali@StarKist.com>
**Cc:** "Salib, Nabil" <Nabil.Salib@StarKist.com>, "Roberts, Kelly" <Kelly.Roberts@StarKist.com>
**Sent:** Mon, Aug 6, 2012 11:46:46 GMT+00:00
**Subject:** FW: Press Machine - West Coast machine

Laura, Kelly,
Who is responsible for providing the compliance data from Ecuador? Does Edwin or Ana Maria send you the compliance data?
Sorry to ask, I'm a little confused per below. Harvey is commenting to Edwin on the Ecuador machine and Ana Maria and the new QA Manager (name?) is not copied.

Glenn

---

**From:** Pearson, Harvey A
**Sent:** Friday, August 03, 2012 12:25 PM
**To:** Morales, Edwin; Mast, Glenn
**Cc:** Pesantes, Fabrizzio
**Subject:** RE: Press Machine - West Coast machine

Edwin:

Thanks for updating me on what happened with the West Coast machine. I did not know you still had operational problems after you installed the new valves. I will take a look at the WC machine when we are there for the audit later in the year.

Harvey

**From:** Morales, Edwin
**Sent:** Thursday, August 02, 2012 2:45 PM
**To:** Pearson, Harvey A; Mast, Glenn
**Cc:** Pesantes, Fabrizzio
**Subject:** RE: Press Machine - West Coast machine

Yes, we sent it for repairs but the machine never performed well.....there was no control about the pressure when it was applied....you know that the pressure must be increased gradually until you reach the target pressure , this in 1 minute and then holded for another one...etc,etc,etc,..... so we ended up quiting. Then tried with the Luthi, modifying the cups to fit the Luthi machine.

**From:** Pearson, Harvey A
**Sent:** jueves, 02 de agosto de 2012 14:48
**To:** Morales, Edwin; Mast, Glenn
**Cc:** Pesantes, Fabrizzio
**Subject:** RE: Press Machine - West Coast machine

Edwin the photos are of the Luthi press machine.

I thought you had repaired the West Coast machine after I help you order the two control valves from West Coast you needed to repair the press.

**From:** Morales, Edwin
**Sent:** Thursday, August 02, 2012 12:39 PM
**To:** Mast, Glenn; Pearson, Harvey A
**Cc:** Pesantes, Fabrizzio
**Subject:** RE: Press Machine - West Coast machine

> Jajajaja, good one, ok.
>
> Fabrizzio, label the press cake machine with an sticker that says "Manufacture by The West Coast"

**From:** Mast, Glenn
**Sent:** jueves, 02 de agosto de 2012 14:36
**To:** Pearson, Harvey A
**Cc:** Morales, Edwin; Pesantes, Fabrizzio
**Subject:** Press Machine - West Coast machine

Edwin – the guru has spoken.
Put a sticker on it...

**From:** Pearson, Harvey A
**Sent:** Thursday, August 0

Confidential Subject to Amended Stipulated Protective Order

**EXHIBIT 5**

United States District Court for the Northern District of California

# If You Purchased StarKist Tuna, You May Benefit From A Proposed Class Action Settlement

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A Proposed Settlement has been reached in a class action lawsuit.  The lawsuit claims that StarKist Co. ("StarKist") under-filled its 5 oz. tuna cans in violation of federal law.  StarKist denies these claims.  The Court did not rule in favor of Plaintiff or StarKist.  Instead, the parties agreed to a Proposed Settlement to avoid the expense and risks of continuing the lawsuit.

- You are a class member if you are a resident of the United States of America who purchased (a) one or more 5 oz. can of Chunk Light Tuna in Water, (b) one or more 5 oz. can of Chunk Light Tuna in Oil, (c) one or more 5 oz. can of Solid White Tuna in Water, or (d) one or more 5 oz. can of Solid White Tuna in Oil (collectively, the "StarKist Products") from February 19, 2009 through October 31, 2014.

- If you are eligible, you may submit a claim for either (a) a cash payment of $25, or (b) $50 in product vouchers redeemable for StarKist tuna products (the "Settlement Benefits").  You may choose to claim the cash payment or the product vouchers, whichever you prefer.  These claim amounts may be subject to pro rata dilution if the total amount of claims exceeds the available settlement funds.

**Please read this Notice carefully and in its entirety.
Your rights may be affected by the Settlement of this Lawsuit,
and you have a choice to make now about how to act:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **WHAT IS THIS?** | A Proposed Settlement has been reached in a class action lawsuit.  The lawsuit alleges that StarKist under-filled the tuna in its 5 oz. cans in violation of federal law. |
| **SUBMIT A CLAIM POSTMARKED BY [DATE]** | **This is the only way to receive Settlement Benefits.**  By submitting a claim, you will give up any rights to sue StarKist separately about the same legal claims in this lawsuit. |
| **EXCLUDE YOURSELF FROM THE CLASS BY [DATE]** | If you opt out of the settlement, you will not be eligible to receive the Settlement Benefits, but you will keep any rights to sue StarKist separately about the same legal claims in this lawsuit. |

| **OBJECT OR COMMENT BY [DATE]** | You may write to the Court about why you do, or do not, like the Settlement.  You must remain in the class to comment in support of or in opposition to the settlement. |
|---|---|
| **APPEAR IN THE LAWSUIT OR ATTEND A HEARING ON [DATE]** | You may ask to speak in Court about the fairness of the settlement.  You may enter your appearance in Court through an attorney if you so desire. |
| **DO NOTHING** | If you do nothing, you will receive no Settlement Benefits.  You also give up your right to sue StarKist on your own regarding any claims that are part of the settlement. |

- Your options – **and the deadlines to exercise them** – are further explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. The Settlement Benefits will be made available if the Court approves the settlement and after any appeals are resolved.

## BASIC INFORMATION

### 1.      Why did I get this notice?

If you purchased one or more of the StarKist Products between February 19, 2009 and October 31, 2014, you have a right to know about a proposed settlement of a class action lawsuit and your options.  If you have received this Notice in the mail or by e-mail, you have been identified from available records as a purchaser of the StarKist Products.  You also may have received this Notice because you requested more information after reading the Publication Notice.

The Court ordered that you be given this Notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement.  If the Court approves it, and after objections and appeals are resolved, an administrator appointed by the Court will oversee the Settlement Benefits that the settlement allows.  You will be informed of the progress of the settlement.

This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.  The Court in charge of the case is the United States District Court for the Northern District of California, and the case is known as *Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG.  The person who sued is called the Plaintiff, and the company he sued, StarKist, is called the Defendant.

---

**Questions?  Visit http://www.tunalawsuit.com
or contact Class Counsel at info@bursor.com**

## 2.      What is this lawsuit about?

This lawsuit claimed that StarKist shorted the amount of tuna in its 5 oz. cans, under-filling them in violation of state and federal law.

StarKist denies that it did anything wrong, and the Court has not made any ruling on the factual allegations in the lawsuit.

## 3.      What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case, Plaintiff Patrick Hendricks) sue on behalf of other people who have similar claims.   The people together are a "Class" or "Class Members."  The named plaintiffs who sued – and all the Class Members like them – are called the Plaintiffs.  The company they sued (in this case, StarKist) is called the Defendant.  One court resolves the issues for everyone in the Class – except for those people who choose to exclude themselves from the Class.

## 4.      Am I part of this Class?

If you fit into the following description, you are a Class Member:

All residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).

You are a class member if you purchased one or more of these products from February 19, 2009 through October 31, 2014:

5 oz. StarKist Chunk Light Tuna in Water



5 oz. StarKist Chunk Light Tuna in Oil



5 oz. StarKist Solid White Tuna in Water



5 oz. StarKist Solid White Tuna in Oil



## THE CLAIMS IN THE LAWSUIT

| 5. | What does the lawsuit complain about? |
|---|---|

StarKist manufactures and sells tuna products throughout the United States, including the StarKist Products in this case (*i.e.* 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).  Plaintiff alleges that StarKist shorted the amount of tuna in its 5 oz. cans, under-filling them in violation of state and federal law.  You can read Plaintiffs' Complaint <link> at http://www.tunalawsuit.com.

| 6. | How does StarKist answer? |
|---|---|

StarKist denies any wrongdoing and denies the Plaintiff's allegations.  You can read StarKist's Answer to the Complaint <link> at http://www.tunalawsuit.com.

| 7. | Has the Court decided who is right? |
|---|---|

The Court hasn't decided whether the Defendant or the Plaintiff are correct.  Instead, the parties agreed to a Proposed Settlement to avoid the expense and risks of continuing the lawsuit.

## YOUR LEGAL RIGHTS AND OPTIONS

You have to decide now whether to submit a claim, do nothing at all, or ask to be excluded from the Proposed Settlement.  You may also choose to object to the Proposed Settlement.

### 8.      What does the Proposed Settlement provide if I submit a claim?

The settlement provides that StarKist will pay $8 million in cash and $4 million in vouchers redeemable for StarKist tuna products.  You may submit a claim for either (a) a cash payment of $25, or (b) $50 in product vouchers redeemable for StarKist tuna products.  You may choose to claim the cash payment or the product vouchers, whichever you prefer.  These claim amounts may be subject to pro rata dilution if the total amount of claims exceeds the available settlement funds.

You do not need a receipt or other proof of purchase to submit a claim.  You will, however, be required to submit a claim form confirming under penalty of perjury (i) the specific StarKist product(s) you purchased, and (ii) that the purchase or purchases were made within the Settlement Class Period.

### 9.      How do I submit a claim form?

Class Members who wish to receive Settlement Benefits must submit claims.

To submit a claim, you must complete a Claim Form.  You can get a Claim Form on the Internet at http://www.tunalawsuit.com.  Read the instructions carefully, fill out the form, and submit it online on or before [DATE].  Alternatively, you may also submit you Claim Form by mailing it to the following address:  [ADDRESS].  It must be postmarked no later than [DATE].

If you received this Notice in the mail or by email, a Claim Form is enclosed or attached.

### 10.     What if I didn't get a Claim Form in the mail or by email?

If you didn't receive a Claim Form in the mail or by e-mail, you can obtain the Claim Form in one of three ways:

(1)     **By Phone:**  Call toll-free, 1-800-[_____]

(2)     **By Mail:**  Write to [____] Claims Administrator, P.O. Box, [_____].  Be sure to include your name and mailing address.

(3)     **Online:**  You can download the Claim Form at http://www.tunalawsuit.com.  You can also submit a Claim Form online through the same website.

### 11.     What happens if I do nothing at all?

By doing nothing, you are staying in the Class but will not receive any Settlement Benefits.

Keep in mind that if you do nothing now, you will not be able to separately sue, or continue to sue, StarKist – as part of any other lawsuit – for the same legal claims that are the subject of this lawsuit.  You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.  You must exclude yourself to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against StarKist about the subject matter of this lawsuit ever again.

### 12.     Why would I ask to be excluded?

If you exclude yourself from the Class – which is sometimes called "opting-out" of the Class –

you won't get any Settlement Benefits from the Proposed Settlement. However, you may then be able to separately sue or continue to sue StarKist for the legal claims that are the subject of this lawsuit. If you exclude yourself, you will not be legally bound by the Court's judgments in this Proposed Settlement.

If you bring your own lawsuit against StarKist after you exclude yourself, you will have to hire and pay your own lawyer for that lawsuit, and you will have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against StarKist, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

### 13.    How do I exclude myself from the Class?

To exclude yourself from the Class, you must send a written request for exclusion *that is received no later than [Month 00, 0000]*, to:

> _____ Claims Administrator
> c/o [ADDRESS]

Your request for exclusion *must* contain: (1) the name of this lawsuit, "*Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG"; (2) your full name and current address; (3) a clear statement of intention to exclude yourself such as "I wish to be excluded from the Class"; and (4) your signature. You may also get an <u>Exclusion Request form</u> <link> at http://www.tunalawsuit.com.

### 14.    How do I tell the Court I don't like the Proposed Settlement?

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

To object, you must send a letter that contains all the following:

- Your name and current address, and your lawyer's name and address if you are objecting through counsel;
- The name of the lawsuit, *Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG;
- A statement of your objections and the reasons for each objection you make;
- A list of the documents you are giving the Court to support your objections, if any;
- A list of any legal authorities you want the Court to consider;
- The names and addresses of any witnesses you want to call to testify, and a summary of the witnesses' expected testimony;
- If you (or your lawyer) want to appear and speak at the Fairness Hearing, a statement that you wish to appear and speak; *and*
- Your signature (or your lawyer's signature).

Your objection must be signed, mailed, and *postmarked by* [_____, 2015] to the Court at:

> Clerk of the Court
> United States District Court
> Northern District of California
> 450 Golden Gate Ave.
> San Francisco, CA 94102

Copies of your objection *must also* be signed, mailed, and *postmarked by* [_____, 2015] to

---

the following addresses:

| Counsel for the Class | Counsel for StarKist |
|---|---|
| Scott A. Bursor | Robert Hawk |
| Bursor & Fisher, P.A. | Hogan Lovells LLP |
| 888 Seventh Avenue | 4085 Campbell Avenue, Suite 100 |
| New York, NY 10019 | Menlo Park, CA 94025 |

If you object through a lawyer, you will have to pay for the lawyer yourself.

## 15.    What's the difference between objecting and excluding?

Objecting is simply telling the Court you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court you don't want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

## 16.    Can I appear or speak in this lawsuit and Proposed Settlement?

As long as you do not exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit and Proposed Settlement.  This is called making an appearance.  You can also have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

## 17.    How can I appear in this lawsuit?

If you want yourself or your own lawyer (instead of Class Counsel) to participate or speak for you in this lawsuit, you must give the Court a paper that is titled a "Notice of Appearance." The Notice of Appearance must contain the title of the lawsuit, a statement that you wish to appear at the Fairness Hearing, and the signature of you or your lawyer.

Your Notice of Appearance can also state that you or your lawyer would like to speak at the Court's Fairness Hearing on the Proposed Settlement.  If you submit an objection (see question 14 above) and would like to speak about the objection at the Court's Fairness Hearing, both your Notice of Appearance and your objection should be included in that information.

Your Notice of Appearance must be signed, mailed, and *postmarked by* [_____, 2015] to the Court at:

<div align="center">

Clerk of the Court
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

</div>

Copies of your objection *must also* be signed, mailed, and *postmarked by* [_____, 2015] to the same two addresses appearing on page 6 of this Notice, in question 14.

<div align="center">

## THE LAWYERS REPRESENTING YOU

</div>

## 18.    Do I have a lawyer in this case?

The law firm of Bursor & Fisher, P.A. ("Class Counsel") represents you and the other Class Members.  You will not be charged for these lawyers.  More information about Bursor & Fisher, P.A., their practice, and the firm's lawyers are available at www.bursor.com.

## 19.   Should I get my own lawyer?

If you choose to remain in the Class, you do not need to hire your own lawyer because Settlement Class Counsel are working on your behalf.  But, if you want your own lawyer, you will be responsible for paying that lawyer.  For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

## 20.   How will the lawyers be paid?

From the inception of the litigation January 2013 to the present, Class Counsel has not received any payment for their services in prosecuting the case or obtaining settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred.  When they ask the Court to approve the settlement, Class Counsel will also make a motion to the Court for an award of attorney's fees of up to one-third of the total $12 million value of the Settlement Fund.  The Court may award less than that.  In addition to those attorney's fees, Class Counsel will also seek reimbursement of their out-of-pocket expenses from the Settlement Fund.  No matter what the Court decides with regard to the requested attorneys' fees, costs and expenses, Class members will never have to pay anything toward the fees or expenses of Class Counsel.  Class Counsel will seek final approval of the settlement on behalf of all Class Members.  You may hire your own lawyer to represent you in this case if you wish, but it will be at your own expense.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement.  You may attend and you may ask to speak, but you don't have to attend or speak.

## 21.   When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at [TIME] on [DATE], at the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 15, 18th Floor.  At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have asked to speak at the hearing.  The Court will also consider Class Counsel's proposed Plan Of Allocation of the Settlement Fund and Settlement Class Counsel's request for an award of attorneys' fees and reimbursement of costs.  After the hearing, the Court will decide whether to approve the proposed Settlement, whether to approved the proposed Plan of Allocation, and whether to grant Class Counsel's request for attorneys' fees and expenses.  We do not know how long these decisions will take

## 22.   Do I have to come to the hearing?

No.  Class Counsel is working on your behalf and will answer any questions the Court may have, but, you are welcome to attend the hearing at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to

attend, but it's not necessary.

## 23.    May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must follow the steps listed in number 16 and 17 above.  You cannot speak at the hearing if you excluded yourself.

### FINAL SETTLEMENT APPROVAL

## 24.    What is the effect of final settlement approval?

If the Court grants final approval of the settlement, all members of the Class will release and forever discharge any and all claims or causes of action that have been, might have been, are now, or could have been brought relating to the transactions, actions, conduct and events that are the subject of this action or settlement, arising from or related to the underfilling of tuna in the StarKist Products, whether in law or equity, whether seeking damages or any other relief (including attorneys' fees), of any kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, based upon any federal or state statutory or common law, including, without limitation, claims sounding in tort, contract, and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, as well as under the unfair or deceptive trade practices, trade regulation, consumer fraud, misrepresentation, and false advertising law of the United States or any state or other jurisdiction within the United States, including, but not limited to, any claims relating to the underfilling of tuna in the StarKist Products (the "Released Claims").  Excluded from the Released Claims are any and all claims for personal injury, wrongful death, and/or emotional distress arising from personal injury.

If the settlement is not approved, the case will proceed as if no settlement had been attempted.  There can be no assurance that if the settlement is not approved and litigation resumes, the Class will recover more than is provided for under the settlement, or will recover anything.

### GETTING MORE INFORMATION

## 25.    Are more details available?

This Notice is only intended to provide a summary of the proposed settlement.  You may obtain the complete text of the settlement agreement at http://www.tunalawsuit.com, by writing to the Settlement Administrator (at the address listed above), or from the court file, which is available for your inspection during regular business hours at the Office of the Clerk of the United States District Court for the Northern District of California, 450 Golden Gate Ave., San Francisco, CA 94102, under the Civil Action Number 13-CV-00729-HSG.

Visit the website, at http://www.tunalawsuit.com, where you will find the Plaintiff's Complaint <link>, StarKist's Answer <link>, a Claim Form <link>, and an Exclusion Request Form <link>.

You may also contact Class Counsel by email at [EMAIL ADDRESS], or by writing to [_____] Claims Administrator, c/o [ADDRESS].

**PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.**

DATED: May ___, 2015                    **BY ORDER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**EXHIBIT 6**

**LEGAL NOTICE**

# If You Purchased StarKist Tuna, You May Benefit From A Proposed Class Action Settlement

*Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG

### WHAT IS THIS NOTICE ABOUT?

A lawsuit is pending in the United States District Court, Northern District of California, (the "Action") that may affect your rights. The Action claims that StarKist Co. ("StarKist") under-filled its 5 oz. tuna cans in violation of state and federal law. StarKist denies this claim. The Court has not ruled in favor of Plaintiff or StarKist. Instead, the parties agreed to a proposed settlement to avoid the expense and risks of continuing the lawsuit.

### AM I A MEMBER OF THE CLASS?

The class is defined as all residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased one or more of the following products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).

### WHAT DOES THE SETTLEMENT PROVIDE?

Subject to Court approval, the parties have agreed to a settlement under which StarKist will pay $8 million in cash and $4 million in vouchers redeemable for StarKist tuna products. You may submit a claim for either (a) a cash payment of $25, or (b) $50 in product vouchers redeemable for StarKist tuna products (the "Settlement Benefits"). You may choose to claim the cash payment or the product vouchers, whichever you prefer. These claim amounts may be subject to pro rata dilution if the total amount of claims exceeds the available settlement funds.

### WHAT ARE MY RIGHTS ?

You have a choice of whether to stay in the Class or not, and you must decide this now. If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, StarKist as part of any other lawsuit involving the same claims that are in this lawsuit. This is true even if you do nothing by not submitting a claim.

1. <u>You Can Accept the Settlement</u>. Class Members who wish to receive Settlement Benefits **must** submit claims by [DATE]. You can get a Claim Form on the Internet at http://www.tunalawsuit.com. Read the instructions carefully, fill out the form, and submit it online on or before [DATE]. Alternatively, you may also submit a Claim Form by mailing it to the following address: [ADDRESS]. It must be postmarked no later than [DATE]. If you fail to submit a timely Claim Form and do not exclude yourself from the settlement, then you will be bound by the settlement but will not receive any Settlement Benefits.

2. <u>You Can Object to the Settlement</u>. If you believe the settlement is unsatisfactory, you may file a written objection with the Clerk of the Court for the Northern District of California and send copies to the following Counsel representing the Class and StarKist:

| Plaintiff's Counsel | StarKist's Counsel |
|---|---|
| Scott A. Bursor | Robert Hawk |
| Bursor & Fisher, P.A. | Hogan Lovells LLP |
| 888 Seventh Avenue | 4085 Campbell Avenue, |
| New York, NY 10019 | Suite 100 |
| | Menlo Park, CA 94025 |

3. <u>You Can "Opt Out" of the Settlement</u>. If you exclude yourself from the Class – which is sometimes called "opting-out" of the Class – you won't get any Settlement Benefits from the Proposed Settlement. You will also be responsible for any attorney's fees and costs you incur if you choose to pursue your own lawsuit. Such notice shall include your name, current address, signature, and a statement that you want to be excluded from the lawsuit *Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG, no later than [DATE]. Send the written notice to _____ Claims Administrator, P.O. [___].

### THE FAIRNESS HEARING

On [_____], 2015, at [_____], the Court will hold a hearing in the United States District Court for the Northern District of California to determine: (1) whether the proposed settlement is fair, reasonable, and adequate and should receive final approval; (2) whether the proposed plan of allocation of the settlement fund is fair, reasonable, and adequate and should receive final approval; (3) whether the application for Plaintiff's attorneys' fees of one-third of the total $12 million settlement fund, plus reimbursement of out-of-pocket expenses should be granted. Objections to the proposed settlement by Class Members will be considered by the Court, but only if such objections are filed in writing with the Court and sent to Plaintiff's and StarKist's counsel by [_____, 2015] as explained above. Class Members who support the proposed settlement do not need to appear at the hearing or take any other action to indicate their approval. You may hire your own lawyer to appear in Court for you if you wish; however, if you do, you will be responsible for paying that lawyer on your behalf.

### HOW CAN I GET MORE INFORMATION?

If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit http://www.tunalawsuit.com. You may also contact Class Counsel by email at info@bursor.com, or by writing to: ____ Claims Administrator c/o [ADDRESS].

By order of the United States District Court for the Northern District.

**EXHIBIT 7**

**LEGAL NOTICE**

# If You Purchased StarKist Tuna, You May Benefit From A Proposed Class Action Settlement



A lawsuit is pending in the United States District Court, Northern District of California, (the "Action") that may affect your rights.  The Action claims that StarKist Co. ("StarKist") under-filled the tuna in its 5 oz. cans in violation of federal law.  StarKist denies this claim.  The Court has not ruled in favor of Plaintiff or StarKist.  Instead, the parties agreed to a proposed settlement in order to avoid the expense and risks of continuing the lawsuit.  The lawsuit is called *Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG.

**AM I A MEMBER OF THE CLASS?**  The class is defined as all residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased one or more of the StarKist Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).

**WHAT DOES THE SETTLEMENT PROVIDE?**  Subject to Court approval, the parties have agreed to a settlement under which StarKist will pay $8 million in cash and $4 million in vouchers redeemable for StarKist tuna products.  You may submit a claim for either (a) a cash payment of $25, or (b) $50 in product vouchers redeemable for StarKist tuna products (the "Settlement Benefits").  You may choose to claim the cash payment or the product vouchers, whichever you prefer.  These claim amounts may be subject to pro rata dilution if the total amount of claims exceeds the available settlement funds.

**WHAT ARE MY RIGHTS?**  You have a choice of whether to stay in the Class Settlement or not, and you must decide this now. To receive any benefits under the Proposed Settlement, you **must** submit a claim form by [DATE].  You can obtain a claim form by (1) calling the Settlement Administrator at 1-800-555-5555, (2) mailing a written request for a Claim Form including your name and mailing address to [_____] Settlement Administrator, P.O. Box [_____], or (3) online at http://www.tunalawsuit.com.  If you stay in the Class, you will be legally bound by all orders and judgments of the Court, and you won't be able to sue, or continue to sue, StarKist as part of any other lawsuit involving the same claims that are in this lawsuit.  This is true even if you do nothing by not submitting a claim.  You can also "opt out" or exclude yourself from the settlement.  If you ask to be excluded from the settlement, you cannot get any money or benefits from this lawsuit if the Court approves the settlement, but you will keep any rights to sue StarKist for these claims and will not be bound by any orders or judgments of the Court.  To ask to be excluded, send a letter to the address on the front of this postcard that indicates you want to be excluded.  The letter must actually be received by the addressee on or before [DATE].  Include your name, current address, signature, and a statement that you want to be excluded from the lawsuit *Hendricks v. StarKist Co.*, Case No. 13-CV-00729-HSG .  You may hire your own lawyer to appear in Court for you if you wish; however, if you do, you will be responsible for paying that lawyer on your behalf.

For more information, visit http://www.tunalawsuit.com.