UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK HENDRICKS,

Plaintiff,

v.

STARKIST CO,

Defendant.

Case No.  13-cv-00729-HSG

**ORDER GRANTING PRELIMINARY APPROVAL**

Re: Dkt. Nos. 184, 187

Before the Court are Plaintiff Patrick Hendrick's motions for preliminary approval of the class action settlement, *see* Dkt. Nos. 187 (the "Prelim. Mot."), and the settlement plan of allocation, *see* Dkt. No. 184 (the "Allocation Mot.").  Defendant StarKist has filed what it characterizes as a "joinder" to Plaintiff's motion for preliminary approval of the class action settlement as well as an opposition to Plaintiff's proposed plan of allocation.  *See* Dkt. No. 188 ("StarKist Resp.").  The point of disagreement concerning the proposed allocation concerns whether payments to individual class members should consist of a flat amount or vary based on how many cans of StarKist tuna each class member purchased during the class period.

Having considered the parties' arguments in their moving papers and at oral argument, the Court **GRANTS** Plaintiff's motion for preliminary approval of the class action settlement and plan of allocation.

## I.   BACKGROUND

### A.   Litigation History

This action began on February 19, 2013, when Plaintiff filed this action in the Northern District of California.  *See* Dkt. No. 1 (the "Complaint").  The Complaint asserted claims under California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), California

Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), and for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, Negligent Misrepresentation, Fraud, and Unjust Enrichment. *Id.* The Court dismissed Plaintiff's Unjust Enrichment claim on March 25, 2013. *See* Dkt. No. 57.

The parties participated in two settlement conferences before Judge Corley, the first on May 21, 2014 and the second on March 20, 2015. *See* Dkt. Nos. 67 and 126. While no settlement was reached during those conferences, the case ultimately settled shortly after the second settlement conference and just prior to the hearing on Plaintiff's motion for class certification on April 16, 2015. *See* Prelim. Mot. at 5. Plaintiff moved for preliminary approval of the Settlement Agreement on May 14, 2015. *Id.*

**B.    Overview of the Proposed Settlement**

Following the settlement in principle, the parties executed a Stipulation of Settlement Agreement (the "Settlement Agreement"). *See* Declaration of Scott A. Bursor ("Bursor Dec."), Ex. 1. The key provisions of the Settlement Agreement are as follows.

*Payment Terms*: In full settlement of the claims asserted in this lawsuit, StarKist agrees to pay $8,000,000 in cash and $4,000,000 in vouchers for StarKist products. *Id.* at 5. This amount includes payments to claimants for release of their claims, any award of attorneys' fees and costs, claims administrator costs, and any incentive awards to Hendricks and other "interested parties." *Id.* at 7. Plaintiff proposes that claimants be permitted to elect either a $25 payment from the cash settlement fund or a $50 payment in StarKist vouchers from the voucher settlement fund. *See* Allocation Mot. at 1. Plaintiff's counsel estimates that—after attorneys' fees and costs, claim administrator costs, and incentive awards are deducted from the cash portion of the settlement fund—the claims administrator would need to receive approximately 120,000 "cash claims" (a total value of $3,000,000) and 80,000 "voucher claims" (a total value of $4,000,000) to exhaust the entire settlement fund. *See* Bursor Dec. ¶ 2.

*Attorneys' Fees and Costs*: The Settlement Agreement authorizes Plaintiff's counsel to apply to the Court for an award of attorneys' fees and costs incurred in litigating this case.

Settlement Agreement at 11-12.  Plaintiff's counsel request an amount no greater than one third of the total $12,000,000 settlement amount, plus reimbursement of costs and expenses, which Plaintiff's counsel has not yet identified.  *Id*.

*Incentive Payment*:  The Settlement Agreement provides that Plaintiff's counsel will petition the Court for approval of payments of no more than $5,000 to Hendricks and "interested parties" identified as Laury Smith, Ben Hall, Brian Andcacky, Joseph Vallillo, Joeseph Ebin, Kelly Maucieri, Monica Rodriguez, and Jayme Kaczmarek.  *Id*. at 4, 12.

*Releases*:  The Settlement Agreement provides that all class members other than those who opted-out:

> shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged under-filling of the StarKist Products and/or the purchase of any of the StarKist Products at any time on or after February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims").

*Id*. at 17.  Further, the Settlement Agreement provides that settling class members be "deemed to have waived and relinquished . . . [the] rights and benefits of California Civil Code section 1542." *Id*.

*Procedure for Claims and Settlement*:  Plaintiff's counsel is required to move for preliminary and final Court approval of the Settlement Agreement.  *Id*. at 14.  Class notice will inform potential settlement class members of the settlement agreement, the background of the action and settlement, the settlement relief available, that they have a right to object to or exclude themselves from the settlement, the process for submitting a claim, and that the settlement is conditioned on the Court's final approval.  *Id*. at 13.  The settlement administrator's actual costs and expenses in carrying out its duties are capped at $675,000.

*Unclaimed Settlement Funds*:  The Settlement Agreement provides that Plaintiff's counsel may petition the Court to seek approval for proposed disposition of any remaining cash and/or vouchers remaining after distribution of claims.  *Id*. at 11.

*Objections*:  Any Class Member who has not opted out may file an objection to the

Settlement Agreement (or any of its terms).  *Id.* at 15.

## II.    CONDITIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process. First, a plaintiff must demonstrate

that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and

adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous

analysis,' that Rule 23(a) has been satisfied."  *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829,

833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here,

by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class

members predominate over any questions affecting only individual members, and . . . [that] a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  The party seeking class certification bears the burden of

demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at

least one of the three requirements under Rule 23(b) are met.  *See Wal-Mart*, 131 S. Ct. at 2551.

### A.    Rule 23(a)(1)—Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable."  Numerosity is satisfied here because the proposed settlement class includes

millions of potential members.  Joinder of millions of individuals would be impracticable in this

action.

### B.    Rule 23(a)(2)—Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2).  For the purposes of Rule 23(a)(2), even a single common

question is sufficient.  *Wal-Mart*, 131 S. Ct. at 2556.  The common contention, however, "must be

of such a nature that it is capable of classwide resolution—which means that determination of its

truth or falsity will resolve an issue that is central to the validity of each one of the claims in one

stroke."  *Id.* at 2551.  "What matters to class certification . . . is not the raising of common

'questions' – even in droves – but rather the capacity of a classwide proceeding to generate

United States District Court
Northern District of California

1 | common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (citation

2 | omitted).

3 | The Court finds that the proposed class satisfies the commonality requirement because, at a

4 | minimum, the issue of Defendant's alleged under-filling of tuna cans and its defenses apply to the

5 | class as a whole.

6 | **C.    Rule 23(a)(3)—Typicality**

7 | In certifying a class, courts must find that "the claims or defenses of the representative

8 | parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The purpose

9 | of the typicality requirement is to assure that the interest of the named representative aligns with

10 | the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "The

11 | test of typicality 'is whether other members have the same or similar injury, whether the action is

12 | based on conduct which is not unique to the named plaintiffs, and whether other class members

13 | have been injured by the same course of conduct.'"  *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D.

14 | 279, 282 (C.D. Cal. 1985)).

15 | The Court finds that class representative Hendricks is typical of the class he seeks to represent.

16 | Like the rest of the settlement class, Hendricks alleges that he purchased cans of StarKist tuna during

17 | the time period when StarKist allegedly underfilled its product.

18 | **D.    Rule 23(a)(4)—Adequacy of Representation**

19 | "The adequacy of representation requirement . . . requires that two questions be addressed: (a)

20 | do the named plaintiffs and their counsel have any conflicts of interest with other class members and

21 | (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

22 | *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  The requirement "'tend[s] to

23 | merge' with the commonality and typicality criteria of Rule 23(a)."  *Amchem Prods., Inc. v. Windsor*,

24 | 521 U.S. 591, 626 n.20 (1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13

25 | (1982)).  Among other purposes, these requirements determine whether "the named plaintiff's claim

26 | and the class claims are so interrelated that the interests of the class members will be fairly and

27 | adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13.  Adequacy of representation

28 | requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of

1    interest with other class members and (2) will the named plaintiffs and their counsel prosecute the

2    action vigorously on behalf of the class?"  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1020 (9th Cir.

3    1998)

4         No evidence in the record suggests that the class representative or class counsel have a conflict

5    of interest with other class members.  Plaintiff's counsel has experience prosecuting large consumer

6    class actions.  *See* Bursor Dec., Ex. 3.  The Court finds that proposed class counsel and the named

7    Plaintiff have prosecuted this action vigorously on behalf of the class, and will continue to do so.  The

8    adequacy requirement is therefore satisfied.

9         **E.    Rule 23(b)(3)—Predominance and Superiority**

10        To certify a Rule 23 damages class, the Court must find that "questions of law or fact common

11   to class members predominate over any questions affecting only individual members, and . . . [that] a

12   class action is superior to other available methods for fairly and efficiently adjudicating the

13   controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are

14   sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623. "When

15   common questions present a significant aspect of the case and they can be resolved for all members of

16   the class in a single adjudication, there is clear justification for handling the dispute on a representative

17   rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022 (citation omitted).

18        Here, the Court finds that—for the purposes of settlement—the common questions raised by

19   Plaintiff's claims predominate over questions affecting only individual members of the proposed class.

20   In particular, Plaintiffs allege that StarKist's Samoa facility systematically underfilled certain types of

21   5 oz. cans of StarKist tuna, and that its press weight testing procedures systematically overrepresented

22   the pressed weight readings of StarKist products.  Whether these alleged systematic deficiencies have

23   a basis in fact is a common question that would largely resolve the claims of all class members.  The

24   predominance requirement is therefore satisfied.

25        Next, "[t]he superiority inquiry under Rule 23(b)(3) requires the Court to determine whether

26   the objectives of the particular class action procedure will be achieved in the particular case."  *Id*. at

27   1023.  Here, because common legal and factual questions predominate over individual ones, and

28   taking into account the sheer size of the proposed class, the Court finds that the judicial economy

United States District Court
Northern District of California

1   achieved through common adjudication makes a class action a superior method for adjudicating the

2   claims of the proposed class.

3          Finally, while not enumerated in Rule 23, "courts have recognized that 'in order to

4   maintain a class action, the class sought to be represented must be adequately defined and clearly

5   ascertainable.'"  *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012)

6   (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)); *see also Berger v. Home*

7   *Depot USA, Inc.*, 741 F.3d 1061, 1071, n.4 (9th Cir. 2014) (referring, in dicta, to the "threshold

8   ascertainability test").  "[A] class definition is sufficient if the description of the class is 'definite

9   enough so that it is administratively feasible for the court to ascertain whether an individual is a

10  member.'"  *Vietnam Veterans*, 288 F.R.D. at 211 (quoting *O'Connor v. Boeing N. Am., Inc.*, 184

11  F.R.D. 311, 319 (C.D. Cal. 1998)).

12         Courts have considered at least three types of "ascertainability" concerns when

13  determining whether class certification is appropriate: (1) whether the class can be ascertained by

14  reference to objective criteria; (2) whether the class includes members who are not entitled to

15  recovery; and (3) whether the putative named plaintiff can show that he will be able to locate

16  absent class members once a class is certified.  *See Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at

17  *3-4 (N.D. Cal. Sept. 18, 2014).  As the Court discussed during the April 16, 2015 Case

18  Management Conference, the proposed settlement class definition suffers, to various degrees, from

19  the uncertainties that drive these concerns.  However, the Court agrees with the parties that, at

20  least at the preliminary approval stage, the methods proposed to identify and compensate injured

21  class members render the class definition sufficiently ascertainable.

22         **F.    Appointment of Class Representatives and Class Counsel**

23         Because the Court finds that Hendricks meets the commonality, typicality, and adequacy

24  requirements of Rule 23(a), the Court appoints Plaintiff as class representative.  When a court

25  certifies a class, the court must appoint class counsel and must consider:

26         (i)     the work counsel has done in identifying or investigating potential
                   claims in the action;
27         (ii)    counsel's experience in handling class actions, other complex
                   litigation, and the types of claims asserted in the action;
28         (iii)   counsel's knowledge of the applicable law; and

7

1

      (iv)    the resources that counsel will commit to representing the class.

2

Fed. R. Civ. P. 23(g)(1)(A).  Additionally, a court "may consider any other matter pertinent to

3

counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P.

4

23(g)(1)(B).

5

      Plaintiffs' counsel have prosecuted this action by: (1) investigating class members' potential

6

claims; (2) propounding and reviewing discovery; (3) analyzing data Defendant provided in discovery;

7

(4) participating in two mediations; (5) negotiating this settlement agreement; and (6) briefing the

8

instant motion for preliminary approval.  Plaintiffs' counsel has substantial prior experience

9

prosecuting class actions.  For these reasons, the Court will appoint Scott Bursor of Bursor and Fisher

10

P.A. as lead class counsel pursuant to Federal Rule of Civil Procedure 23(g).

11

**III.    PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT**

12

      Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a

13

certified class may be settled, voluntarily dismissed, or compromised only with the court's

14

approval."  The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of

15

class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The

16

purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair

17

settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir.

18

2008).  Accordingly, before a court approves a settlement it must conclude that the settlement is

19

"fundamentally fair, adequate and reasonable."  *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75

20

(9th Cir. 2008).  Generally, the district court's review of a class action settlement is "extremely

21

limited."  *Hanlon*, 150 F.3d at 1026.  However, where the parties reach a class action settlement

22

prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry

23

than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th

24

Cir. 2012) (citation and internal quotations omitted).  Courts "must be particularly vigilant not

25

only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of

26

their own self-interests and that of certain class members to infect the negotiations."  *In re*

27

*Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

28

      At the preliminary approval stage, the Court may grant preliminary approval of a

United States District Court
Northern District of California

1  settlement and direct notice to the class if the settlement: (1) appears to be the product of serious,

2  informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly

3  grant preferential treatment to class representatives or segments of the class; and (4) falls within

4  the range of possible approval.  *See* Joseph M. McLaughlin, McLaughlin on Class Actions: Law

5  and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the

6  fairness of the proposed settlement, including a determination that there are no obvious

7  deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class

8  representatives or segments of the class, or excessive compensation of attorneys . . . .").  The

9  Court considers the settlement as a whole, rather than its components, and lacks the authority to

10  "delete, modify or substitute certain provision."  *Id*. (quoting *Officers for Justice v. Civil Serv.*

11  *Comm'n of San Francisco*, 688 F.2d 615, 630 (9th Cir.1982)).  Rather, "[t]he settlement must

12  stand or fall in its entirety."  *Id*.

13     **A.     The Settlement Process**

14         The first factor the Court examines is the means by which the parties arrived at the

15  settlement.  "An initial presumption of fairness is usually involved if the settlement is

16  recommended by class counsel after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, No.

17  08-cv-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).  Here,

18  the parties reached their settlement after two settlement conferences with Judge Corley, which

19  strongly suggests the absence of collusion or bad faith by the parties or counsel.  *See Chun-Hoon*

20  *v. McKee Foods Corp*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010); *see also Satchell v. Fed. Exp.*

21  *Corp.*, No. 03-cv-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of

22  an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

23     **B.     The Presence of Obvious Deficiencies**

24         The second factor the Court considers is whether there are obvious deficiencies in the

25  Settlement Agreement.  The Court has found no obvious deficiencies.

26     **C.     Preferential Treatment**

27         Under the third factor, the Court examines whether the Settlement Agreement provides

28  preferential treatment to any class member.  Under the terms of the plan of allocation adopted by

United States District Court
Northern District of California

1    the Court below, each class member receives an equal share of the recovery—either $25 in cash or

2    $50 in vouchers for StarKist products.

3            While the Settlement Agreement authorizes Hendricks to seek an incentive award of

4    $5,000 for his role as named plaintiff in this lawsuit, the Court will ultimately determine whether

5    Hendricks is entitled to such an award and the reasonableness of the amount requested.  The Ninth

6    Circuit has recognized that service awards to named plaintiffs in a class action are permissible and

7    do not render a settlement unfair or unreasonable.  *See Stanton v. Boeing Co.*, 327 F.3d 938, 977

8    (9th Cir. 2003); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009).  The Court is

9    extremely skeptical that the Settlement Agreement's proposed payment of $5,000 to "interested

10   parties," who do not appear to have been deposed in this action, is warranted.  Even so, Plaintiff

11   will be afforded the opportunity to justify each award.

12           **D.    Whether the Settlement Falls Within the Range of Possible Approval**

13           Finally, the Court must consider whether the Settlement Agreement falls within the range

14   of possible approval.  "To evaluate the range of possible approval criterion, which focuses on

15   substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery

16   balanced against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.

17   Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp.2d at

18   1080) (internal quotations omitted).  Additionally, to determine whether a settlement is

19   fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately

20   inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and

21   likely duration of further litigation; (3) the risk of maintaining class action status throughout the

22   trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of

23   the proceedings; (6) the experience and views of counsel; (7) the presence of  a governmental

24   participant; and (8) the reaction of class members to the proposed settlement. *See Churchill*

25   *Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026).

26   Although the Court undertakes a more in-depth investigation of the foregoing factors at the final

27   approval stage, these factors inform whether the Settlement Agreement falls within the "range of

28   possible approval."

United States District Court
Northern District of California

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

The Court first considers the class' expected recovery balanced against the value of the settlement offer, taking into account the strength of the plaintiff's case.  The settlement provides $12,000,000 as a gross settlement amount, $8,000,000 to be paid in cash and $4,000,000 in StarKist vouchers.  Plaintiff's counsel represents that this "is an excellent result for class members compared to their likely recovery should they prevail at trial" given that Plaintiff's expert calculated "recoverable damages on an individual basis at $10.57 under a price premium theory, or $63.63 on a full refund theory."  Allocation Mot. at 1.  As the Court observed during the April 16, 2015 Case Management Conference, the pressed-weight testing results for StarKist cans of tuna presented a significant hurdle to establishing substantial numbers of "underweight" cans were sold to the public.  The relative weakness of Plaintiff's case on the merits mitigates in favor of settlement.

Second, the settlement amount is adequate given the expense, complexity, and duration of further litigation.  In order to prevail in this action, Plaintiff would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The risk and costs associated with class action litigation weighs strongly in favor of settlement.

The third factor concerning whether class certification can be maintained through trial also weighs in favor of settlement.  Certifying a class of tens of millions of consumers who purchased some, but not all, varieties of StarKist's tuna products over half a decade presents complex and substantial issues that could undermine certification at many different stages of the litigation.

Fourth, the $12,000,000 settlement amount, while constituting only a single-digit percentage of the maximum potential exposure, is reasonable given the stage of the proceedings and the defenses asserted in this action.

Fifth, the parties have undertaken sufficient discovery to inform their view of the reasonableness of the Settlement Agreement.  In addition to formal written discovery, the parties performed independent testing on numerous cans of tuna manufactured during the class period and have reviewed tens of thousands of StarKist's internal testing results.

The sixth factor takes into account counsel's experience and their respective views of the

United States District Court
Northern District of California

1    Settlement Agreement.  The Court has previously evaluated class counsel's qualifications and

2    experience and concluded that counsel is qualified to represent the class' interests in this action.

3    The Court notes, however, that courts have taken divergent views as to the weight to accord

4    counsel's opinions.  *Compare Carter v. Anderson Merch., LP*, 2010 WL 1946784, at *8 (C.D. Cal.

5    May 11, 2010) ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F.

6    Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements, as

7    parties to class actions and their counsel often have pecuniary interests in seeing the settlement

8    approved.").  The Court finds that this factor tilts in favor of approval, even though the Court

9    affords only modest weight to the views of counsel.

10           The seventh factor is inapplicable because there is no governmental participant in this case.

11           Eighth, because the class has not yet been formally notified of the settlement, the Court

12   cannot undertake any evaluation of class members' reaction to the settlement, including the

13   number and substance of any objections.

14           Having weighed these eight factors, the Court finds that the Settlement Agreement falls

15   within the range appropriate for preliminary approval.

16   **IV.    PLAN OF ALLOCATION**

17           A plan for allocation of a settlement fund is governed by the same legal standards that

18   apply to the approval of a settlement: the plan must be fair, reasonable, and adequate.  *See In re*

19   *Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  This means that, to the

20   extent feasible, the plan should provide class members who suffered greater harm and who have

21   stronger claims a larger share of the distributable settlement amount.  *See, e.g., Rieckborn v. Velti*

22   *PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015); *In re Omnivision*

23   *Technologies, Inc.*, No. 04-cv-2297-SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007); *In re*

24   *Oracle Sec. Litig.*, No. 90-cv-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

25   However, some "courts recognize that an allocation formula need only have a reasonable, rational

26   basis, particularly if recommended by experienced and competent counsel." *Vinh Nguyen v.*

27   *Radient Pharm. Corp.,* No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

28           Plaintiff proposes a plan of distribution that would provide a flat $25 in cash or $50 in

1  vouchers to each class member regardless of how many cans of StarKist tuna they purchased

2  during the class period.  StarKist opposes this approach, arguing that it does not sufficiently

3  distinguish between class members who purchased varying quantities of StarKist tuna and thus

4  does not "bear a reasonable relationship to the damages Plaintiff has asserted with respect to

5  individual class members."  StarKist Resp. at 5.  Instead of Plaintiff's static disbursement, StarKist

6  proposes a tiered system whereby individual settlement payments range from $1 for class

7  members who purchased 1-10 cans of tuna during the class period up to $37.50 for class members

8  who purchased 241 or more cans of tuna.  *See id.*, App'x A.

9           The Court is faced with two competing concerns.  On the one hand, the Court recognizes

10  that Plaintiff's proposed plan of allocation does not distinguish between occasional tuna eaters—

11  who were only slightly harmed by StarKist's alleged misconduct—and class members who

12  routinely purchased StarKist tuna.  On the other hand, the Court is sensitive to the concern that

13  creating additional hurdles to recovery may significantly reduce the number of class members who

14  participate, especially in cases, like this one, where individual payouts are relatively small.  *See*

15  Newberg on Class Actions § 12:15 (5th ed. 2014) ("The goal of any distribution method is to get

16  as much of the available damages remedy to class members as possible and in as simple and

17  expedient a manner as possible.").  Although the parties have taken turns alternatively advancing

18  and disputing the argument in different phases of this action, *see* Dkt. No. 184 at 3; Dkt. No. 111-3

19  at 16, the Court agrees that many class members will have difficulty providing even rough

20  estimates of how many cans of StarKist tuna they purchased during the class period.  Asking class

21  members to search back years in their memories and then attest, under penalty of perjury, to the

22  number of StarKist tuna cans they purchased may dissuade many from claiming the $5, $10, or

23  $25 to which their particular level of purchasing would entitle them.  At some point, the

24  paperwork overwhelms the benefit.  Where the settlement payout is relatively modest, that point

25  comes quickly.

26           After weighing these concerns, the Court finds that Plaintiff's plan of allocation is in the

27  best interests of the class.  Although the flat payout disbursement plan will necessarily

28  overcompensate infrequent tuna purchasers, the modest payment amounts at issue in this case

United States District Court
Northern District of California

13

1    makes this outcome less problematic than in cases where hundreds or even thousands of dollars

2    are at stake.  The fact that class members will receive a few dollars more or a few dollars less than

3    their strict (self-estimated) proportional share of the recovery is outweighed by the benefits of a

4    streamlined claims process that encourages maximum participation.

5    **V.    PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES**

6          The class notice in a Rule 23(b)(3) class action must comport with the requirements of due

7    process.  "[T]he plaintiff must receive notice plus an opportunity to be heard and participate in

8    litigation, whether in person or through counsel."  The notice must be "the best practicable,"

9    "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the

10   action and afford them an opportunity to present their objections."  *Philips Petroleum Co. v. Shutts*,

11   472 U.S. 797, 812 (1985) (citations omitted).  "The notice should describe the action and the plaintiffs'

12   rights in it."  *Id*.  Rule 23(c)(2)(B) provides, in relevant part:

13              The notice must clearly and concisely state in plain, easily
                understood language: (i) the nature of the action; (ii) the definition
14              of the class certified; (iii) the class claims, issues, or defenses; (iv)
                that a class member may enter an appearance through an attorney if
15              the member so desires; (v) that the court will exclude from the class
                any member who requests exclusion; (vi) the time and manner for
16              requesting exclusion; and (vii) the binding effect of a class judgment
                on members under Rule 23(c)(3).
17

18   Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from

19   the class by executing and returning an 'opt out' or 'request for exclusion' form to the court."  *Id.*

20         The parties propose to use KCC Class Action Services, LLC as the claims administrator

21   for the class. The Court finds that KCC is qualified to perform the tasks associated with

22   administering the notice and claims procedures outlined in the Settlement Agreement and

23   therefore approves KCC as claims administrator.  KCC will, among other tasks, provide notice,

24   calculate awards, process requests for exclusion and objections, and mail class members their

25   settlement awards.  The proposed notice contains all the information required under the Federal

26   Rules and, accordingly, the Court finds notice plan comports with due process requirements.

27   **VI.    NOTICE OF MOTION AND AWARD OF ATTORNEYS' FEES AND COSTS**

28         Item 20 of the settlement notice informs class members that class counsel will file a motion

United States District Court
Northern District of California

14

seeking an award of attorneys' fees in the amount of one-third of the $12 million settlement amount, plus their out-of-pocket expenses. Bursor Decl., Ex. 5 at 8. To enable class members to review class counsel's motion, class counsel shall include language in the Settlement Notice indicating the deadline for filing the attorneys' fees motion, specifically stating the deadline for any class member objections to the fees motion, and informing class members that the motion and supporting materials will be available for viewing on class counsel's website. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion). That motion shall be filed with the Court and posted on class counsel's website not later than 20 days before class members' objections are due.

## VII.   SETTLEMENT APPROVAL SCHEDULE

The parties shall stipulate to a schedule for each event below and submit such stipulation and proposed order to the Court within seven days of this Order.

| Event | Date |
|---|---|
| Deadline for completion of notice dissemination | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Last date to file objections | |
| Last date to submit claims | |
| Filing deadline for final approval motion | |
| Final Fairness hearing and hearing on motions | |

## VIII.   CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement and Plan of Allocation. The parties are directed to comply with the instructions provided above.

**IT IS SO ORDERED.**

Dated: July 23, 2015

*Haywood S. Gill, Jr.*

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California