**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia A. Luster (State Bar No. 295031)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
      jluster@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
Neal J. Deckant (admitted *pro hac vice*)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com
      ndeckant@bursor.com

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>STARKIST CO.,<br><br>                    Defendant. | Case No. 13-CV-00729-HSG<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES**<br><br>Date: December 17, 2015<br>Time: 2:00 p.m.<br>Courtroom 15, 18th Floor<br><br>Hon. Haywood S. Gilliam, Jr. |

1   **<u>NOTICE OF MOTION AND MOTION</u>**

2   **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3   **PLEASE TAKE NOTICE THAT** on December 17, 2015 at 2:00 p.m., or as soon

4   thereafter as the matter may be heard by the above-captioned Court, located at 450 Golden Gate

5   Avenue, San Francisco, CA 94102, Courtroom 15, 18th Floor, in the courtroom of the Honorable

6   Haywood S. Gilliam, Jr., Plaintiff Patrick Hendricks will and hereby does move for an order

7   awarding attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive

8   fees to Mr. Hendricks and the Interested Parties.[1]

9         This motion is made on the grounds that an award of attorneys' fees, reimbursement of

10   litigation costs and expenses, and payment of incentive fees is proper, given that the parties have

11   agreed that Class Counsel may make such applications in their Stipulation of Settlement, the work

12   of Class Counsel has conferred substantial benefits to the Class, and that such awards are permitted

13   under the laws of this Circuit.

14         This motion is based on the attached Memorandum of Points and Authorities, the

15   accompanying Declarations of Scott A. Bursor and Colin B. Weir, the pleadings and papers on file

16   herein, and any other written and oral arguments that may be presented to the Court.

17         **CIVIL RULE 7-4(a)(3) STATEMENT OF ISSUE TO BE DECIDED**

18         Whether the Court should award attorneys' fees, reimbursement of litigation costs and

19   expenses, and payment of incentive fees to the Class Representative and Interested Parties.

20

21

22

23

24

25

26

27

28

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Settlement Agreement.  *See* 5/14/15 Bursor Decl., Ex. 1.

1  Dated:  October 30, 2015                    Respectfully submitted,

2                                              **BURSOR & FISHER, P.A.**

3
                                               By:   /s/ Scott A. Bursor
4                                                       Scott A. Bursor

5                                              Scott A. Bursor (State Bar No. 276006)
                                               Neal J. Deckant (admitted *pro hac vice*)
6                                              888 Seventh Avenue
                                               New York, NY  10019
7                                              Telephone: (212) 989-9113
                                               Facsimile:  (212) 989-9163
8                                              E-Mail: scott@bursor.com
                                                       ndeckant@bursor.com
9
                                               **BURSOR & FISHER, P.A.**
10                                             L. Timothy Fisher (State Bar No. 191626)
                                               Julia A. Luster (State Bar No. 295031)
11                                             1990 North California Boulevard, Suite 940
                                               Walnut Creek, CA 94596
12                                             Telephone:  (925) 300-4455
                                               Facsimile:  (925) 407-2700
13                                             E-Mail: ltfisher@bursor.com
                                                       jluster@bursor.com
14
                                               *Class Counsel*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,                    ii
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES
CASE NO. 13-CV-00729-HSG

**TABLE OF CONTENTS**

PAGE(S)

I.     INTRODUCTION ................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY.............................................. 3

III.   SUMMARY OF THE PROPOSED SETTLEMENT ............................................. 3

       A.    Payment To Settlement Class Members ................................... 3

       B.    Payment Of Attorneys' Fees, Costs, And Incentive Awards..................................... 4

IV.    THE CLRA PROVIDES FOR A MANDATORY AWARD OF
       ATTORNEYS' FEES TO THE PREVAILING PARTY ...................................... 4

V.     CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS
       FAIR AND REASONABLE ............................................................................. 5

       A.    The Percentage Of The Benefit Method .................................. 5

             1.    The Total Value Of The Settlement Fund Is $12 Million............................. 5

             2.    The $4 Million In Product Vouchers Are Worth $4 Million ........................ 6

             3.    All Relevant Factors Favor An Upward Departure From The
                   Ninth Circuit's 25% Benchmark To 33.3% ................................. 10

                   a.    Class Counsel Achieved Extraordinary Results For The
                         Class ................................................................................ 10

                   b.    Plaintiff's Novel Claims Carried Substantial Litigation
                         Risk ................................................................................ 11

                   c.    Class Counsel Generated Benefits Beyond The
                         Settlement Fund .............................................................. 12

                   d.    Market Rates As Reflected By Awards In Similar Cases............... 12

                   e.    The Contingent Nature Of The Fee And Financial
                         Burden Borne By Class Counsel...................................... 14

                   f.    The Quality Of Work By Class Counsel........................................ 14

       B.    The Requested Attorneys' Fees Are Reasonable Under A Lodestar
             Cross-Check ............................................................................... 15

       C.    The Court May Alternatively Grant The Requested Attorneys' Fees
             Under The Lodestar Method ...................................................... 16

             1.    Class Counsel Spent A Reasonable Number Of Hours On This
                   Litigation At A Reasonable Hourly Rate.................................... 17

             2.    All Relevant Factors Support Applying A Multiplier To Class
                   Counsel's Lodestar........................................................................ 18

                   a.    Novelty And Complexity Of This Litigation.................................. 19

b.    Class Counsel Provided Exceptional Representation Prosecuting This Complex Case ........................................ 19

c.    Class Counsel Obtained Excellent Class Benefits ........................... 19

d.    Class Counsel Faced A Substantial Risk Of Nonpayment ................................................................................. 20

VI.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS ........................................................................ 20

VII.  THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES ARE FAIR AND REASONABLE ........................................................................................ 21

VIII. CONCLUSION ................................................................................................ 23

1

**TABLE OF AUTHORITIES**

2
                                                                        **PAGE(S)**

**CASES**

3

*Blum v. Stenson,*
   465 U.S. 886 (1984) .............................................................................................. 18

*Bond v. Ferguson Enters.,*
   2011 U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011) ................................ 23

*Careathers v. Red Bull N. Am., Inc.,*
   No. 1:13-cv-00369 (S.D.N.Y. Jan. 16, 2013) ................................................... 1

*Caudle v. Bristow Optical Co.,*
   224 F.3d 1014 (9th Cir. 2000) ......................................................................... 15

Consumer Privacy Cases,
   175 Cal. App. 4th 545 (2009) ............................................................................ 6

*Cosgrove v. Sullivan,*
   759 F. Supp. 166 (S.D.N.Y. 1991) ................................................................. 18

*Fischel v. Equitable Life Assur. Soc'y,*
   307 F.3d 997 (9th Cir. 2002) ............................................................................. 5

*Glass v. UBS Fin. Servs.,*
   2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ................................. 23

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................................. 5, 10, 16

*Harris v. Marhoefer,*
   24 F.3d 16 (9th Cir. 1994) .......................................................................... 20, 23

*Hartless v. Clorox Co.,*
   273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................... 5

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) .......................................................................................... 18

*In re Activision Sec. Litig.,*
   723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................... 13

*In re Alexia Foods, Inc. Litig.,*
   No. 12-cv-01546 (N.D. Cal. Dec. 12, 2013) .............................................. 7, 10

*In re Beverly Hills Fire Litig.,*
   639 F. Supp. 915 (E.D. Ky. 1986) .................................................................. 18

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ........................................................................... 16

*In re Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green,*
   778 F.2d 890 (1st Cir. 1985) ............................................................................ 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Cenco Inc. Sec. Litig.,*
   519 F. Supp. 322 (N.D. Ill. 1981) ................................................................. 18

*In re King Res. Co. Sec. Litig.,*
   420 F. Supp. 610 (D. Colo. 1976) ................................................................. 15

*In re OmniVision Techs.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ....................................................... 14

*In re Online DVD-Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) .......................................................... 6, 7, 8, 9

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ..................................................................... 5, 13

*In re Warner Commc'ns Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................. 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
   19 F.3d 1291 (9th Cir. 1994) ...................................................................... 20

*Ingalls v. Hallmark Mktg. Corp.,*
   2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009) ......................... 13

*Kerr v. Screen Extras Guild, Inc.,*
   526 F.2d 67 (9th Cir. 1975) .................................................................. 17, 18

*Kim v. Euromotors West/The Auto Gallery,*
   149 Cal. App. 4th 170 (2007) ....................................................................... 5

*Lealao v. Beneficial California, Inc,*
   82 Cal. App. 4th 19 (2000) ........................................................................... 6

*Martin v. AmeriPride Servs., Inc.,*
   2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ............................. 13

*Morales v. City of San Rafael,*
   96 F.3d 359 (9th Cir. 1996) ........................................................................ 18

*Morris v. Lifescan, Inc.,*
   54 F. App'x 663 (9th Cir. 2003) ............................................................. 5, 13

*Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.,*
   1986 U.S. Dist. LEXIS 19798 (E.D. Pa. Sept. 30, 1986) ........................... 18

*Municipal Auth. of Bloomsburg v. Pennsylvania,*
   527 F. Supp. 982 (M.D. Pa. 1981) .............................................................. 18

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989) ...................................................................... 10

*Perera v. Chiron Corp.,*
   Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) ........................................ 18

*Rabin v. Concord Assets Grp., Inc.*,
   1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Dec. 19, 1991) ................................................ 18

*Rippee v. Boston Mkt. Corp.*,
   No. 05-CV-1359 TM (JMA) (Dkt. No. 70, at 7) (S.D. Cal. Oct. 10, 2006) ................................. 14

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................................ 18

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................................... 21

*Singer v. Becton Dickinson & Co.*,
   2010 U.S. Dist. LEXIS 53416 (S.D. Cal. June 1, 2010) ...................................................... 13

*State of Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ........................................................................... 5

*Staton v. Boeing*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................... 5, 20

*Trujillo v. City of Ontario*,
   2009 U.S. Dist. LEXIS 79309 (C.D. Cal. Aug. 24, 2009) ..................................................... 23

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................. 21, 23

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................... 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................... passim

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ....................................................................... 6, 13

*Wolf v. Red Bull GmbH*,
   No. 1:13-cv-08008 (S.D.N.Y. Feb. 27, 2013) ............................................................ 1

*Young v. Polo Retail, LLC*,
   2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) .................................................... 6

**STATUTES**

Civil Code § 1750 ....................................................................................... 4

Civil Code § 1780(d) .................................................................................... 4

**OTHER AUTHORITIES**

U.C.C. § 2-607 ........................................................................................ 22

**TREATISES**

Alba Conte & Herbert B. Newberg,
   *Newberg on Class Actions* § 14:03 (3d ed. 1992) .......................................................... 18

Manual for Complex Litigation § 21.71 (4th ed. 2008)........................................................................ 6

William B. Rubenstein,
  *Newberg on Class Actions* § 12:17 (5th ed. 2014) ...................................................................... 11

**REGULATIONS**

21 C.F.R. § 161.190 ............................................................................................................ 11, 12, 19

## I.      INTRODUCTION

Plaintiff Patrick Hendricks (the "Class Representative" or the "Plaintiff") and Bursor & Fisher, P.A. ("Class Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of incentive awards in connection with the classwide settlement of this action.

The Settlement Fund comprises $12 million, including $8,000,000 in cash and $4,000,000 in product vouchers. *See* 7/23/15 Order Granting Preliminary Approval at 2 (Doc. 194). Class Members may claim $25 in cash or $50 in product vouchers, at their election, subject to *pro rata* dilution. *Id.* at 12-14. The Class is defined to include:

> All residents of the United States of America who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist Products (i.e. 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).

Settlement Agreement ¶ 1.23 (Doc. 183-1).

To date, the response to the settlement has been overwhelmingly positive. In addition to the Court-ordered notice program, news of the settlement has been reported by affiliates of NBC and ABC, along with Time.com, Consumerist.com, and the New York Times, among many other publications and local news affiliates. *See* 10/30/15 Bursor Decl. ¶ 62. As of October 26, 2015, there have been 2,359,877 claims submitted and only 60 opt-outs. *Id.* ¶ 65. This is a world record. More Class Members have submitted claims in this case than in any other case in the history of class actions. *Id.* The prior record was 2,252,624 claims, which were submitted in connection with the class action settlement concerning Red Bull soft drinks in *Careathers v. Red Bull N. Am., Inc.*, No. 1:13-cv-00369 (S.D.N.Y. Jan. 16, 2013) and *Wolf v. Red Bull GmbH*, No. 1:13-cv-08008 (S.D.N.Y. Feb. 27, 2013). *See id.*, Ex. L (Declaration of Jennifer M. Keough Regarding Settlement Administration in *Red Bull*). This StarKist settlement has surpassed that mark already, with three weeks still remaining before the November 20, 2015 claim filing deadline.

Throughout this process, Class Counsel has achieved significant cost savings for the Class. For example, the cost to process more than 2.3 million claims and mail each claimant a check or voucher will be significant, and the funds to pay for this will be taken from the Settlement Fund. To

minimize these costs, and maximize the settlement benefits to Class Members, Class Counsel implemented a competitive bidding process to select a claims administrator.  Class Counsel solicited bids from four prospective claims administrators.  One of those four, KCC Class Action Services, LLC, agreed to cap their costs at $675,000, which led to their selection and Court appointment as claims administrator.  *See* 7/23/15 Order Granting Preliminary Approval at 3 ("The settlement administrator's actual costs and expenses in carrying out its duties are capped at $675,000.").  This will save the Class approximately $2 million in administrative expenses that would have been paid from the Settlement Fund.  By striking a hard bargain with KCC, Class Counsel has thus garnered even more value for Class Members than the settlement originally provided.

In light of these considerations, Class Counsel requests that the Court approve an award of attorneys' fees of 33.3% of the $12,000,000 Settlement Fund, or $4,000,000.  This method of calculating the fee award, based on a percentage of the Settlement Fund, is straightforward, is fair under the circumstances, and is supported by the laws of this Circuit.  *See* Parts V.A.1 – V.A.3, below.  Cross-checking this percentage fee against the Class Counsel's lodestar validates its reasonableness.  As of October 27, 2015, Class Counsel had worked 2,900.5 hours on this case for a total lodestar fee, at current billing rates, of $1,344,720.  10/30/15 Bursor Decl. ¶ 73; *see also id.*, Ex. B (Bursor & Fisher's detailed billing diaries for this case).  This represents a blended hourly rate of less than $464, which is well within the bounds of reasonable hourly rates in this District.  *See id.* ¶ 85.  A fee award of 33.3%, or $4,000,000, would represent a multiplier of 2.97 over the base lodestar fee, *id.* ¶ 74, which is fair and reasonable and well within the accepted range of mulitpliers approved by courts in the Ninth Circuit.  *See* Parts V.C.2.a – V.C.2.d, below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar).

Class Counsel also seeks reimbursement of $150,949.22 in out-of-pocket expenses.  *See* 10/30/15 Bursor Decl. ¶ 77; *see also id.*, Ex. C (an itemized listing of each out-of-pocket expense incurred by Bursor & Fisher in connection with this case).  The expenses were necessary to the prosecution of this case, were carefully and reasonably expended, and should be reimbursed.  *Id.* ¶ 76.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES
CASE NO. 13-CV-00729-HSG

2

## II.    BACKGROUND AND PROCEDURAL HISTORY

The Declaration of Scott A. Bursor, submitted herewith, contains a detailed discussion of the background and procedural history of this case, including (i) Plaintiff's pre-suit investigation and product testing with the U.S. National Oceanic and Atmospheric Administration, (ii) the pleadings and initial motions, (iii) discovery, (iv) Plaintiff's motion for class certification and the accompanying expert reports, (v) the parties' arm's-length settlement negotiations, and (vi) preliminary approval and dissemination of notice.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    Payment To Settlement Class Members

Through October 26, 2015, Class Members have submitted 2,359,877 claims, with roughly 63% of claimants electing for a cash payment and 37% electing product vouchers.  *See id.* ¶¶ 65-67. At these rates, Class Members who chose to receive vouchers will be paid $4.68 per claim.  *Id.*  And assuming that Class Counsel's motion for attorneys' fees, reimbursement of costs and expenses, and payment of incentive awards is granted in full, Class Members who chose to receive cash will be paid $2.11 per claim.  *Id.*

| Voucher Fund | |
|---|---|
| $4,000,000.00 | Total Voucher Fund |
| / 854,914 | Voucher Claims Total |
| **$4.68** | **Payout Per Voucher** |
| **Cash Fund** | |
| $8,000,000.00 | Total Cash Fund |
| -$675,000.00 | KCC Administrative Expenses |
| -$4,000,000.00 | Attorneys' Fees at 33.3% |
| -$150,949.22 | Expense Reimbursement |
| -$5,000.00 | Class Rep Incentive Award |
| -$8,000.00 | Interested Parties (8) Awards @ $1,000 |
| $3,161,050.78 | Subtotal |
| / 1,498,172 | Cash Claims Total |
| **$2.11** | **Payout Per Cash Claim** |

1

2      This is an excellent recovery that will fully compensate most Class Members for 100% of

3  their alleged losses, and possibly more.  Through-the-register sales data show that the average retail

4  price for a 5-ounce can of StarKist Chunk Light In Water was 86 cents during the Class Period.

5  10/30/15 Weir Decl. ¶ 4.[2]  Class Counsel's testing with NOAA showed an average underfill between

6  4.5% to 16.7%, resulting in damages of 3.87 cents to 14.3 cents per can.  10/30/15 Bursor Decl. ¶ 67.

7  A $2.11 cash payment would provide full recovery for 14 to 54 cans.  *Id.*  A $4.68 voucher would

8  provide full recovery for 32 to 120 cans.  *Id.*

9          **B.      Payment Of Attorneys' Fees, Costs, And Incentive Awards**

10     The Settlement Agreement permits Class Counsel to apply for "an award of attorneys' fees

11 not to exceed one-third of the total $12 million value of the Settlement Fund, plus any award of costs

12 and expenses."  Settlement Agreement ¶ 1.26 (Doc. 183-1).  The Settlement Agreement also permits

13 Class Counsel to apply for "Incentive Awards to the Class Representative and/or Interested Parties,

14 not to exceed $5,000 per individual."  *Id.* ¶ 2.1(a).

15     At no point has Class Counsel negotiated its attorneys' fees with StarKist.  10/30/15 Bursor

16 Decl. ¶¶ 50, 87.  Nor does the Settlement Agreement have a "clear sailing" provision.  *Id.*  The

17 Settlement Agreement does permit Class Counsel to apply for up to one-third of the Settlement Fund

18 for its attorneys' fees, but StarKist is free to oppose this request.  *Id.*

19 **IV.    THE CLRA PROVIDES FOR A MANDATORY AWARD OF ATTORNEYS' FEES
        TO THE PREVAILING PARTY**

20
21     The Class Representative brought claims against StarKist under California's Consumers

22 Legal Remedies Act, Civil Code §§ 1750, *et seq.* (the "CLRA").  For CLRA claims, an award of

23 fees to the prevailing party is mandatory under Civil Code § 1780(d), which provides:  "The court

24 shall award court costs and attorney's fees to a prevailing plaintiff in litigation filed pursuant to this

25 section."  As the California Court of Appeal has explained, in construing this provision:

26

27 _____
   [2] More than half of the unit sales to Class Members were StarKist Chunk Light In Water.  *See*
   10/27/15 Weir Decl. ¶ 4.  The average retail price for Chunk Light in Oil was 87 cents.  *Id.*  The
28 average retail price for Solid White in Oil was $1.35.  The average retail price for Solid White in
   Water was also $1.35.  *Id.*

> "The word 'shall' is usually deemed mandatory, unless a mandatory construction would not be consistent with the legislative purpose underlying the statute." (*West Shield Investigations and Sec. Consultants v. Superior Court* (2000) 82 Cal. App. 4th 935, 949, 98 Cal.Rptr.2d 612.)  Our Supreme Court has observed that "the availability of costs and attorneys fees to prevailing plaintiffs is integral to making the CLRA an effective piece of consumer legislation, increasing the financial feasibility of bringing suits under the statute." (*Broughton v. Cigna Healthplans* (1999) 21 Cal. 4th 1066, 1085, 90 Cal. Rptr. 2d 334, 988 P.2d 67.)  Thus, a mandatory construction of the word "shall" in section 1780(d) is consistent with the legislative purpose underlying the statute.

*Kim v. Euromotors West/The Auto Gallery*, 149 Cal. App. 4th 170, 178 (2007).

Here, the Class has recovered a Settlement with a total value of $12,000,000.  The Class is thus the "prevailing party," and a fee award to Class Counsel is mandatory under the CLRA.

## V.   CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE

Under Ninth Circuit standards, a District Court may award attorneys' fees under either the "percentage-of-the-benefit" method or the "lodestar" method.  *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Class Counsel's fee request is fair and reasonable under either of these methods.

### A.   The Percentage Of The Benefit Method

Under the common fund doctrine, courts typically award attorneys' fees based on a percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorney's fee award of 33% of the recovery).

#### 1.   The Total Value Of The Settlement Fund Is $12 Million

To calculate attorneys' fees based on the percentage of the benefit, the Court must first determine the value of the Settlement Fund.  In doing so, the Court must include the value of the benefits conferred to the Class, including any attorneys' fee and cost payments to be made.  *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 972-74 (9th Cir. 2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th Cir. 2012).  Stated otherwise, California courts

1   include the requested attorneys' fees when calculating the total value of the settlement fund.  *Lealao*

2   *v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).  Thus, "the sum of the two amounts

3   ordinarily should be treated as a settlement fund for the benefit of the class …."  *Consumer Privacy*

4   *Cases*, 175 Cal. App. 4th 545, 554 (2009) (quoting the Manual for Complex Litigation § 21.71 at

5   525 (4th ed. 2008).  Moreover, the Court must not consider the total monetary amount distributed to

6   the Class; rather, the Court should only consider the amount *made available* to the Class.  As

7   articulated in *Young v. Polo Retail, LLC*, 2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007),

8   Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being

9   made available rather than the amount actually paid out.  *Id*. at *23 (citing  *Williams v. MGM-Pathe*

10   *Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (ruling that a district court abused its discretion in

11   basing attorney fee award on actual distribution to class instead of amount being made available).

12   Here, however, since the settlement fund is fully subscribed by the world-record number of claims

13   filed, there is no difference between the amount made available and the actual payout.

14          The total value of the Settlement Fund is $12 million, comprising $8 million in cash and $4

15   million in product vouchers.

16                  **2.      The $4 Million In Product Vouchers Are Worth $4 Million**

17          The $12 million valuation of the Settlement Fund necessarily values the $4 million in product

18   vouchers at their face value, or 100 cents on the dollar.  This is consistent with the Ninth Circuit's

19   approach in *In re Online DVD-Antitrust Litig.* ("*Online DVD*"), 779 F.3d 934 (9th Cir. 2015), which

20   unambiguously held that gift cards or vouchers should be valued at 100 cents on the dollar for

21   purposes of calculating attorneys' fees under the percentage-of-the-benefit method.

22          *Online DVD* concerned antitrust allegations that Wal-Mart and Netflix (before it changed its

23   business to online streaming video) had made an anti-competitive agreement to divide the two

24   companies' DVD-related business.  *Id.* at 940.  In the settlement agreement, "Walmart agreed to pay

25   a total amount of $27,250,000, comprising both a 'Cash Component' and a 'Gift Card Component,'"

26   whereby class members could receive a Wal-Mart gift card at their election.  *Id.* at 941.  This gift

27   card "could only be used at the Walmart website and was freely transferrable, although it could not

28   be resold."  *Id*.  The district court subsequently "approved attorneys' fees of $6,812,500 (25% of the

total fund of $27,250,000), reimbursement of some litigation expenses totaling $1,700,000, incentive awards of $5,000 each for nine class representatives (totaling $45,000), and payment of notice and administration costs out of the fund." *Id.* at 941.

When making its fee award of 25% of the common fund, or $6,812,500, the district court valued the vouchers at 100 cents on the dollar. This award was affirmed on appeal:

> The district court did not err in approving the fee award. Plaintiffs' class counsel asked for attorneys' fees in the amount of 25% of the overall settlement fund of $27,250,000 and the district court granted class counsels' request. …
>
> Objectors contend that the Walmart gift cards are coupons and fall under CAFA and, as a result, the district court erred by calculating the fee award as a percentage of the overall settlement fund, including the total dollar value of the gift cards, instead of calculating the portion of the fee award based on the gift cards as a percentage of the gift cards that were actually redeemed.
>
> The district court correctly held that the Walmart gift cards in this settlement do not constitute a coupon settlement that falls under the umbrella of CAFA.

*Id.* at 949-50.

Judge Hamilton's decision in *In re Alexia Foods, Inc. Litig.*, No. 12-cv-01546 (N.D. Cal. Dec. 12, 2013) similarly valued product vouchers at 100 cents on the dollar when making a percentage-of-the-benefit fee award. *Alexia* involved claims that Alexia-brand potato chips and oven fries were mislabeled as "natural" or "all natural" when in fact they contained disodium dihydrogen pyrophosphate. In *Alexia*, the settlement provided for a common fund of $3.2 million, which was comprised of $2.5 million in cash and $700,000 in vouchers toward future purchases of Alexia-brand products. *See* 10/30/15 Bursor Decl., Ex. M, at 8:20-21 (transcript of the final fairness hearing in *Alexia*). At the final fairness hearing, Judge Hamilton approved the requested attorneys' fees of $800,000, which is exactly 25% of the common fund, valuing the vouchers at 100 cents on the dollar. *See id.* at 20:6-21:24.

To put it simply, a dollar's worth of tuna is worth a dollar. This is tautological. But it is also true. There is no basis in fact or in law for any discount. More importantly, the Ninth Circuit's *Online DVD* decision is binding and controlling authority on the question.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES CASE NO. 13-CV-00729-HSG

7

1     It is also important to note that CAFA's restrictions on coupon settlements do not apply

2 because the product vouchers, like the "gift cards" in *Online DVD*, are not "coupons." The Ninth

3 Circuit's discussion of this distinction is important:

4           We conclude the district court properly decided that the portion of
            the settlement that will be paid in Walmart gift cards was not a
5           "coupon settlement" within the meaning of [the Class Action
            Fairness Act ("CAFA")]. CAFA directs courts to apply heightened
6           scrutiny to coupon settlements. … Objectors contend that the
            Walmart gift cards are coupons and fall under CAFA and, as a result,
7           the district court erred by calculating the fee award as a percentage
            of the overall settlement fund, including the total dollar value of the
8           gift cards, instead of calculating the portion of the fee award based
            on the gift cards as a percentage of the gift cards that were actually
9           redeemed.
10
            The district court correctly held that the Walmart gift cards in this
11          settlement do not constitute a coupon settlement that falls under the
            umbrella of CAFA.
12
            …
13
            In CAFA's findings and purposes, Congress emphasized its concern
14          about settlements when class members receive little or no value,
            including settlements in which "counsel are awarded large fees,
15          while leaving class members with coupons or other awards of little
            or no value." Class Action Fairness Act of 2005, Pub. L. No. 109-2,
16          § 2, 119 Stat. 4 (2005). The Senate Judiciary Committee's Report
            offers more detail, stating that congressional hearings have exposed
17          class action settlements in which "class members receive nothing
            more than promotional coupons to purchase more products from the
18          defendants." The report goes on to give twenty-nine examples of
            problematic coupon settlements. The report cites and criticizes
19          coupon settlement awards that provide class members with "$30 to
            $40 discounts" on a future cruise, "a $5 to $10 voucher good for
20          future purchases of particular computer hardware or software
            products", "$1 off every subsequent $5 purchase" at a chain of
21          restaurants, "a 30 percent discount on selected products" during a
            one-week time period, $55 to use on a purchase of a new crib from a
22          defendant crib producer accused of making defective cribs, "$1.25
            off a $25 dollar [video] game", and so on.
23
            The Walmart-Netflix settlement differs from the settlements that
24          drew the attention of Congress. Affording over 1 million class
            members $12 in cash or $12 to spend at a low-priced retailer does
25          not leave them with "little or no value." The district court did not err
26          when it stated simply that "$12, while not a lot of money these days
27
28

1
2
3
4
5
6
7
8
9
10
11
12

> even at Wal-Mart, is $12." Moreover, this case is distinguishable from every single coupon-settlement example in the Senate report. The report focuses on settlements that involve a discount – frequently a small one – on class members' purchases from the settling defendant. [S]*ee also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D.Cal. 2010) (stating that $500 or $1000 rebates off the purchase of a new Honda or Acura vehicle are coupons and quoting *Fleury v. Richemont North America, Inc.*, No. C-05-4525 EMC, 2008 WL 3287154, at *2 (N.D. Cal. Aug. 6, 2008) for the proposition that coupons offer only "'a discount on another product or service offered by the defendant in the lawsuit'"). These discounts require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or services. The gift cards in this case are different. Instead of merely offering class members the chance to receive a percentage discount on a purchase of a specific item or set of items at Walmart, the settlement gives class members $12 to spend on any item carried on the website of a giant, low-cost retailer. The class member need not spend any of his or her own money ….

13  *Online DVD*, 779 F.3d at 949-51 (some internal citations omitted); *see also id.* at 951 (collecting a

14  number of district court opinions finding that gift cards are not coupons); *id.* at 952 ("[G]ift cards are

15  a fundamentally distinct concept in American life from coupons.").

16      Here, the vouchers display the same characteristics as the gift cards considered by the Ninth

17  Circuit in *Online DVD*. The Settlement Agreement provides that the vouchers:

18
19
20
21
22
23
24

> (a) shall have no expiration date, (b) shall be freely transferrable, subject to reasonable measures to prevent fraud, duplicating or counterfeiting of vouchers, (including but not limited to requirements concerning printing and authentication, and use of serial numbers, UPC coding, specialized ink and/or paper, watermarks, and/or holograms, and/or physical delivery – all subject to specification by StarKist), (c) shall, subject to retailer policies, be redeemable at any retailer that sells the StarKist Products, and (d) shall be redeemable in exchange for, or for discounts against, various StarKist-Branded Products, including at least the four varieties of product encompassed by the class definition.

25  *See* 5/14/15 Bursor Decl., Ex. 1 at 8-9. In addition, the vouchers for StarKist Tuna are of a sufficient

26  amount that Class Members will be able to acquire more product without going out of pocket at all.

27  *See Online DVD*, 779 F.3d at 950-51. The average retail price for a 5-ounce can of StarKist Chunk

28  Light in Water is 86 cents. A $4.68 voucher is enough to purchase five cans. This is an appropriate

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES
CASE NO. 13-CV-00729-HSG

9

recovery in a case where the Class's fundamental claim was that they were shorted on their prior tuna purchases.  Moreover, Class Members who opted for the vouchers, rather than cash, presumably want to purchase more StarKist products.  *See id.* at 952.  Accordingly, the Court should follow the example of *Online DVD* and *Alexia*, and value the vouchers at 100 cents on the dollar.  The vouchers will never expire, are freely transferrable, can be used at most major retailers, and can be applied towards a wide variety of StarKist products.

> **3.      All Relevant Factors Favor An Upward Departure From The Ninth Circuit's 25% Benchmark To 33.3%**

The Ninth Circuit established 25% of the common fund as a starting benchmark.  *Hanlon v. Chrysler Corp.*, 150 F.3d at 1029.  However, the 25% benchmark would be unreasonably low here. *See id.* at 148 ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989) (explaining that the benchmark should be "adjusted upward or downward" based on the unique circumstances of the case).

The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable:  (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).  Each of these factors points to a higher award in this case.  Here, a fee of 33.3% is reasonable for the reasons set forth below.

> **a.      Class Counsel Achieved Extraordinary Results For The Class**

The first factor cited by *Vizcaino* to justify an upward adjustment to the 25% benchmark was that Class Counsel "achieved exceptional results for the class."  *Vizcaino*, 290 F.3d at 1048.  As noted above, this settlement has set a world record.  More claims have been filed by more Class Members in this case than in any other case in the history of class actions.  At last count, 2,359,877 Class Members had filed claims, which will be paid at $2.11 cash or $4.68 in product vouchers. 10/30/15 Bursor Decl. ¶ 66.  These payments represent full recovery for purchases of as many as 14

1    to 120 cans of tuna purchased during the Class Period.  *Id.* ¶ 67.  At these levels, most Class

2    Members will be fully compensated for their alleged losses.  Some will no doubt recover more than

3    the full amount of their actual damages.

4           It is well known that claims rates in consumer class actions are often very low.[3]  This case

5    presents the very best example of the class action device being used to its best effect.  Here, millions

6    of Class Members have chosen to participate in this settlement.  Each of them will receive full

7    recovery, or perhaps more, without the uncertainties and delays of continued litigation.  This case

8    has provided more justice to more class members than any case in history.  While attorneys filing fee

9    applications often lay claim to "extraordinary results," here that claim is backed up by hard,

10   objective data.  Based on the number of claims filed, and the claim amount compared to Class

11   Members' actual losses, these are the best results ever accomplished in any class action in history.

12                  **b.     Plaintiff's Novel Claims Carried Substantial Litigation Risk**

13          The second factor cited by *Vizcaino* to justify an upward adjustment to the 25% benchmark

14   was that the case was "extremely risky for class counsel."  *Vizcaino*, 290 F.3d at 1048.  That was

15   certainly true here as well.  Class Counsel undertook significant financial risk in prosecuting this

16   case.  This was the first case filed by a private plaintiff concerning the alleged underfilling of canned

17   tuna products under 21 C.F.R. § 161.190.  The only other similar case was filed on August 2, 2012

18   by the district attorneys of Riverside, Marin, and San Diego Counties, which included a

19   contemporaneous settlement and no motion practice.  *See* 10/30/15 Bursor Decl. ¶¶ 3-4.

20   Accordingly, Class Counsel brought these novel claims without any guiding precedent.

21          Due to the novel nature of these claims, Class Counsel faced several significant sources of

22   litigation risk.  For example, StarKist's motion to dismiss was largely based on arguments

23   concerning preemption and the doctrine of primary jurisdiction under the federal Food, Drug and

24   Cosmetic Act ("FDCA").  *See id.* ¶ 15.  After its motion was denied in part, StarKist filed a motion

25   for reconsideration in connection with certain regulatory developments, namely that it had been

---

26   [3] *See* William B. Rubenstein, *Newberg on Class Actions* § 12:17 (5th ed. 2014) ("A threshold
27   consideration in thinking about the class action claiming process is the fact that most class members
     will never step forward and file claims for relief in most class actions.  …  Given the small value of
28   most class action claims, it should not be surprising that few class members bother to spend the time
     filing a claim.").

1   granted a Temporary Marketing Permit ("TMP") from the U.S. Food and Drug Administration to

2   "test market[] canned tuna that varies from the applicable standard of identity" in 21 C.F.R.

3   § 161.190 by using a drained weight methodology for a period of 15 months.  *See id.* ¶ 18.  Despite

4   these challenges, Class Counsel moved the case forward diligently and successfully, ultimately

5   obtaining a $12,000,000 settlement.

6                       **c.**      **Class Counsel Generated Benefits Beyond The Settlement Fund**

7           The third factor cited by *Vizcaino* to justify an upward adjustment to the 25% benchmark was

8   that "counsel's performance generated benefits beyond the cash settlement fund."  *Vizcaino*, 290

9   F.3d at 1049.  That is true here as well.  Even after reaching agreement with StarKist, Class Counsel

10  continued to vigorously advocate to maximize the benefits to the Class.  For example, the cost to

11  process more than 2.3 million claims and mail each claimant a check or voucher will be significant,

12  and the funds to pay for this will be taken from the Settlement Fund.  To minimize these costs, and

13  maximize the settlement benefits to Class Members, Class Counsel implemented a competitive

14  bidding process to select a claims administrator.  Class Counsel solicited bids from four prospective

15  claims administrators.  One of those four, KCC Class Action Services, LLC, agreed to cap their costs

16  at $675,000, which led to their selection and Court appointment as claims administrator.  *See* 7/23/15

17  Order Granting Preliminary Approval at 3 ("The settlement administrator's actual costs and

18  expenses in carrying out its duties are capped at $675,000.").  This will save the Class approximately

19  $2 million in administrative expenses that would have been paid from the Settlement Fund.  By

20  striking a hard bargain with KCC, Class Counsel has thus garnered even more value for Class

21  Members than the settlement originally provided.

22                      **d.**      **Market Rates As Reflected By Awards In Similar Cases**

23          The fourth factor cited by *Vizcaino* to justify an upward adjustment to the 25% benchmark

24  was market rates as reflected by awards in similar cases.  *Vizcaino*, 290 F.3d at 1049 ("Fourth, the

25  court found the 28% rate to be at or below the market rate.").  Given the novelty, complexity, and

26  difficulty of litigating this first-ever private-plaintiff case concerning the under-filling of canned

27  tuna, no lawyer competent to litigate this action would agree to do so for a 25% contingency fee.

28  *See* 10/30/15 Bursor Decl. ¶ 88.  Indeed, given the need to advance expenses exceeding $150,000

1    out-of-pocket, and possibly more if the case proceeded beyond class certification, it would be

2    difficult to find any lawyer willing to take this case for such a modest fee. *Id.* Bursor & Fisher was

3    the only law firm in the United States willing to step forward and commit the resources to bring this

4    case. *Id.* And for cases where class members are plentiful and easily identified (*i.e.*, anyone in the

5    U.S. that purchased StarKist tuna), it is not unusual for numerous firms to file copycat cases and

6    compete for appointment as lead class counsel. *Id.* But here, with essentially no barrier to entry, no

7    other law firm stepped forward. *Id.* The absence of any competition for appointment to represent

8    this Class was a function of the perceived difficulty of this case. *Id.* These facts reflect that even the

9    33.3% contingent fee requested is probably below market rates for a case of such novelty,

10   complexity, and difficulty. *Id.*

11          The inadequacy of the 25% benchmark based on market rates is further illustrated by

12   numerous awards ranging from 30% to 40% in similar cases.   For example, when awarding 32.8%

13   of the settlement fund for fees and costs, Judge Patel explained:  "absent extraordinary

14   circumstances that suggest reasons to lower or increase the percentage, the rate should be set at

15   30%[,]" as this will "encourage plaintiffs' attorneys to move for early settlement, provide

16   predictability for the attorneys and the class members, and reduce the time consumed by counsel and

17   court in dealing with voluminous fee petitions." *In re Activision Sec. Litig.*, 723 F. Supp. 1373,

18   1378-79 (N.D. Cal. 1989); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378-79 (affirming

19   attorney's fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded);

20   *Morris*, 54 Fed. App'x at 663 (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley*

21   *Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five recent class actions where federal

22   district courts approved attorney fee awards ranging from 30% to 33%); *Martin v. AmeriPride*

23   *Servs., Inc.*, 2011 U.S. Dist. LEXIS 61796, at *23 (S.D. Cal. June 9, 2011) (noting that "courts may

24   award attorneys fees in the 30%-40% range in … class actions that result in recovery of a common

25   fun[d] under $10 million"); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at

26   *22-23 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and

27   holding that award was similar to awards in three other cases where fees ranged from 33.33% to

28   40%); *Ingalls v. Hallmark Mktg. Corp.*, 2009 U.S. Dist. LEXIS 131081 (C.D. Cal. Oct. 16, 2009)

(awarding 33.33% fee on a $5.6 million common fund settlement); *Rippee v. Boston Mkt. Corp.*, No. 05-CV-1359 TM (JMA) (Dkt. No. 70, at 7) (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million in a common fund settlement).

>   **e.**    **The Contingent Nature Of The Fee And Financial Burden Borne By Class Counsel**

The fifth factor cited by *Vizcaino* to justify an upward adjustment to the 25% benchmark was the contingent nature of the fee and the financial burden carried by the plaintiffs.   *Vizcaino*, 290 F.3d at 1050.  Class Counsel devoted more than 2,900 hours and $1.3 million in billable time to this matter over the course of 3 years of litigation with no payment, and no guarantee of payment absent a successful outcome.  Class Counsel also advanced more than $150,000 in out-of-pocket expenses, again with no guarantee of repayment.  If the case had advanced beyond class certification, these expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several years to litigate this action through judgment and appeals.  It is also significant to note that, due to the commitment of time and capital required to litigate this action, Class Counsel had to forego significant other work in late 2014 and early 2015, including work for paying clients billed by the hour on a non-contingent basis, as well as other class action cases.  10/30/15 Bursor Decl. ¶ 89.

>   **f.**    **The Quality Of Work By Class Counsel**

Though not a factor discussed in *Vizcaino*, Class Counsel respectfully submits that the high quality of our work on this case is another factor supporting an upward departure from the 25% benchmark.  The prosecution of a complex, nationwide class action "requires unique … skills and abilities."  *In re OmniVision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (citation omitted) (internal quotation marks omitted).  This case involved matters that required a significant amount of highly skilled work, including:  (1) extensive pre-litigation investigation and retaining an independent laboratory to test StarKist Tuna for compliance with the federal standard of fill, *see* 10/30/15 Bursor Decl. ¶ 5; (2) serving public record requests pursuant to the California Public Records Act on the District Attorneys of Riverside and San Diego Counties, as well as to the California Department of Food and Agriculture, *see id.* ¶ 7; (3) litigating a motion to transfer, motion

to dismiss, and motion for reconsideration, *see id.* ¶¶ 15-18; (4) serving 3 rounds of document requests, reviewing tens of thousands of pages of documents, taking the depositions of 5 current or former StarKist employees – four of whom were paid by StarKist's counsel to influence their testimony on highly technical subjects related to the operation of StarKist's packing facilities, machinery, and testing for compliance with the standard of fill, *id.* ¶ 29; (5) taking an additional 3 expert depositions, *see id.*; (6) producing documents and defending the Class Representative's deposition, *see id.* ¶¶ 25, 30; (7) defending an additional 2 expert depositions, *see id.* ¶ 30; (8) litigating numerous discovery disputes, *see id.* ¶¶ 26-28; (9) preparing and filing a motion for class certification, motion to intervene, and motion for sanctions concerning StarKist's payment of fact witnesses, *see id.* ¶¶ 33-38; (9) engaging in two rounds of mediations and subsequent settlement negotiations, *see id.* ¶¶ 39-47; (10) preparing a motion to enforce a settlement term sheet without a final class action settlement agreement, *id.* ¶ 47; and then (11) litigating a contested motion for preliminary approval of the plan of allocation of the settlement proceeds, *id.* ¶¶ 56-59.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel.  *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 635-36 (D. Colo. 1976).  StarKist is represented by Eckert Seamans Cherin & Mellott, LLC and Hogan Lovells US LLP, two prominent national and international law firms with extensive experience in class action litigation.  Class Counsel's ability to obtain a favorable Settlement in the face of this sophisticated legal adversary reflects its superior work quality.

**B.    The Requested Attorneys' Fees Are Reasonable Under A Lodestar Cross-Check**

Courts in the Ninth Circuit often examine the lodestar calculation as a crosscheck on the percentage fee award to ensure that counsel will not receive a "windfall."  *Vizcaino*, 290 F.3d at 1050.  The cross-check analysis is a two-step process.  First, the lodestar is determined by multiplying the number of hours reasonably expended by the reasonable rates requested by the attorneys.  *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000).  Second, the court determines the multiplier required to match the lodestar to the percentage-of-the-fund request

made by counsel, and determines whether the multiplier falls within the accepted range for such a case.  Here, the lodestar cross-check confirms the reasonableness of the requested fee.

The hours worked, lodestar fee, and expenses of Class Counsel are set forth in the declaration of Mr. Bursor, submitted herewith.  As of October 27, 2015, Class Counsel had worked 2,900.5 hours on this case for a total lodestar fee, at current billing rates, of $1,344,720.  10/30/15 Bursor Decl. ¶ 73.  This represents a blended hourly rate of less than $464, which is well within the bounds of reasonable hourly rates in this District.  *See id.* ¶ 85.  A fee award of 33.3%, or $4,000,000, would represent a multiplier of 2.97 over the base lodestar fee.  *Id.* ¶ 74.  *See also* Parts V.C.2.a – V.C.2.d, below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar). This multiplier falls well within the accepted range in the Ninth Circuit, and is reasonable.  *See*, *e.g.*, *Vizcaino*, 290 F.3d at 1051 (approving fee after lodestar crosscheck resulted in a multiplier of 3.65); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving fee award resulting in a multiplier of 5.2, and collecting similar cases).  The modest multiplier provided by the lodestar cross-check demonstrates that the percentage fee sought by Class Counsel is fair and reasonable.

Class Counsel also incurred out-of-pocket expenses totaling $150,949.22.  Each of these expenses is itemized in Exhibit C to Mr. Bursor's Declaration.  Each was a necessary expense to the prosecution of this case.  10/30/15 Bursor Decl. ¶¶ 76-77.

## C.  The Court May Alternatively Grant The Requested Attorneys' Fees Under The Lodestar Method

Under Ninth Circuit standards, a District Court may award attorneys' fees under the "lodestar" method.  *Hanlon*, 150 F.3d at 1029.  The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience.  *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.  The resulting lodestar figure may be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to:  (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70

(9th Cir. 1975).[4]  Courts typically apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed.  *Vizcaino*, 290 F.3d at 1051.

       **1.**      **Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate**

Class Counsel worked very efficiently.  A single law firm, Bursor & Fisher, served as Class Counsel.  There was no duplication of effort.  Class Counsel have submitted their detailed daily billing records showing what work was done and by whom, as Exhibit B to Mr. Bursor's declaration.  These records confirm Bursor & Fisher's efficient billing.  For example, Bursor & Fisher strives to assign as much work as possible to less senior lawyers who bill at lower hourly rates in order to minimize fees for the Class.  More than 58% of the hours (1,699.1 hours) were billed by associates.  10/30/15 Bursor Decl. ¶ 85.  However, this was a novel case that involved a lot of original work, which required significant involvement by more experienced lawyers.  Bursor & Fisher partners billed 30% of the hours (872.2 hours), primarily on developing the litigation strategy, taking key depositions, editing briefs on dispositive motions, making court appearances, and negotiating the settlement.  *See id.*  Most depositions were handled by a single lawyer, though some of the more complex depositions were staffed by a partner and associate.  *See id.*

StarKist was represented by very able counsel from two of the largest law firms in the United States.  This case was hard fought – right up through the preliminary approval motion, which involved a hotly contested issue concerning the plan of allocation and what the per-claim payout should be.  Given the number of contested motions, the volume of discovery, the nature of the litigation, and the difficulty of the settlement negotiations, the number of hours Class Counsel spent was reasonable.

---

[4] *Kerr* identifies twelve factors for analyzing reasonable attorneys' fees:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES
CASE NO. 13-CV-00729-HSG

17

1    The blended hourly rate for Bursor & Fisher's work of $464 is quite reasonable.  *See id.* ¶ 85.

2   And the hourly rates for each of the lawyers who staffed the case, which are set forth in the Bursor

3   Declaration and exhibits thereto, are also reasonable and amply supported by the evidentiary

4   material submitted with the Bursor Declaration.  *See id.* ¶¶ 68-71 & Exs. A-B.

5           2.      **All Relevant Factors Support Applying A Multiplier To Class Counsel's
                    Lodestar**

6

7           The lodestar analysis is not limited to the initial mathematical calculation of class counsel's

8   base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class

9   Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed

10  within the initial calculation of hours reasonably expended at a reasonable rate."  *Hensley v.*

11  *Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a

12  historical review of numerous class action settlements, the Ninth Circuit found that lodestar

13  multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare

14  majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n.6; *see also Alba Conte &*

15  *Herbert B. Newberg, Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers

16  of 1 to 4 are frequently awarded).  Yet state and federal courts often approve multipliers of 4 or

17  more.[5]

18          In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth

19  Circuit has directed district courts to consider the time and labor required, novelty and complexity of

20  the litigation, skill and experience of counsel, the results obtained, and awards in similar cases.

21  *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984); *Kerr*, 526 F.2d at 70.  All of the factors weigh

22  heavily in favor of the requested fee award in this action.  *Vizcaino*, 290 F.3d at 1051.

23  ─────────────
    [5] *See, e.g.*, *In re Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (approving multiplier of 4
    in securities class action); *Rabin v. Concord Assets Grp., Inc.*, 1991 U.S. Dist. LEXIS 18273
24  (S.D.N.Y. Dec. 19, 1991) (approving multiplier of 4.4 in securities class action); *Municipal Auth. of
    Bloomsburg v. Pennsylvania*, 527 F. Supp. 982 (M.D. Pa. 1981) (approving multiplier of 4.5); *In re
25  Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (approving multiplier of up to 5);
    *Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997) (approving multiplier of 5.5); *In re
26  Boston & Me. Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890 (1st Cir. 1985) (approving
    multiplier of 6); *Muchnick v. First Fed. Savs. & Loan Assoc. of Phil.*, 1986 U.S. Dist. LEXIS 19798
27  (E.D. Pa. Sept. 30, 1986) (approving multiplier of 8.3 in a consumer class action); *Cosgrove v.
    Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiplier of 8.74); *Perera v. Chiron Corp.*,
28  Civ. No. 95-20725-SW (N.D. Cal. 1999, 2000) (approving multiplier of 9.14; cited in California
    Class Actions and Coordinated Proceedings §15.05).

### a.  Novelty And Complexity Of This Litigation

This was one of only two cases ever filed asserting claims based on the alleged underfilling of canned tuna pursuant to 21 C.F.R. § 161.190.  This was the first such case brought by a private party.  The only other case was a district attorney action that was filed with a contemporaneous settlement, and involved no motion practice.  *See* 10/30/15 Bursor Decl. ¶ 3.  Thus, Class Counsel was faced with difficult legal and factual issues, which required creativity and sophisticated analysis.

As the Court is familiar, this action was hotly contested.  It required substantial original work, and significant risk that Class Counsel's efforts (and its out-of-pocket costs) would go uncompensated – since no private party had ever litigated this type of case before.  Settlement negotiations included multiple formal and informal discussions, which were complicated both in terms of the subject matter and damages analyses at issue.  *See id.* ¶¶ 39-47.

Therefore, a multiplier of 2.97, *see id.* ¶ 74, is well within the parameters used throughout this Circuit.  Indeed, in light of the novelty and complexity of this case, the trailblazing work it required, and concomitant risks to counsel, a substantially higher multiplier would be justified.

### b.  Class Counsel Provided Exceptional Representation Prosecuting This Complex Case

Class Counsel respectfully submits that the lawyers at Bursor & Fisher have conducted themselves in this action in a professional, diligent and efficient manner.  The lawyers at Bursor & Fisher have extensive experience in the field of class action litigation.  *See id.*, Ex. A (Bursor & Fisher's resume).  Additionally, litigation tasks were allocated to prevent "over-lawyering" and inefficiency.  The bulk of the work was performed by a small number of attorneys fully familiar with the complex factual and legal issues presented by this litigation.  This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort.

### c.  Class Counsel Obtained Excellent Class Benefits

As we pointed out above, this settlement has set a world record, with more claims filed than any class action in history.  And the per-claim payout provides full recovery (or more) to most Class Members.  This is why we can say, without hyperbole or exaggeration, that these are the best results ever accomplished in any class action in history.

MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES,
AND INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES
CASE NO. 13-CV-00729-HSG

19

1

**d.      Class Counsel Faced A Substantial Risk Of Nonpayment**

2

A critical factor bearing on fee petitions in Ninth Circuit courts is the level of risk of

3   non-payment faced by Class Counsel at the inception of the litigation.  *See*, *e.g.*, *Vizcaino*, 290 F.3d

4   at 1048.  The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that

5   any recovery would be obtained, are significant.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19

6   F.3d 1291, 1300 (9th Cir. 1994).   In *Wash. Pub. Power*, the Ninth Circuit recognized that:

7                         It is an established practice in the private legal market to reward
                        attorneys for taking the risk of non-payment by paying them a
8                         premium over their normal hourly rates for winning contingency
                        cases ….  [I]f this 'bonus' methodology did not exist, very few
9                         lawyers could take on the representation of a class client given the
                        investment of substantial time, effort, and money, especially in light
10                        of the risks of recovering nothing.

11

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted).

12

Throughout this case, Class Counsel expended substantial time and costs to prosecute a

13   nationwide class action suit with no guarantee of compensation or reimbursement in the hope of

14   prevailing against a sophisticated Defendant represented by high caliber attorneys.  *See* 10/30/15

15   Bursor Decl. ¶¶ 3-67.  Class Counsel obtained a highly favorable result for the Class, knowing that if

16   its efforts were ultimately unsuccessful, it would receive no compensation or reimbursement for its

17   costs.  This fact alone supports a finding that Class Counsel is entitled to a multiplier.

18

19   **VI.     CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY
          INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE
20          CLASS**

21

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of

22   $150,949.22 in prosecuting this litigation on behalf of the Class.  10/30/15 Bursor Decl., Ex. C.

23   These expenses are attached to the Declaration of Scott A. Bursor submitted herewith.

24

The Ninth Circuit allows recovery of litigation expenses in the context of a class action

25   settlement.  *See Staton*, 327 F.3d at 974.  Class Counsel is entitled to reimbursement for standard

26   out-of-pocket expenses that an attorney would ordinarily bill a fee paying client.  *See*, *e.g.*, *Harris v.*

27   *Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  These expenses include court fees, copying fees, courier

28   charges, legal research charges, telephone/facsimile fees, travel expenses, postage fees, court

reporter fees, videographer fees, transcript costs, and other related expenses.  10/30/15 Bursor Decl., Ex. C.

Each of these expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred.  *See id.* ¶ 76.

## VII.   THE REQUESTED INCENTIVE AWARDS FOR THE CLASS REPRESENTATIVE AND INTERESTED PARTIES ARE FAIR AND REASONABLE

In recognition of their efforts on behalf of the Class, and subject to the approval of the Court, StarKist has agreed to pay the Class Representative and Interested Parties up to $5,000 each (for a total of $45,000), as appropriate compensation for their time and effort serving as the class representatives in this litigation.

Incentive awards "are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  Incentive awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Incentive awards are appropriate when a class representative will not benefit beyond ordinary class members. For example, where a class representative's claim makes up "only a tiny fraction of the common fund," an incentive award is justified.  *Id.*, 901 F. Supp. at 299.

The requested amount of $5,000 for the Class Representative, Mr. Hendricks, is appropriate to compensate him for his efforts in bringing this action for the benefit of millions of Class Members.  Throughout the litigation, Mr. Hendricks held regular meetings with Class Counsel to receive updates on the progress of the case and to discuss strategy.  10/30/15 Bursor Decl. ¶¶ 94-95. He assisted in Class Counsel's pre-suit investigation by discussing his experiences and providing information on his purchase and use of StarKist Tuna, among other matters.  *Id.*  Mr. Hendricks

1    assisted in drafting the Complaint, and he reviewed the Complaint for accuracy before it was filed.

2    *Id.*  Mr. Hendricks coordinated with Class Counsel to form responses to all discovery requests

3    proffered by Defendant, including written interrogatories and documents requests, and he gathered

4    documents for production.  *Id.*  Mr. Hendricks sat for a day-long deposition.  *Id.*  Mr. Hendricks also

5    prepared and submitted a declaration in support of class certification.  *Id.*  He was intimately

6    involved in the settlement process, and has continued to keep abreast of settlement progress to date.

7    *Id.*  Mr. Hendricks also took significant time away from work and personal activities to initiate and

8    litigate this action.  *Id.*  He was prepared to litigate this case to a verdict if necessary.  *Id.*  His

9    dedication and efforts have conferred a significant benefit on millions of purchasers of StarKist Tuna

10   across the United States.  *Id.*

11          Because the Interested Parties had somewhat lesser involvement than Mr. Hendricks, we are

12   requesting incentive awards of only $1,000 apiece for them.  Though they did not participate in

13   discovery to the same extent as Mr. Hendricks, their involvement was substantial and added value

14   for the Class.  *Id.* ¶¶ 96-99.  First, Jayme Kaczmarek, Joseph Vallilo, and Joseph Ebin were prepared

15   to file their own actions in the U.S. District Courts for the districts of New Jersey, the Southern

16   District of Florida, and the Southern District of New York, respectively.  *Id.*  They had reviewed

17   and approved class action complaints which were ready to file in each of those districts.  However,

18   after consulting with Class Counsel, they ultimately decided to seek to intervene in the Northern

19   District of California for the sake of judicial efficiency and to reduce costs and fees for the Class.  *Id.*

20   Second, Joseph Ebin, Kelly Maucieri, Monica Rodriguez, Joseph Vallillo, and Jayme Kaczmarek

21   prepared and mailed pre-suit notice letters pursuant to U.C.C. § 2-607.  *Id.*  These notice letters were

22   mailed in anticipation of their involvement as class representatives.  *Id.*  Third, Laury Smith, Brian

23   Andacky, Joseph Vallillo, and Ben Hall moved to intervene as named plaintiffs on January 20, 2015.

24   *Id.*  Accompanying their motion to intervene was a fully-drafted Complaint-In-Intervention, which

25   each of these parties helped draft and reviewed for accuracy before it was filed.  *Id.*  However, due to

26   the settlement, their motion was never adjudicated.  *Id.*  Yet, as discussed in their motion, each was

27   prepared to fulfill the duties of a Class Representative.  *Id.*  Fourth, the Interested Parties assisted in

28

1    Class Counsel's pre-suit investigation by discussing their relevant experiences and providing

2    relevant information on their purchases and use of StarKist Tuna, among other matters.  *Id.*

3         In the judgment of Class Counsel, the participation of  the Interested Parties greatly

4    enhanced the settlement value of the case because there was a substantial risk that choice-of-law

5    issues might have precluded nationwide certification, and required a state-by-state approach.  *Id.*

6    ¶ 100.  Having the Interested Parties standing by to represent statewide classes of 4 of the most

7    populous States strengthened Class Counsel's hand in settlement negotiations, and enabled Class

8    Counsel to persuade StarKist to put more money into the Settlement Fund.  *Id.*  With this in mind,

9    each of the Interested Parties participated in the settlement negotiations, and reviewed and executed

10   the Settlement Agreement.  *Id.*

11        Accordingly, very modest incentive awards for the Interested Parties of $1,000 apiece are fair

12   and reasonable.  *See*, *e.g.*, *Van Vranken*, 901 F. Supp. at 299-300 (incentive award of $50,000);

13   *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 at *51-52 (N.D. Cal. Jan. 26, 2007)

14   (awarding $100,000 divided among four plaintiffs in overtime wages class action); *Harris v. Vector*

15   *Mktg. Corp.*, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb. 6, 2012) (awarding $12,500 service

16   award); *Bond v. Ferguson Enters.*, 2011 U.S. Dist. LEXIS 77692 (E.D. Cal. July 18, 2011)

17   (approving service awards of $11,250); *Trujillo v. City of Ontario*, 2009 U.S. Dist. LEXIS 79309

18   (C.D. Cal. Aug. 24, 2009) (approving service awards of $30,000).

19   **VIII.   CONCLUSION**

20        Class Counsel, the Class Representative, and the Interested Parties worked on this case for

21   more than 3 years.  That work produced a benefit to Class Members in the form of a $12 million

22   Settlement Fund.  We now seek to be paid fairly for that work.  Class Counsel, the Class

23   Representative, and the Interested Parties therefore respectfully request that the Court approve:

24   •    $4,000,000 in attorneys' fees for Class Counsel, representing 33.3% of the Settlement

25        Fund;

26   •    $150,949.22 in reimbursement of Class Counsel's out-of-pocket expenses; and

27   •    Incentive awards to the Class Representative of $5,000 and to the Interested Parties of

28        $1,000 apiece.

1    For the foregoing reasons, these amounts are fair and reasonable and should be approved.

2

3    Dated:  October 30, 2015                    Respectfully submitted,

4                                                **BURSOR & FISHER, P.A.**

5
                                                 By:  /s/ *Scott A. Bursor*
6                                                         Scott A. Bursor

7                                                Scott A. Bursor (State Bar No. 276006)
                                                 Neal J. Deckant (admitted *pro hac vice*)
8                                                888 Seventh Avenue
                                                 New York, NY  10019
9                                                Telephone: (212) 989-9113
                                                 Facsimile:  (212) 989-9163
10                                               E-Mail: scott@bursor.com
                                                         ndeckant@bursor.com
11
                                                 **BURSOR & FISHER, P.A.**
12                                               L. Timothy Fisher (State Bar No. 191626)
                                                 Julia A. Luster (State Bar No. 295031)
13                                               1990 North California Boulevard, Suite 940
                                                 Walnut Creek, CA 94596
14                                               Telephone:  (925) 300-4455
                                                 Facsimile:  (925) 407-2700
15                                               E-Mail: ltfisher@bursor.com
                                                         jluster@bursor.com
16
                                                 *Class Counsel*
17

18

19

20

21

22

23

24

25

26

27

28