Steve A. Miller (State Bar No. 171815)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
Ph# (314) 522-2312
Fax:  (314) 524-1519
Email:  jef@fortmanlaw.com

John C. Kress
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO  63111
Ph.#:  (314) 631-3883
Fax:  (314) 332-1534
Email:  jckress@thekresslawfirm.com

Attorneys for Objector Kelly Marie Spann

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated, | Case No. 13-cv-00729-HSG |
| Plaintiff; | **OBJECTION TO COURT APPROVAL OF SETTLEMENT AGREEMENT AND CLASS COUNSELS' MOTION FOR FEES BY CLASS MEMBER KELLY MARIE SPANN** |
| v. | |
| STARKIST CO., | |
| Defendant. | |
| . | |

COMES NOW Class Member Kelly Marie Spann, by and through counsel, and hereby files her objection to the proposed class action settlement and the motion for attorneys' fees.  Class Member Kelly Marie Spann states that she is a resident of Florissant, Missouri[1], and purchased products from Defendant as set forth in the attached Claim Form Receipt. Class Member Kelly Marie Spann objects for the reasons set forth below:

## Standard of Review

The 9th Circuit will "review a district court's approval of a proposed class action settlement for abuse of discretion." _Dennis v. Kellogg Co_, 697 F.3d 858, 864 (9th Cir., 2012) citing _Nachshin v. AOL, LLC_, 663 F.3d 1034, 1038 (9th Cir. 2011).  A trial court abuses its discretion "when it fails to apply the correct legal standard or basis its decision on unreasonable findings of fact." _Id._

It is a fundamental principal that "appellate review of a settlement agreement is generally extremely limited", but where class counsel has negotiated a settlement before certification has occurred requires that courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations". _Kellogg Co., 697 F.3rd at 864, citing In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)._ Therefore, approval of a settlement "requires a higher standard of fairness" along with "a more probing inquiry than may normally be required under Rule 23(e)." _Kellogg Co., 697 F.3rd at 864._  Surviving appellate review under these circumstances requires that "the district court must show it has explored comprehensively all factors" and must give a "reasoned response" to all non-frivolous objections. _Id._

---

[1] Class Member Kelly Marie Spann does not wish to provide her home address in a publicly-filed document.  Ms. Spann's address is available through her counsel upon request.

**I.      The proposed settlement is unfair and inadequate as the primary relief offered to class members consists of overvalued cans of StarKist Tuna which is nothing more than a coupon settlement that does not have the value of $4 million, and should not be the basis for the award of attorney's fees.**

Ordinarily, a coupon settlement is viewed as a rarity, like hooking the Devils Hole Pupfish (*Cyprinodon diabolis*)[2], and considered unique when discovered or presented to a court by the parties. *Managing Class Action Litigation: A Pocket Guide for Judges*, *Barbara J. Rothstein & Thomas Willging, 3rd ed., 2010, p. 18 (referred to herein as "Pocket Guide")*("Coupon settlements were rare even before the passage of CAFA."). Courts typically seek information from the parties as to whether the coupons are transferrable, can be discounted or converted to cash, "compare favorably with bargains generally available to a frugal shopper" and whether the coupons are likely to be redeemed by class members. *Id.*

A "coupon settlement" is rejected where "in kind compensation" is proposed as the relief provided to class members. *Synfuel Technologies v. Dhl Express (USA), 463 F.3d 646, 654 (7th Cir., 2006).*  In *Synfuel*, the court of appeals rejected a settlement where the class members were to receive pre-paid Letter Express envelopes instead of cash, with the court determining that the proposed settlement only benefited those class members who would continue to utilize Defendant's services and that the fairness of the settlement "must be evaluated primarily based on how it compensates class members for these past injuries." *Id.* ("Our confidence in the fairness of the settlement is further undermined by the agreement's bias toward compensating class members with pre-paid Letter Express envelopes instead of cash."). Here, free tuna is offered to the class members.   Indeed, the only way to avail oneself of the maximum benefit offered is to do more business with Defendant StarKist or make a reduced claim from a fund of just over $3 million available for every consumer in the United States to claim.

---

[2] Bittel, Jason "Should We Really Save the Devils Hole Pupfish? They're an inch long.  There are fewer than 100 left. Is it worth the effort?" Earthwire Magazine, www.onearth.org/earthwire. 2014.

Compensation in kind "is worth less than cash of the same nominal value since, as is typical with coupons, some percentage of the pre-paid envelopes claimed by class members will never be used and, as a result will not constitute a cost to Airborne [Defendant]. *Synfuel Technologies*, 463 F.3d at 654, citing *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001). Here, the $4 million in canned tuna should be valued at far less- at least half that amount.  This alone serves as further justification for a reduction in the attorney's fees awarded, and such reduction should be passed on to the class members who can claim the cash disgorged by class counsel as additional pecuniary benefit which will offset the meager catch presented by Class Counsel.

The modern view is for courts to view coupon based settlements with skepticism, as the reality is that most consumers will not redeem the coupons that are issued, making the relief obtained worthless to the consumer.  S*ee Christopher R. Leslie, "The Need to Study Coupon Settlements in Class Action Litigation", 18 GEO. J. Legal Ethics 1395, 1396-97 (2005)* (Identifying three problems with coupon settlements: 1) it is doubtful that they "provide meaningful compensation to most class members"; 2) they often "fail to disgorge ill-gotten gains from the defendant; and 3) they may force class members "to do future business with the defendant.") *accord, Synfuel Technologies, 463 F.3d at 653.*

Here, dumped upon the Court's dock is $4 million in tuna vouchers which the class members are free to claim from the "Settlement Fund." (Stlmt Agrmt. Doc # 183-1, p. 13, par. 2.1 b.).  However, what the class members take home from the dock after the day's catch is subject to further reduction if too many class members submit claims for tuna vouchers:

> If, pursuant to the Court-Ordered Allocation Plan, the amount of voucher value in the Voucher Settlement Fund is insufficient to satisfy all valid Settlement Class Member Voucher Claims, individual Voucher Claims shall be reduced on a pro-rata basis as described in paragraph 2.7 below.

(Stlmt Agrmt. Doc #183-1, p. 15, par. 2.4 c "Voucher Payment").   Here, there are no guarantees on just what exactly the class members "tuna value" will be when they redeem the vouchers.  This is illusory, and attorney's fees cannot be based upon such an elusive catch as promoted by Class Counsel.   This Court should not approve a proposed settlement where the primary means of compensating the class members is payment in canned tuna.

Indeed, forcing Class Members to do future business with StarKist is a problem that this Court should look into further.  *Syfuel Technologies, supra.*  Without offering the Class Members in question the option of receiving cash refunds that is the equivalent of the tuna offered, it instead forces these particular Class Members to "do future business with StarKist" if they wish to maximize their recovery. *Geoffrey P. Miller & Lori Singer, "Nonpecuniary Class Action Settlements," 60 Law & Contemp. Probs, 97, 108 (1997)* (noting that for many consumers "the right to receive a discount [or a coupon] will be worthless.") *accord, Synfuel Technologies, 463 F.3d at 653.*   A coupon settlement may benefit certain groups of the class more than others. *In re General Motors Corp. Pick-Up Truck Fuel Tank, 55 F.3d 768 (3rd Cir. 1995).* Here, the class members that will, presumably, benefit the most are those class members who want to stock up on tuna.

In addition, CAFA requires this Court to scrutinize the proposed coupon settlement "and restricts the use of unredeemed coupons in calculating fees for class counsel. Pocket Guide, p. 18 ("It is important to discern whether attorney fees are being calculated using the face value of the coupons instead of the value of coupons actually redeemed.").  The Pocket Guide strongly suggests that trial courts ". . . hold back the portion of any attorney fee awards that is linked with coupons, discounts, or other nonmonetary benefits until after the redemption period has ended and the value of the benefits can be established by calculating class members' actual use." (*Pocket Guide, p. 34, A. Evaluating monetary and nonmonetary results achieved).*

Indeed, over half the class members' recovery, or benefit,  is based upon canned tuna vouchers.  If this Court is still persuaded to approve this settlement, it should refrain from entering an award of attorney's fees until it is established just how many class members actually redeemed the vouchers they received through the claims process. This approach is consistent with the Pocket Guide, "Determining the precise value to the class of the rare beneficial coupon settlement, though, calls for hard data on class members' redemption of the coupons (*Pocket Guide, p. 18, Hot Button Indicators- 1.Coupons*).

This Court should deny the proposed settlement at this time as the primary relief offered to consumers is nothing more than a chance at a canned tuna voucher that may not have the same value after all claims are submitted.  Moreover, the class members should not be forced to guess at what the ultimate value is of their claim or what they are receiving, while Class Counsel is guaranteed $4 million in attorney's fees.

**II.     The Proposed Settlement is neither fair nor adequate as Class Counsel is Seeking Half of the Cash Settlement Fund as an Award of Attorney's Fees, making the cash amount available for the class less than $4 million.**

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." <u>Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir., 2003).</u>        Here, the "Cash Settlement Fund" is $8 million ($8,000,000.00) (Stlmt Agrmt. Doc 183-1, p.11, par. 1.25 a.).  However, half that amount is already earmarked for attorney's fees.  Settlement costs "estimated by the Settlement Administrator to be no more than $675,000." (Stlmt Agrmt, Doc 183-1, p. 10, par. 1.17 "Notice and Other Administrative Costs").  The actual amount of cash on hand to pay consumer claims is well under $4 million, making this settlement fund illusory.  The remaining $4 million is a "fund" of tuna vouchers.

Indeed, Class Counsel expects insufficient funds to become an issue for the class members and will then reduce the class members' compensation for money on "a pro rata basis." (Stlmt Agrmt. Doc #183-1, p. 14, par. 2.4 a "Cash Payment.").   Those class members hoping to cast their line and catch dollars are ultimately going to receive less of a catch in this proposed settlement:

> If, as of the Final Settlement Approval Date, the cash amount available for the Cash Settlement Fund to satisfy valid Cash Claims is less than the total cash value of valid Cash Claims, cash payments will be reduced on a pro-rata basis, such that the total  available cash will satisfy all Cash Claims.

(Stlmt Agrmt. Doc #183-1, p. 16, par. 2.7 a "Cash Benefit").  Not enough coupon vouchers in the sea as represented by Class Counsel, and not enough dollars to go around to all the class members who want the money.  Yet, not only does Class Counsel seek half the cash available in this case, they then claim entitlement to an amount over 25% of the fund (Mtn for Fees, Doc 262).

It is incumbent upon this Court to scrutinize this fee request, as "the district court has a special duty to protect the interests of the class.  On this issue, the class's lawyers occupy a position adversarial to the interests of their clients. " *Staton, 327 F.3d at 970.*  The reason courts must be so militant about this issue is "because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee –setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Id.*  In this case, the actual cash available to pay class member claims is a little over $3 million (Mtn for Fees, Doc # 262, p. 12).   Class counsel seeks 33.3% of a fund that consists more of canned tuna than actual money netted by Class Counsel to benefit class members.

Insufficient basis exists for this Court to approve an attorney's fee award of $4 million. Part of the basis of that calculation is considering the "tuna fund" of $4 million and another part is the costs associated with administering the settlement in the amount of $675,000. (Mtn for Fees,

Doc # 262, p. 12). "Administrative costs should not have been included in calculating the division of the spoils between class counsel and class members.  Those costs are part of the settlement but not part of the value received from the settlement by the members of the class." *Person v. Nbty, Inc.*, 772 F.3d 778, 781 (7th Cir., 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir., 2014).

This Court should deny the request for $4 million in attorney's fees and, instead, calculate such an award based upon the number of class members that redeem the coupons for canned tuna, and the cash fund created for the class members after subtracting the costs of administration. *Redman, supra.*  In the alternative, a fee award should be calculated based on the actual cash in the settlement fund- $8 million and allowing a percentage of 25% or less as attorney's fees.

**III.    The Proposed Settlement is neither fair nor adequate as the Attorneys' Fees Sought by Class Counsel are Subject to a "Clear Sailing Provision" that binds the Defendant to Support an Award of Attorney's Fees that is No Less Than One-Third of the $12 Million Settlement Fund.**

As discussed above, the value of the "Settlement Fund" is significantly less than $12 million. Defendant is required to recommend and support a "Settlement Approval Order and Final Judgment substantially in the form attached hereto and made a part hereof as Exhibit A." (Stlmt Agrmt. Doc #183-1, p. 12, par. .1.26 "Settlement Approval Order and Final Judgment").  Exhibit A is the treble hook used to gig the class members, requiring the Defendant to support a fee award of 1/3 of the fund, netting Class Counsel $4 million, mandating Defendant's support for the attorneys' fee award.

A clear sailing provision "provides for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir., 2011).  In this case, it cannot be denied that Class Counsel is obtaining its fees "separate and apart from class funds" as

the class members receive $4 million worth of tuna to divide up while the attorneys divide up the

Defendant's cash.  Combining this fact with the promise of recovery to the class members of up to

$50 worth of tuna unless too many claims are filed makes this provision all the more glaring, and

troublesome for this Court.

Additional evidence that class counsel have permitted pursuit of their own self-interests

and that of certain class members to "infect negotiations" is "when counsel receive a

disproportionate distribution of the settlement, or when the class receives no monetary distribution

but class counsel are amply rewarded." *In re Bluetooth Headset Products Liab. Litig., 654 F.3d

935, 947 (9th Cir., 2011).*   Here, Class Counsel receives 50% of the cash that Defendant is putting

on the table for payment to settle this litigation while the class members receive a monetary

distribution that is less than $4 million.  The amount sought by Class Counsel as fees is vastly

disproportionate to the cash benefits available to the class.  Here, the Court should consider

awarding tuna vouchers to Class Counsel as payment for the fees in the same proportion as the

benefits provided to the class.  Otherwise, this Court should deny the settlement as proposed

because Class Counsel has placed their interests in getting paid over the interests of the class in

recovering a benefit from Defendant.

**IV.     The Proposed Settlement is neither fair nor adequate as the Class Representative and Interested Parties each receive $5,000 and $1,000 while the class members receive an unknown quantity of tuna or the maximum of $25.00 per household.**

Some people have a "fishing hole" or a place they know that when they put a line in the

water, they will pull out a huge fish.  Usually it's kept secret from others. Likewise, the named

plaintiff in this case and the "interested parties" won't be fishing with everyone else in the class.

And they didn't bother to tell everyone they would go to this secret fishing spot to get their catch,

as the Notice and Frequently Asked Questions does not inform class members that some people

get huge sums of cash. The class representatives and interested parties fish from a different boat,

in another body of water, on a private charter with Class Counsel helping them reel in the fish:

> Class Counsel will petition the Court for approval of Incentive
> Awards payable to the Class Representative and the Interested
> Parties in amounts not to exceed $5,000.00 apiece.  StarKist shall
> pay such award by wire transfer or check to Class Counsel within
> thirty-five (35) calendar days after the Final Settlement Approval
> Date, subject to the prior delivery to StarKist of tax I.D. number(s)
> for each individual receiving such award.

(Stlmt Agrmt. Doc # 183-1, p. 18, par. 3.2 "Incentive Awards"). The named class representative

receives $5,000, while the eight (8) "interested parties" who were available for filing class actions

in different parts of the United States are slated to receive $1,000 each, for a total of $13,000.00 in

incentive awards. (Mtn for Fees, Doc #262 p. 12).  However, class members would need to read

legal briefs to find this information.  Nothing in the Notice or Frequently Asked Questions

addresses this important issue.  Later, in the same Motion for Fees Class Counsel identifies the

amount sought for incentive awards and for payment to interested parties as $45,000, total (Mtn

for Fees, Doc # 262, p. 30).  Some fish stories get bigger the more they are told.  And the real

story behind the incentive awards is yet to be told.

   "[I]n evaluating the fairness of a settlement," therefore, we look in part "to whether the

settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to

unnamed class members." _Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.),_

724 F.3d 713, 718 (6th Cir., 2013); _Vassalle v. Midland Funding LLC,_ 708 F.3d 747, 755 (6th Cir.,

2013).  In the 6th Circuit, the Court has expressed a "sensible fear that incentive awards may lead

named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for

personal gain." _Greenberg,_ 724 F.3d at 722; _Hadix v. Johnson,_ 322 F.3d 895, 897 (6th Cir., 2003).

"We should be most dubious of incentive payments when they make the class representatives

whole, or even more than whole; for in that case the class representatives have no reason to care

whether the mechanisms available to unnamed class members can provide adequate relief." ."
*Greenberg*, 724 F.3d at 723; *accord* Radcliffe v. Experian Info. Solutions, 715 F.3d 1157, 1161
(9th Cir. 2013).

In the 9th Circuit, "we declined to approve a settlement agreement where the awards
request indicated that the class representatives were 'more concerned with maximizing their own
incentives than with judging the adequacy of the settlement as it applies to class members at
large." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 960 (9th Cir., 2009) ; *Staton v. Boeing
Co.*, 327 F.3d 938, 977-978 (9th Cir. 2003).   The court further explained that "excess incentive
awards may put the class representative in a conflict with the class and present a "considerable
danger of individuals bringing cases as class actions principally to increase their own leverage to
attain a remunerative settlement for themselves and then trading on that leverage in the course of
negotiations." *Id.*

Here, we have all class members possibly getting $25 cash, or $50 worth of tuna- that's if,
and only if, the claims do not exceed the value of the respective cash fund and "tuna fund".
Whereas the named class representatives and the "interested parties" each receive the catch of the
day- $5,000 in cash.  This is an unbearable conflict that this Court must resolve, seeking
information from Class Counsel as to the circumstances surrounding the payment of such funds.
Is the money payment for approving the settlement?  It appears that way.  What did the class
representative and interested parties actually do to earn such money?  This is a proper inquiry for
this Court, as "the danger is exacerbated if the named plaintiffs have an advance guarantee that a
request for a relatively large incentive award will be made that is untethered to any service or
value they will provide to the class." *Rodriguez*, 563 F.3d at 960.

Courts expect the interests of the named representatives, class counsel and the members of
the class to "be congruent" and that adequate representation shows an "absence of antagonism"

with a "sharing of interests between representatives and absentees." *Rodriguez, 563 F.3d at 960; quoting Molski v. Gleich, 318 F.3d 937, 955 (9th Cir. 2003).* Here, the class members were never informed that certain members of the class would receive $5,000 cash and $1,000 cash. Meanwhile, the class members might receive up to $25 cash, or possibly up to $50 in tuna coupons. It appears that the class members' interests in this case may have been compromised to guarantee Class Counsel $4 million in fees, while the named plaintiffs and interested parties in this case walked away with $5,000 apiece.

This Court should deny the proposed settlement because the incentive awards are so grossly out of line with the actual relief provided to the class that the interests of the named plaintiff and the members of the class are no longer congruent and that the relationship is antagonistic between the two.

**V.     The proposed settlement is unfair and inadequate to the class members because the parties have agreed to funnel any unclaimed funds or any unclaimed tuna to a undisclosed cy pres beneficiary.**

Here, despite the paucity of relief offered to the class members the parties already anticipate that unused or unclaimed funds will be funneled into a cy pres beneficiary:

> Any cash remaining in the Cash Settlement Fund after payments of valid Cash Claims shall remain in the Cash Settlement Fund pending further order of the Court. Class Counsel shall make an application to the Court to seek approval for proposed disposition of any such remaining cash. Any voucher value remaining in the Voucher Settlement Fund after such payment of valid Voucher Claims shall remain in the Voucher Settlement Fund pending further order of the Court. Class Counsel shall make an application to the Court to seek approval for a proposed disposition of any remaining vouchers (i.e., the number of vouchers corresponding to the value remaining in the Voucher Settlement Fund).

(Stlmt Agrmt. Doc # 183-1, p. 17, par. 2.9 "Distribution of Unclaimed Settlement Class Benefits After Payment of Valid Claims"). It appears other unidentified sources will reap the benefits of Plaintiff's "fishing expedition", by having the remainder of the catch delivered to other unknown

1    entities.

2         Cy pres is antiquated language for the timeless equitable doctrine "cy pres comme

3    possible", or French for "as near as possible." _Dennis v.Kellogg Co. 697 F.3d 858, 865 (9th Cir._

4    _2012)_. Historically developed in the area of estates and trusts, as a means of effectuating a

5    testator's intent in making charitable gifts, it has appeared frequently in our federal courts "where

6    the proof of individual claims would be burdensome or distribution of damages costly." _Kellogg_

7    _Co._. 697 F.3rd at 865; Nachshin. 663 F.3d at l038. This Court is aware that "not just any worthy

8    recipient can qualify as an appropriate cy pres beneficiary." Id The 9th Circuit requires that "there

9    be a driving nexus between the plaintiff class and cy pres beneficiaries" _Kellogg Co._. 697 F. 3rd at

10   _865; Nachshin. 663 F.3d at 1038._ A cy pres award must be "guided by (1) the objectives of the

11   underlying statute(s) and (2) the interests of the silent class members," and must not benefit a

12   group "too remote from the plaintiff class," _Kellogg Co._. 697 F.3rd at 865 Six Mexican Workers v.

13   _Arizona Citrus Growers. 904 F.2d 1301, 1308 (9th Cir., 1990)._

14

15

16        Without demonstrating to this Court that the cy pres proposed meets this Court's

17   requirements under the test promulgated in Kellogg Co., the settlement must be denied. _Kellogg_

18   _Co, 697 F 3$^{d}$ at 868_ ("We do not have the authority to strike down only the cy pres portions of the

19   settlement. It is the settlement taken as a whole, rather than the individual component parts, that

20   must be examined for overall fairness and we cannot delete, modify or substitute certain

21   provisions.").  Here, Class Counsel did not even bother to identify cy pres beneficiaries, much less

22   thinly suggest they have subjected such proposed donation to the rigorous analysis identified

23   above.  Objector Spann specifically reserves the right to supplement her objection on this area if

24   this Court chooses to approve the settlement despite this failure on the part of Class Counsel once

25   a beneficiary, or group of beneficiaries are identified.

26        In the Ninth Circuit, "when the selection of cy pres beneficiaries is not tethered to the

27

28

nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self-interests of the parties, their counsel or the court." _Nachshin v. AOL, LLC_ 663 F.3d 1034, 1039 (9th Cir., 2011) ("Lawyers and judges have grown accustomed to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like."). This Court should scrutinize the proposed cy pres beneficiaries, to insure that they are not pet charities or entities with ties to Class Counsel.

Even if Plaintiff can somehow satisfy the rigid standards under _Kellogg, Co._, the planned donations still fail. This Court must ensure that the settlement here "retains some connection to the plaintiff class and the underlying claims, however, a cy pres award must qualify as "the next best distribution" to giving the funds directly to class members. " _Kellogg Co., 697 F.3rd at 865; Six Mexican Workers, 904 F.2d at 1309._ This rigorous test of "whether the distribution of the approved class settlement complies with our standards governing cy pres awards" is applied in addition to the trial court "asking whether the class settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." _Kellogg Co., 697 F.3rd at 865._

## <u>Conclusion</u>

WHEREFORE, for the foregoing reasons, Class Member Kelly Spann objects to the proposed settlement and the motion for attorneys' fees and requests that the Court not approve the settlement.

1

2

Respectfully submitted,

3

4
  /s/ Steve A. Miller

Steve A. Miller (SBN 171815)

5
Steve A. Miller, PC

1625 Larimer Street, No. 2905

6
Denver, CO 80202

Ph# 303-892-9933

7
Fax: 303-892-8925

Email: sampc01@gmail.com

8

9
Jonathan E. Fortman (40319MO)

10
Law Office of Jonathan E. Fortman, LLC

250 St. Catherine Street

11
Florissant, MO 63031

Ph# (314) 522-2312

12
Fax:  (314) 524-1519

Email:  jef@fortmanlaw.com

13

14
John C. Kress

15
The Kress Law Firm, LLC

4247 S. Grand Blvd

16
St. Louis, MO  63111

Ph.#:  (314) 631-3883

17
Fax:  (314) 332-1534

Email:  jckress@thekresslawfirm.com

18

19
Attorneys for Objector Kelly Marie Spann

20

21
## CERTIFICATE OF SERVICE

22
      I hereby certify that a true and accurate copy of the foregoing has been served upon all
parties via the Court's ECF system this 20th day of November, 2015.

23

24

25
  /s/ Steve A. Miller

Steve A. Miller

26

27

28

Hendricks v Starkist Co.

## Claim Form Receipt

> Thank You. Your Claim Form has been submitted. Please print this page as your receipt.

Your Claim Number is 62488319201. Please retain this number for your records.

**Print**

Case Code:        **SKH**

Date:             **November 18, 2015**

CLAIMANT INFORMATION

**KELLY SPANN**
~~████████████~~
**FLORISSANT, MO 63031**

Contact phone number:    **(314) 249-████**

Email Address:           **KMS@FORTMANLAW.COM**

CLAIM INFORMATION

Selected Products:    **5 oz. StarKist Solid White Tuna in Water**

Award Selection:      **Cash Payment of $25**

Certification         **I certify under penalty of perjury that I purchased the above-selected StarKist product(s) in the United States of America during the Class Period. The above information is true and correct to the best of my knowledge.**

Please print this page and retain it for your records.

For more information about the settlement and the claims filing process, please review the Class Notice.

 KCC

www.kccllc.com