Christopher T. Micheletti (Cal. Bar No. 136446)
Judith A. Zahid (Cal. Bar No. 215418)
Jiangxiao Athena Hou (Cal. Bar No. 215256)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
Email:  cmicheletti@zelle.com
        jzahid@zelle.com
        ahou@zelle.com

*Attorneys for Objector Carla Lown*

Kimberly A. Kralowec (Cal. Bar No. 163158)
Kathleen Styles Rogers (Cal. Bar No. 122853)
Chad A. Saunders (Cal. Bar No. 257810)
THE KRALOWEC LAW GROUP
44 Montgomery St., Suite 1210
San Francisco, CA  94104
Telephone:   (415) 546-6800
Facsimile:   (415) 546-6801
Email:       kkralowec@kraloweclaw.com
             krogers@kraloweclaw.com
             csaunders@kraloweclaw.com

*Attorneys for Objectors Colin Moore and Kathy Durand Gore*

*Additional counsel (for additional objectors) listed on signature page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>     v.<br><br>STARKIST CO.,<br><br>            Defendant. | Case No. 3:13-CV-0729-HSG<br><br>**NOTICE OF OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT; NOTICES OF APPEARANCE; AND MEMORANDUM IN SUPPORT OF OBJECTIONS**<br><br>Hearing Date:  Dec. 17, 2015<br>Time: 2:00 pm<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Courtroom 15, 18th Floor |

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Rule 23, subds. (e)(2) & (e)(5) of the Federal Rules of Civil Procedure, and the notice to the class in the above-entitled action, the following-listed class members hereby object to final approval of the class action settlement herein as neither fair, reasonable nor adequate, because the release of claims stated in the settlement agreement is overbroad and beyond the scope of the complaint, and may impact the rights of Objectors and other members of the Class in separate, ongoing litigation.  The objectors herein include Colin Moore, Carla Lown, Kathy Durand Gore, Janet Machen, and LesGo Personal Chef, LLC ("Lesgo") (hereinafter, collectively, the "Objectors").

Each of the Objectors herein is also a plaintiff in one the following separate actions filed in U.S. district courts, including the Southern District of California, against defendant StarKist and its major competitors,[1] alleging violations of federal and state antitrust laws (and related state unfair competition laws):

- *Moore v. Bumble Bee Foods LLC, et al.*, Case No. 3:15-cv-01911, filed August 28, 2015, in the United States District Court for the Southern District of California;
- *Colberg v. Bumble Bee Foods LLC et al.*, Case No. 3:15-cv-04120, filed September 10, 2015, in the United States District Court for the Southern District of California;
- *Gore v. Bumble Bee Foods LLC et al*, Case No. 15-cv-02121, filed September 22, 2015, in the United States District Court for the Southern District of California;
- *LesGo Personal Chef LLC v. Bumble Bee Foods LLC et al.*, Case No. 3:15-cv-00385, filed August 31, 2015 in the United States District Court for the Northern District of Florida;
- *Janet Machin (sic) v. Bumble Bee Foods LLC et al.*, Case No. 4:15-cv-00545, filed August 31, 2015 in the United States District Court for the Eastern District of

---

[1] Other defendants in these actions include Bumble Bee Foods LLC, Tri-Union Seafoods LLC, and King Oscar, Inc.

NOTICE OF OBJECTIONS TO SETTLEMENT; MEMORANDUM — - 1 - —   Case No. 4:13-cv-00729-HSG

Arkansas;

(collectively, the "*Packaged Seafood Products Antitrust Litigation*" or "*PSP Antitrust Litigation*").  Objectors include two different putative classes of indirect purchaser plaintiffs in the *PSP Antitrust Litigation*: (1) indirect purchaser consumers (objectors Moore, Lown and Gore); and (2) indirect purchaser Commercial Food Preparers (objectors LesGo and Machen).

Objectors are concerned that the overbroad release of claims herein may impact their rights in the *PSP Antitrust Litigation.*  Their concerns are underscored by StarKist's refusal over two months of negotiations to carve out of the settlement release antitrust conspiracy claims which were neither alleged nor litigated herein, and which StarKist has not paid to settle.  *See*, Kralowec Decl., ¶¶ 12-17 & Exhs. F, G, H & I.

PLEASE TAKE FURTHER NOTICE that Objectors intend to appear before this Court at the fairness hearing on December 17, 2015, through counsel for one or more of the Objectors designated to speak for them as a group.  Such counsel include Christopher Micheletti of Zelle Hofmann Voelbel & Mason LLP, counsel for objector Carla Lown, Kimberly Kralowec of The Kralowec Law Group, counsel for objectors Colin Moore and Kathy Durand Gore, and Michael J. Flannery of Cuneo Gilbert & LaDuca LLP, counsel for objectors Janet Machen and LesGo.  Objectors request leave of Court for their designated counsel to present their objections to the Court at the fairness hearing.

These collective objections to final approval of the class action settlement are based on the following Memorandum in Support of Objections to Final Approval of Class Action Settlement, the accompanying declarations of Objectors and their counsel: Declaration of Christopher T. Micheletti, Declaration of Kimberly A. Kralowec ("Kralowec Decl."), and Declaration of Michael J. Flannery (collectively "Counsel Declarations); and Declaration of Colin Moore, Declaration of Carla Lown, Declaration of Kathy Durand Gore, Declaration of Janet Machen, and Declaration of Leslye Brewer (collectively "Objector declarations"); and based on all records and pleadings in the within action and all argument and evidence that may be presented to the Court at the scheduled fairness hearing on December 17, 2015.

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL BACKGROUND .........................................................................................1

    A. Prior District Attorneys' Action, the *Hendricks* Complaint and the Settlement Release..........................................................................................................1

    B. DOJ Investigation ...............................................................................................2

    C. *PSP Antitrust Litigation* ......................................................................................3

    D. Negotiations between Counsel in *PSP Antitrust Litigation* and Counsel for StarKist in *Hendricks* over Settlement Release..........................................................4

III. ARGUMENT ..................................................................................................................6

    A. Standard for Judicial Review of Settlement under Fed. R. Civ. Pro. Rule 23(e)................................................................................................................7

    B. The Settlement is not Fair, Reasonable or Adequate because the Release is Overbroad in Failing to Track the Allegations of the *Hendricks* Complaint ..............8

IV. CONCLUSION .............................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

Adderley v. National Football League Player's Assn.,
    2009 WL 4250786 (N.D. Cal. Nov. 23, 2009) ........................................................................ 10

Bond v. Ferguson Enterprises, Inc.,
    2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ............................................................................. 10

Boyd v. Avanquest North America Inc.,
    2015 WL 4396137 (N.D. Cal. July 17, 2015) ................................................................. 6, 9, 11

Daniels v. Aeropostale West, Inc.,
    2014 WL 2215708 (N.D. Cal. May 29, 2014) ..................................................................... 9, 11

Kakani v. Oracle Corp.,
    2007 WL 1793774 (N.D. Cal. June 19, 2007) ......................................................................... 10

Molski v. Gleich,
    318 F.3d 937 (9th Cir. 2003) ..................................................................................................... 7

Officer for Justice v. Civil Serv. Comm'n of San Francisco,
    688 F. 2d 615 (9th Cir. 1982) .................................................................................................... 7

Stokes v. Interline Brands, Inc.,
    2014 WL 5826335 (N.D. Cal. Nov. 10, 2014) .............................................................. 7, 10, 11

In re Syncor ERISA Litig.,
    516 F.3d 1095 (9th Cir. 2008) ................................................................................................... 7

Tijero v. Aaron Brothers, Inc.,
    2013 WL 60464 (N.D. Cal. Jan. 2, 2013) ........................................................................ 7, 8, 10, 11

**Statutes**

California Civil Code
    §1542 ......................................................................................................................................... 5

Federal Rules of Civil Procedure
    Rule 23(e) ........................................................................................................................... 7, 11
    Rule 23(e)(2) .................................................................................................................. 1, 7, 12
    Rule 23(e)(5) ............................................................................................................................. 1

United States Code
    15 U.S.C. §1 .............................................................................................................................. 3

**Secondary Authorities**

*Manual for Complex Litig.*
	§ 21.632 (4th ed. 2004)..................................................................................................................7

**MEMORANDUM IN SUPPORT OF OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Objectors strenuously object to the class action settlement herein on the ground that it fails to meet the standards required under Fed.R.Civ.P., Rule 23(e)(2). It is neither fair, reasonable, nor adequate, as it includes an overbroad release of claims far beyond the allegations of the complaint in this action, possibly affecting the rights of Objectors and thousands of other members of the putative classes in the *PSP Antitrust Litigation.* StarKist has agreed to pay to settle the class claims brought by Mr. Hendricks based on StarKist's unilateral conduct in under-filling cans of tuna, as alleged in his Class Action Complaint (Dkt. 1) (hereinafter "*Hendricks* Complaint"). Settlement Agreement ¶2.1. StarKist has not paid to settle distinct antitrust conspiracy claims not pleaded or considered in this action. Yet StarKist refuses to narrow its release or carve out antitrust conspiracy claims. *See* Kralowec Decl., ¶¶12-17 & Exhs. F, G, H & I. While this settlement, worth $2.11 cash or a $4.68 voucher per class member[2] may be adequate to release the claims in the *Hendricks* Complaint based on StarKist's unilateral conduct of under-filling certain cans of tuna, the settlement lacks any consideration to compensate Objectors and the class for a broad release of antitrust conspiracy claims not alleged in the *Hendricks* Complaint. Objectors respectfully ask the Court to deny approval of this settlement.

## II. FACTUAL BACKGROUND

### A. Prior District Attorneys' Action, the *Hendricks* Complaint and the Settlement Release.

The *Hendricks* Complaint herein was filed on the heels of an action brought in 2012 by the district attorneys of Riverside, Marin and San Diego counties, seeking civil penalties under California's Unfair Competition Law against StarKist, Bumble Bee Foods and Tri-Union Seafoods dba Chicken of the Sea International, for under-filling cans of tuna. *People of the State of California v. Bumble Bee Foods, et al.*, Case No. RIC 1211729 (Riverside Cty. Super. Ct. filed Aug. 2, 2012). That action settled on or around August 3, 2012, with the "big three tuna packers" agreeing to pay $3.3 million in civil penalties, costs and other relief, a substantial portion going to

---

[2] *See* Bursor Decl., Dkt. 262-1, ¶66.

| NOTICE OF OBJECTIONS TO SETTLEMENT; MEMORANDUM | - 1 - | Case No. 4:13-cv-00729-HSG |

California food banks.  *Hendricks* Dkt. 94-1, Deckant Decl., Exh. J.   The district attorneys' action, although brought against all of the big three tuna packers, did not include antitrust claims or any allegations of conspiracy.

The subsequent *Hendricks* action herein, filed February 19, 2013, was brought on behalf of a nationwide class of consumers, alleging breach of warranties, violation of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), negligent misrepresentation and fraud, all based on StarKist's alleged under-filling of 5-oz. cans of tuna.  Dkt. 1, Class Action Complaint (hereinafter the "*Hendricks* Complaint" or "Complaint").  The Complaint was filed against StarKist only, based on StarKist's alleged unilateral conduct.  It includes no other defendants, no antitrust claims and no allegations of conspiracy.

This Court granted preliminary approval of the *Hendricks* parties' settlement on July 23, 2015.  Dkt. 94 (hereinafter the "Settlement").  The Settlement includes a release (quoted in the Court's preliminary approval order) stating that the class (except opt-outs):

> shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged under-filling of the StarKist Products and/or the purchase of any of the StarKist Products at any time on or after February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims").

*Id.* at p. 3; Stipulation of Settlement, Dkt. 183-1, p. 17 (emphasis added).

### B.  DOJ Investigation.

The same day this Court granted preliminary approval of the Settlement,  July 23, 2015, StarKist's competitor Thai Union Frozen Products (operating in the U.S. under its subsidiary Tri-Union's Chicken-of-the-Sea brand), announced it was suspending a share offering  to finance acquisition of Bumble Bee, in light of a grand jury investigation commenced by the U.S. Department of Justice ("DOJ") (as alleged in Objectors' above-listed complaints).  *See Hendricks* Dkt. 194; and Kralowec Decl., Exh. A, *Moore* Complaint, ¶19 and Exh. B, *Gore* Complaint, ¶21.

As further alleged in the subsequently-filed complaints in the *PSP Antitrust Litigation*, Thai Union disclosed that both Bumble Bee and Thai Union/Chicken of the Sea had received grand jury subpoenas requiring them "to provide relevant information to the DoJ in relation to an antitrust investigation of the packaged seafood industry in the United States." *See*, *e.g.*, Kralowec Decl., Exh. A, *Moore* Complaint, ¶19. The same news articles disclosing Thai Union's announcement stated that "others in the industry are now anticipating that they too will be subpoenaed." *See id.*, ¶20.

On October 13, 2015, it was publicly reported that Tri-Union and/or its parent company, Thai Union, is a leniency applicant under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 (15 U.S.C. §1, note) ("ACPERA"). Kralowec Decl., ¶5. These revelations, beginning with Thai Union's statements on July 23, 2015, were the first public information available to the class regarding the DOJ investigation into a conspiracy by StarKist and its competitors in violation of the antitrust laws. *See* Kralowec Decl., ¶2.

### C.  *PSP Antitrust Litigation*.

On August 3, 2015, the first of the *PSP Antitrust Litigation* actions was filed in the U.S. District Court for the Southern District of California, on behalf of a putative class of direct purchasers, against StarKist, Bumble Bee and Tri-Union/Chicken of the Sea. *Olean v. Bumble Bee Foods, LLC*, *et al.*, Case No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015). The *Olean* complaint alleges violations of Sections 1 and 3 of the Sherman Act based on price-fixing by defendants. It details alleged economic indicators of price collusion and opportunity to collude between StarKist and its competitors.[3]

The above-listed actions filed by Objectors herein were filed shortly after *Olean*, and were among the first-filed indirect purchaser and consumer actions in the *PSP Antitrust Litigation*. They were brought under the antitrust and consumer protection statutes of California and various other states, also alleging collusion, including price-fixing, by StarKist and its competitors.[4] All

---

[3] *See also*, *e.g.*, Kralowec Decl., Exh. A, *Moore* Complaint, ¶¶ 23-32.
[4] *See*, *e.g.*, Kralowec Decl., Exh. A, *Moore* Complaint, ¶¶ 48-62; and Exh. B, *Gore* Complaint, ¶¶ 54-67.

*PSP Antitrust Litigation* actions filed around the country currently are subject to a motion to transfer pursuant to 28 U.S.C. section 1407, which is under consideration by the Judicial Panel on Multidistrict Litigation ("JPML"). *See* Kralowec Decl., ¶4; and *In re Packaged Seafood Products Antitrust Litig.*, MDL No. 2670 (Dkt. 93).

### D. Negotiations between Counsel in *PSP Antitrust Litigation* and Counsel for StarKist in *Hendricks* over Settlement Release.

In or around late August 2015, counsel for one of the Objectors herein, Kimberly Kralowec, received information about the *Hendricks* Settlement from one of her clients. Kralowec Decl., ¶6. Ms. Kralowec downloaded and reviewed the Stipulation of Settlement, and immediately contacted counsel for Mr. Hendricks and StarKist to begin negotiations to narrow the Release, and/or expressly carve out from the Release the allegations of conspiracy alleged in the *PSP Antitrust Litigation*. *Id.* at ¶¶ 6, 10. She also communicated with counsel for the direct purchasers in the *Olean* action, and counsel for other Objectors herein, to coordinate these negotiations. Kralowec Decl., ¶10. As detailed in Ms. Kralowec's declaration, StarKist proposed to modify the provisions in the Release as follows:

> 6.1.  Release by Settlement Class Members. Effective as of the Final Settlement Approval Date, each and all of the Settlement Class Members (except any such person who has filed a proper and timely request for exclusion) shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged underfilling of the Star Kist Products ~~and/or the purchase of any of the StarKist Products~~ at any time on or after February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims"). <u>For avoidance of doubt, this paragraph does not release any Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws, except to the extent any such Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws are based on allegations of under-filling of Star Kist Products, which are released pursuant to this paragraph.</u> With respect to the Claims released pursuant to this paragraph, each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law).

NOTICE OF OBJECTIONS TO
SETTLEMENT; MEMORANDUM — - 4 -  Case No. 4:13-cv-00729-HSG

Thus, StarKist acknowledges that the original Release is overbroad in that it purported to release all claims "relating in any way to . . . the purchase of any of the StarKist Products"—which StarKist could later argue included price-fixing and other antitrust claims. Notwithstanding StarKist's concession that antitrust claims should be excluded from the Release, it has steadfastly insisted on keeping a release of all claims for antitrust violations and allegations of conspiracy related to under-filling cans of tuna, despite the fact that no such claims or allegations were pleaded in the *Hendricks* Complaint or litigated in this action. Kralowec Decl., ¶¶12-17 & Exhs. F, G, H & I. Notably, the original Release contained no explicit statement that any conspiracy or antitrust claims would be covered, so StarKist's proposal to modify the Release to explicitly state that such claims are covered represents an expansion, not a narrowing, of the Release. Kralowec Decl., ¶¶ 12, 14.

StarKist's position is that the Release must release <u>any and all</u> claims or prospective claims related in any way to under-filling cans of tuna—even if StarKist, Bumble Bee and Chicken of the Sea conspired to under-fill their products. In sum, StarKist will not agree to carve out antitrust conspiracy claims not pleaded in the *Hendricks* Complaint. *Id.*

Given that Bumblebee and Chicken of the Sea were also implicated in, and part of the settlement of, the district attorneys' action regarding under-filling of cans of tuna, and the relatively recent revelations that all of these three tuna manufacturers are implicated in an antitrust conspiracy involving the products at issue here, the inclusion of conspiracy claims in the Release is unwarranted.

**III.  ARGUMENT**

Based on developments since this Court's preliminary approval of the *Hendricks* Settlement, including disclosure of the DOJ investigation and numerous complaints filed against StarKist and its competitors in the *PSP Antitrust Litigation*, and in light of StarKist's transparent refusal to carve out antitrust claims and allegations of conspiracy not even pleaded in this action from its Release, the Settlement is neither fair, reasonable nor adequate and should not be approved.

Objectors object to the Settlement on the ground that the Release is overbroad.  The Settlement expressly states it provides redress for "settlement of all claims in this action."  Dkt. 183-1, Stipulation of Settlement, ¶2.1.  Those claims are limited to breach of warranties, CLRA, UCL, FAL, negligent misrepresentation and fraud, all based on <u>unilateral</u> action by StarKist.  *Hendricks* Complaint, ¶¶ 17-76.  The Settlement provides no relief whatsoever for harm caused by a possible overarching <u>conspiracy</u> that may encompass under-filling cans of tuna, along with price-fixing and other anticompetitive conduct.  No such claims were pleaded in the *Hendricks* Complaint or litigated in this action.  A conspiracy claim could not have been considered in reaching this Settlement because information about the conspiracy did not become public until after the Settlement was reached.  *See* Kralowec Decl., ¶2 and Exh. A, *Moore* Complaint, ¶19.  Thus, the settlement provides no consideration for a release of antitrust conspiracy claims.   While this Settlement providing $2.11 cash or a $4.68 voucher may be fair to release StarKist from claims for the unilateral conduct alleged in the *Hendricks* Complaint, the Settlement provides no consideration for antitrust conspiracy claims for which the class could have recovered treble damages, and for which StarKist would have faced the risk of joint and several liability for its competitors' actions and its competitors' sales.

Courts regularly decline to approve settlements with overbroad releases of claims not pleaded in the action, particularly where there is no consideration for release of those broader claims. *See*, *e.g.*, *Boyd v. Avanquest North America Inc.*, No. 12-cv-04391, 2015 WL 4396137, at *5, *6 (N.D. Cal. July 17, 2015) (motion for preliminary approval denied where release covered more causes of action than the complaint alleged and settlement provided for vouchers rather than cash relief to the class); *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527, 2014 WL 5826335, at *1, *3-*4 (N.D. Cal. Nov. 10, 2014) (motion for preliminary approval denied where release gave away claims not alleged in the complaint and bound class members even if they did not receive notice or a payment).  Objectors respectfully ask that the Court deny final approval of this Settlement until such time as the parties herein negotiate and present to the Court a narrower Release from which Objectors' antitrust conspiracy claims are expressly carved out.

NOTICE OF OBJECTIONS TO SETTLEMENT; MEMORANDUM - 6 - Case No. 4:13-cv-00729-HSG

**A.  Standard for Judicial Review of Settlement under Fed. R. Civ. Pro. Rule 23(e)**

Rule 23 requires judicial review of any settlement of the "claims, issues, or defenses of a certified class." Fed.R.Civ.P. 23(e).  The decision of whether to approve a proposed class action settlement entails a two-step process, including a preliminary fairness evaluation, and a "fairness" or final approval hearing.  *See Manual for Complex Litig.* § 21.632 (4th ed. 2004).

At the fairness hearing, the settling parties "must demonstrate that the settlement is 'fair, reasonable, and adequate.'" *Id.*; Fed.R.Civ.P. 23(e)(2).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Tijero v. Aaron Brothers, Inc.*, No. C 10-01089, 2013 WL 60464, at *6 (N.D. Cal. Jan. 2, 2013) ("*Tijero*") (*citing In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)).  To make a fairness determination, the court must balance a number of factors, including:

> (1)The strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Tijero*, 2013 WL 60464, at *7 (*citing Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

The court's primary concern in reviewing a class settlement agreement is the "protection of those class members … whose rights may not have been given due regard by the negotiating parties." *Stokes*, 2014 WL 5826335, at *3 (*citing Officer for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 624 (9th Cir. 1982)).  The court has no power to "delete, modify or substitute certain provisions" of a settlement agreement, and "the settlement must stand or fall in its entirety.'" *Tijero*, 2013 WL 60464, at *6.

**B.  The Settlement is not Fair, Reasonable or Adequate because the Release is Overbroad in Failing to Track the Allegations of the *Hendricks* Complaint.**

Final approval of the Settlement should be denied, as the Release is substantially overbroad and renders the Settlement unfair, unreasonable and inadequate.  The *Hendricks*

Settlement Agreement states that StarKist will pay $12 million into a Settlement Fund, including $8 million in cash and $4 million in StarKist vouchers, "for the settlement of all claims in this action." Dkt. No. 183-1, Stipulation of Settlement, ¶2.1.  The claims in this action consist of unilateral breaches of warranties by StarKist related to under-filling cans of tuna, and CLRA, UCL and FAL claims (as well as negligent misrepresentation and fraud) based on its unilateral conduct. *Hendricks* Complaint, ¶¶ 17-76 (containing no reference to Bumble Bee or Chicken of the Sea tuna products)   Thus the Settlement provides redress for only these injuries based on StarKist's unilateral conduct.

The Settlement provides no relief whatsoever for harm caused by a possible overarching conspiracy between StarKist and its major competitors for price-fixing or other anticompetitive conduct that may encompass under-filling cans of tuna.   No such claims were pleaded in the *Hendricks* Complaint or litigated in this action.  A conspiracy claim could not have been considered in reaching this Settlement because information about the conspiracy did not become public until after the Settlement was reached.  *See* Kralowec Decl., ¶¶ 2, 9.  Yet the broad Release, in straying far from the allegations of the Complaint, unnecessarily and unfairly risks impairing distinct antitrust conspiracy claims of Objectors and other members of the class against StarKist.

The Release as written, instead of tracking the breach of warranties, CLRA, UCL, FAL, negligence and fraud claims and allegations of the *Hendricks* Complaint, broadly releases all claims:

> relating *in any way* to the claims asserted or the factual allegations made in the Action, *including* without limitation the alleged *under-filling* of the StarKist Products *and/or the purchase of any of the StarKist Product*s at any time on or after February 19, 2009 and prior to November 1, 2014.

(emphasis added).  This language is not clear, but its broad sweep of any claim related to not only under-filling but also any purchases of cans of tuna, may be argued by StarKist later to encompass antitrust conspiracy claims not pleaded in the Complaint, which are distinct and different claims it has paid no consideration to settle in this action.

1    For that reason, the Release is woefully overbroad and patently unfair to the class, including Objectors. It is telling that StarKist steadfastly refuses to expressly carve out antitrust conspiracy claims not pleaded in *Hendricks*, which would clarify the Release and protect the rights of the class to assert overarching antitrust conspiracy claims, including the claims asserted in the *PSP Antitrust Litigation*. *See* Kralowec Decl., ¶¶ 12-17 & Exhs. F, G, H & I.

Courts routinely decline to approve settlements with such overbroad releases that potentially cover claims not within the operative complaint, particularly where, as here, class members will receive nothing in payment for such releases. For example, in *Boyd*, the court denied preliminary approval of a settlement in a UCL action concerning misrepresentations of defendants' software, finding the release was overbroad because it covered more causes of action than the Complaint alleged. 2015 WL 4396137, at *5. The court determined that the broad release covering all causes of action that may arise out of performance of the software was overbroad, as class members would be barred from bringing claims alleging a serious security breach or corruption of their data, when such claims were not alleged in the complaint. *Id.* The court also found the release overbroad in that it would prevent a class member from bringing future causes of action against the defendant based on a set of facts different from the one pleaded, and expressly held that "such a broad release including unknown claims is unreasonable considering the lack of cash relief to the class members." *Id.* at *6.

Similarly, in *Daniels v. Aeropostale West, Inc.*, No. C 12-05775, 2014 WL 2215708, at *1, 3-5 (N.D. Cal. May 29, 2014), the court denied preliminary approval of a settlement that included an "overbroad release" of claims for "zero cash" (78% of class members would receive between $1 and $25 in the proposed settlement). The court held that class counsel were authorized to settle only the conditionally certified claim under the Fair Labor Standards Act ("FLSA"), but the proposed release went "far beyond," releasing "all claims … based on the alleged facts arising out of or relating to the facts alleged in the operative complaint …". *Id.* at *4. In denying preliminary approval, the court held that "[n]o one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Id.* at *3.

| NOTICE OF OBJECTIONS TO SETTLEMENT; MEMORANDUM | - 9 - | Case No. 4:13-cv-00729-HSG |

In *Tijero*, the court denied preliminary approval of a settlement in a wage and hour class action for reasons including an overbroad release. *Tijero*, 2013 WL 60464, at *9. The complaint in *Tijero* alleged that defendant failed to pay class members for all hours worked, pay overtime wages, provide meal periods and rest breaks, pay for off-the-clock work, pay for compensation due on termination and provide accurate wage statements. *Id.* The court found the release, which required class members to release "any and all claims . . . arising out of or in any way relating to their employment with and/or termination of employment with Defendant" did not appropriately track the extent and breadth of plaintiffs' allegations in the complaint, and that it released unrelated claims against the defendant. *Id.* The court also noted that although the release was unclear, it appeared to provide that class members to whom notice could not be delivered would nonetheless release all claims, although they would not receive a cash payment. *Id.* at *10.[5]

Likewise, in *Stokes*, the court denied preliminary approval of a settlement that had "too many red flags and unanswered questions to be approved," including a release that "improperly exceed[ed] the claims stated in the complaint." *Stokes*, 2014 WL 5826335, at *1, *4. The claims in *Stokes* related to defendant's failure to reimburse class members for mileage and cell phone use and account for business deductions on wage statements. The proposed release, however, went "far beyond those discrete claims to release any and all claims for any type of wage, compensation or commission claim, any type of reimbursement claim, and any type of inaccurate wage statement claim – even if totally unrelated to the specific allegations made by plaintiff." *Id.* at *1, *4. As the court held in *Stokes*, "[w]hile a release need not slavishly echo the claims in the

---

[5] *See also Bond v. Ferguson Enterprises, Inc.*, No. 1:09-cv-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) (finding release overbroad where it did not track the extent and breadth of the allegations of the complaint and released unrelated claims of any kind and nature up to the date of the agreement); *Kakani v. Oracle Corp.*, No. C 06-06493, 2007 WL 1793774, at *2-3, 5-6 (N.D. Cal. June 19, 2007) (rejecting settlement in part because of the "draconian scope" of the proposed release, which released and forever discharged the defendant from any and all claims that were or could have been asserted in the complaint, whether known or unknown, precluded any attempt by class members to prosecute a lawsuit with respect to a released claim, and where the defendant would only have to pay some workers, and even those a fraction of the worth of their claims); *Adderley v. National Football League Player's Assn.*, No. C 07-00943, 2009 WL 4250786, at *2 & n. 4 (N.D. Cal. Nov. 23, 2009) (settlement approved where release was modified to release only certified or asserted claims, after denial of earlier settlement with overbroad release of "any and all claims … that relate in any way" to the subject of the claims certified or alleged in the action).

NOTICE OF OBJECTIONS TO
SETTLEMENT; MEMORANDUM      - 10 -      Case No. 4:13-cv-00729-HSG

complaint, it must appropriately track and not exceed them." *Id.* The *Stokes* court expressed further concern over the incomprehensible scope of the released claims, and the intent to bind the class even if they did not receive notice and payment. *Id.* at *4.

The Release here, like the releases in *Boyd*, *Daniels, Tijero* and *Stokes* (and the cases cited in footnote 5), contains language that, while ultimately unclear, is arguably exceedingly overbroad compared to the limited claims in this action. It would be unfair to the class herein to subject them to a risk that their antitrust conspiracy claims—claims distinct from those asserted in Mr. Hendricks' Complaint and far beyond the claims certified by this Court—will be swept into this Settlement for a mere $2.11 (or a $4.68 voucher) per class member. Based on the overbroad Release, this Settlement is neither fair, reasonable nor adequate to the class, as required by Rule 23(e). To the contrary, it jeopardizes class members' far more valuable antitrust claims, for which the Settlement leaves them wholly uncompensated.

## IV. CONCLUSION

The overbreadth of the Release and unfairness of this Settlement were not apparent until the DOJ investigation of StarKist and its competitors was announced, the same day this Court granted preliminary approval. Since then, numerous complaints have been filed against StarKist and its competitors, including those filed by Objectors, with allegations that potentially or arguably would be released by this Settlement for the sum of $2.11 cash or a $4.68 voucher per class member. These allegations of conspiracy, violations of antitrust laws and UCL violations based on antitrust claims are distinct from the unilateral claims against StarKist brought by Mr. Hendricks that StarKist paid to settle. The rights of Objectors and other class members to bring these distinct claims should not be affected by the *Hendricks* $2.11 cash or $4.68 voucher per-person settlement.

Objectors have no intention or motive to scupper all settlements between these parties. It would not be difficult for the *Hendricks* parties to modify their Release to include, clearly, only the claims pleaded in Mr. Hendricks' Complaint. They could then seek approval of a settlement Objectors could support. The overbreadth of the current Release and potential inclusion, but lack

of consideration, for release of antitrust conspiracy claims, however, render this Settlement unfair, unreasonable and inadequate.  It does not meet the requirements of Rule 23(e)(2), and Objectors respectfully ask the Court to deny approval.

DATED:  November 20, 2015

By:      /s/  Kimberly A. Kralowec
Kimberly A. Kralowec (Cal. Bar No. 163158)
Kathleen Styles Rogers (Cal. Bar No. 122852)
Chad A. Saunders (Cal. Bar No. 257810)
THE KRALOWEC LAW GROUP
44 Montgomery Street, Suite 1210
San Francisco, CA 94104
Telephone: 415-546-6800
Facsimile:  415-546-6801
Email:     kkralowec@kraloweclaw.com
           krogers@kraloweclaw.com
           csaunders@kraloweclaw.com

*Attorneys for Objectors Colin Moore and Kathy Durand Gore*

Robert Taylor-Manning (Wash. Bar No. 21890)
THE LAW OFFICES OF ROBERT TAYLOR MANNING
1800 South Jackson St., Suite 123
Seattle, WA 98144
Telephone: 206.310.3333
Facsimile: 206.299.4010
Email: rtm@taylor-manning.net

*Attorney for Objector Kathy Durand Gore*

Christopher T. Micheletti (Cal. Bar No. 136446)
Judith A. Zahid (Cal. Bar No. 215418)
Jiangxiao Athena Hou (Cal. Bar No. 215256)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
Email:     cmicheletti@zelle.com
           jzahid@zelle.com
           ahou@zelle.com

*Attorneys for Objector Carla Lown*

Michael J. Flannery
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: (314) 226-1015
Facsimile: (202) 789-1819
Email: mflannery@cuneolaw.com

Jonathan W. Cuneo
CUNEO GILBERT & LADUCA, LLP
507 C Street, NW
Washington, DC 20002
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
Email: jonc@cuneolaw.com
joel@cuneolaw.com
danielc@cuneolaw.com

*Attorneys for Objectors LesGo Personal Chef, LLC and Janet Machen*