UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS,<br><br>Plaintiff,<br><br>v.<br><br>STARKIST CO, et al.,<br><br>Defendants. | Case No. 13-cv-00729-HSG<br><br>**ORDER DENYING MOTION FOR FINAL APPROVAL AND DENYING MOTION FOR ATTORNEY'S FEES AS MOOT**<br><br>Re: Dkt. Nos. 262, 326 |

Pending before the Court is Plaintiff Patrick Hendricks' motion for final approval of the parties' proposed class action settlement, Dkt. No. 326, and motion for attorney fees, Dkt. No. 262. The Court held a final fairness hearing on both motions on December 17, 2015. For the reasons stated below, the Court **DENIES** final approval without prejudice.

I.  **BACKGROUND**

This case began on February 19, 2013, when Plaintiff filed this action in the Northern District of California. *See* Dkt. No. 1. The lawsuit asserted claims based on the underfilling of five ounce cans of StarKist Tuna under California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law or "UCL"), California Business and Professions Code § 17500 *et seq.* (False Advertising Law or "FAL"), and for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Breach of Implied Warranty of Fitness for a Particular Purpose, Negligent Misrepresentation, Fraud, and Unjust Enrichment. *Id*. The Court dismissed Plaintiff's Unjust Enrichment claim on March 25, 2013. *See* Dkt. No. 57.

The parties reached a settlement and sought preliminary approval of the agreement on May 14, 2015. *Id*. On July 23, 2015, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, appointed Scott Bursor of Bursor and Fisher P.A. as lead

class counsel, and directed notice to class members. Dkt. No. 194. Plaintiff filed the motion for final settlement approval on December 11, 2015, Dkt. No. 326.

## II.   LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" favoring class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate." *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003). This analysis includes evaluating the scope of any release of claims and ensuring the protection of class members' procedural due process rights. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) ("Fed. R. Civ. P. Rule 23(d) vests a district court with the authority and discretion to protect the interests and rights of class members and to ensure its control over the integrity of the settlement approval process.").

## III.   ANALYSIS

The Court denies final approval on two bases. First, because the notice sent to class members did not notify the class of the amended release, the settlement notice was inadequate. Second, the scope of the original release and amended release violates the identical factual predicate rule.

### A.   Inadequate Notice

"All class members in a Rule 23(b)(3) action are entitled to due process, including notice." *Hanlon*, 150 F.3d at 1024. "[N]otice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotation marks omitted). "The notice should describe the action and the plaintiffs' rights in it[;] . . . due process requires *at a minimum* that an absent plaintiff be provided with an opportunity to remove himself from the class . . . ." *Id.* (emphasis added).

Although the original notice was "reasonably calculated" to bring the settlement agreement to each class member's attention (informing class members of their rights under the agreement and the scope of the release should they remain in the class), the parties stipulated to a change in the

release's scope after the Court's preliminary approval and after class notice was distributed. *See* Dkt. No. 323-2, Ex. A. The original notice informed class members that by submitting a claim form, class members would give up rights to sue StarKist on "the *same legal claims*" in this lawsuit. Dkt. No. 187 at Ex. 5 at 1, 5 (emphasis added). The amended release, however, specified *new* claims, most notably claims under federal and state antitrust laws. Having not received the amended release, potential class members did not have any notice of the rights they are actually giving up with regard to these new claims.[1] Under these circumstances, a change in the scope of the settlement's release constitutes a substantive change in the settlement's terms and is a change that affects class members' rights under the agreement.[2] Given that class members did not receive notice of the amended release, the parties cannot establish that class members have been informed of the consequences of remaining in the class or opting out.[3] The parties have not satisfied minimum due process requirements.

### B. Violation of the Identical Factual Predicate Rule

A settlement agreement may release claims that are "based on the identical factual predicate as that underlying the claims in the settled class action" even though the claims were "not presented and might not have been presentable in the class action" at the time. *Hesse v.*

---

[1] The notice also includes a longer explanation of the original release, stating that class members will release all claims "relating to the transactions, actions, conduct and events that are the subject of this action or settlement, arising from or related to the underfilling of tuna in the StarKist Products." Dkt. No. 187, Ex. 5 at 9. At the final fairness hearing, Plaintiff's counsel relied on this provision, as well as the "same claim" language, to argue that the release provided sufficient information to class members. Dkt. No. 333 at 14-15. The Court disagrees, finding that because the type of collusive conduct that would violate the antitrust laws is not the "subject of this action or settlement," class members were not informed in the original release about the extent of claims they now would be required to give up under the amended release.

[2] StarKist cites *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010), to argue that further notice was not required despite the change in the release. *Shaffer* states that "[a]lthough changes were made to the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release." Not only is *Shaffer* an unpublished disposition, and thus not precedent, *see* 9th Cir. R. 36-3, but the case also contains no information about the scope of the change in that release and no analysis establishing the broad general proposition StarKist asserts. Moreover, it is far from certain that the amended release here truly narrowed the scope of the release. Accordingly, *Shaffer* does not support the result StarKist urges.

[3] After the final fairness hearing the Court visited the settlement website, which was created and maintained "solely for the purposes" of providing settlement information to the class members. Dkt. No. 187-7 at 6. As of January 7, 2016, the website still posted the original release language.

*Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). "[S]uperficial similarity between the two class actions is insufficient to justify the release of the later claims by the settlement of the former." *Id.* at 591. For example, the fact that both actions in *Hesse* involved Sprint's improper billing of government fees to its customers was insufficient, since the factual predicate of each case was different: "different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons." *Id. See also Willner v. Manpower Inc.*, No. 11–CV–02846–JST, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014) (holding that a release of claims that "go beyond the scope of the allegations of the operative complaint" is impermissible).

      Here, the original release discharged "any and all claims . . . relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged under-filling of the StarKist Products and/or the purchase of any of the StarKist Products at any time on or after February 19, 2009 and prior to November 1, 2014." Dkt. No. 323 at 2. It is now apparent to the Court that the original release improperly extended beyond the scope of the facts in this action, which were limited to the underfilling of StarKist tuna cans, not all claims "relating in any way" to the purchase of StarKist Products. *See Lovig v. Sears, Roebuck & Co.*, No. EDCV 11-00756-CJC, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014) (holding that the factual basis for the release "impermissibly extend[ed] beyond the factual predicate of the operative complaint—here, the Fourth Amended Complaint" where the "terms of the release specifically identif[ied] claims that 'could have been asserted in the Action based on the facts pled in any of the complaints filed in the Action.'"); *Custom LED, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013) (holding that the original scope of the release "was overly broad because it improperly released any claim, known or unknown, 'arising out of or relating in any way to Featured Plus!,' regardless of whether any such claim is based on the allegations in the complaint"); *Bond. v. Ferguson Enters., Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) (holding that a release for "unrelated claims of any kind or nature that class members may have against defendants" was overbroad). The parties' post-notice effort to amend the release tacitly acknowledges as much. *See* Dkt. No. 323 at 1 ("StarKist has considered the Objectors' arguments and has, in response, agreed to amend the

language of the Release.").

The amended release also is inadequate, as it fails to satisfy the identical factual predicate rule. The amended release provides that all class members, who do not opt out and who are not resellers,

> shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged under-filling of the StarKist Products at any time on or after February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims"). *For avoidance of doubt, this paragraph does not release any Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws, except to the extent any such Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws are based on allegations of under-filling of StarKist Products, which are released pursuant to this paragraph.* With respect to the Claims released pursuant to this paragraph, each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law).

Dkt. No. 323-2, Ex. A (emphasis added).

The parties have failed to demonstrate that it would be fair and reasonable for the Court to enforce such a broad release provision. The amended release does not track the breadth of allegations in the complaint, instead releasing claims under antitrust laws mentioned nowhere in the complaint. That the underlying fact of underfilling could play some part in both this lawsuit and a possible future antitrust action does not compel the conclusion that the two actions are based on an identical factual predicate. Plaintiff would not have been able to assert an antitrust claim based on the allegations in the complaint, since an antitrust claim requires a collusive agreement between StarKist and its competitors, and the agreement itself is the basis of the violation. *See* 15 U.S.C. § 1; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015) ("[Section] 1 of the Sherman Act prohibits agreements that unreasonably restrain trade by restricting production, raising prices, or otherwise manipulating markets to the detriment of consumers."). Here, the complaint's allegations were limited to StarKist's unilateral conduct in

allegedly underfilling cans of tuna, and were distinct from the type of allegations required to prove antitrust claims. Accordingly, the amended release, like the original release, "impermissibly extends beyond the factual predicate of the operative complaint." *See Lovig*, 2014 WL 8252583, at *2.

The amended release also is not tailored to the relief provided in the Settlement Agreement. There has been no showing that class members "have been independently compensated for the broad release of claims" related to antitrust conspiracies. *McKeen-Chaplin v. Franklin Am. Mortgage Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (holding release was overbroad where there was no "showing that Plaintiffs [were] independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due, including, among others, claims for discrimination under Title VII, intentional infliction of emotional distress, and 'outrageous conduct'"); *Ambrosino v. Home Depot U.S.A, Inc.*, No. 11CV1319 L MDD, 2014 WL 1671489, at *3 (S.D. Cal. Apr. 28, 2014) (same). The PSP Objectors expressly contend that the Settlement does not compensate class members for giving up the antitrust claims described by the release. *See* Dkt. No. 293 at 6 ("[T]he Settlement provides no consideration for antitrust conspiracy claims for which the class could have recovered treble damages, and for which StarKist would have faced the risk of joint and several liability for its competitors' actions and its competitors' sales.").

The Court found counsels' statements at the final fairness hearing further cause for concern. Counsels' repeated avowals that a conspiratorial-underfilling "claim does not exist," *see* Dkt. No. 333 at 51, and that "there wasn't evidence of it, [and] it wasn't brought up," *id.* at 21, are hard to square with the final-hour amendment expressly requiring the class to release conspiratorial-underfilling claims. If there is no such claim, the parties should have no need to force class members, post-notice, to release that non-existent claim. "While a release need not slavishly echo the claims in the complaint, it must appropriately track and not exceed them." *Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *4 (N.D. Cal. Nov. 10, 2014) (citing *Hesse*, 598 F.3d at 590). Because the Court cannot approve a settlement in which the scope of the release differs significantly from the scope of the liability alleged, the

Court denies final approval on this basis as well.

## IV.     CONCLUSION

Although the Court recognizes the costs stemming from a denial of final approval, in light of the reservations identified (all of which were raised by objectors), the Court cannot conclude that the proposed settlement is fair, reasonable, and adequate.  *See Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) ("[S]ettlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members." (citation and internal quotation marks omitted)).  Because denial of the proposed settlement is necessary to protect the rights of the absent class members, the motion for final approval is **DENIED** without prejudice.

The accompanying motion for fees and incentive awards is **DENIED AS MOOT** without prejudice.  *See* Dkt. Nos. 262.  The order conditionally granting class certification for the purposes of the settlement agreement is set aside.  *See* Dkt. No. 194.  A case management conference is set for March 15, 2016 at 2:00 p.m.  The parties should be prepared to discuss scheduling and related matters at the hearing.

**IT IS SO ORDERED.**

Dated: 2/19/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge