Kimberly A. Kralowec (Cal. Bar No. 163158)
Kathleen Styles Rogers (Cal. Bar No. 122853)
THE KRALOWEC LAW GROUP
44 Montgomery St., Suite 1210
San Francisco, CA  94104
Telephone:   (415) 546-6800
Facsimile:   (415) 546-6801
Email:       kkralowec@kraloweclaw.com
             krogers@kraloweclaw.com

*Attorneys for Objectors Colin Moore
and Kathy Durand Gore*

Robert Taylor-Manning
SANDIA CASCADE LAW GROUP. PLLC
1800 South Jackson St., Suite 123
Seattle, WA 98144
Telephone:   (206) 310-3333
Facsimile:   (206) 299-4010
Email:       rtm@sandiacascadelaw.com

*Attorney for Objector Kathy Durand Gore*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STARKIST CO.,<br><br>　　　　Defendant. | Case No. 3:13-CV-0729-HSG<br><br>**NOTICE OF MOTION AND MOTION BY OBJECTORS COLIN MOORE AND KATHY DURAND GORE FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**<br><br>Date:  June 16, 2016<br>Time: 2:00 pm<br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 15, 18th Floor |

**TABLE OF CONTENTS**

NOTICE OF MOTION ................................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 2

I. INTRODUCTION ............................................................................................................. 2

II. FACTS SUPPORTING OBJECTORS' MOTION AND THEIR WORK TO BENEFIT THE CLASS ........................................................................................................ 3

   A. Objectors' Efforts to Narrow the Parties Overbroad Release of Claims before Filing Their Initial Objections ................................................................. 3

      1. The *Hendricks* Complaint and the Parties' Original Settlement Release ................................................................................................................. 3

      2. *PSP Antitrust Litigation* ................................................................................ 4

      3. Negotiations between Objectors' Counsel and Counsel for StarKist over Settlement Release ....................................................................................... 5

   B. Objectors' Objections to Final Approval of Settlement and Appearance and Argument at Final Approval Hearing; and the Court's Order Denying Final Approval ........................................................................................... 7

   C. Impact of the *Hendricks* Parties' Second Amended Settlement Release and Pending Renewed Motion for Final Approval ................................................. 8

   D. Objectors' Attorneys' Fees and Costs ...................................................................... 9

III. ARGUMENT ................................................................................................................... 9

   A. The Applicable Standards for Common fund Fee Awards to Objectors ................ 9

   B. Objectors' Actions to Narrow the Settlement Release Conferred a Substantial Benefit on Consumer Class Members ................................................ 10

   C. Objectors' Counsel's Fees and Costs are Reasonable and Should be Awarded ................................................................................................................ 11

   D. Objectors Deserve Incentive Awards of $1,000 Each from the Common Fund ....................................................................................................................... 13

IV. CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

In re Apple Inc. Securities Litig.,
    2011 WL 1877988 (N.D. Cal. May 17, 2011) .................................................................. 13

In re Leapfrog Enterprises, Inc. Sec Litig.,
    2008 WL 5000208 (N.D. Cal. 2008)................................................................................... 9

Mills v. Electric Auto-Lite Co.,
    396 U.S. 375, 90 S.Ct. 616 (1970) .................................................................................... 9

Olean v. Bumble Bee Foods, LLC, et al.,
    Case No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015) ............................................................... 5

People of the State of California v. Bumble Bee Foods, et al.,
    Case No. RIC 1211729 (Riverside Cty. Super. Ct., Aug. 2, 2012)...................................... 3

Rodriguez v. Disner,
    688 F.3d 645 (9th Cir. 2013)............................................................................................. 9

Vizcaino v. Microsoft Corp.,
    290 F. 3d 1043 (9th Cir. 2002).......................................................................................... 9

Wininger v. SI Management L.P.,
    301 F.3d 1115 (9th Cir. 2002).......................................................................................... 9

**Statutes**

California Business and Professions Code
    §§17200 et seq. ................................................................................................................ 4
    §§17500 et seq. ................................................................................................................ 4

California Civil Code
    §1750 et seq ..................................................................................................................... 4

Federal Rules of Civil Procedure
    Rule 23(h) ........................................................................................................................ 1
    Rule 54(d)(2) .................................................................................................................... 1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 16, 2016, at 2:00 p.m., or as soon thereafter as the matter may be heard, (non-party) Objectors Colin Moore and Kathy Durand Gore (through their counsel, The Kralowec Law Group), will and hereby do move the Court for the following award of attorneys' fees and costs, and incentive awards for these Objectors, in connection with their work to achieve a narrowing of the overbroad release of claims in this action which conferred a substantial benefit on the class. Objectors seek the following amounts to be paid from the total common settlement fund when and if such a fund is approved by the Court, but propose that these amounts Objectors seek be deducted from the fees and costs set aside for and requested by Class Counsel (as sought in their Motion (Dkt. No. 262; *see also* Stipulation of Settlement, ¶3.1)):

1. Attorneys' fees to Objectors' counsel in the amount of $138,360 to The Kralowec Law Group and $15,165 to Robert Taylor-Manning;

2. Alternatively, attorneys' fees to Objectors' counsel in the amount of $318,228 to the Kralowec Law Group and $34,879.50 to Robert Taylor-Manning, which represents a lodestar enhancement of 2.3 and is a proportionate share of the fees sought by Class Counsel;

3. Costs related to the objections filed by Objectors in the amount of $927 to The Kralowec Law Group and $535 to Robert Taylor-Manning; and

4. Incentive awards of $1,000 for each of the two Objectors ($2,000 in total).

Objectors reserve the right to seek further fees and costs in connection with their further objections to the parties' renewed motion for final approval of their settlement, particularly on the ground that the renewed motion was made after the Court sustained Objectors' initial objections, without the required negotiations with Objectors that may have resolved their further objections. *See* Dkt. No. 352, at 5-6.

This motion is brought pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure and the Court's Order filed on February 19, 2016 (Dkt. No. 336). It is based on this

Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Kimberly A. Kralowec filed herewith (hereafter "Kralowec Decl. #2"); the Declaration of Robert Taylor-Manning filed herewith; the Declarations of Objectors Moore and Gore filed in connection with their initial Notice of Objections (Dkt. Nos. 293-4, 293-5, filed Nov. 20, 2015); the transcript of the December 17, 2015 hearing on Mr. Hendricks' Motion for Final Approval of Settlement; the Declaration of Kimberly A. Kralowec filed on Nov. 20, 2015 (Dkt. Nos. 293-1) (hereafter "Kralowec Decl. #1"); the Declaration of Kimberly A. Kralowec filed on Mar. 29, 2016 (Dkt. No. 352-1); the arguments and any additional evidence that may be presented to the Court at the hearing on this Motion; all transcripts of prior proceedings before this Court; and all other pleadings and papers on file in this action.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY OBJECTORS COLIN MOORE AND KATHY DURAND GORE FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**

## I.   INTRODUCTION

Objectors did not set out to file objections to the settlement of this action. They were forced into it after months of negotiations with Defendant StarKist, Inc. ("StarKist), by StarKist's transparent attempt to settle broad claims of conspiracy with its competitors in this action, which deals only with under-filling by StarKist of its own 5-ounce tuna cans. By its Order denying the parties' motion for final approval of the settlement here (Dkt. No. 336), this Court agreed.

The conspiracy claims that Objectors successfully protected from the parties' overbroad release are the subject of litigation in which Objectors are plaintiffs (*In re Packaged Seafood Products* or "*PSP*"). All consumers in the class certified by this Court are also members of the putative classes in *PSP*. Objectors' actions to protect their valuable antitrust claims, with prospective treble damages, benefit all consumer class members in the action before this Court. StarKist's unrelenting opposition to narrowing the parties' broad release to carve out these antitrust claims is a clear measure of their worth, as this Court recognized in its Order:

> Objectors' counsel, The Kralowec Law Group, spent months negotiating with StarKist to narrow its release, prepared detailed objections filed with this Court when their negotiations were

unsuccessful, and appeared and presented arguments to the Court at the hearing on the parties' motion for final approval. The Court adopted and cited Objectors' arguments in denying final approval of the parties' overbroad release of claims. Dkt. No. 336, at 6:15. The Order preserved for the consumer class members here their valuable right to pursue the antitrust and other claims alleged in the *PSP* litigation, claims StarKist transparently attempted to release in this unrelated action. The Order may also have preserved unknown future antitrust or consumer claims that may later be brought against StarKist. Accordingly, having conferred this substantial benefit on the members of the Settlement Class herein, Objectors seek their attorneys' fees and costs and an appropriate incentive award for their successful efforts.

## II. FACTS SUPPORTING OBJECTORS' MOTION AND THEIR WORK TO BENEFIT THE CLASS.

### A. Objectors' Efforts to Narrow the Parties' Overbroad Release of Claims before Filing Their Initial Objections.

Objectors' efforts, including their negotiations with the parties, to narrow the parties' overbroad release of claims in their settlement, are detailed in their Objections (Dkt. 293) and Further Objections (Dkt. No. 352), and in the declarations of their counsel, Kimberly A. Kralowec, who appeared before this Court at the December 17, 2015 hearing on the Plaintiff Mr. Hendricks' initial motion for final approval (and will appear at the April 21, 2016 hearing on the parties' Renewed Motion). *See* Kralowec Decls. #1 (Dkt. 293-1) and #2 (filed herewith).

#### 1. The *Hendricks* Complaint and the Parties' Original Settlement Release.

Mr. Hendricks' Complaint herein was filed on the heels of an action brought in 2012 by the district attorneys of Riverside, Marin and San Diego counties, seeking civil penalties under California's Unfair Competition Law against StarKist and its competitors, Bumble Bee Foods and Tri-Union Seafoods dba Chicken of the Sea International, for under-filling cans of tuna. *People of the State of California v. Bumble Bee Foods, et al.*, Case No. RIC 1211729 (Riverside Cty. Super. Ct. filed Aug. 2, 2012). That action settled on or around August 3, 2012, with the "big three tuna packers" agreeing to pay $3.3 million in civil penalties, costs and other relief, a substantial portion going to California Food Banks. *Hendricks* Dkt. 94-1, Deckant Decl., Exh. J.

The district attorneys' action, although brought against all of the big three tuna packers, did not include antitrust claims or any allegations of conspiracy.

The subsequent *Hendricks* action herein, filed February 19, 2013, was brought on behalf of a nationwide class of consumers, alleging breach of warranties, violation of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") and False Advertising Law ("FAL"), negligent misrepresentation and fraud, all based on StarKist's alleged under-filling of 5-oz. cans of tuna. Dkt. 1, Class Action Complaint (hereinafter the "Hendricks Complaint" or "Complaint").  The Complaint was filed against StarKist only, based on StarKist's alleged unilateral conduct. It includes no other defendants, no antitrust claims and no allegations of conspiracy.

This Court granted preliminary approval of the *Hendricks* parties' settlement on July 23, 2015. Dkt. 94 (hereinafter the "Settlement"). The Settlement included a release (quoted in the Court's preliminary approval order) stating that the class (except opt-outs):

> shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged under-filling of the StarKist Products <u>and/or the purchase of any of the StarKist Products at any time on or after February 19, 2009 and prior to November 1, 2014</u> (collectively, the "Claims").

*Id.* at p. 3; Stipulation of Settlement, Dkt. 183-1, p. 17 (emphasis added).

### 2. *PSP Antitrust Litigation*.

The same day this Court granted preliminary approval of the Settlement, July 23, 2015, StarKist's competitor Thai Union Frozen Products (operating in the U.S. under its subsidiary Tri-Union's Chicken-of-the-Sea brand), announced it was suspending a share offering to finance acquisition of Bumble Bee, in light of a grand jury investigation commenced by the U.S. Department of Justice ("DOJ") (as alleged in Objectors' *PSP* complaints) involving alleged antitrust violations. *See Hendricks* Dkt. 194; and Kralowec Decl. #1 (Dkt. 293-1), Ex. A, *Moore* Complaint, ¶19 and Ex. B, *Gore* Complaint, ¶21.

On August 3, 2015, the first of the *PSP Antitrust Litigation* actions was filed in the U.S. District Court for the Southern District of California, on behalf of a putative class of direct purchasers, against StarKist, Bumble Bee and Tri-Union/Chicken of the Sea. *Olean v. Bumble Bee Foods, LLC, et al.*, Case No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015). The *Olean* complaint alleges violations of Sections 1 and 3 of the Sherman Act based on price-fixing by defendants. It details alleged economic indicators of price collusion and opportunity to collude between StarKist and its competitors.[1]  Actions were filed by Objectors Moore and Gore shortly after *Olean*, and were among the first-filed indirect purchaser and consumer actions in the *PSP Antitrust Litigation*.  They were brought under the antitrust and consumer protection statutes of California and various other states, also alleging collusion, including price-fixing, by StarKist and its competitors.[2]  *See* Kralowec Decl. #1 (Dkt. 293-1), ¶¶1, 4 & Exs. A, B.

### 3. Negotiations between Objectors' Counsel and Counsel for StarKist over Settlement Release.

In or around late August 2015, Kimberly Kralowec, one of Objectors' counsel (and counsel for these plaintiffs in the *PSP Antitrust Litigation*) received information about the *Hendricks* Settlement from another one of her clients.  Kralowec Decl. #1 (Dkt. 293-1), ¶6.  Ms. Kralowec downloaded and reviewed the Stipulation of Settlement, and immediately contacted counsel for Mr. Hendricks and StarKist to begin negotiations to narrow the Release, and/or expressly carve out from the Release the claims, including allegations of conspiracy, alleged in the *PSP Antitrust Litigation*. *Id.* at ¶¶ 6, 10. She also communicated with counsel for the direct purchasers in the *Olean* action, and counsel for other Objectors herein, to coordinate these negotiations. *Id.* at ¶10.  As detailed in Ms. Kralowec's declaration (#1, Dkt. No. 293-1), Objector's counsel succeeded in convincing StarKist of the need to modify certain Release provisions, but could not convince StarKist that it had to carve out antitrust and other claims not pleaded in *Hendricks*.  Instead, StarKist proposed to modify the provisions in the Release as

---

[1] *See also*, *e.g.*, Kralowec Decl. #1 (Dkt. 293-1), Ex. A, *Moore* Complaint, ¶¶ 23-32.

[2] *See*, *e.g.*, Kralowec Decl. #1 (Dkt. 293-1), Ex. A, *Moore* Complaint, ¶¶ 48-62; and Ex. B, *Gore* Complaint, ¶¶ 54-67.

follows:

> 6.1.  Release by Settlement Class Members.  Effective as of the Final Settlement Approval Date, each and all of the Settlement Class Members (except any such person who has filed a proper and timely request for exclusion) shall release and forever discharge, and shall be forever barred from asserting, instituting, or maintaining against any or all of the Released Persons, any and all claims, demands, actions, causes of action, lawsuits, arbitrations, damages, or liabilities whether legal, equitable, or otherwise, relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the alleged underfilling of the Star Kist Products ~~and/or the purchase of any of the StarKist Products~~ at any time on or after February 19, 2009 and prior to November 1, 2014 (collectively, the "Claims").  <u>For avoidance of doubt, this paragraph does not release any Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws, except to the extent any such Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws are based on allegations of under-filling of Star Kist Products, which are released pursuant to this paragraph.</u> With respect to the Claims released pursuant to this paragraph, each Settlement Class Member shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of California Civil Code section 1542 (and equivalent, comparable, or analogous provisions of the laws of the United States of America or any state or territory thereof, or of the common law or civil law).

StarKist and plaintiff's counsel later filed a formal Amendment to Stipulation of Settlement including this language, which Objectors had rejected as inadequate. *See* Dkt. No. 323-2.

Thus, StarKist acknowledged that the original Release was overbroad in that it purported to release all claims "relating in any way to . . . the purchase of any of the StarKist Products"— which StarKist could later argue included price-fixing and other antitrust claims. Notwithstanding StarKist's concession that antitrust claims should be excluded from the Release, it steadfastly insisted on keeping a release of all claims for antitrust violations and allegations of conspiracy related to under-filling cans of tuna, despite the fact that no such antitrust or conspiracy claims or allegations were pleaded in the *Hendricks* Complaint or litigated in this action.  Kralowec Decl. #1 (Dkt. 293-1), ¶¶12-17 & Exhs. F, G, H & I.  Notably, the original Release contained no explicit statement that any conspiracy or antitrust claims would be covered, so StarKist's proposal to modify the Release to explicitly state that such claims are covered represented an expansion, not a narrowing, of the Release.  *Id.*, ¶¶ 12, 14.

StarKist's position was that the Release must release any and all claims or prospective

claims related in any way to under-filling cans of tuna—even if StarKist, Bumble Bee and Chicken of the Sea conspired to under-fill their products. In sum, StarKist would not agree to carve out antitrust conspiracy or other claims not pleaded in the *Hendricks* Complaint. *Id.*

### B. Objectors' Objections to Final Approval of Settlement and Appearance and Argument at Final Approval Hearing; and the Court's Order Denying Final Approval.

After months of negotiations, StarKist's vehement refusal to further narrow the Release necessitated the filing of formal objections on the Court's deadline of November 20, 2015. *See* Objectors' Notice of Objections to Final Approval of Class Action Settlement (Dkt. 293). The formal objections pointed out that the original Release threatened to extinguish all claims arising out of *any* purchases of the StarKist Products during the Class Period. *Id.* at 8-11.

About two weeks later, StarKist and plaintiff filed an Amended Stipulation of Settlement, which included the exact revised release language that Objectors had previously rejected. Dkt. No. 323-2; *see* Kralowec Decl. filed 3/29/16, ¶4. It omitted the "related in any way" language, but specified that "Claims under federal antitrust, state antitrust, state unfair competition or state consumer protection laws" are released to the extent based on under-filling, regardless of whether the under-filling was unilateral or resulted from a conspiracy. As pointed out in Objectors' formal objections, this language (which StarKist had proposed during "meet and confer" discussions) did not narrow, but rather improperly *expanded*, the release. Dkt. 293 at 4-5; Kralowec Decl. #1, ¶12.

Counsel for Objectors, Kimberly Kralowec, appeared and presented further argument on behalf of Objectors at the December 17, 2015 hearing on Plaintiff's Motion for Final Approval. Ms. Kralowec explained why the Amended Stipulation of Settlement actually expanded, rather than narrowed, the release, and therefore should not be approved. *See* Transcript of Proceedings, Dec. 17, 2015, at 29-30. Ms. Kralowec also explained why the Amended Stipulation of Settlement failed to satisfy the identical factual predicate rule, and argued that the amended release extinguishes claims for which no consideration has been provided. *Id.* at 31-33.

This Court agreed with Objectors' written and oral arguments. On February 19, 2016, the

Court issued its Order Denying Final Approval and Denying Motion for Attorney's Fees as Moot. Dkt. 336.  In its Order, the Court adopted the reasoning stated in, and quoted portions of, the formal Objections filed by Objector's counsel.  Order, *supra*, at 6:14-18 (citing Notice of Objections, Dkt. No. 293).  Specifically, the Court found that the "relating in any way" language of the original release "improperly extended" the release, and that "the parties' post-notice effort to amend the release tacitly acknowledges as much." *Id.* at 4.  As for the amended release, it "also is inadequate, as it fails to satisfy the identical factual predicate rule." *Id.* at 5.  What is more, "[t]here has been no showing that class members 'have been independently compensated for the broad release of claims' related to antitrust conspiracies." *Id.* at 6:6-7 (citation omitted).

For all of these reasons, the Court denied final approval of the settlement, holding that it "cannot approve a settlement in which the scope of the release differs significantly from the scope of the liability alleged." *Id.* at 6:27-28.

### C. Impact of the *Hendricks* Parties' Second Amended Settlement Release and Pending Renewed Motion for Final Approval.

Objector's Motion for fees, costs and incentive awards is based on their efforts, and the efforts of their counsel, that resulted in the Court's February 19, 2016 Order Denying Final Approval, which preserved for consumer class members their right to pursue antitrust and other claims asserted in the *PSP Antitrust Litigation*, as well as other potential future claims against StarKist.  This motion seeks to recover only those fees and costs incurred from August 2015 through February 2016 (the "Initial Objection Period"). *See* Kralowec Decl. #2, ¶¶3,8.

Objectors reserve their right, however, to move for additional attorneys' fees and costs in connection with their sustained efforts, following the Court's February 19 Order, to prevent approval of a settlement of this action with an overbroad release (the "Second Objection Period"). *See id.*  The parties have filed a Second Amendment to the Stipulation of Settlement (Dkt. No. 338), to which Objectors have objected (Dkt. No. 352), but even if this is approved, Objectors' efforts from August 2015 to February 2016 will have led to a significantly narrowed release, substantially benefiting the class.

*That* is the work for which this motion now seeks compensation.

OBJECTORS' MOTION FOR ATTORNEYS'
FEES, COSTS, INCENTIVE AWARDS — - 8 -   Case No. 4:13-cv-00729-HSG

**D. Objectors' Attorneys' Fees and Costs.**

Objectors' counsel are highly experienced in handling plaintiff-side complex litigation, including consumer class actions such as this one. Kralowec Decl. #2 (filed herewith), ¶4 & Ex. 1; Taylor-Manning Decl., ¶4 & Ex. 1. The lodestar for the above-described work performed by The Kralowec Law Group in this matter during the Initial Objection Period (August 2015 through February 2016) is approximately $138,360.50 (205.9 hours), with unreimbursed expenses of $927. Kralowec Decl. #2, ¶2. The work of Robert Taylor-Manning is set forth in his declaration; his lodestar for this work is approximately $15,165 (33.7 hours), with unreimbursed expenses of $534.97. Taylor-Manning Decl., ¶2. The two firms' combined lodestar is $153,525.50, with total expenses of $1,461.97. Kralowec Decl. #2, ¶12.

The combined lodestars of Kralowec Law and Taylor-Manning, together with the lodestar claimed by plaintiff's counsel Bursor & Fisher (which is $1,583,532 (*see* Dkt. No. 262, at 16:5; Dkt. No. 360, ¶4)), is $1,737,057.50. *See* Kralowec Decl. #2, ¶38. The sum set aside in the Stipulation of Settlement for attorneys' fees (*i.e.*, $4 million; *see* Dkt. No. 183-1, ¶3.1), if awarded, would represent a multiplier of approximately 2.3 for the three firms' combined work. *Id.* This, in turn, supports a proportionate lodestar award to Kralowec Law of $318,228, and to Taylor-Manning of $34,879.50, with the remaining fees, if approved, to Bursor & Fisher.

**III. ARGUMENT.**

**A. T**h**e Applicable Standards for Common Fund Fee Awards to Objectors.**

The legal standard for awards of attorneys' fees to counsel for objectors is clear in this District: "Counsel for objectors who confer a benefit upon the class are entitled to an award of reasonable attorneys' fees and expenses." *In re Leapfrog Enterprises, Inc. Sec Litig.*, No. C-0305421, 2008 WL 5000208, at *2 (N.D. Cal. 2008) (citing *Wininger v. SI Management L.P.*, 301 F.3d 1115, 1123 (9th Cir. 2002)). "In order to justify an award of attorneys' fees to an objector in a class action settlement, the objector must "increase the fund *or otherwise substantially benefit the class members*." *Id.* (citing *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1052 (9th Cir. 2002)). *The "substantial benefit" need not be financial*. *Id.* (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392, 90 S.Ct. 616 (1970); *see also Rodriguez v. Disner*, 688 F.3d 645, 659-60,

969 (9th Cir. 2013) (reversing denial of fee award to objectors who conferred a substantial benefit by bringing to the district court's attention a conflict of interest between class counsel and class representatives).

### B. Objectors' Actions to Narrow the Settlement Release Conferred a Substantial Benefit on Consumer Class Members.

There can be no question that Objectors conferred a substantial benefit on the consumer members of the Settlement Class, in forcing a narrowing of the settlement release to preserve their antitrust and other claims, including all claims asserted in the *PSP Antitrust Litigation*. As the Court stated in its Order (citing Objector's Notice of Objections, Dkt. No. 293 at 6), the "Settlement provides no consideration for antitrust conspiracy claims for which the class could have recovered treble damages, and for which StarKist would have faced the risk of joint and several liability for its competitor's actions and its competitor's sales." Order, at 6. Further, the Court's Order is consistent with the inevitable conclusion, based on StarKist's vehement opposition to any amendments to its broad release, that it intended to force a release in this action of antitrust and conspiracy claims not pleaded by Mr. Hendricks, that will prove to be valuable, substantial and supported by evidence in the ongoing *PSP Antitrust Litigation*:

> The Court found counsels' statements at the final fairness hearing further cause for concern. Counsels' repeated avowals that a conspiratorial-underfilling "claim does not exist," *see* Dkt. No. 333 at 51, and that "there wasn't evidence of it, [and] it wasn't brought up," *id.* at 21, are hard to square with the final-hour amendment expressly requiring the class to release conspiratorial-underfilling claims. If there is no such claim, the parties should have no need to force class members, post-notice, to release that non-existent claim."

What is more, in a subsequent filing, StarKist *admitted* that in response to Objectors' efforts, it omitted the "relating in any way" language, which the Court found "improperly extended [the release] beyond the stop of the facts in this action" (Dkt.336 at 4). *See* Order at 4:26-5:1 (quoting StarKist's brief, Dkt. No. 323, wherein StarKist said that it "considered the objectors arguments and has, *in response*, agreed to amend the language of the Release" (emp. added).)

Objectors' diligent actions, including their counsel's protracted negotiations with StarKist, their careful, supported Objections to the overbroad release, their success in narrowing the release even before to the final approval hearing, and their success in preventing a settlement

with a still vastly overbroad release of valuable claims, conferred a substantial benefit on the Settlement Class.

### C. Objectors' Counsel's Fees and Costs are Reasonable and Should Be Awarded.

Objectors' counsel, The Kralowec Law Group and Robert Taylor-Manning, have a combined lodestar of $153,525 for their work in advancing the interests of the Objectors and the Settlement Class in *Hendricks*, for a combined total of 239.6 hours' work over approximately six months (late August 2015 to February 2016).  Kralowec Decl.#2 (filed herewith), ¶¶9, 12.

The accompanying declarations of Ms. Kralowec and Mr Taylor-Manning contain detailed summaries of the work their firms performed and the hours spent on each task.  *Id.* ¶¶5-6, 14-17; Taylor-Manning Decl. (filed herewith), ¶¶5, 11-13.   The hours are reasonable, and were reasonably expended, and should be awarded.  They included extensive negotiation efforts, evaluating the *Hendricks* record, drafting detailed client and counsel declarations, drafting the formal objections, evaluating the Second Amended Stipulation of Settlement, preparing for a complicated oral argument, and appearing and presenting that argument at the hearing.  *See* Kralowec Decl. #1 (Dkt. 293-1), ¶¶6-17; Kralowec Decl. #2 (filed herewith), ¶p5-6, 14-17.

The reasonableness of these figures is borne out by the supplemental declaration of *Hendricks* counsel, Mr. Bursor, filed on April 4, 2016 (Dkt. No. 360).  Kralowec Dec. #2 (filed herewith), ¶13.  Mr. Bursor states that his firm incurred 466.3 hours, for a lodestar of $238,812, for the five-month period from October 28, 2016 to approximately early April 2016.  *See* Dkt. No. 360, ¶4.  Much of this time involved responding to Objectors' objections and engaging in discussions with Objectors' counsel concerning their objections (although class counsel presumably also did other work during that period).  Kralowec Decl. #2 (filed herewith), ¶13. The total hours of 239.6 and lodestar of $153,525 for approximately *six* months' work is comparable to what Mr. Bursor's firm incurred during the overlapping five-month period described in his declaration.

The hourly rates submitted by Objectors' counsel are reasonable and in line with the rates charged for similar work by professionals with similar levels of experience and expertise and

1  with comparable reputations.  Kralowec Decl. #2 (filed herewith), ¶¶19-20; Taylor Manning

2  Decl., ¶ 16.  The rates contain no premium for the contingency nature of a plaintiffs' class-action

3  practice.  Kralowec Decl. #2 (filed herewith), ¶19.   They are based on counsel's knowledge of

4  this market, rates established for Objectors' counsel by the law firms in California for which they

5  have worked; review by Objectors' counsel of declarations of other attorneys in California

6  plaintiff-side class action firms with whom they competes, setting forth their rates; (c) review of

7  publicly-available information regarding prevailing rates, such as reports in legal newspapers; (d)

8  review of the rates charged by other firms with whom Objectors' counsel have associated in its

9  litigation matters; (e) review by Objectors' counsel of reported decisions and fee rulings

10 reflecting other firms' hourly rates; and (f) the willingness of prospective hourly clients to agree

11 to the regular hourly rates of Objectors' counsel.   Kralowec Decl. #2 (filed herewith), ¶¶19-29;

12 Taylor Manning Decl., ¶16.  The submissions of Class Counsel Bursor & Fisher contain

13 additional information supporting the reasonableness of these rates.  *See* Kralowec Decl. #2

14 (filed herewith), ¶¶30-31.

15      The costs claimed by Kralowec Law and Taylor-Manning were also reasonably related to

16 advancing the interests of the Objectors and the Settlement Class, would have been billed to the

17 client in a non-contingency matter, and are based on expense records maintained in the ordinary

18 course of business.  Kralowec Decl. #2 (filed herewith), ¶35; Taylor Manning Decl., ¶20.

19      If the Court is inclined to grant this motion and award fees to Objectors' counsel, it

20 would be appropriate for the Court to consider approving not merely the unadorned lodestar, but

21 also to consider awarding the same fee multiplier, if any, that it may approve for class counsel

22 Bursor & Fisher.  In their original fee motion, Bursor & Fisher sought a multiplier of 2.97.  Dkt.

23 No. 262, at 2:10-22. In a recent declaration, Bursor & Fisher updated their lodestar through

24 approximately early April, and now seek a multiplier of 2.53.  Dkt. No. 360, ¶¶4-5.  If the Court

25 approves fees totaling $4 million, as contemplated by the Stipulation of Settlement (*see* Dkt. No.

26 183-1, ¶3.1), then the combined lodestars of Kralowec Law, Taylor-Manning, and Bursor &

27 Fisher would yield a multiplier of 2.3.  Kralowec Decl. #2, ¶38.  It is appropriate for Objectors'

28

counsel to share in any such multiplier, given the scope of their contributions to the litigation and the resulting benefits to the class, and the fact that Objectors' counsel, like class counsel, worked on a pure contingency basis, without any guarantee of compensation, and with a significant risk that the Court would reject their arguments and their work would be for naught.  Moreover, Objectors' counsel were forced to struggle, for months, to negotiate with attorneys for StarKist who were all but intractable in their positions.  Such a fee award would not further reduce the compensation paid to the class, which is important to Objectors' counsel.  Accordingly, Objectors respectfully ask the Court to approve the same multiplier, if any, as may be approved for Bursor & Fisher.

**D. Objectors Deserve Incentive Awards of $1,000 Each from the Common Fund.**

Incentive awards are properly awarded to objectors who confer a benefit on the class.  In *In re Apple Inc. Securities Litig.*, No. 5:06-CV-05208, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011), the court awarded an objector the precise amount as an incentive award sought by Objectors, $1,000 (objector pointed out an affiliation between lead counsel and two university programs slated to receive a $2.5 million donation from defendants, which amount was instead paid into the settlement fund).  Objectors Mr. Moore and Ms. Gore worked closely with their counsel to prepare their declarations in support of their objections, and provided additional information and documents to support counsel's work.  Kralowec Decl. #2 (filed herewith), ¶36.  The declarations established their standing to assert these objections by documenting their purchases of qualifying cans of tuna (the "StarKist Products" as defined in the Stipulation of Settlement, Dkt. No. 183-1, ¶1.3) during the *Hendricks* class period (as defined in the Stipulation of Settlement, *id.*, ¶6.1).  Kralowec Decl. #2 (filed herewith), ¶26.  Absent these contributions, their counsel could not have asserted their objections or obtained the Court's favorable Order disapproving the overbroad original release, which preserves the rights of the class to assert claims against StarKist in the *PSP Antitrust Litigation* and other litigation.  *Id.*

The Stipulation of Settlement sets aside up to $5,000 each for named plaintiff Mr. Hendricks, and for eight Interested Parties, for a total of $45,000.  *See* Dkt. No. 183-1, ¶3.2.  Mr.

Bursor's fee motion, however, seeks $5,000 for Mr. Hendricks and only $1,000 for each of the eight Interested Parties, for a total of $13,000. *See* Dkt. No. 262 at 22:11-12, 23:27-28. Fairness dictates that the same incentive awards be approved for Mr. Moore and Ms. Gore (whose contributions benefited the class by leading to a significantly narrower release) as the awards sought for the Interested Parties. What is more, funds are readily available because the Stipulation of Settlement sets aside up to $45,000 for incentive awards, but plaintiff's motion seeks only $13,000. *Id.* Awarding an additional $1,000 each to Mr. Moore and Ms. Gore would result in a total of $15,000 in incentive awards to the named plaintiff and 10 class members, well below the $45,000 set-aside. *See* Kralowec Decl. #2 (filed herewith), ¶37.

## IV. CONCLUSION

Objectors, having conferred a substantial benefit on the consumer members of the Settlement Class herein, respectfully request the Court to: (1) award attorneys' fees to The Kralowec Law Group in the amount of $318,228 and to Robert Taylor-Manning in the amount of $34,879.50; (2) alternatively, to award attorneys' fees to The Kralowec Law Group in the amount of $138,360.50 and to Taylor-Manning in the amount of $15,165; (3) award costs to the Kralowec Law Group in the amount of $927 and to Robert Taylor-Manning in the amount of 534.97; and (4) award Objector Colin Moore and Kathy Durand Gore each $1,000 as incentive awards for their work performed to benefit the members of the Settlement Class.

DATED:  April 20, 2016                    Respectfully submitted,

By:        */s/ Kimberly A. Kralowec*
Kimberly A. Kralowec (Cal. Bar No. 163158)
Kathleen Styles Rogers (Cal. Bar No. 122852)
THE KRALOWEC LAW GROUP
44 Montgomery Street, Suite 1210
San Francisco, CA 94104
Telephone: 415-546-6800
Facsimile:  415-546-6801
Email:     kkralowec@kraloweclaw.com
           krogers@kraloweclaw.com

*Attorneys for Objectors Colin Moore and Kathy Durand Gore*

OBJECTORS' MOTION FOR ATTORNEYS'
FEES, COSTS, INCENTIVE AWARDS            - 14 -            Case No. 4:13-cv-00729-HSG

Robert Taylor-Manning (Wash. Bar No. 21890)
SANDIA CASCADE LAW GROUP. PLLC
1800 South Jackson St., Suite 123
Seattle, WA 98144
Telephone: (206) 310-3333
Facsimile: (206) 299-4010
Email: rtm@sandiacascadelaw.com

*Attorney for Objector Kathy Durand Gore*