ROBERT TAYLOR-MANNING
SANDIA CASCADE LAW GROUP. PLLC
1800 South Jackson St., Suite 123
Seattle, WA 98144
Telephone:	(206) 310-3333
Facsimile:	(206) 299-4010
Email: rtm@sandiacascadelaw.com

*Attorney for Objector Kathy Durand Gore*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PATRICK HENDRICKS, individually and on behalf of all others similarly situated,<br><br>Plaintiff ,<br><br>v.<br><br>STARKIST CO.,<br><br>Defendant. | Case No. 3:13-CV-0729-HSG<br><br>**DECLARATION OF ROBERT TAYLOR-MANNING IN SUPPORT OF MOTION BY OBJECTORS COLIN MOORE AND KATHY DURAND GORE FOR ATTORNEYS' FEES, EXPENSES AND INCENTIVE AWARDS**<br><br>Date: June 6, 2016<br>Time: 2:00 pm<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom 15, 18th Floor |

I, Robert Taylor-Manning, declare as follows:

1.	I am an attorney licensed to practice law in the State of Washington.  I am the principal of Sandia Cascade Law Group, PLLC (hereafter "Sandia Cascade"), counsel of record for objector Kathy Durand Gore in the above-referenced litigation.  I am also counsel of record for objector Kathy Durand Gore in *Gore v. Bumble Bee Foods, Tri-Union Seafoods LLC, StarKist Company, and King Oscar, Inc.*, Case No. 15-cv-2121-JLS-MDD (S.D. Cal.).  I have

TAYLOR-MANNING DECLARATION

personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2. My lodestar for work performed in this matter from August 2015 through February 2016 (the "Initial Objection Period") is approximately $15,165, and I have incurred approximately $534.97 in unreimbursed expenses, as set forth in more detail below.

3. I have also expended time, and incurred unreimbursed expenses, in this matter from March 2016 through mid-April 2016 (the "Second Objection Period"). I intend to join in a further motion to recover these fees and expenses, if indicated after the Court rules on the pending objections.

4. I am highly experienced in handling complex plaintiff-side litigation, including antitrust and consumer class actions such as this case. A true and correct copy of my current firm resume, summarizing my experience, is attached as **Exhibit 1**. More information on my qualifications is set forth below.

### Overview of Work Done by Sandia Cascade to Benefit the *Hendricks* Class

5. *Initial Objection Period*: I first became aware of the *Hendricks* matter in August 2015, when I was researching potential claims in the lawsuit that is now known as the *Packaged Seafood Litigation*. In September 2015, in parallel with working with my co-counsel, Kimberly Kralowec on the *Gore* Complaint, I learned from her details about the scope of the release in the proposed *Hendricks* settlement. I agreed with her assessment that the release in the proposed settlement in *Hendricks* was likely to release claims of my client and other members of the proposed class in the *Packaged Seafood Litigation*.

6. To be clear, at all times Ms. Kralowec and her firm took the laboring oar on the objection to the *Hendricks* settlement. My involvement was focused on identifying whether Ms. Gore, or clients I represent in other cases now consolidated in the *Packaged Seafood Litigation*, were putative members of the *Hendricks* class and had standing as objectors. My efforts in that regard are set forth in greater detail below.

7. In summary, although I reviewed and evaluated the release language in the

*Hendricks* Stipulation of Settlement, in the interest of efficiency and judicial economy, I left all discussions with plaintiff and defense counsel in *Hendricks* to Kralowec Law. I reviewed the objections and responses to the objections, and attended the hearing on December 17, 2015. More detail on the work performed during this period is set forth below.

**Sandia Cascade's Lodestar for Work Done During the Initial Objection Period**

8. The total number of hours reasonably expended by me during the Initial Objection Period, *i.e.*, from August 2015 through February 2016, is approximately 33.7 hours, and my total lodestar at current rates is $15,165, as follows:

| **Name of Professional** | **Title** | **Hours** | **Rate** | **Lodestar** |
|---|---|---|---|---|
| Robert Taylor-Manning (1992 law school graduate; 23 years of practice experience) | Principal | 33.7 | 450 | 15,165 |
| **TOTALS:** | | 33.7 | 450 | 15,165 |

9. The figures stated above were prepared from the contemporaneous computerized time records regularly prepared and maintained by me in the ordinary course of business. These records reflect all hours worked and tasks performed to represent the interests of the objectors and the *Hendricks* class. A detailed report of the work performed by me from August 27, 2015 through February 29, 2016, including each individual time entry with a description of the work performed, is available for the Court's *in camera* inspection upon request.

10. Time spent on the objections in this matter has been carefully segregated from time spent on the *PSP Antitrust Litigation*. The figures above do not include any hours expended on the *PSP Antitrust Litigation*, and are limited to those hours spent specifically on evaluating the *Hendricks* release language, speaking with my clients to determine whether they were part of the putative settlement class in the *Hendricks* matter, and preparing my clients' declaration and supporting evidence. The figures above also do not include any hours expended in preparing this motion.

**Breakdown of Sandia Cascade's Lodestar for Work Performed
During the Initial Objection Period**

11.  The work performed by Sandia Cascade for the benefit of the *Hendricks* class during the Initial Objection Period (August 2015 to February 2016) can be broken down by time period as follows:

12.  **August 2015 through October 2015:** During this period, I reviewed and evaluated the impact of the *Hendricks* Stipulation of Settlement and the overbroad release language contained in it.  As previously mentioned, I did not duplicate the efforts of the Kralowec Firm in engaging in discussions with counsel in Hendricks, focusing instead on discussions with my clients, including Kathy Durand Gore, and obtaining documents and other evidence related to their potential status as objectors. I expended approximately 21.2 hours of professional time on these tasks during this period.

13.  **December 2015 through February 2016:** During this period, my primary focus was communicating with my clients, brief communications with co-counsel and other objecting counsel, and attending the argument on December 17, 2015. I expended approximately 12.5 hours of professional time on these tasks during this period.

14.  As mentioned above, from March 2016 through the present, I have spent a small amount of time tracking the court's order and discussing it, and the continuing negotiations related to the scope of the release language, with my client and co-counsel. This time will be sought, if appropriate, in a later motion.

**Sandia Cascade's Hourly Rates Are Reasonable and In Line With the Market
for Complex Class Action Litigation Work**

15.  My hourly rate is the usual and customary hourly rate charged for my services in similar complex litigation.  Based on my 23 years of experience handling similar complex and class action litigation, I believe the rates are reasonable and in line with the rates charged for similar work by professionals with similar levels of experience and expertise and with comparable reputations.  The rates stated above were determined by me, as the principal of

Sandia Cascade, in the ordinary course of business. They are the rates I claim in my fee applications in all my contingency-fee cases, both inside and outside the Seattle Area.

16. In determining my hourly rates in the ordinary course of business, I consider a variety of factors, including but not limited to: (a) my knowledge of this market, in which I have been practicing since 1992, including my knowledge of the rates established for me and other attorneys and paralegals by the law firms in Washington for which I have previously worked; (b) my review of declarations of other attorneys around the country, and in Washington State, and in California plaintiff-side class action firms with whom I compete, setting forth their rates; (c) review of publicly-available information regarding prevailing rates, such as reports in legal newspapers; (d) review of the rates charged by other firms with whom I have associated in litigation matters; (e) review of reported decisions and fee rulings reflecting other firms' hourly rates; and (f) the willingness of prospective hourly clients to agree to pay my regular hourly rates.

### Sandia Cascade Took on Significant Contingency Risk In Order to Pursue This Matter

17. I undertook this litigation on a pure contingency basis. If I had not been working on this matter, I would have expended those hours working on other pending cases in which attorneys' fees have been or are expected to be awarded in the future.

18. During the Initial Objection Period, I was, and remain, a sole practitioner. The time and effort expended by me in this matter represented a significant commitment of my limited resources, with no guarantee of any compensation.

### Unreimbursed Expenses Incurred by Sandia Cascade During the Initial Objection Period

19. In addition to performing the work described above, from August 2015 through February 2016, Sandia Cascade incurred unreimbursed costs and expenses in connection with our clients' objections, totaling $534.97, as follows:

| Expense Category | Amount |
|---|---|
| Copies | $ 5.40 |

| | |
|---|---:|
| Travel Expenses | $ 529.57 |
| **Total** | **$ 534.57** |

20. The costs and expenses set forth above are the firm's usual and customary charges for the expenses incurred in this litigation, and no surcharge has been added to any cost or expense. The costs and expenses set forth above are reflected in the books and records of the firm. These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. All such costs and expenses would have been billed to the clients if this had been a non-contingency matter.

**Incentive Awards Should Be Approved for Objectors Moore and Gore**

21. Rather than belabor the point, I simply join in the detailed discussion of the rationale supporting an incentive award set forth in Ms. Kralowec's papers.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on April 20, 2016 at Seattle, Washington.

Executed April 20, 2016 in Seattle, WA.

   s/Robert Taylor-Manning

Robert Taylor-Manning

Sandia Cascade Law Group PLLC

# EXHIBIT 1

ROBERT TAYLOR-MANNING

1800 South Jackson St., Suite 123, Seattle, WA  98144 | 206.310.3333 | rtm@SandiaCascadeLaw.com

EDUCATION

| | |
|---|---|
| University of Washington School of Law, Seattle, WA<br>J.D. with Honors<br>University of Washington Law Review<br>Moot Court Honor Board | 1992 |
| University of Oregon, Eugene, OR<br>B.A. with Honors, English Literature | 1985 |

CLASS ACTION AND LITIGATION PRACTICE

| | |
|---|---|
| Sandia Cascade Law Group, PLLC<br>Law Offices of Robert Taylor-Manning<br>Principal | 2006 – Present |

Counsel for proposed class of canned seafood purchasers in *In re Packaged Seafood Products Antitrust Litigation*, MDL 2670 (S.D. Cal); Counsel for proposed class of Oregon indirect purchasers in *In re Vehicle Carrier Services Antitrust Litigation*, MDL 2471 (D.NJ).  Counsel of record in *In re Pre-Filled Propane Tank Antitrust Litigation*, 4:14-md-02567-GAF (W.D. Mo.) Affiliated counsel in *Kleen Products LLC v. Packaging Corporation of America*, 01:10-cv-05711 (N.D. Ill) ("Containerboard Antitrust Litigation").  Affiliated counsel in *Roos v. Honeywell International, Inc.*, CGC 04-436205 (RAK) (Sup. Ct. CA, S.F. Cy.) (settlement approved, appeal of objections fully briefed before California Court of Appeals). Represented a class of New Mexico consumers in *In re Packaged Ice Indirect Purchasers Antitrust Litigation*, MDL 1952 (E.D. MI) (settlement pending).

| | |
|---|---|
| Hagens Berman<br>Associate | 2000 - 2004 |

Part of the Hagens Berman team that served as co-lead counsel in *In re Visa Check/MasterMoney Antitrust Litigation*, 96-CV-5238 (JG)(E.D.N.Y), and *In re DRAM Antitrust Litigation*, M 02-1486, M.D.L. No. 1486 (N.D. Cal.).  As defense counsel, I had primary responsibility for creating the process by which claims rates were projected, settlement administrators selected, and vendors managed in 17 concurrent/overlapping settlements in litigation related to allegations that Microsoft violated antitrust or consumer statues in the pricing of Microsoft Windows and Office software.

| | |
|---|---|
| Rohan, Goldfarb & Shapiro<br>Associate | 1994 - 1999 |

General litigation practice, including all phases of drafting pleadings, taking discovery, drafting and arguing motions, appeals, and settlements.  Work included insurance defense, personal injury plaintiffs and defense, employment defense. Significant amount of practice devoted to class action litigation, exclusively on behalf

of plaintiffs. Major cases include *In Re Visa Check/MasterMoney Antitrust Litigation*, *In re Paine Weber Limited Partnership Litigation*, *In re High Fructose Corn Syrup Antitrust Litigation*, and *In re X-Ray Film Antitrust Litigation*.

### ARTICLES

*An Easy Case Makes Bad Law* – <u>Burnham v. Superior Court of California</u>, 110 S. Ct. 2105 (1990), 66 Washington Law Review 623 (1991)

### PUBLISHED DECISIONS

United States of America, Plaintiff-Appellee, v. One 1985 Mercedes-Benz, 300 SD, VIN WDBCB20C6FA177831, 14 F.3d 465 (1994)

### CLE PRESENTATIONS

Factors that Impact Claims Rates, Panelist, Consumer Attorneys of San Diego 5th Annual Class Action Symposium, San Diego, California (September 2012)

Ethical Considerations in Canadian Class Actions, accredited CLE Program, Gina Intrepido-Bowden and Robert Taylor-Manning, presented in Toronto, Canada at Rochon Genova, LLP (April 2012).

The Fundamentals of Settlement Administration, accredited CLE Program, Gina Intrepido-Bowden and Rob Taylor-Manning, presented in Pennsylvania at Spector Roseman Kodroff & Willis, P.C. (December 2011).

21st Century Class Notice and Outreach – Driving More Claims and Reaching More Class Members for Less Money, Panelist, Consumer Attorneys of San Diego 3rd Annual Class Action Symposium, San Diego, California (October 2010)

Class Action Notice and Claims Administration: Trends and Innovation, accredited CLE program, Dr. James White and Robert Taylor-Manning, presented in Chicago, Illinois at DLA Piper (April 2009)

Class Action Notice and Claims Administration: Trends and Innovation, accredited CLE program, Dr. James White and Robert Taylor-Manning, presented in New York, NY at Skadden Arps (April 2009)

Class Notice and Claims Administration: Avoiding the Pitfalls, accredited CLE program, Eric Hudgens and Robert Taylor-Manning, presented in Tucson, AZ at the Law Offices of Joseph Watkins (October, 2008)

Administration of Class Action Settlements, Washington State Bar Association 20th Annual Antitrust, Consumer Protection and Unfair Business Practices CLE and Annual Meeting, Seattle, Washington (November 2003)

### TESTIMONY

"The Seattle Music Community Responds to Violence," Testimony of Robert Taylor-Manning, Secretary, Washington Music Industry Coalition before the Washington State Senate Health & Human Services Committee Public Hearing, Children's Hospital, Seattle, Washington, November 17, 1993

### ADMISSIONS

All state and federal courts in the State of Washington
9th Circuit Court of Appeals