UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HENDRICKS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STARKIST CO, et al.,<br><br>　　　　　Defendants. | Case No.13-cv-00729-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 262, 347, 353, 363 |

## I.　INTRODUCTION

Pending before the Court is Plaintiff Patrick Hendricks' renewed motion for final approval, Dkt. No. 347.  The Court held a final fairness hearing on December 17, 2015, and a second hearing on April 20, 2015.

Also pending before the Court is Plaintiff's motion for attorneys' fees, costs, and expenses, Dkt. No. 262; objector Eric Lindberg's motion to remove class counsel and conduct discovery, Dkt. No. 353; and objectors Colin Moore and Kathy Durand Gore's motion for attorneys' fees, expenses, and incentive awards, Dkt. No. 363.

## II.　BACKGROUND

### A.　Litigation History

On February 19, 2013, Plaintiff filed this action in the Northern District of California.  *See* Dkt. No. 1 ("Complaint").  The Complaint asserted claims under California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law), California Business and Professions Code § 17500 *et seq.* (False Advertising Law), and for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, fraud, and unjust enrichment.  *Id.*  The Court dismissed Plaintiff's unjust

United States District Court
Northern District of California

enrichment claim on March 25, 2013.  *See* Dkt. No. 57.

The parties participated in two settlement conferences before Judge Corley, the first on May 21, 2014 and the second on March 20, 2015.  *See* Dkt. Nos. 67 and 126.  While no settlement was reached during those conferences, the case ultimately settled shortly after the second settlement conference and just prior to the hearing on Plaintiff's motion for class certification on April 16, 2015.  *See* Dkt. No. 184 at 5.  Plaintiff moved for preliminary approval of the Settlement Agreement on May 14, 2015.  *Id.*  On July 23, 2015, the Court granted preliminary approval of the settlement, provisionally certified a settlement class, appointed Scott Bursor of Bursor and Fisher P.A. as lead class counsel, and directed notice to Class Members.  Dkt. No. 194.  After the Court's preliminary approval and after class notice was distributed, the parties stipulated to a change in the scope of the settlement's release, adding new claims which substantively changed the settlement's terms.  *See* Dkt. No. 323-2, Ex. A.

On October 30, 2015, Plaintiff filed a motion for attorneys' fees, Dkt. No. 262, and on December 11, 2015, Plaintiff filed a motion for final approval of the settlement, Dkt. No. 326. On December 17, 2015, the Court held a fairness hearing regarding final approval of the settlement agreement, attorneys' fees and expenses, and incentive payments to the named plaintiff and interested parties.  On February 19, 2016, the Court denied final approval of the settlement action without prejudice on two bases, holding (1) the settlement notice sent to Class Members did not notify the Class of the amended release and thus was inadequate, and (2) the scope of the original release and amended release violated the identical factual predicate rule.  Dkt. No. 336.

On March 1, 2016, the parties executed a stipulated amendment to the settlement release, or a "second amended release," Dkt. No. 338.  On March 17, 2016, Plaintiff filed a renewed motion for final approval, Dkt. No. 347, which is currently pending before the Court.  The Court set March 29, 2016 as the deadline for submission of objections to the second amended release, and directed Class Counsel to post the deadline on the settlement website.

On March 29, 2016, Objector Eric Lindberg filed a motion to remove class counsel and conduct discovery, Dkt. No. 353.  The Court held a second hearing specifically on the second amended release as well as on the motion to remove class counsel on April 21, 2016.

### B.    Settlement Agreement

Following the settlement in principle, the parties executed a Stipulation of Settlement Agreement ("Settlement Agreement").  *See* Dkt. No. 187-1.  The key provisions of the Settlement Agreement are as follows.

*Class:* The "Class" ("Class Members") consists of residents of the United States who, from February 19, 2009 through October 31, 2014, purchased any of the StarKist Products (*i.e.*, 5 oz. Chunk Light in Water, 5 oz. Chunk Light in Oil, 5 oz. Solid White in Water, and 5 oz. Solid White in Oil).

*Payment Terms*:  In full settlement of the claims asserted in this lawsuit, StarKist agrees to pay $8,000,000 in cash and $4,000,000 in vouchers for StarKist products.  *Id*. at 5.  This amount includes payments to claimants for release of their claims, any award of attorneys' fees and costs, claims administrator costs, and any incentive awards to Hendricks and interested parties.  *Id*. at 7.

*Attorneys' Fees and Costs*:  The Settlement Agreement authorizes class counsel to apply to the Court for an award of attorneys' fees and costs incurred in litigating this case.  *Id.* at 11-12.

*Incentive Payment*:  The Settlement Agreement provides that class counsel will petition the Court for approval of payments of no more than $5,000 to Hendricks and "interested parties" identified as Laury Smith, Ben Hall, Brian Andcacky, Joseph Vallillo, Joseph Ebin, Kelly Maucieri, Monica Rodriguez, and Jayme Kaczmarek.  *Id*. at 4, 12.

*Unclaimed Settlement Funds*:  The Settlement Agreement provides that class counsel may petition the Court to seek approval for proposed disposition of any remaining cash and/or vouchers remaining after distribution of claims.  *Id*. at 11.

*Release*:  The second amended release provides the following:

> 6.1 Release by Settlement Class Members.  If the Court grants final approval of the settlement, all members of the Class will release and forever discharge any and all claims or causes of action arising from the factual allegations and/or legal claims *arising from the factual allegations* made in the Action, whether in law or equity, whether seeking damages or any other relief (including attorneys' fees), of any kind or character, known or unknown, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision, or in any other manner, based upon any federal or state statutory or common law, including, without limitation, claims sounding in tort, contract, and the consumer protection laws of the United States or of any state or other

> jurisdiction within the United States, as well as under the unfair or deceptive trade practices, trade regulation, consumer fraud, misrepresentation, and false advertising law of the United States or any state or other jurisdiction within the United States (the "Released Claims"). Excluded from the Released Claims are (a) any and all claims for personal injury, wrongful death, and/or emotional distress arising from personal injury, (b) any claims of any person or entity that purchased StarKist Products for purposes of resale or commercial food preparation and not for his/her/its own consumption (i.e., "Resellers"), and (c) any antitrust claim arising from a conspiracy among, or collusive agreement between, StarKist and one or more of its competitors.

Dkt. No. 339-2 at 4 (emphasized portion was a stipulated addition resulting from the April 21, 2016 hearing).

## III.   MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To assess whether a proposed settlement comports with Rule 23(e), a district court must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  To make this determination, courts consider the following factors:

> the strength of the plaintiff's case; the risk expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*  No single factor is the "most significant." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.

### B.   Adequacy of Notice

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must "clearly and concisely state in plain, easily understood language" the nature of the

4

1    action, the class definition, and class members' right to exclude themselves from the class.  Fed.

2    R. Civ. P. 23(c)(2)(B).  Additionally, before granting final approval of a proposed class settlement,

3    a court must "direct notice in a reasonable manner to all class members who would be bound by

4    the proposal."  Fed. R. Civ. P. 23(e)(1).  While Rule 23 requires that reasonable efforts be made to

5    reach all class members, it does not require that each individual actually receive notice.  *See*

6    *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires

7    reasonable effort to inform affected class members through individual notice, not receipt of

8    individual notice").

9           The Court previously approved the notice and notice plan proposed by the parties.  Dkt.

10   Nos. 194, 196.  The Court finds that the Settlement Administrator properly carried out the notice

11   plan approved by the Court.  *See* Dkt. No. 187-2.  Pursuant to the Court's schedule, KCC Class

12   Action Services, LLC promulgated notice on September 25, 2015 sending both e-mail notices and

13   postcard notices.  Dkt. No. 262-1, ¶ 60; Dkt. No. 187-2.  The notice provided for publication in

14   *People* and the *San Francisco Examiner*; it included an Internet banner campaign, press release,

15   toll-free number, settlement website, Facebook page, and direct notice to roughly 40,600 class

16   members identifiable from Defendant's records.  *Id.*  Of the Class Members who received direct

17   notice, approximately 6,090 were sent an email, and an additional 34,510 were sent a postcard by

18   U.S. Mail.  *Id.* Affiliates of NBC and ABC, Time.com, Consumerist.com, and *The New York*

19   *Times* have also reported news of the settlement.  *Id.* at ¶ 62.  Through the deadline for submission

20   of claims, November 20, 2015, there were 2,512,034 claims submitted.  Dkt. No. 325-1, ¶ 103.  As

21   of December 7, 2015, KCC Class Action had processed 93 opt-outs; of those 93 requests, 16 Class

22   Members also filed a claim.  Dkt. No. 322, ¶ 3.

23          Specifically, with regard to the second amended release, the Court finds additional notice

24   is not needed.  Because the parties have removed the language discharging federal and state

25   antitrust claims from the release and because the latest release narrows the scope of claims

26   discharged, there is no longer a risk that Class Members have relinquished rights without

27   knowledge of new claims.  Thus, additional notice was not required.  *See*, *e.g.*, *Shaffer v.*

28   *Continental Cas. Co.*, 362 F. App'x 627, 631 (9th Cir. 2010) ("Although changes were made to

United States District Court
Northern District of California

5

the release after potential class members received the notice, the changes did not render the notice inadequate because they narrowed the scope of the release."); *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *4, 13-15 (N.D. Cal. Aug. 28, 2013) (granting final approval even though parties stipulated to several modifications to the release without providing new notice to the class); *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13CV2679-CAB BGS, 2014 WL 9872803, at *3 (S.D. Cal. Dec. 23, 2014) (granting final approval to a settlement agreement that included modified release language without requiring additional notice as the added language did not "broaden the release being provided").

In light of the foregoing, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

## C.    Fairness, Adequacy, and Reasonableness of Settlement

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1.    Scope of Second Amended Release

As an initial matter, the Court notes that it is satisfied that the second amended release resolves the concerns identified in its February 19, 2016 order.  The release no longer discharges "any and all claims . . .  relating in any way to the claims asserted or the factual allegations made in the Action, including without limitation the . . . purchase of any of the StarKist Products." *See* Dkt. No. 323 at 2.  Rather than discharging claims beyond the complaint's scope, the release expressly limits the discharge to "causes of action arising from the factual allegations and/or legal claims arising from the factual allegations made in the Action."  Moreover, the release no longer violates the identical factual predicate rule by forcing Class Members to discharge claims under antitrust laws mentioned nowhere in the complaint.  Rather, it explicitly excludes from the release any antitrust claim by (1) limiting the release to claims "arising from the factual allegations and/or legal claims made in the Action," and (2) excluding from the Released Claims "any antitrust claim arising from a conspiracy among, or collusive agreement between, StarKist and one or more of its competitors."  Dkt. No. 339-2 at 4.  Accordingly, the release no longer poses an obstacle to the fairness, adequacy, or reasonableness of the Settlement.

**2.      Strength of Plaintiff's Case and Risk of Continued Litigation**

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 966 (9th Cir. 2009).  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotations omitted).

Here, the settlement amount is adequate given the expense, complexity, and duration of further litigation.  To prevail, Plaintiff would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The risks and costs associated with class action litigation weigh strongly in favor of settlement. *See Curtis-Bauer v. Morgan Stanley & Co.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

The settlement provides $12,000,000 as a gross settlement amount, $8,000,000 to be paid in cash and $4,000,000 in StarKist vouchers.  Of the 2,512,034 claims submitted, 902,643 members chose to receive vouchers. Dkt. No. 325-1, ¶¶ 104-05.  These Class Members will receive approximately $4.43 per claim. *Id.*  Of the claims submitted, 1,607,632 Class Members chose to receive cash. *Id.*  If the motion for attorneys' fees, costs, and incentive awards is granted in full, Class Members who chose to receive cash will be paid approximately $1.97 per claim. *Id.*  Class counsel continues to represent that this is an "excellent recovery that will fully compensate most Class members for 100% of their alleged losses, and possibly more." *Id.* at ¶ 105.  As the Court observed during the April 16, 2015 Case Management Conference, the pressed-weight testing results for StarKist cans of tuna presented a significant hurdle to establishing that

7

1  substantial numbers of "underweight" cans were sold to the public.  The relative weakness of

2  Plaintiff's case on the merits thus favors approval.

3      The average retail price for a 5-ounce can of StarKist Chunk Light In Water was 86 cents

4  during the Class Period.  *Id.*  Testing showed that there was an average underfill between 4.5%

5  and 16.7%, resulting in damages between 3.87 cents and 14.3 cents per can.  *Id.*  A $1.97 cash

6  payment would provide full recovery for 13 to 50 cans and a voucher of $4.43 would provide full

7  recovery for 30 to 114 cans.  *Id.*  Accordingly, this factor weighs in favor of settlement as well.

8              **3.      Risk of Maintaining Class Action Status**

9      This factor concerns whether class certification can be maintained through trial, and also

10  weighs in favor of settlement.  Certifying a class of millions of consumers who may have

11  purchased some, but not all, varieties of StarKist's tuna products over half a decade presents

12  complex and substantial issues that could undermine certification at different stages of the

13  litigation.

14              **4.      Amount Offered in Settlement**

15      The $12,000,000 settlement amount, while constituting only a single-digit percentage of

16  the maximum potential exposure, is reasonable given the stage of the proceedings and the defenses

17  asserted in this action.  Based on the facts in the record and the parties' arguments at the final

18  fairness hearing, the Court finds that the settlement is within the range of reasonableness in light

19  of the risks and costs of litigation.  *See Stovall-Gusman v. Granger, Inc.*, No. 13-cv-02540-HSG,

20  2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement

21  amount representing 7.3% of the plaintiffs' potential recovery at trial); *see Villanueva v. Morpho*

22  *Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) ("It is

23  well-settled law that a cash settlement amounting to only a fraction of the potential recovery does

24  not per se render the settlement inadequate or unfair." ).  As explained above, the very substantial

25  litigation risks the Class Members face in this case justify an equally substantial litigation risk

26  discount.

27              **5.      Extent of Discovery and Status of Proceedings**

28      This factor evaluates whether class counsel had sufficient information to make an informed

United States District Court
Northern District of California

8

1   decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

2   (9th Cir. 2000).

3        This matter has fully progressed through fact discovery.  Class counsel has received,

4   examined, and analyzed information, documents, and materials that enabled them to assess the

5   likelihood of success on the merits.  These efforts include three separate rounds of interrogatories

6   and requests for production, reviewing over 17,000 pages of responsive documents, taking the

7   depositions of StarKist employees and expert witnesses, extensive consultations with Plaintiff's

8   own experts, numerous interviews with members of the putative class, and significant legal

9   research and briefing.  The parties also attended two in-person mediations with Judge Corley.  The

10   settlement is the result of fully-informed negotiations.  This factor weighs in favor of approval.

11        **6.**     **Experience and Views of Counsel**

12        The sixth factor takes into account counsel's experience and views of the Settlement

13   Agreement.  The Court has previously evaluated class counsel's qualifications and experience and

14   concluded that counsel is qualified to represent the Class' interests in this action. The Court notes,

15   however, that courts have taken divergent views as to the weight to accord counsel's opinions.

16   *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010)

17   ("Counsel's opinion is accorded considerable weight.") *with Chun-Hoon*, 716 F. Supp. 2d at 852

18   ("[T]his court is reluctant to put much stock in counsel's pronouncements, as parties to class

19   actions and their counsel often have pecuniary interests in seeing the settlement approved.").  Even

20   though the Court affords only modest weight to counsel's views, this factor tilts in favor of

21   approval.

22        **7.**     **Presence of a Governmental Participant**

23        This factor is inapplicable because there is no governmental participant in this case.

24        **8.**     **Reaction of the Class Members**

25        Seventh, the Court examines the reaction of the Class Members.  Out of over 2.5 million

26   claims submitted, there were thirteen objections and 93 opt-outs.  Following the second amended

27   release, there were an additional ten objections.  "Given the amount of valid claim forms

28   submitted, and the relatively small number of objections and opt-outs, the reaction of the class to

United States District Court
Northern District of California

9

the Settlement is positive, which favors approving the Settlement.  *See Rodriguez*, 563 F.3d at 967

("The court had discretion to find a favorable reaction to the settlement among class members

given that, of 376,301 putative class members to whom notice of the settlement had been sent,

52,000 submitted claims forms and only fifty-four submitted objections.").

### 9.    Objections to the Settlement

"In determining whether to finally approve a class action settlement, the Court considers

whether there are any objections to the proposed settlement and, if so, the nature of those

objections."  *Moore*, 2013 WL 4610764, at *9.  "The mere fact that there are objections to the

settlement does not necessitate disapproval; instead, the Court must evaluate the objections to

determine whether they suggest serious reasons why the proposed settlement might be unfair."

*Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *6 (N.D. Cal. Nov. 27,

2013).  For the following reasons, none of the objections in this case requires rejecting the

Settlement.[1]

The deadline for submission of claim forms, opt-outs, and objections was November 20,

2015.  Additionally, the Court allowed a second round of objections related to the second amended

release only; these objections were due March 29, 2016.

### a.    Objections Seeking a More Favorable Result

Several objectors seek a more favorable result.  *See, e.g.*, Dkt. No. 215 (contending he

"should be reimbursed more than just what StarKist Tuna Inc. is offering after years of purchasing

the StarKist Tuna Product."); Dkt. No. 271 (contending that the settlement amount should be

greater); Dkt. No. 294 (contending that the settlement amount is "paltry" for Defendant's 2.3

million injured customers); Dkt. No. 288.  "That a more favorable result for some Class Members

could potentially have been reached is not a sufficient reason to reject an otherwise fair and

reasonable settlement."  *Nwabueze*, 2013 WL 6199596, at *7.  More significantly, the request for

a higher settlement fails to account for the risk, expense, complexity, and likely duration of further

protracted litigation, including the pending class certification motion.  Given the possibility of

United States District Court
Northern District of California

---

[1] The objections related to attorneys' fees and incentive awards are addressed in Section IV.

protracted litigation, potential appeals, and the risk that the case would result in no payout for members due to pretrial motions practice or an unfavorable trial result, the Court finds the settlement amount is reasonable.  *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").  These objections are denied.

b.    **Objections to "Coupon" Settlements**

Several objectors complain that this is a coupon settlement.  *See*, *e.g.*, Dkt. No. 286 at 2-3; Dkt. No. 288 at 2; Dkt. No. 294 at 13-14.

These objections are denied.  This is not a coupon settlement.  Unlike coupons, the vouchers do not provide a small discount that requires "class members to hand over more of their own money before they can take advantage of the coupon."  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015).  Contrary to the objectors' contentions, this case is unlike *Davis v. Cole Haan, Inc.*, No. 11-CV-01826-JSW, 2015 WL 7015328, at *5 (N.D. Cal. Nov. 12, 2015).  The discounts in *Cole Haan* expired six months after issuance and were limited to use in a retail store; moreover, the "parties did not provide Class Members with the option to receive cash in lieu of a settlement voucher."  *Id.*  Rather, like the gift cards in *Online DVD-Rental*, the vouchers here have sufficient value to allow Class Members to obtain product without spending their own money.  Moreover, like the *Online DVD-Rental* class members, the Class Members here were given a choice between receiving a cash settlement or the vouchers.  Additionally, the vouchers have no expiration date, are freely transferrable, are redeemable at any retailer that sells StarKist products, and are redeemable in exchange for StarKist products.  These are characteristics of vouchers, not coupons.

c.    **Objections Relating to the Claims Process**

Objector Sweeney argues that the claims process is "cumbersome, unreasonable, and designed to deprive Class Members of [] relief."  Dkt. No. 299.  She further contends that the process does not have "reliable oversight, accountability, and reporting about whether the claims

United States District Court
Northern District of California

United States District Court
Northern District of California

1    process actually delivers what was promised." *Id.*

2        These objections are negated by the over 2.5 million claims submitted in this action.  Dkt.

3    No. 325-1, ¶ 103.  The Settlement Administrator has made significant effort to ensure a

4    straightforward distribution of the funds.  KCC established an informational website and toll free

5    number "to allow Class members to learn more about the settlement in the form of frequently

6    asked questions" and to request more information mailed directly to them.  Dkt. No. 187-2, ¶ 23.

7    KCC included the "toll-free number and website address" in all printed notice documents, on

8    Facebook, and the settlement website.  Dkt. No. 187-2, ¶ 25.  The Court finds these efforts

9    sufficient.  The objection is denied.

10                    d.    **Objections Related to the Notice**

11        Several objectors complain that the notice was inadequate.  Objector Lindberg contends

12   that the class notice was misleading because the individual class member recovery is materially

13   different from the recovery promised and the use of "legalese" in the following sentence is

14   misleading: "These claim amounts may be subject to pro rata dilution if the total amount of claims

15   exceeds the available settlement funds."  Dkt. No. 294 at 8.  Additionally, Objectors Graham,

16   Dunmore, and Williford ("the Graham objectors") contend that the notice fails to satisfy due

17   process because it does not identify the class size.  Dkt. No. 297.  They additionally contend that it

18   was impossible to estimate a member's pro rata share without this information.  *Id.*

19        The Court denies these objections.  First, the phrase "pro rata" is not legalese, and its

20   inclusion does not make the sentence unintelligible.  The sentence, coupled with the preceding

21   sentences, clearly states that a Class Member can receive up to $25 in cash or $50 in vouchers and

22   that the amounts will be reduced if the total amount of claims exceeds the available settlement

23   funds.  Second, the failure to disclose class size or an estimate of a member's pro rata share is not a

24   fatal deficiency.  Rule 23(c)(2)(B) specifies the information that must be in the notice, including

25   details regarding the nature of the action; the class definition; the class claims, issues, or defenses; the

26   binding effect of the class judgment; information regarding appearing through an attorney; and the

27   exclusion process.  As discussed above and in the Court's preliminary approval order, the notice in this

28   case met these requirements.  Because the notice sufficiently apprised the Class Members of the

1  essential terms of the settlement and alerted Class Members to follow up if they had concerns, these

2  objections lack merit.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

3  ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert

4  those with adverse viewpoints to investigate and to come forward and be heard." (internal quotation

5  marks omitted)); *see also Keirsey v. eBay, Inc.*, 2013 WL 5755047, at *4 (N.D. Cal. Oct. 23, 2013)

6  (declining to find notice inadequate based on argument that "neither the notice nor the files of

7  th[e] case explicitly disclose[d] to the Proposed Class the size of the class").

e.    **Objections Regarding Undistributed Cash and Vouchers**

9  Objector Spann contests the proposed used of undistributed cash and vouchers.  Citing

10  *Dennis v. Kellogg Co*. 697 F.3d 858, 865 (9th Cir. 2012), Spann contends that the Settlement

11  Agreement fails to identify the cy pres beneficiaries for undistributed settlement.  *Id.* at 13.

12  Objector Sweeney also contests the lack of "direction regarding cy pres funds."  Dkt. No. 299.

13  Because the settlement funds are fully subscribed, these objections are moot.  *See*

14  *Rodriguez*, 563 F.3d at 966 ("[Cy pres] issue becomes ripe only if the entire settlement fund is not

15  distributed to class members.").

f.    **Dylan L. Jacobs**

17  The Court does not consider objections from Dylan L. Jacobs because he failed to follow

18  the procedures set forth in the class notice.  Dkt. No. 315; *see San Francisco NAACP v. San*

19  *Francisco Unified Sch. Dist.*, 59 F.Supp.2d 1021, 1028 (N.D. Cal. 1999) (providing that one must

20  comply with the procedures required by the notice in order to have standing to object to a

21  settlement).  Jacobs filed his objection on November 25, 2015, five days after the deadline.

g.    **Objections Relating to the Scope of the Second Amended Release**

23  Objector Spann readopts her previous objection to the release, Dkt. No. 349, but Spann did

24  not contest the scope of the release in her previous objection, *see* Dkt. No. 288.  Thus, the Court

25  disregards her latest objection.

26  The Graham objectors incorporate paragraphs 1, 2, 3, 4, 6, 7, and 8 of their original

27  objection, Dkt. No. 297.  Dkt. No. 350.  The earlier objection requested that the parties be required

United States District Court
Northern District of California

United States District Court
Northern District of California

1    "to craft a new settlement that, as a minimum, includes a specific release tailored to the claims

2    made in this class action."  Dkt. No. 297.   As discussed *supra*, the Court finds that the second

3    amended release addresses these objections by limiting the scope of the release to the factual

4    predicate in the operative complaint.

5         Objectors Colin Moore, Carla Lown, and Kathy Durand Gore ("PSP Objectors") identify

6    five concerns with the second amended release.  Dkt. No. 352.  First, they contend that the use of

7    "and/or" language ("all claims or causes of action arising from the factual allegations *and/or* legal

8    claims made in the Action") "untethers the claims alleged from the facts alleged, in violation of

9    the identical factual predicate rule."  *Id.* at 9.  Objector Twitchell raises a similar concern.  Dkt.

10   No. 351 at 4-5.

11        Plaintiff responds that this language "ensures that only claims based on the identical

12   factual predicate as the claims in the lawsuit are being released."  Dkt. No. 347 at 3; *see also* Dkt.

13   No. 358 at 2 ("'Should the Court find that the revised release language currently proposed by the

14   parties already adequately protects Objector and the End-User Purchaser Plaintiffs she seeks to

15   represent, [Twitchell] respectfully requests that any order approving the parties' settlement so

16   state.'  Plaintiff views this as a reasonable request, and would support the inclusion of such

17   language in the final approval order.'" (citation omitted)).  Defendant also submits that this is the

18   reasonable construction of the release language.  Dkt. No. 357 at 3 ("[The] reference to 'legal

19   claims made in the Action' merely sets forth—explicitly—that the release reaches the very legal

20   claims that were asserted in the action.").   To this end, at the April 21, 2016 hearing, the parties

21   agreed on the record to change the phrase "all claims or causes of action arising from the factual

22   allegations and/or legal claims made in the Action" to "all claims or causes of action arising from

23   the factual allegations and/or legal claims *arising from the factual allegations* made in the

24   Action."

25        Second, the PSP Objectors argue that the antitrust carve-out, expressly excluding from the

26   release "any antitrust claims arising from a conspiracy among, or collusive agreement between,

27   StarKist and one or more of its competitors," results in the release of claims brought under state

28   unfair competition and consumer protection laws.  Dkt. No. 352 at 11-12; *see also* Dkt. No. 351 at

4-5.  The Court denies these objections.  That the release expressly excludes antitrust claims, but not other claims, does not mean that all unspecified claims are released.  The narrowing language, releasing only those claims that arise from this action, sufficiently protects class members who want to pursue other actions based on unfair competition or consumer protection claims not arising from the underlying facts in this lawsuit.

Third, they contend that notice of the amended release was inadequate, because the second amended release is not narrower.  Dkt. No. 352 at 13.  Objector Sweeney's latest objection seems to raise similar concerns.  *See* Dkt. No. 355 at 2 ("National members of the class were given no meaningful notice of the 'renewed final settlement.'").  For the reasons discussed above, however, the Court finds that additional notice was not required because the new release is narrower.  It removes the expansive language in earlier releases, which discharged "all claims or causes of actions that have been, might have been, are now, or could have been brought relating to this action or settlement, arising from or related to the under filling of tuna in the StarKist Product." The discharge now is limited to a release of only those causes of action "arising from the factual allegations and/or legal claims arising from the factual allegations made in the Action."  These objections are overruled.

Fourth, the PSP Objectors contend that there is inadequate notice to members who opted out of the class, and argue that the phrase "except opt-outs" should be put back into the second amended release.  Dkt. No. 352 at 14.  Objector Twitchell makes a similar argument, requesting that "all members of the Class" be changed to "Settlement Class Members (except any such person who has filed a proper and timely request for exclusion)."  Dkt. No. 351 at 5.  Twitchell contends that these changes will remove ambiguity as to the nature of the claims released and will preserve the rights of others "she seeks to represent in [] unrelated [antitrust] litigation."  *Id*.  The Court is not persuaded.  Although "class" is not defined, "Settlement Class" and "Settlement Class Members" are defined, and the definition expressly excludes all members who excluded themselves from the Settlement.  Dkt. No. 187-1 at 5.  The release is titled "Release by Settlement Class Members," which by definition limits the release to those individuals who were Class Members who did not exclude themselves from the Settlement.  The Court finds this to be clear.

1   The objection is denied.

2          Fifth, the Court rejects the PSP Objectors' contention that the parties were required to

3   negotiate with the objectors before amending the release.  Dkt. No. 352.  They cite the following

4   for support: "Objections of substance which after a proper hearing are found by the trial court to

5   require modification of the proposed settlement prior to judicial approval undoubtedly will bring

6   about additional negotiations in which the class attorney and the dissenters and their attorneys, if

7   any, will participate."  *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 836 (9th Cir.

8   1976).  Although it certainly would have been reasonable for counsel to consult with the

9   "dissenters" following the Court's denial of the first final approval motion, the Court does not read

10  *Mandujano* as imposing a requirement on the parties to do so.  Accordingly, this objection is

11  denied.

12         Lindberg also submitted objections following the second amended release.  Dkt. No. 354.

13  The latest objection period was limited to the second amended release, and not the settlement as a

14  whole.  Accordingly, the Court only considers his latest objection as it relates to the second

15  amended release.  Objector Lindberg makes one argument about the release, contending that the

16  attorneys' expansion of the first amended release to include antitrust claims evinces collusion.

17  Dkt. No. 354 at 14.  Although the Court noted that the "final-hour amendment expressly requiring

18  the class to release conspiratorial-underfilling claims" was cause for concern, *see* Dkt. No. 336,

19  the Court is satisfied that the second amended release addresses those concerns.  The Court finds

20  that the favorable nature of the settlement in light of the risks of continued litigation, especially the

21  obstacles the putative class would face in certifying a class of this size, negates any collusion

22  concerns.[2]  This objection is also denied.

                              *        *        *

23         After considering and weighing all of the above factors, the Court finds that the proposed

24  class action settlement is fair, adequate, and reasonable, and that the Class Members received

25  adequate notice.  Accordingly, Plaintiff's renewed motion for final approval of the Settlement is

26  granted, Dkt. No. 347.

27

28  _____

[2] Section V, *infra*, further elaborates on why the Court does not have concerns regarding collusion.

United States District Court
Northern District of California

IV.    MOTION FOR ATTORNEYS' FEES AND COSTS

Class counsel asks the Court to approve an award of attorneys' fees of 33.3% of the $12,000,000 Settlement Fund,[3] or $4,000,000.  Dkt. No. 262 at 2.  Class counsel also seeks reimbursement of $155,779.96 in costs.  Counsel also requests $5,000 for Class Representative Hendricks and an award of $1,000 for each of eight interested parties.

A.  Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Plaintiff asserted claims under California law, including the CLRA, which mandates payment of attorneys' fees to successful plaintiffs.  *See* Cal. Civ. Code § 1780(e).  Because California law governed the claims here, it also governs the award of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Additionally, class counsel is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted).

A.    Class Counsel's Request for Fees

Under California law, courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons.  *Serrano v. Priest*, 20 Cal. 3d 25, 38 (1977).  The two methods for determining reasonable fees in the class action settlement context are the "lodestar/multiplier" method and the "percentage of recovery" method.  *See Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 254 (2001); *accord Hanlon*, 150 F.3d at 1029.

The Court considers the percentage method first.  According to the Ninth Circuit, an attorney fee of 25% of the recovery is the "benchmark" that should be awarded in common fund cases.  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Vizcaino*, 290 F.3d at 1050.  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special

---

[3] The Court values the product vouchers at $4 million.  Contrary to the objectors' contentions, the vouchers are valued at 100 cents on the dollar.  *See Online DVD-Rental*, 779 F.3d at 949-50 (valuing gift cards at 100 cents on the dollar for purposes of estimating the common fund).

United States District Court
Northern District of California

1  circumstances indicate that the percentage recovery would be either too small or too large in light

2  of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona*

3  *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). California courts, however, do not formally

4  recognize the 25% benchmark that is established under federal law in the Ninth Circuit as a

5  starting point to evaluate fee requests.  *See Schiller v. David's Bridal, Inc.*, No. 1:10-CV-00616-

6  AWI, 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012) (citing 1 Richard M. Pearl, California

7  Attorney Fee Awards, §§ 8.12-8.15 (3d ed. 2012)); *see also In re Consumer Privacy Cases*, 175

8  Cal. App. 4th 545, 558 n.13 (2009) (recognizing that most fee awards in California are based on

9  either a lodestar or percentage calculation ranging from 25% to 33%).

10      The 25% benchmark nonetheless is a helpful assessment tool in evaluating the requested

11  fee award, even where use of the benchmark is not required.  *Schiller*, 2012 WL 2117001 at *47.

12  As there is no definitive set of factors that California courts require to be considered in

13  determining the reasonableness of attorneys' fees under a percentage-of-the-fund approach, the

14  Court considers the reasonableness of the percentage requested in light of the factors endorsed by

15  the Ninth Circuit, with the 25% award as a starting point.  The Ninth Circuit has identified several

16  factors a court should consider to determine whether to adjust a fee award from the benchmark: (1)

17  the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the

18  contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made

19  in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.

20      Here, class counsel requests an upward departure from the 25% benchmark (*i.e.* $3 million

21  in attorneys' fees) to 33.3%.  The Court relies on the *Vizcaino* factors as its guide in assessing the

22  reasonableness of the request.

23      *The Results Achieved.*  Class counsel argues that it achieved extraordinary results, noting

24  the number of claims filed and the fact that the settlement represents full recovery for cans of tuna

25  purchased during the class period.  Although the Court agrees that this was a favorable settlement,

26  it believes class counsel places too much weight on the raw numbers.  The fact that over 2 million

27  claims were submitted can be attributed not only to class counsel's development and management

28  of the class notice process, but also to StarKist's brand recognition in the community and the

United States District Court
Northern District of California

18

possibility that Class Members could receive $25 in cash or $50 in vouchers.  Accordingly, this factor only slightly supports an upward departure from the 25% benchmark.

*The Risks of Litigation.*  Counsel contends that they took on substantial risk.  As discussed *supra*, if the case had continued through pretrial litigation, Plaintiff would have faced significant opposition, threatening the likelihood of a favorable outcome for Class Members.  Counsel further argues there were risks associated with litigation given the novelty of the claims, but the Court does not view the case as particularly novel.  As counsel acknowledges, his firm was first exposed to the underlying facts of this case when it learned of a complaint filed in state court in August 2012 raising similar causes of action regarding misrepresentations about the quantity of canned tuna products.  Dkt. No. 262-1 at ¶¶ 3-4.  Following the state case and the resulting stipulated judgment, class counsel pursued the underlying issues that led to the filing of this action. Moreover, even if the Court were to accept counsel's characterization, there still is nothing to suggest that the legal issues here were particularly complex compared to other large class action matters, or that exceptional skill was required to address those issues.  Thus, this factor only slightly favors an upward enhancement as well.

*The Skill Required and the Quality of the Work.*  The Court rejects class counsel's claim that it generated significant benefits for the class by using a bidding process to select a claims administrator.  Bargaining to find a reasonably-priced claims administrator is part of counsel's responsibility to the Class.  These facts do not compare to those in cases finding that a settlement generated significant non-monetary benefits for class members.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1049 ("Microsoft agreed to hire roughly 3000 class members as regular employees and to change its personnel classification practices, a benefit counsel valued at $101.48 million during the 1999–2001 period alone. The court observed that the litigation also benefitted employers and workers nationwide by clarifying the law of temporary worker classification. Moreover, it noted that as a result of this litigation, many workers who otherwise would have been classified as contingent workers received the benefits associated with full time employment." (citations omitted)).

*The Financial Burden Carried By Plaintiff.*  The Court agrees that class counsel and his firm carried a substantial financial burden both in advancing out-of-pocket costs and in

United States District Court
Northern District of California

1  representing Plaintiff and the Class Members on a contingency basis.  This factor favors a fee

2  enhancement from the 25% benchmark.

3    *Awards Made in Similar Cases.*  In support of its fee request, counsel cites several cases in

4  which courts awarded 33% of the recovery.  *See In re Activision Sec. Litig.*, 723 F. Supp. 1373

5  (N.D. Cal. 1989); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 375 (9th Cir. 1995); *Williams v.*

6  *MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (per curiam); *Vasquez v. Coast Valley*

7  *Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010).

8    Having considered the *Vizcaino* factors, the Court is not persuaded that an upward

9  departure to 33.3% is warranted for a total of $4 million in attorneys' fees, especially given that

10  such an award would substantially reduce the cash settlement pool available to the individual

11  Class Members.  That said, the *Vizcaino* factors confirm that some fee enhancement is justified in

12  recognition of the favorable settlement, the substantial risks of litigation, and the financial burden

13  assumed.  Accordingly, under the percentage-of-fund method, the Court finds that 30% of the total

14  recovery, or $3.6 million, is appropriate.

15    The Court also considers the lodestar method.  The first step in the lodestar analysis is to

16  multiply the number of hours counsel reasonably expended on the litigation by a reasonable

17  hourly billing rate.  *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon*,

18  150 F.3d at 1029.  Once this raw lodestar figure is determined, the Court may apply a multiplier to

19  the lodestar if warranted after the consideration of certain enhancement factors like (1) the results

20  obtained; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill

21  necessary to litigate the case; (4) the preclusion of other employment due to acceptance of the

22  case; and (5) whether the fee is fixed or contingent.  *See Serrano*, 20 Cal. 3d at 48.

23    Here, class counsel expended 3,366.8 total hours on this case, Dkt. No. 262-1, ¶ 73; Dkt.

24  No. 360, ¶ 4.  At a reasonable hourly billing rate, the lodestar amount is $1,583,532.  *See* Dkt. No.

25  262-1 at 27; Dkt. No. 360 ¶ 5.  The Court has reviewed class counsel's time records and billing

26  reports, and finds that the number of hours devoted to this case was reasonable.  Dkt. No. 262-1;

27  Dkt. Nos. 360-1, 360-2.  The Court further finds that the billing rates used by class counsel to

28  calculate the lodestar are reasonable and in line with prevailing rates in this District for personnel

United States District Court
Northern District of California

1   of comparable experience, skill, and reputation.  *Id.*

2       The Court does not dispute that the settlement amount is favorable, that counsel conducted

3   extensive work in pursuit of settlement, and that counsel assumed risk in working this case on a

4   contingency basis while foregoing other work.  The Court has taken into account these factors in

5   determining that class counsel's hours expended and rates charged were reasonable.  The size of

6   the lodestar is calculated on current billing rates, which account for the experience and quality of

7   work as well as the length of the litigation.  Additionally, the Court finds some multiplier is

8   warranted to reflect the substantial risks of litigation in this case and the financial risks class

9   counsel assumed.  The Court accordingly approves a multiplier of 2.27, resulting in $3.6 million in

10  fees, consistent with the 30% benchmark discussed above.

11      The Court finds that an attorneys' fees award of $3.6 million is reasonable and fair in light

12  of the circumstances of this case, and that the Court's consideration and rejection of a 33.3%

13  departure addresses the objectors' contentions that the attorneys' fee award is excessive.  *See, e.g.*,

14  Dkt. No. 286 at 3-4 (arguing that class counsel failed to provide a reasonable justification for a fee

15  award over the 25% benchmark); Dkt. No. 299 at 2 (contending that the fees "are disproportionate

16  to the value of the recovery of the class" and that the fees "do not depend on how much relief is

17  actually paid to the class members") Dkt. No. 294 at 19 (same).  The Court further rejects those

18  objections arguing that the settlement agreement contains a clear sailing provision.  *See, e.g.*, Dkt.

19  No. 288 at 8.  There is no clear sailing provision.  Although the Settlement permits class counsel

20  to request attorneys' fees, the fees are not guaranteed as a part of the Settlement.  In fact, Defense

21  counsel opposed class counsel's fee motion, asking the Court to reduce the request by $1 million

22  at a minimum.  *See* Dkt. No. 285.

23      Additionally, some objectors request that the Court "calculate the award based on the

24  number of class members that redeem the coupons for canned tuna and the cash fund created for

25  the class members after subtracting the costs of administration."  Dkt. No. 288 at 8; *see also* Dkt.

26  Nos. 286, 288, 297.  Defendant makes a similar argument.  Dkt. No. 285.  The Court denies the

27  objection.  *See Online DVD-Rental*, 779 F.3d at 953 ("The district court did not abuse its

28  discretion in calculating the fee award as a percentage of the total settlement fund, including notice

1   and administrative costs, and litigation expenses"); *Staton v. Boeing Co.*, 327 F.3d 938, 974-75

2   (9th Cir. 2003) (holding that the court did not "abuse its discretion by including the cost of

3   providing notice to the class of the proposed consent decree as part of its putative fund

4   valuation"). *See also Williams*, 129 F.3d at 1027 (holding that calculation of attorneys' fees may

5   be based on the entire common fund created for the class, even if some class members make no

6   claims against the fund).

### B.    Class Counsel's Request for Costs

8          Class counsel seeks reimbursement of $155,799.96 in out-of-pocket costs.  Dkt. No. 262 at

9   2; Dkt. No. 360 at 2.  The Court has reviewed counsel's itemized listing of each expense incurred

10   during this case and determines that the costs were reasonable and properly expended.  *See Gaudin*

11   *v. Saxon Mortgage Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *9 (N.D. Cal. Nov.

12   23, 2015) ("To support an expense award, Plaintiffs should file an itemized list of their expenses

13   by category and the total amount advanced for each category, allowing the Court to assess whether

14   the expenses are reasonable.").

### C.    Class Representative's Request for Incentive Award

16          "[N]amed plaintiffs . . . are eligible for reasonable incentive payments."  *Staton*, 327 F.3d

17   at 977.  The district court must evaluate a Plaintiff's incentive award using "relevant factors

18   includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to

19   which the class has benefitted from those actions, . . . [and] the amount of time and effort the

20   plaintiff expended in pursuing the litigation . . . ."  *Id.* at 977.  Many courts in the Ninth Circuit

21   have held that a $5,000 incentive award is "presumptively reasonable."  *See, e.g.*, *In re Toys-R-Us*

22   *Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72 (C.D. Cal. 2014); *Harris v. Vector*

23   *Marketing Corp.*, No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)

24   ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are

25   quite high and/or that, as a general matter, $5,000 is a reasonable amount.").  "Such payments,

26   however, must be reasonable in light of applicable circumstances, and not 'unfair' to other class

27   members."  *W. v. Circle K Stores, Inc.*, No. CIVS040438WBSGGH, 2006 WL 1652598, at *12

28   (E.D. Cal. June 13, 2006); *see In re Oracle Secs. Litig.*, No. C-90-0931-VRW, 1994 WL 502054

1    at *1 (N.D. Cal. June 18, 1994) (reducing requested payment of $2,500 to $500 for spending

2    "between two and five hours undergoing depositions and . . . respond[ing] to a few narrow

3    document discovery requests").

4           Plaintiffs request a service award of $5,000 to Plaintiff Hendricks, and a service award of

5    $1,000 to the eight interested parties.  Dkt. No. 262 at 21-22.  There were several objections

6    related to the incentive awards, contending the awards were unreasonably high and not warranted.

7    For example, one objector argued that the settlement should not be approved because of the

8    disparity between each class member's recovery and the class representative and interested

9    parties' recoveries.  Dkt. No. 294 at 11-13.

10          The Court finds that a $5,000 service award for Plaintiff Hendricks is reasonable to

11   compensate him for bringing the action.  Contrary to the objectors' arguments, the incentive award

12   was not conditioned on the class representative's support for the settlement, and there is no

13   evidence that Hendricks' interests diverged from those of the Class Members, thus undermining

14   his ability to fairly and adequately protect the interests of the Class.  Moreover, the Court finds

15   that Hendricks added substantial value to the case.  He participated in regular meetings with class

16   counsel, discussed case strategy, and shared his experiences using StarKist Tuna.  Dkt. No. 262-1,

17   ¶¶ 94-95.  Hendricks assisted in drafting and reviewing the complaint, helped form responses to all

18   proffered discovery requests, and gathered documents for production.  *Id.*  He also sat for a day-

19   long deposition and prepared a declaration in support of class certification.  *Id.*  Finally, he was

20   intimately involved in the settlement process and took time away from personal and work

21   activities to pursue and litigate this action.  *Id.*  In light of his participation and commitment to the

22   litigation and his service to the Class, the Court finds that the service award is fair and reasonable,

23   and accordingly rejects the objectors' arguments that the amount is unreasonably high.

24          The Court denies the request for $1,000 for each of the eight interested parties.  The Court

25   disagrees that the filing of a motion to intervene, the preparation of a class action complaint that

26   was never filed, or the willingness to stand by and represent statewide classes should it become

27   necessary warrants the requested award, which is grossly disproportionate to what other Class

28   Members are receiving.  The Court has found that the settlement is a good and fair deal, and thus it

United States District Court
Northern District of California

23

1     is an equally good and fair deal for these "interested party" Class Members.

2     **V.      MOTION TO REMOVE CLASS COUNSEL AND CONDUCT DISCOVERY**

3              Objector Eric Lindberg moves to remove class counsel and conduct discovery.[4]  Dkt. No.

4     353.  The objector contends that the first amended release confirms the existence of collusion and

5     that class counsel's interests are adverse to the Class.

6              The Ninth Circuit has identified three signs of collusion: (1) "when counsel receive a

7     disproportionate distribution of the settlement, or when the class receives no monetary distribution

8     but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing'

9     arrangement," and (3) "when the parties arrange for fees not awarded to revert to defendants rather

10    than be added to the class fund."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947

11    (9th Cir. 2011).

12             None of these factors are present here.  Moreover, the fact that at the final fairness hearing

13    class counsel advanced some similar arguments to those made by Defendant's counsel does not

14    establish that class counsel is not an adequate representative.  Although the Court expressed its

15    concerns over counsel's motives underlying the first amended release, Dkt. No. 336 at 6, the Court

16    is satisfied that the second amended release addressed its concerns.  Because the *In re Bluetooth*

17    *Headset* factors are not present in this case, and because the objector has presented no other

18    evidence of collusion, the Court DENIES the motion to remove class counsel.  *See In re Google*

19    *Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1137 (N.D. Cal. 2015) ("[O]bjectors to a

20    class action settlement bear the burden of proving any assertions they raise challenging the

21    reasonableness of a class action settlement." ).

22             For similar reasons, the Court denies the objector's request to conduct additional discovery

23    with respect to the sufficiency of the notice.  As described *supra*, the notice was adequate and

24    informed the Class Members of the maximum possible recovery.  Accordingly, the objector has

25    not demonstrated any basis to support the need for further discovery, and the motion is denied.

26

27

28

---

[4] The Court finds this motion suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b).

United States District Court
Northern District of California

United States District Court
Northern District of California

## VI.   OBJECTORS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Objectors Colin Moore and Kathy Durand Gore ("Objectors"), through their counsel the Kralowec Law Group and Robert Taylor-Manning, move for attorneys' fees, expenses, and incentive awards.[5]  Dkt. No. 363.

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation."  *Rodriguez v. Disner (Rodriguez II)*, 688 F.3d 645, 658 (9th Cir. 2012).  In order to receive an award of attorneys' fees, objectors must show that they increased the fund or "substantially enhanced the benefits to the class" under the settlement. *Vizcaino*, 290 F.3d at 1052.  Generally, objectors who "do not add any new legal argument or expertise, and do not participate constructively in the litigation" are not entitled to attorneys' fees. *Rodriguez II*, 688 F.3d at 659.

The Court finds that the Kralowec Law Group and Taylor-Manning contributed materially to the Settlement, benefitting not only the Court, but also Class Members in this action.  Although there were many objectors in this case, the Court finds that Objectors offered a unique and substantial benefit to the class in providing the first substantive objection to the scope of the release, which the Court found to be overbroad.  *See* Dkt. No. 336.  Starting with their initial 12-page brief filed in November 2015, Dkt. No. 293, Objectors brought to the Court's attention crucial flaws in the release language.  They filed a second brief in March 2016, Dkt. No. 352, and counsel appeared at both the final fairness hearing and the April hearing concerning the second amended release.  At each step, they presented well-reasoned arguments supported by authority. These arguments significantly contributed to the Court's initial order denying final approval, in which the Court adopted and cited a number of Objectors' contentions.  *See* Dkt. No. 336.

Thus, these efforts conferred a substantial benefit by (1) thoroughly briefing and arguing an issue that the parties had overlooked, (2) bringing to the Court's attention flawed release language that made the Settlement vulnerable to legal challenges that could have delayed or prevented the Settlement's distribution to Class Members, and (3) ensuring that the scope of the

---

[5] The Court finds this motion suitable for disposition without oral argument, see Civ. L.R. 7-1(b).

settlement's release was narrowly tailored to the claims in this action, thereby preserving claims that were not at issue in this case. While the Court has no way of knowing how much, if any, monetary value those claims will have, preserving Class Members' ability to pursue such claims provided a significant service to the Class. Class counsel's contention that the claims are a "jack-a-lope" that "does not exist," Dkt. No. 369 at 5, again ignores the fundamental rule that a release should be limited to the factual allegations and legal claims arising from the action, without regard to the potential merits or monetary value of those claims. There was no reason for the Class Members to be required to release these unrelated claims without compensation, and Objectors' efforts helped ensure that the Class Members did not have to do so. For these reasons, the Court finds that the Kralowec Law Group and Taylor-Manning substantially enhanced the benefits to the Class, and that attorneys' fees are warranted.

The motion seeks a combined lodestar of $153,525.5: the Kralowec Law Group seeks $138,360.5 for 205.9 hours expended, and Taylor-Manning seeks $15,165 for 33.7 hours expended. The Court finds that the submitted time records provide sufficient information from which the Court can assess the reasonableness of the request. The attached declarations illustrate the scope of litigation work performed, such as conducting multiple meet-and-confer sessions with class counsel and Defendant's counsel, communicating with counsel through telephonic and written correspondence, researching the underlying law, preparing two sets of substantive formal objections that were 12 and 17 pages in length, drafting client declarations, and preparing for two oral arguments at which counsel presented well-reasoned and well-supported arguments. The Court is satisfied that the 239.6 hours expended from August 2015 through February 2016 was reasonable given the extent and quality of work performed. Moreover, the hourly rates are within the range of prevailing rates within the community, *see* Dkt. No. 363-1 at ¶¶ 19-27, Dkt. No. 363-2 at ¶¶ 15-16, and class counsel does not contest the reasonableness of these rates in its opposition, *see* Dkt. No. 369.

The motion also requests that the Court award the same fee multiplier that it approved for class counsel. The Court declines to do so. As explained above, the fee multiplier was an appropriate award for class counsel, given the risks his firm faced and the financial burdens

26

United States District Court
Northern District of California

1    assumed over three years of litigation.  Although the Court finds that the Objectors provided a

2    substantial benefit that warrants compensation, a similar multiplier is not warranted given the

3    comparatively short duration of counsel's work and the minimal risks assumed.

4         The motion also seeks an award of costs in the amount of $927.18 to the Kralowec Law

5    Group and $534.97 to Taylor-Manning.  To support this request, the attached declarations include

6    an itemized list of expenses, including copies, computer research, transcription, and travel

7    expenses.  The Court finds that the expenses claimed were reasonably related to advancing the

8    interests, and thus approves $1,462.15 in costs.

9         The Court orders the combined lodestar and costs of $154,987.65 be deducted directly

10   from class counsel's fee award of $3.6 million.  This is an appropriate and justified result.  If not

11   for class counsel's acquiescence to the overbroad release (including repeated avowals that post-

12   notice changes to the release were reasonable and insistence that releasing claims different from

13   the scope of alleged liability was not cause for concern), the Kralowec Law Group and Taylor-

14   Manning would not have needed to become involved at this level.  And the Court strongly

15   believes that this expense should not be paid from money that otherwise would have gone to the

16   Class Members.  Accordingly, the Court reduces class counsel's fee award from $3.6 million to

17   $3,445,012.35.

18        Finally, the Court denies the Objectors' request for incentive awards.  Any benefit that the

19   Objectors themselves may have added to the settlement does not approach the "substantial

20   benefit" threshold to warrant an incentive award, and this is especially true given that such an

21   award would reduce the funds available for Class Members.

22   **VII.    CONCLUSION**

23        For the foregoing reasons, the Court GRANTS Plaintiff's renewed motion for final

24   approval.  Dkt. No. 347.  The Court GRANTS IN PART AND DENIES IN PART Plaintiff's

25   motion for attorneys' fees and costs.  Dkt. No. 262.[6]  The Court approves the settlement amount of

26   $12 million, payments of attorneys' fees in the amount of $3,445,012.35, and service award in the

27

28   _____

[6] Plaintiff's renewed their motion for attorneys' fees, Dkt. No. 262, in the motion for settlement, Dkt. No. 347.

amount of $5,000 for Plaintiff Hendricks.  The Court also approves $155,779.96 in reimbursement for class counsel's expenses.

The Court GRANTS the Objectors' motion for attorneys' fees, Dkt. No. 363, awarding a combined total of $154,987.65 in fees and costs to the Kralowec Law Group and Robert Taylor-Manning.

The Court DENIES the motion to remove class counsel and conduct discovery, Dkt. No. 353.

Finally, the Court DENIES the following motions as MOOT: motion to certify class, Dkt. No. 94, and related motions to file under seal, Dkt. Nos. 95, 111, 155; motion to intervene, Dkt. No. 96; administrative motion to file joint case management statement under seal, Dkt. No. 109; discovery letter briefs, Dkt. Nos. 147, 148; Plaintiff's administrative motion to file under seal, Dkt. No. 155; Plaintiff's motion for sanctions and related motions to file under seal, Dkt. Nos. 141, 142, 168.

**IT IS SO ORDERED.**

Dated:  9/29/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge